ORIGINAL

Fee Paid

FILED
2008 OCT 20 A 11: 43
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

BRANDON BAUM, State Bar No. 121318
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306
Email: bbaum@mayerbrown.com
Telephone: (650) 331-2080
Facsimile: (650) 331-4580

E-filing

DAVID H. KRAMER, State Bar No. 168452, *dkramer@wsgr.com*
CAROLINE E. WILSON, State Bar No. 241031, *cwilson@wsgr.com*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants
YOUTUBE, INC., YOUTUBE, LLC, and
GOOGLE INC.

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV 08-80211MISC.

| | |
|---|---|
| VIACOM INTERNATIONAL INC., ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC., ET AL.<br><br>Defendants. | **CASE NO. MISC.:** JF PVT<br><br>[Case No. 07-cv-02103 (LLS) in the U.S.D.C., S.D.N.Y]<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA DUCES TECUM TO BAYTSP.COM, INC.; MEMORANDUM OF POINTS AND AUTHORITIES** |
| THE FOOTBALL ASSOCATION PREMIER LEAGUE LIMITED, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC., ET AL.<br><br>Defendants. | [Case No. 07-cv-03532 (LLS) in the U.S.D.C., S.D.N.Y.]<br><br>Date: November 24, 2008<br>Time: 9:00 a.m.<br>Courtroom: Eight<br>Judge: James Ware |



Dockets.Justia.com

# TABLE OF CONTENTS


**Page**

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

I. BACKGROUND ..... 3

A. The YouTube Service ..... 3

B. Viacom's Copyright Infringement Suit Against YouTube ..... 5

C. BayTSP's Relationship With Viacom and Its Role in the Underlying Litigation ..... 5

D. YouTube's Subpoena to BayTSP ..... 7

E. BayTSP's Unwarranted Delay and Refusal to Produce Documents ..... 8

II. ARGUMENT ..... 9

A. Legal Standard ..... 9

B. The Subpoena Seeks Clearly Relevant Documents ..... 10

1. BayTSP's Documents Regarding YouTube are Highly Relevant ..... 10

2. BayTSP's Documents Regarding Viacom and this Litigation are Highly Relevant ..... 13

C. There is No Undue Burden on Viacom's Agent, BayTSP ..... 14

D. BayTSP's Responses and Objections Have No Merit ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522 (S.D.W. Va. 2007) .......... 15

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .......... 10

*Io Group, Inc. v. Veoh Networks, Inc.*, No. C06-03926 HRL, 2008 WL 4065872 (N.D. Cal. Aug. 27, 2008) .......... 2, 4

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) .......... 2, 4, 10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2871 (2008) .......... 4

*St. Paul Reins. Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000) .......... 15

*United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388 (C.D. Cal. 2002) .......... 9

## STATUTES

17 U.S.C. § 512(c) .......... 4, 12

17 U.S.C. § 512(m) .......... 10

## RULES

Civ. L.R. 37-1 .......... 1

Fed. R. Civ. P. 26(b)(1) .......... 9

Fed. R. Civ. P. 37(a)(2)(B) .......... 1

Fed. R. Civ. P. 45(c)(2)(B) .......... 9

## MISCELLANEOUS

9A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* § 2452 (3d ed. 2008) .......... 9

## NOTICE OF MOTION AND MOTION

TO THE COURT, BAYTSP.COM, INC., AND PARTIES AND COUNSEL OF RECORD IN THE UNDERLYING ACTION, VIACOM INTERNATIONAL INC. v. YOUTUBE, INC., S.D.N.Y. CASE NO. 1:07-CV-02103 (LLS):

PLEASE TAKE NOTICE THAT Defendants YouTube, Inc., YouTube, LLC, and Google Inc. (collectively, "YouTube"), hereby move the court for an order compelling BayTSP.com, Inc. ("BayTSP") to comply with the subpoena *duces tecum* ("Subpoena") issued out of this court on September 27, 2007, pursuant to Rule 45 of the Federal Rules of Civil Procedure. Baum Decl., Ex. A, Subpoena, Sept. 27, 2007. The hearing is set for November 24, 2008 at 9:00 a.m. before the Honorable Judge Ware, Courtroom 8, 4th Floor, in the United States District for the Northern District of California, 280 South First Street, San Jose, California, or as soon thereafter as the parties may be heard.

YouTube respectfully requests that BayTSP be compelled to produce relevant and responsive documents. This motion is necessitated as a result of BayTSP's refusal to comply with the Subpoena despite YouTube's good faith efforts to obtain BayTSP's voluntary compliance. Baum Decl., Ex. B, BayTSP's Response to Subpoena *Duces Tecum*, Nov. 7, 2007.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities submitted herewith, the Declaration of Brandon Baum ("Baum Decl.") and the exhibits attached thereto, the Declaration of Caroline Wilson ("Wilson Decl.") and the exhibits attached thereto, all pleadings and papers on file, and upon such additional written or oral evidence or argument as the court may permit.

In accordance with Federal Rule of Civil Procedure 37(a)(2)(B) and Civil Local Rule 37-1, counsel for YouTube certifies that its counsel in good faith have repeatedly met and conferred with BayTSP's counsel over a period of ten months for the purpose of resolving the disputed issues set forth herein, yet not a single document has been produced.

**MEMORANDUM OF POINTS AND AUTHORITIES**

This motion to compel arises in the context of misguided copyright litigations brought by Viacom International Inc. ("Viacom") and various other plaintiffs (collectively, "Plaintiffs") against YouTube in the Southern District of New York. YouTube operates the world's largest online video hosting service, acting as an intermediary to enable users to share their personal video clips with an audience of tens of millions of people all over the world. The service currently hosts hundreds of millions of video clips, and new clips are uploaded by users to YouTube's video hosting website every day. In the underlying actions, Plaintiffs contend that, notwithstanding YouTube's intermediary role, if any of the clips within YouTube's massive digital stores belong to Plaintiffs and have been shared by users without Plaintiffs' authorization, YouTube should be held liable for copyright infringement. Viacom's suit alone demands YouTube pay it a headline-grabbing $1 billion in damages.

Plaintiffs' lawsuits aim to gut the Digital Millennium Copyright Act ("DMCA"), the legislative compromise Congress enacted in 1998 to promote the growth of online services. As a court within this district recently recognized, the DMCA, in relevant part, immunizes services like YouTube from copyright liability for material uploaded by users, provided the services are properly responsive to notifications of alleged copyright infringement from content owners. *See Io Group, Inc. v. Veoh Networks, Inc.*, No. C06-03926 HRL, 2008 WL 4065872, at *19-21 (N.D. Cal. Aug. 27, 2008). In interpreting this statutory immunity, the Ninth Circuit has held that "[t]he DMCA notification procedures place the burden of policing copyright infringement — identifying the potentially infringing material and adequately documenting infringement — squarely on the owners of the copyright." *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). Viacom and other copyright owners have assigned these policing, documentation and notification responsibilities to their agent, Respondent BayTSP, Inc. ("BayTSP"). Given this role, BayTSP possesses a host of information that is critically important to YouTube's defenses in the actions.

YouTube subpoenaed BayTSP seeking patently relevant information such as "documents and communications concerning your monitoring, searching or screening of YouTube" and

"documents and communications concerning copyrights allegedly owned by or licensed to Viacom" (the "Subpoena"). BayTSP initially refused to produce any documents at all, and interposed a series of frivolous objections. In negotiations over many months, YouTube's counsel refuted BayTSP's proffered excuses. Yet almost one year after issuance of the Subpoena, BayTSP: (1) has yet to produce a single document; (2) refuses to provide a date certain by which it will even commence its document production; and (3) continues to raise myriad other issues in an apparent attempt to further delay its production. Given the undeniable significance of the requested documents to the underlying litigation, intervention by this Court is required.

## I. BACKGROUND

### A. The YouTube Service

Since its founding in 2005, YouTube has been the leading online video hosting website. YouTube provides a free online platform where any individual may upload videos which can then be viewed by millions of people around the world. To create a YouTube account and upload videos, an individual must agree to YouTube's "terms of use," which require users to affirm that they "have the necessary licenses, rights, consents, and permissions to use" the uploaded material and "will not submit material that is copyrighted . . . or otherwise subject to third party proprietary rights" without permission. *See* Wilson Decl., Ex. 19 at 3. After creating a YouTube account, a registered user signs in to her account and simply selects and uploads the desired files from the user's computer. *See* Wilson Decl. ¶ 21.

YouTube's service has become enormously popular since its inception. The site now houses tens of millions of videos, with hundreds of thousands of new videos being added every day. YouTube is the number one video site on the Internet and it receives tens of millions of unique visitors each month. YouTube's success is directly attributable to the widely varied content posted by its users: YouTube has given political candidates a powerful new mechanism for spreading their message to voters; it has allowed first-hand reporting from remote war zones like Darfur; and it has made previously unknown performers and filmmakers into highly recognizable stars. *See, e.g., id.*, Ex. 20 (Time Magazine, naming YouTube the Best Invention of 2006, notes that YouTube users post "stand-up routines and drunken ramblings and painful-

looking snowboarding wipeouts. They uploaded their backyard science projects, their delivery-room footage and their interminable guitar solos. They sent in eyewitness footage from the aftermath in New Orleans and the war in Baghdad — from both sides. They promulgated conspiracy theories. They sat alone in their basements and poured their most intimate, embarrassing secrets into their webcams.").

YouTube is mindful of the possibility that its users may upload video clips to the service that they do not have the right to share, and has taken a host of industry-leading steps, well beyond anything the law requires, to help copyright owners stop the unauthorized posting and viewing of copyrighted content.[1] Without significant direct involvement by copyright holders, however, YouTube does not have the knowledge of the contents of the millions of videos uploaded and accessed through its service. YouTube is, however, extremely responsive to "takedown notices" from copyright holders as provided for by the Digital Millennium Copyright Act ("DMCA"). Congress enacted the DMCA in 1998 in an effort to both protect online service providers from potentially ruinous liability from copyright infringement claims while, at the same time, creating a procedure for copyright owners to demand prompt removal of their material from those services. The DMCA requires copyright owners to affirmatively notify service providers about the existence of allegedly infringing material on their systems and for service providers, in turn, to "expeditiously" act upon receipt of such notices to remove the alleged infringement. *See CCBill*, 488 F.3d at 1113. Service providers like YouTube who abide by this "notice and takedown" procedure are entitled to "safe harbor" from liability for copyright infringement. 17 U.S.C. § 512(c); *Io Group*, 2008 WL 4065872, at *15; *see also* Sen. Rep. No. 105-190 at 21 (1998) (The notice and takedown procedure also "balance[s] the need for rapid response to potential infringement with the end-users legitimate interests in not having material removed without recourse."); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 n.4 (9th Cir. 2007) ("Congress addressed the issue of notice in the DMCA, which grants a safe harbor against liability

---

[1] *See, e.g.*, Wilson Decl., Ex. 21 (NBC's General Counsel approves of YouTube's filtering and take-down systems and states that "copyright owners need to work hand-in-had with video-sharing sites.").

to certain Internet service providers, even those with actual knowledge of infringement, if they have not received statutorily-compliant notice."), *cert. denied*, 128 S. Ct. 2871 (2008).

**B. Viacom's Copyright Infringement Suit Against YouTube**

Viacom filed this action on March 13, 2007. Other plaintiffs filed a tag-along putative class action on May 4, 2007. The actions have been consolidated for discovery purposes. In its First Amended Complaint, Viacom asserts claims of direct infringement and secondary liability, for inducement of copyright infringement, contributory infringement and vicarious liability. Baum Decl., Ex. C, Viacom's First Amended Complaint ("FAC"), filed April 24, 2008. YouTube answered, in part, by, *inter alia*, invoking the protections of the "safe harbor" provisions of the DMCA.

**C. BayTSP's Relationship With Viacom and Its Role in the Underlying Litigation**

Content companies such as Viacom employ BayTSP to locate materials in the online world that allegedly infringe their copyrights. In many cases, after identifying such materials, BayTSP sends a notification, purportedly in accordance with the DMCA, to the online service hosting those materials to request that the service remove or block access to them. *Id.*, Ex. D, *BayTSP FAQ* at § *Who is BayTSP?* ("BayTSP sends infringement notices on behalf of the clients and monitors for compliance. BayTSP does not own the copyrighted file; the company named in the notice is the copyright holder. BayTSP is the company's assigned agent to take care of these matters."). According to its website, "BayTSP's systems continually monitor the infringers for compliance with the Take Down notice, and record when it was removed." *Id.*, Ex. E, *BayTSP Brand Protection*, at § *Sustained Protection*. BayTSP also "allows clients to review individual infringements or establish automated processes that direct the system to send DMCA-compliant takedown notices to the video hosting site." *Id.*, Ex. F, *BayTSP Online Video Tracking* at § *CIMS: Flexible Notice Sending & Reporting*. Both Viacom and another plaintiff, Bourne Company, have retained BayTSP for these purposes.

In its initial disclosures, Viacom removed any doubt about the critical relevance of BayTSP to this litigation. It identified only a single witness regarding its "identification of infringing content on YouTube" — BayTSP's Vice President of Engineering, Travis Hill. Baum

Decl., Ex. G at 4. BayTSP has long performed this policing, documentation and notification role for Viacom and others. At least as early as June 2006, long before it instituted litigation, Viacom hired BayTSP to identify alleged infringements on the YouTube service and send DMCA notifications to YouTube requesting their removal. *See* Wilson Decl., Exs. 1 (June 1, 2006 e-mail reflecting BayTSP acting on behalf of Paramount), 2 (October 7, 2006 takedown notice sent by BayTSP on behalf of Viacom). BayTSP corresponded with YouTube on a weekly, if not daily basis, routinely praising YouTube for its approach to protecting copyrights and for its cooperation in limiting alleged infringement. *See id.*, Exs. 3 (BayTSP thanks YouTube for setting up accounts for its work on behalf of Viacom), 4 (BayTSP thanks YouTube for quickly responding to its takedown notice), 5 (BayTSP thanks YouTube for its efforts), 6 (BayTSP thanks YouTube for being patient with its requests). BayTSP often recognized Viacom content on the YouTube service and allowed it to remain at Viacom's direction. *See id.*, Exs. 7 (BayTSP discovers Paramount content on YouTube, but does not request that YouTube take it down); 8 (discussion with BayTSP revealing a "White List" of Viacom content at BayTSP about which BayTSP was not to send takedown notices). And on Viacom's behalf, BayTSP often sent YouTube erroneous notices demanding that YouTube take down content that Viacom did not own and content that Viacom or its agents had themselves uploaded. *See id.*, Exs. 9 (BayTSP took down content uploaded by Viacom), 10 (Viacom takes down someone else's content), 11 (Viacom takes down someone else's content), 12 (mistaken Best Week Ever takedown), 13 (e-mail entitled "Another Viacom mistake").

BayTSP also played a key role in the events leading up to this litigation. In the fall of 2006, BayTSP continued trolling the YouTube service looking for instances of alleged infringement. But instead of sending notices to YouTube to have the identified materials removed, BayTSP remained silent, instructed by Viacom to say nothing for months. Wilson Decl., Ex. 14. Then, according to the Wall Street Journal, in February 2007, "Viacom gave the signal to fire off a barrage of 'take down' notices"; deluging YouTube with more than 100,000 in a single day. *Id.* Many of the clips over which Viacom is suing in this action were part of this

orchestrated delay. *Id.*[2]

A search for "BayTSP" in the documents produced by YouTube thus far yields over 5500 documents generally reflecting BayTSP's notices to YouTube and YouTube's responses to them. Wilson Decl. ¶ 2. Viacom's production to date turns up over a hundred documents consisting mainly of internal e-mail references by Viacom employees to BayTSP's policing activities on the company's behalf. *Id.* There is simply no question that BayTSP is one of the central figures in this case.

**D. YouTube's Subpoena to BayTSP**

Given its extensive work on Viacom's behalf, and its routine interactions with YouTube, there is no doubt that BayTSP possesses a host of documents that are directly relevant to this litigation. In September 2007, YouTube served BayTSP with a subpoena requesting basic categories of relevant information:

- All documents and communications concerning YouTube, including those reflecting use of YouTube by BayTSP and its clients, monitoring of YouTube by BayTSP and its clients, and comparisons of the responsiveness of YouTube to other online services (Document Request Nos. 1, 3, 4, 5, 8, 13)
- All documents and communications regarding BayTSP's relationship with Viacom, including documents regarding copyrights Viacom claims to own and the litigations in New York. (Document Request Nos. 6, 9)
- All documents and communications regarding the nature of BayTSP's monitoring and identification processes, its training of monitors, and its effectiveness or lack thereof with respect to identification of allegedly infringing materials online (Document Request Nos. 2, 7, 10)[3]

---

[2] BayTSP publicly touts the fact that the Viacom lawsuit was predicated on BayTSP's work. In an article posted on BayTSP's website, Michael D. Fricklas, Viacom's General Counsel, asserts that in preparation for its lawsuit against YouTube, Viacom hired BayTSP "to scour every corner of YouTube's site" using BayTSP's "crawler software." Baum Decl., Ex. H, *BayTSP News* (Apr. 7, 2007) (follow "Blades Of Glory - How Viacom Researched YouTube Videos for Its $1 Billion Lawsuit" hyperlink); *Id.*, Ex. I ("Blades Of Glory - How Viacom Researched YouTube Videos for Its $1 Billion Lawsuit"). According to that article, BayTSP identified more than 150,000 unauthorized clips on the YouTube site, a claim which is repeated in paragraph 3 of Viacom's Complaint against YouTube. *Id.*, Ex. C, at ¶ 3.

[3] YouTube also requested documents sufficient to identify the entities that have retained BayTSP to monitor the YouTube service, and documents sufficient to identify prior litigations in which BayTSP has provided testimony. (Document Request Nos. 11, 12)

Put simply, YouTube asked for documents showing how BayTSP went about fulfilling the policing and notification responsibility that the DMCA imposes on Viacom, a responsibility that Viacom chose to delegate to its agent.

**E. BayTSP's Unwarranted Delay and Refusal to Produce Documents**

BayTSP's response to YouTube's subpoena was nothing more than a series of objections, with no commitment to produce a single document. Since receiving the response in November YouTube has repeatedly met and conferred with counsel for BayTSP in an effort to convince BayTSP to agree to produce the documents sought. There have been at least six substantive teleconferences between the parties' counsel. Baum Decl. ¶ 3. More than twenty formal letters have been exchanged in addition to numerous emails. *Id.* ¶ 2. Although YouTube has attempted to accommodate BayTSP's concerns, it has become clear that BayTSP is unwilling to commit to producing all responsive documents or any documents at all on a date certain.

After many months of back and forth, the parties engaged in a lengthy teleconference on May 12, 2008 in an effort to reach a final agreement on all outstanding issues. *Id.* ¶ 3. YouTube confirmed its understanding of the commitments BayTSP had made in a detailed letter the next day, setting forth, among other things, BayTSP's commitment to produce documents the week of May 26, 2008. *Id.*, Ex. J, Ltr. from Baum to Ellinikos (May 13, 2008) ("You have agreed to attempt to produce the responsive database records no later than May 19, 2008, but if you cannot meet that deadline, you have agreed to produce sample records with headers by May 19, 2008 so that we can make preparations to use the records upon receipt, with the complete production to follow during the week of May 26, 2008 when you return from holiday."). BayTSP responded the following day by merely saying that YouTube "failed to accurately reflect our discussions" but without detailing any specific disagreements or issues or setting forth an alternative date for production. *Id.*, Ex. L, Ltr. From Ellinikos to Baum (May 14, 2008). BayTSP failed to produce documents on May 26.

On June 9, 2008, YouTube requested an in-person meet and confer to resolve the outstanding issues and set a date for BayTSP's production. *Id.*, Ex. M, Ltr. from Baum to Ellinikos (June 9, 2008). BayTSP responded that such a meeting was premature but that they

were committed to producing documents in July. *Id.*, Ex. N, Ltr. From Ellinikos to Baum (June 10, 2008). When July came and went, YouTube again contacted BayTSP and requested BayTSP to *commit* to a date certain for BayTSP's production. On August 21, 2008, BayTSP refused to do so, instead reiterating their "hope" to have something "in the next several weeks." *Id.*, Ex. O, Email from Hemminger to Baum (Aug. 21, 2008).

Therefore, after nine months of meeting and conferring that had accomplished nothing, and after BayTSP had failed to meet every deadline to which it had committed, the need for court intervention has became obvious. As described in greater detail below, YouTube respectfully requests that the Court enter an order directing BayTSP: (1) to search for and produce all relevant and responsive information called for by the subpoena by a date certain; and (2) to set forth in a detailed privilege log any information that is being withheld on the basis of any privilege, including any joint defense or work product privilege.

## II. ARGUMENT

### A. Legal Standard

A party to a lawsuit may serve a subpoena to obtain discovery from a nonparty to obtain books, documents, electronically stored information, or tangible items in its possession, custody, or control. The Federal Rules "subject a nonparty witness to the same scope of discovery as that person would be as a party to whom a request for documents and other materials is addressed pursuant to Rule 34." 9A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* § 2452 (3d ed. 2008) (citing Advisory Committee Notes to 1991 Amendments of Rule 45); *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002) (subjecting non-party witness to same scope of discovery as party to litigation, and granting defendants' motion to compel requiring nonparty production of documents responsive to Rule 45 subpoena). Accordingly, a party may obtain discovery from a nonparty "regarding any nonprivileged matter that is relevant to any party's claim or defense"; "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). At any time, the court may grant the request of a party serving a subpoena for an order compelling the production of responsive documents. Fed. R. Civ.

P. 45(c)(2)(B); *see, e.g.*, *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (noting that a motion to compel production was the mechanism available to the party issuing the subpoena to obtain the documents sought).

**B. The Subpoena Seeks Clearly Relevant Documents**

As set forth in greater detail in the accompanying Civil Local Rule 37-2 appendix (Baum Decl., Ex. P), the categories of documents YouTube seeks through its subpoena are undeniably relevant to the claims and defenses in this action.

**1. BayTSP's Documents Regarding YouTube are Highly Relevant**

Not surprisingly, one of YouTube's principal discovery inquiries is for documents regarding BayTSP's relationship with YouTube (Document Request Nos. 1, 3, 4, 5, 8, 13). Such documents are essential to the underlying litigations.

The DMCA expressly relieves online services of any obligation to monitor their services or to affirmatively seek facts indicating infringement. 17 U.S.C. § 512(m). As Congress explained: "[A service] provider could not be expected [upon viewing a photograph posted to the service], to determine whether the photograph was still protected by copyright or was in the public domain; if the photograph was still protected by copyright, whether the use was licensed; and if the use was not licensed, whether it was permitted under the fair use doctrine." S. Rep. No. 105-190 at 48 (1998). Again, the law places the burden of identifying alleged infringements on copyright claimants. *CCBill*, 488 F.3d at 1113. But the Plaintiffs nevertheless complain that the burden they face is too great, and that YouTube should therefore be required to monitor its service proactively for alleged infringements in spite of a statutory provision to the contrary and without any guidance from content holders. *See, e.g.*, Baum Decl., Ex. C, ¶¶ 43-44 ("copyright owners have a limited ability to monitor for infringing videos on its site and send takedown notices for the videos they find"; "Plaintiffs cannot necessarily find all infringing videos to protect their rights through searching [using YouTube's own search function]."). BayTSP's documents reflecting its monitoring of YouTube (Request Nos. 1, 3-5) bear directly upon and will likely refute those assertions — demonstrating that content owners can and do effectively

police their content online, while YouTube, lacking the content owners' knowledge of what they own and what they have authorized, could not.

Plaintiffs also contend that YouTube can recognize unauthorized content on the service and thus should be charged with constructive knowledge of, and contributory liability for it. Baum Decl., Ex. C at ¶¶ 5, 37. Documents from BayTSP regarding YouTube (Document Request Nos. 1, 3-5, 13) will demonstrate the folly of Plaintiffs' position by showing that Viacom and other content owners themselves routinely upload their own video clips to YouTube, typically without disclosing their conduct, to reap the free promotional value that the service provides. *See* Wilson Decl., Ex. 15 (MTV2 uploads its content to YouTube), 16 (VH1 promotes and test markets its content on YouTube). As the policing agent for a host of parties, BayTSP will possess a trove of documents reflecting this "viral" or "stealth" marketing of videos, including communications instructing it not to send "take down" notices for such videos and also revealing instances where BayTSP sent "take down" notices for videos that had been, in fact, uploaded by Plaintiffs or their agents. *Id.*, Ex. 8 (e-mail regarding Viacom's mistaken takedown of Paramount's content). BayTSP will likewise possess documents reflecting that content owners are fully aware of and choose not to remove video clips that ordinary users have uploaded to YouTube. *See id.*, Exs. 17 (article demonstrating CBS's awareness of a Letterman clip on YouTube and subsequent choice to let the clip remain on the site), 18 (article quoting an NBC executive as saying, "[i]nitially we attempted to clamp down on YouTube. We now in fact have gone into business with them for promotional efforts for our fall [shows.] That video [of a failed series pilot], like everything else on YouTube at this point, none of it has official clearance. We allowed it to happen."). And BayTSP will have documents showing that it, Viacom and others regularly made errors in sending DMCA notices to YouTube, demanding the removal of content from the service that they did not own, that the user was authorized to upload, or that was a fair use. *See, e.g., id.*, Exs. 9 (BayTSP took down content uploaded by Viacom), 12 (mistaken Best Week Ever takedown), 13 (GOO001-01624459)(e-mail entitled "Another Viacom mistake"). Each of these types of documents undermine Plaintiffs' constructive knowledge argument, making plain that YouTube cannot know that a particular clip is

unauthorized without express guidance from content owners. They do so regardless of the content owner for whom BayTSP is acting in monitoring and communicating with YouTube. To the extent the documents reveal express or implied authorizations specifically from Viacom or other plaintiffs, the documents also support license, estoppel, waiver, unclean hands, failure to mitigate and other defenses, and refute any claim of damages regarding those alleged infringements.

BayTSP's documents regarding YouTube (Document Request Nos. 1, 3-5, 8, 13) will also refute Plaintiffs' claims for inducing copyright infringement predicated on allegations that YouTube "hinders Plaintiffs' attempts to locate infringing videos to protect their rights," "ha[s] done little or nothing to prevent" infringement, and that "when YouTube responds to notices of specific infringing videos, its response has been ineffectual." Baum Decl., Ex. C at ¶¶ 5, 8 and 42. In fact, YouTube expects the documents it has sought will show that BayTSP, Viacom itself, and a host of others believe that YouTube's commitment to its obligations under the DMCA is exemplary and that YouTube goes far beyond what the law requires, and what other online services have done, to help copyright holders protect their rights. *See, e.g.*, Wilson Decl., Exs. 3, 4, 5 and 6.

Finally, BayTSP's documents concerning YouTube (Document Request No. 1, 3-5, 13) will help establish that YouTube met the requirements that the DMCA imposes on online services who seek the statute's protections. *See* 17 U.S.C. § 512(c), (i). Thus, for example, the documents will remove any question about whether YouTube properly registered an agent for receipt of DMCA notices under 17 U.S.C. § 512(c)(2). They will also show that Viacom and its agent believed that YouTube expeditiously responded to DMCA notices and disabled access to allegedly infringing materials on the service in accordance with Section 512(c)(1)(C). And BayTSP's documents are likely to establish that Viacom believed YouTube had adopted and reasonably implemented a policy of terminating users from its service "who are repeat infringers" in

accordance with Section 512(i)(1)(A).[4]

In sum, for a host of reasons, BayTSP's cache of documents concerning YouTube is essential to this litigation and should be produced without limitation.

**2. BayTSP's Documents Regarding Viacom and this Litigation are Highly Relevant**

Viacom's own initial disclosures make clear that documents regarding BayTSP's work for Viacom generally are of similar importance in this action as they will reveal Viacom's approach to the presence of its copyrighted material online. Viacom's claims for damages, for example, would be undercut by documents showing that Viacom knowingly allowed (indeed desired) clips from the works at issue in this case to remain freely accessible through other online video services, (and on YouTube before Viacom shifted strategies). Thus documents relating to BayTSP's identification of allegedly infringing video clips for Viacom and BayTSP's response thereafter must be produced. Documents regarding Viacom's viral and stealth marketing activities through other online video services must be produced for the same reason, as must documents regarding Viacom's supposed ownership (or lack thereof) of the copyrighted works at issue in this litigation.

It is difficult to imagine how BayTSP could take the position that its documents regarding the underlying litigation are irrelevant. As noted, BayTSP was recognized for its instrumental role in "lay[ing] the groundwork" for Viacom's case. Baum Decl., Ex. I. BayTSP will thus undoubtedly have documents showing how Viacom manufactured its claims. Among these will be Viacom's communications with BayTSP directing it to withhold DMCA notices and allow allegedly infringing activity on YouTube to continue for months. YouTube believes Viacom did

---

[4] Beyond demonstrating its statutory compliance, YouTube expects that this discovery may show bad faith and copyright misuse on Viacom's part. BayTSP often sent DMCA notices on Viacom's behalf that failed to satisfy the requirements of Section 512(c)(3). *See, e.g.*, Wilson Decl., Ex. 6 (informing BayTSP, in response to a non-compliant notice that they needed to "follow the regular protocol for alerting [YouTube] about potentially infringing content"). Given BayTSP's considerable experience with the DMCA's notice process, YouTube suspects that BayTSP's deficient notices were no accident, and were instead directed by Viacom improperly to probe and undermine YouTube's compliance efforts.

so in an attempt to overwhelm YouTube (and manipulate the news) by demanding removal of 100,000 clips all at once. Regardless of its motivations, Viacom's instructions and BayTSP's fulfillment of them bear directly on Viacom's damages claims and a host of legal and equitable defenses. All such documents, and indeed any others regarding this litigation, are undeniably relevant and should be produced.

**C. There is No Undue Burden on Viacom's Agent, BayTSP**

Even though the Federal Rules do not distinguish between the scope of relevance for non-parties as opposed to parties to a litigation, YouTube is mindful that third parties have not volunteered to participate in litigation and therefore may be entitled to greater protections from "undue burden." Rule 45(c)(1). Here, however, as Viacom's designee for purposes of policing its content online, BayTSP is in no way an independent third party. Indeed, as noted, BayTSP effectively did volunteer to participate in this litigation, and advertises its services for just such purposes. *See* Baum Decl., Ex. F, *BayTSP Online Video Tracking*, at § *Evidence Download Packages*.[5] BayTSP almost certainly will be compensated by Viacom for its costs in responding to the subpoena.[6] It should hardly be heard to complain about any legitimate burden it might incur in litigation it was relied upon to engender.

Perhaps more fundamentally, if Viacom itself performed the task of policing its content online, the documents relating to that effort would be a ready subject of discovery. It makes no

---

[5] BayTSP offers an "Evidence Download Package" comprised of:

> … evidence packages that can be used for potential litigation. Each package typically includes a copy of the infringing video downloaded from the hosting site and information on the individual who posted it.
>
> This report and a disk are sent to the client, a technical lab, or a legal firm as determined by the client's preferences. Packages are prepared with "chain of evidence" documentation and shipped by courier or overnight delivery.

Baum Decl., Ex. F, *BayTSP Online Video Tracking*, at § *Evidence Download Packages*.

[6] BayTSP has refused to advise YouTube whether it will be reimbursed by Viacom for its time spent on litigation arising for its work. Baum Decl., Ex. J, Ltr. from Baum to Ellinikos (May 13, 2008). BayTSP has said, however, that it "will not seek reimbursement from YouTube for any costs associated" with the document production. *Id.*, Ex. K, Ltr. from Ellinikos to Baum (May 2, 2008).

sense to allow Viacom to hide those efforts by delegating the activity to an agent that then claims "burden" to resist the same discovery.

**D. BayTSP's Responses and Objections Have No Merit**

Given the clear relevance of the documents requested by YouTube in the Subpoena, and the inescapable expectation of BayTSP that it would be called on to provide evidence in the instant litigation, BayTSP's responses and objections to the Subpoena are meritless. Baum Decl., Ex. B. As noted, BayTSP refused to produce any documents in response to most of the requests, and offered the same mindless boilerplate objections with respect to nearly every one. BayTSP baldly asserts that the requests seek documents not reasonably likely to lead to discoverable information, but it has offered no explanation for that position, or a response to the relevance arguments articulated throughout the meet and confer. These kinds of boilerplate objections are inappropriate and should be stricken on that basis alone. *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007) (holding that boilerplate objections were inappropriate, and constituted waiver of the objections); *St. Paul Reins. Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) (boilerplate objections, including that a particular document request was oppressive, burdensome and harassing, were "[i]n every respect . . . text-book examples of what federal courts have routinely deemed to be improper objections").

BayTSP will undoubtedly point out that YouTube has offered to limit the scope of a few of its requests over the course of the parties' negotiations. But YouTube's proposed limitations were offered as a compromise in the interest of ending BayTSP's delaying tactics and obtaining an expedited production of documents. Having failed to provide an expedited (or any) production, BayTSP is no position to now demand the concessions that YouTube offered, but which BayTSP failed to accept. BayTSP should instead be ordered to produce the relevant and responsive documents originally requested.

## III. CONCLUSION

For the reasons given above, the court should enter an order directing BayTSP: (1) to search for and produce all relevant and responsive information called for by the subpoena by a date certain; and (2) to set forth in a detailed privilege log any information that is being withheld

on the basis of any privilege, including any joint defense or work product privilege.

October 17, 2008

Respectfully submitted,

MAYER BROWN LLP

By: [signature]
Brandon Baum
Attorneys for Defendants
YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE INC.