1   Steven D. Hemminger (State Bar No. 110665)
    ALSTON & BIRD LLP
2   Two Palo Alto Square
3   3000 El Camino Real, Suite 400
    Palo Alto, CA 94306-2112
4   Tel.: (650) 838-2000
5   Fax: (650) 838-2001
    Email: Steve.Hemminger@alston.com
6

7   Attorney for Nonparty
    BayTSP, Inc.
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12   Viacom International Inc., *et al.*,          Case No. 08-MC-80211-JF-PVT

13              Plaintiffs,                        **RESPONSE OF NONPARTY BAYTSP
                                                   TO DEFENDANT YOUTUBE'S
14        v.                                       MOTION TO COMPEL
                                                   PRODUCTION OF DOCUMENTS**
15   YouTube, Inc. *et al.*,

16

17              Defendants.

18    The Football Association Premier League Limi-   Date:       December 9, 2008
      ted, *et al.*,                                 Time:       10:00 a.m.
19                                                   Dept.:      Courtroom 5, 4th Floor
20              Plaintiffs,                          Judge:      Patricia V. Trumbull

21        v.

22   YouTube, Inc. *et al.*,

23              Defendants.

24

25

26

27

28

Dockets.Justia.com

# Table of Contents

I. Factual Background ...................................................................................................2

    A.    YouTube's Overly-Broad Subpoena to Nonparty BayTSP ........................2

    B.    Negotiations Regarding the Unreasonable Scope of YouTube's
        Subpoena .............................................................................................4

    C.    Negotiations Regarding the Use of Comprehensive Search Terms ...........9

    D.    BayTSP's Efforts to Produce Documents Under the Negotiated
        Scope of YouTube's Subpoena ............................................................10

II. Argument ............................................................................................................12

    A.    YouTube's Subpoena Seeks to Impose Undue Hardship on
        BayTSP ...............................................................................................12

    B.    YouTube Attempts to Undermine its Negotiations with BayTSP ...........14

    C.    BayTSP's Use of Search Terms is Entirely Appropriate.........................15

    D.    Substantial Harm Would Result from Compelling BayTSP to
        Comply with YouTube's Original Subpoena ........................................16

    E.    YouTube's Procedural Violations ..........................................................17

III. The Court Should Reasonably Limit Production .....................................................17

# **Table of Authorities**

## Cases

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*,
     163 F.R.D. 329 (N.D. Cal. 1995)......................................................................13

*EEOC v. McCormick & Schmick's*,
     2007 U.S. Dist. LEXIS 38049 (N.D. Cal. May 15, 2007) ..................................13

*Exxon Shipping Co. v. U.S. Dep't. of Interior.*, 34 F.3d 774 (9th Cir. 1994) ...................12

*Gonzales v. Google, Inc.*,
     234 F.R.D. 674 (N.D. Cal. 2006)......................................................................13

*Highfields Capital Mgmt., L.P. v. Doe*,
     No. C0400176, 2005 U.S. Dist. LEXIS 29680 (N.D. Cal. May 31, 2005)..........12

*In re CV Therapeutics, Inc. Securities Lit.*,
     2006 WL 2458720 (N.D. Cal. 2006). ................................................................15

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
     984 F.2d 422 (Fed. Cir. 1993) .........................................................................13

*United States v. Columbia Broadcasting System, Inc.*,
     666 F.2d 364 (9th Cir. 1982) ...........................................................................13

## Rules

Fed. R. Civ. P. 45 ...........................................................................................12, 13

Fed. R. Evidence 502 ......................................................................................16, 17

United States District Court for the Northern District of California
     Local Rule 37-1 .............................................................................................17

Pursuant to the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Northern District of California, San Jose Division, BayTSP.com, Inc. ("BayTSP") hereby opposes the Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum filed on October 20 by YouTube, Inc. *et al.* ("YouTube") and requests that the motion be denied.

## **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

YouTube attempts to create a dispute where none exists. BayTSP has not refused to produce documents, and, has worked diligently toward production of the documents the parties agreed BayTSP would produce, namely documents relating to the plaintiffs in the two litigations and "related parties." In fact, as of the date of the hearing, December 9, it is anticipated that YouTube will have had tens of thousands of documents available for review. While, YouTube, for some reason tries to make out a case for intentional delay, the fact of the matter is that YouTube's subpoena, which literally calls for every document at BayTSP, even when limited to communications with the plaintiffs and related parties, includes hundreds of thousands of documents.

As explained below, and as YouTube already knows, BayTSP collected over four terabytes of data. After limiting and processing the data, BayTSP then developed a list of search terms and used those terms to "filter" the collected data in an effort to identify a subset of potentially responsive documents. Unfortunately, due to the large number of terms and the commonality of some of the terms, well over a million documents passed through the electronic filter. Assuming that each document averaged about five pages, that volume of documents amounts to over five million pages of documents. Prior to production, even with Agreements regarding inadvertent disclosure, BayTSP, and now Viacom, was and is, obligated to review the documents for privilege, personal and other wholly-unrelated documents. Even taking only two minutes per document to review, it would have taken over 33,000 hours, or 1300 days or 3.5 person-years to review. To facilitate this review, BayTSP developed an electronic search strategy. As it is, BayTSP still spent over 1900 hours in the last six months searching and reviewing those million

plus documents and have narrowed the number of potentially responsive documents to approximately 650,000 or half.

As BayTSP has told YouTube, the documents are currently being reviewed by Viacom for privilege and work product information. BayTSP understands from Viacom that it expects to be able to begin releasing documents on a rolling basis for YouTube's review on November 21.

As the record indicates, while it has taken time to process the huge amount of data involved, BayTSP has tried to keep YouTube informed and also tried to solicit its help in getting the documents produced in a timely fashion.

When considering this matter, the Court is urged to look behind YouTube's curtain of hyperbole, accusations, and sensational arguments to the facts. BayTSP has tried to do that and does not waste the Court's time arguing the facts or the law related to the DMCA.

## I.     FACTUAL BACKGROUND

### A.     YouTube's Overly-Broad Subpoena to Nonparty BayTSP

BayTSP is a nonparty to this litigation. One need only look to the pleadings for evidence of BayTSP's procedural remoteness from this suit. BayTSP is neither a plaintiff nor defendant in this action (Declaration of Brandon Baum ("Baum Decl."), D.I. 2, ¶6; Ex. C). In fact, BayTSP's involvement in this suit was brought on by YouTube's own subpoena to BayTSP (Baum Decl., ¶4; Ex. A). YouTube's third-party subpoena inherently recognizes BayTSP's status as a nonparty (*id.*). YouTube's assertion, therefore, that BayTSP "effectively did volunteer to participate in this litigation" (Mot. at 14:12) is without merit. The mere fact that Viacom hired BayTSP to search for and identify infringing material posted to YouTube's website, doe not make BayTSP a party. BayTSP stands to gain nothing from this suit and has not been accused of any wrongdoing. As set forth below, nonparty BayTSP is to be protected from undue hardship imposed by unreasonable subpoenas. *See* Section II.A. *infra*.

YouTube's claims notwithstanding, BayTSP, a third party to this litigation, has

1   never refused to produce its documents relevant to Viacom's litigation with YouTube.

2   This was explained in the first substantive teleconference with YouTube on November

3   27, 2007.  To the contrary, BayTSP has expended significant effort to gather, process,

4   and review a vast number of responsive documents.  BayTSP has further made YouTube

5   aware of these continued efforts by engaging in numerous good faith conversations

6   informing YouTube of BayTSP's progress, as set forth below.

7           YouTube's subpoena, however, seeks far more than this limited set of documents.

8   The original scope of YouTube's subpoena seeks an unreasonable and irrelevant set of

9   documents.  For instance, several requests seek **_all_** documents and communications

10  concerning monitoring, searching or screening of YouTube, regardless of whether these

11  documents are related to Viacom and the instant suit (Baum Decl., ¶4, Ex. A (Doc.

12  Requests 1, 3, 5, 7, 8, 12, and 13)).  Additional requests fish for all software (and all

13  documents related to the nature, use, development, training, user documents, interface

14  design, and interfaces of that software) that BayTSP uses to identify or monitor

15  copyrigthed works (_id._ (Doc. Request 2, 8, and 10)).  This expansive request taken at face

16  value would encompass, among other things, all software used to generate email, access

17  the internet, create spreadsheets, etc.  Still other requests seek all documents related to the

18  training of employees to search for or monitor websites, which would include among

19  myriad other irrelevant documents, all scheduling emails and memoranda (_id._ (Doc.

20  Requests 3 and 7)).  None of these are relevant to the dispute of whether YouTube has

21  violated the copyright laws.  In particular documents related to BayTSP's clients other

22  than the plaintiffs is wholly irrelevant and would result in substantial harm to BayTSP's

23  business if it was required to involve other third parties in the dispute between Viacom

24  and YouTube.  It is for this very reason that BayTSP and YouTube agreed to exclude

25  them from the present production.

26          Faced with YouTube's overly-broad requests, BayTSP chose to work in good

27  faith with YouTube to reasonably limit its subpoena, rather than refuse to produce

28  documents as YouTube now claims in its motion.  The facts belie YouTube's assertion

1  that BayTSP has refused to produce documents.

2  **B.    Negotiations Regarding the Unreasonable Scope of YouTube's Subpoena**

3          YouTube and BayTSP spent many months negotiating the scope of BayTSP's

4  response to YouTube's September 27, 2007 subpoena.  These negotiations began with

5  BayTSP's timely November 7 objections to the overly broad and unduly burdensome

6  scope of YouTube's subpoena (Baum Decl., ¶5; Ex. B; *see also* Declaration of Steven D.

7  Hemminger ("Hemminger Decl."), ¶2; Ex. A).  Counsel for BayTSP spent over three

8  months discussing the scope of the subpoena with attorneys from YouTube's original

9  counsel, Bartlit Beck Herman Palenchar & Scott LLP (Baum Decl., ¶17; Ex. N).

10 Negotiations that neither Mr. Baum nor his firm were involved in.

11         BayTSP conducted its initial telephonic meet and confer with YouTube's counsel

12 on November 27, 2007 (Hemminger Decl., ¶3; Ex. B).  During this call, BayTSP's

13 counsel emphasized the need to identify all plaintiffs regarding which BayTSP will

14 produce responsive information prior to commencing the process of collecting documents

15 (*id.* at ¶4).  This is because, as BayTSP's counsel explained, BayTSP does not store each

16 client's information in a separate database such that it would be simple to extract data

17 relating to any particular client (*id.* at ¶5).  YouTube's counsel agreed to seek

18 clarification from YouTube on: (*i*) the breadth of the requests; (*ii*) the relevance of the

19 information sought; (*iii*) whether YouTube agrees to limit the requests to include

20 information relating to the named plaintiffs; and (*iv*) whether YouTube is seeking

21 production of the BayTSP's source code (*id.* at ¶6).  Similarly, BayTSP's counsel agreed

22 to consult with BayTSP regarding the following outstanding issues: (*i*) whether BayTSP

23 would agree to a piecemeal production despite the burden; and (*ii*) whether BayTSP

24 would agree to produce design specifications, user manuals, marketing materials and

25 other such information discussing BayTSP's software (*id.* at ¶7).

26         During their subsequent December 4 telephonic meet and confer, counsel for

27 BayTSP and counsel for YouTube continued the discussion regarding BayTSP's response

28 to YouTube's subpoena (*id.* at ¶8).  BayTSP's counsel explained that although BayTSP

does not believe the requests are proper because they are overbroad, it would like to reach agreement regarding the scope of the requests and produce relevant documents (*id.* at ¶9). The discussion then progressed to BayTSP's concerns that the document requests, as written, seek information relating to each of BayTSP's clients and potential clients (*id.* at ¶10). Counsel for YouTube raised for the first time the issue of whether BayTSP will agree to produce documents relating to Viacom's subsidiaries (*id.* at ¶11). As the subpoena did not define the term "Viacom," BayTSP's counsel agreed to consult with BayTSP regarding this issue and YouTube's counsel agreed to provide BayTSP with a list of Viacom's subsidiaries (*id.* at ¶12; *see also id*, ¶13; Ex. C).

YouTube's counsel continued the December 4 meet and confer by communicating YouTube's proposal to limit the requests to seek information relating to BayTSP's ten biggest clients (in addition to documents relating to the named plaintiffs), including documents concerning the effectiveness of BayTSP's searching mechanism, the rules provided by the clients to BayTSP to guide BayTSP's search for infringing uses, and the process for sending takedown notices to YouTube (*id.* at ¶14). BayTSP's counsel identified several problems with YouTube's proposal including the substantial burden on BayTSP and likely chilling effect on BayTSP's business (*id.* at ¶15). Counsel explained that BayTSP's documents are subject to confidentiality agreements (*id.* at ¶16). A copyright owner may opt not to hire BayTSP for fear of exposure to the following risks: (1) the production of the copyright owner's confidential information to YouTube; and/or (2) YouTube's issuance of a subpoena to the copyright owner (*id.* at ¶17). Further, BayTSP's counsel stated that it is not clear how the information regarding these ten clients is relevant to Viacom's claims (*id.* at ¶18). Finally, with regard to the types of documents YouTube sought, BayTSP stated it does not necessarily maintain tallies of all of the takedown notices it sends on behalf of each client nor does BayTSP maintain documents concerning its effectiveness in identifying infringement (*id.* at ¶19). Counsel for YouTube agreed to consult with YouTube in order to narrow its requests in light of the foregoing concerns (*id.* at ¶20).

1    Counsel for YouTube and BayTSP next met and conferred via telephone on
2    December 18 (*id.* at ¶21).  BayTSP proposed that the parties agree to limit the subpoena
3    to seek information relating to the named plaintiffs and that BayTSP's production of this
4    information would constitute initial compliance with the subpoena.  (*id.* at ¶22).
5    YouTube's counsel agreed that this proposal makes sense, but noted that counsel did not
6    have the authority to agree and would have to confer with YouTube (*id.* at ¶23).
7    Regarding the production of information relating to BayTSP's clients other than the
8    named plaintiffs, BayTSP stated its concern that the production of information relating to
9    its clients will drag them into the lawsuit and have a chilling effect on BayTSP's business
10   (*id.* at ¶24).  Moreover, BayTSP failed to understand the relevance of the names of its
11   clients (*id.* at ¶25).  Thus, BayTSP objected to the production of this information on the
12   grounds of relevance, confidentiality and burden (*id.* at ¶26).  With regard to the
13   production of information relating to the named plaintiffs, BayTSP's counsel represented
14   that BayTSP would contact each named plaintiff that is a client of BayTSP regarding the
15   production of the client's information in response to YouTube's subpoena (*id.* at ¶27).  If
16   the client did not object to the production of its information, BayTSP would produce it
17   and Bay TSP would not object to the production of documents relating to any of these
18   clients unless the client objected (*id.* at ¶28).  BayTSP must follow this procedure,
19   BayTSP's counsel stated, because its agreements with its clients provided that BayTSP
20   may neither disclose that a particular entity is a client nor disclose that client's
21   information without notifying the client and providing the client with the opportunity to
22   object (*id.* at ¶29).  BayTSP waited to hear back from YouTube on the outstanding
23   proposals.
24        On January 2, 2008, more than two months after BayTSP's objected to
25   YouTube's subpoena, counsel for BayTSP were informed that Mayer Brown LLP would
26   replace Bartlit Beck Herman Palenchar & Scott LLP as counsel for YouTube in this
27   matter (*id.* at ¶30; Ex. D).
28        BayTSP's counsel repeated its proposal to YouTube's new counsel on January 7,

namely that YouTube limit its excessive requests for documents to include only Plaintiffs and their subsidiaries and exclude BayTSP's proprietary software and nonparty clients (*id.* at ¶31). YouTube's new counsel agreed to speak to YouTube regarding whether it was willing to accept the following proposal by BayTSP: (1) YouTube would limit its subpoena to seek information relating to the named plaintiffs only; (2) YouTube would agree that BayTSP need not produce its source code; and (3) BayTSP would agree that it will not to object to the issuance of a second YouTube subpoena seeking this information at a later date on the basis of that it the issuance of second subpoena is unduly burdensome. (*id.* at ¶32).

On January 18, YouTube's counsel accepted BayTSP's limiting proposal (*id.* at ¶33; Ex. E). During a telephonic meet and confer on January 30, however, BayTSP's counsel clarified that the January 18 letter from YouTube's counsel did not accurately reflect BayTSP's proposal (*id.* at ¶34). BayTSP proposed that the parties agree to limit the subpoena to seek documents specific to the named Plaintiffs only and to exclude production of BayTSP's source code (*id.* at ¶35). BayTSP further proposed that its response to the subpoena would constitute full compliance with the subpoena without prejudice to YouTube's right to issue a subsequent subpoena seeking the production of additional information (*id.* at ¶36). Although counsel for YouTube expressed concern that it would have no recourse should BayTSP produce very few responsive documents, BayTSP's counsel alleviated this concern by stating that BayTSP would produce all responsive documents subject to these limitations and that YouTube could later issue a second subpoena seeking the production of the excluded categories of documents (*id.* at ¶37). Counsel for YouTube agreed and requested that BayTSP's counsel memorialize in writing the parties' agreement to the above terms as stated on January 30, 2008 (*id.* at ¶38). BayTSP's counsel submitted a written summary of the parties' agreement for execution on February 13, 2008 (*id.* at ¶39; Ex. F).

Continuing their January 30 meet and confer, counsel for both YouTube and BayTSP agreed to further limit YouTube's request to exclude the following: the history

of BayTSP's software development, any development contributions made by entities other than named Plaintiffs (with the exception of development documents showing design specifications of the technology), and API's that do not belong to BayTSP (which counsel represented it believed BayTSP did not have) (*id.* at ¶40). BayTSP then informed YouTube's counsel that takedown notices sent by BayTSP on behalf of its clients did not exist at BayTSP in any documentary form (*id.* at ¶41). Rather, the information contained in the takedown notices existed in a proprietary database such that they can be created, but to create the takedown notices would require creation of a script and processing on the current and archived databases (*id.* at ¶42). The entire process, BayTSP's counsel stated, would be extremely burdensome and time consuming (*id.* at ¶43). Moreover, BayTSP reminded YouTube's counsel that YouTube has a copy of the takedown notices and stated that it was unclear why these takedown notices were critical to YouTube's case (*id.* at ¶44). BayTSP's counsel declined to produce the entire database because it contains proprietary information that would need to be redacted by BayTSP employees, preventing them from attending to their ordinary business (*id.* at ¶45). YouTube's counsel stated YouTube would consider reimbursing BayTSP for the expense of redaction and BayTSP's counsel agreed to discuss with BayTSP the effort required to retrieve the takedown notices (*id.* at ¶46). Thus as of February, 2008 the parties had not yet finalized their discussions.

On February 15, shortly after agreeing to BayTSP's proposal and in response to BayTSP's February 13 writing commemorating the same, YouTube sought expansion of the negotiated subpoena's scope to "Viacom-related entities," rather than simply Viacom subsidiaries, but refused to clarify the meaning of this phrase (Baum Decl., ¶17; Ex. N; *see also* Hemminger Decl., ¶47; Ex. G). To clarify the term and move forward with production, BayTSP provided on February 20 a list of more than 470 entities that it understood to be "Viacom-related entities" (Hemminger Decl., ¶48; Ex. H) . Notwithstanding YouTube's complaints that receipt of the documents was "critical" YouTube delayed substantively responding to BayTSP's attempt at clarification for *over*

*two months* (Baum Decl., ¶17; Ex. N).

In the meantime, given BayTSP's desire to move forward with document collection in light of the agreed upon subpoena scope, counsel for BayTSP stated via its March 24 letter to YouTube's counsel, that BayTSP would collect documents pursuant to the agreement, specifically omitting (*i*) documents related to BayTSP clients not named as plaintiffs and not included on the February 20 list of Viacom-related entities, and (*ii*) BayTSP's source code, firm ware, computer programs and algorithms (Hemminger Decl., ¶49; Ex. I). In response to YouTube's March 26 concerns, BayTSP recounted the January 30 agreement in a letter dated March 28 and, in the interest of moving production document collection forward, requested provide by April 5 an alternate list of Viacom entities to BayTSP's February 20 list (*id* at ¶50; Ex. J). BayTSP also elicited a response regarding the stalled decisions of takedown notices, which had been left to YouTube to determine whether it would compensate BayTSP for the expense of obtaining these (*id*). On April 2, nearly five months after receiving BayTSP's objections to its subpoena (including two months of silence), YouTube finally identified the entities it thought were relevant, a list of more than 470 entities (*id* at ¶51; Ex. K).

## C.    Negotiations Regarding the Use of Comprehensive Search Terms

While negotiating the final scope of YouTube's subpoena, BayTSP entered into discussions with and obtained an e-discovery vendor (Baum Decl., ¶17; Ex. N). BayTSP then identified and collected *over four terabytes* of data (*id.*). This excessive volume of data made clear to BayTSP that targeted searches would be necessary to identify and then review documents responsive to the narrowed scope of YouTube's subpoena (Hemminger Decl., ¶52). On April 23, BayTSP's counsel informed YouTube that BayTSP had completed its document collection and was in the process of developing a search term list (*id.*, ¶53; Ex. L).

On May 2, BayTSP solicited from YouTube a list of relevant search terms (*id.*, ¶54; Ex. M). After receiving in response a request that BayTSP itself provide a list of search terms, BayTSP generated such a list, provided it to YouTube, and sought

1  meaningful input from YouTube (*id.*, ¶¶55-6; Exs. N-O). Unfortunately, on May 21,

2  YouTube again refused to provide BayTSP with search terms and instead provided only

3  vague suggestions (*see id.*, ¶57; Ex. P). On May 28, BayTSP utilized YouTube's

4  suggestions to generate additional search terms and then again solicited terms from

5  YouTube, requesting this information by May 30 (*id.*). In response to its latest overture,

6  BayTSP received from YouTube an objection to the adequacy of electronic searching

7  generally (*id.*, ¶59; Ex. R). Confronted with YouTube's unreasonable unwillingness to

8  assist in the determination of searches commensurate with the negotiated scope of

9  YouTube's subpoena, BayTSP informed YouTube on May 30 that its search list of nearly

10  1,000 terms was being finalized (*see id.*, ¶60; Ex. S).

11       YouTube's counsel, on May 30, attempted to renege on the agreed upon limited

12  scope of its subpoena (*id.*, ¶61; Ex. T). BayTSP's counsel reminded YouTube in its June

13  2 response that, as discussed, BayTSP intended to use the search term list to retrieve

14  properly requested documents (*id.*, ¶62; Ex. U). On June 10, BayTSP informed YouTube

15  that its search term list was now complete and that BayTSP's document vendor indicated

16  filtering the data collected would require approximately one month (Baum Decl., ¶17;

17  Ex. N). In addition to that time, BayTSP stated that production of documents to

18  YouTube would not be possible without additional time for review of privilege and

19  responsiveness (*id*). Finally, BayTSP offered to meet with YouTube at the end of June or

20  early July in order to better project a timeline for production after filtering the collected

21  data (*id*).

22       YouTube did not contact BayTSP again until late August.

23  **D.    YouTube's Already Has or Should Have the Majority of Documents it is**

24  **Complaining About**

25       The vast majority of the documents that YouTube complains about it already has

26  or could get through discovery from plaintiffs. For example, it already has copies of all

27  of the takedown notices that BayTSP has sent. Not only on behalf of the plaintiffs but

28  every other client that BayTSP has that had copyrighted material posted on YouTube.

1  Also, YouTube should have copies of all of the communications between BayTSP and

2  the plaintiffs.  Given the stated need for this information, it is beyond belief that

3  YouTube has not requested those communications from Viacom.  Thus, the vast majority

4  if not all of the communications with plaintiffs are already in YouTube's possession.

5  YouTube's motion references complaints from three or four people who received

6  take down notices that they contend were improper.[1]  First, these communications are

7  between  YouTube and the posters.  Thus, these are not the types of communications that

8  would come from BayTSP.  In any event, BayTSP has agreed to produce such documents

9  as they relate to the plaintiffs should any exist.

10  As such YouTube's complaints about the criticality of the documents and the

11  delay in getting them ring hollow.

12  **E.    BayTSP's Efforts to Produce Documents Under the Negotiated Scope of**

13     **YouTube's Subpoena**

14  Since completing the five month negotiations of subpoena scope and two months

15  of search term discussions with YouTube, BayTSP has expended significant effort to

16  gather, process, and review a vast amount of potentially responsive documents.  In its

17  August 21 email to YouTube's counsel, BayTSP's counsel informed YouTube that

18  processing and review of the documents has taken much longer than anticipated (Baum

19  Decl. Ex. O).  Nevertheless, at least seventeen attorneys and staff members have worked

20  for months reviewing documents for privilege and responsiveness and preparing

21  documents for production (Hemminger Decl., ¶63).  Collectively, these attorneys and

22  staff have spent over 1900 hours preparing documents for production to YouTube (*id.*,

23  ¶64).  In addition, BayTSP's internal employees have invested substantial amounts of

24  time and resources in identifying documents and assisting with their collection (*id.*, ¶65).

25  Ultimately, more than 1.35 million documents were electronically processed and

26

27  [1] Interestingly YouTube only received complaints from less than a half a dozen people
      from among the of the hundreds of thousands of take down notices that were sent.

28

loaded into a database for review (*id.*, ¶66). As of the time of this response, BayTSP has

identified approximately 650,000, believed to be non-privileged documents for

production to YouTube (*id.*, ¶¶67-70; Exs. V-Y). BayTSP's counsel has repeatedly

represented to YouTube that responsive documents will be made available on a rolling

basis beginning November 21,[2] thereby obviating any alleged need for this motion (*id.*).

As of the time of filing this response, YouTube has refused to withdraw this motion (*id.*).

## II. ARGUMENT

**A.     YouTube's Subpoena Imposes Undue Hardship on BayTSP**

It is well-settled that under Rule 45(c)(1) of the Federal Rules of Civil Procedure

third parties, like BayTSP, are to be protected from undue hardship imposed by

unreasonable subpoenas. Indeed, YouTube concedes the presence of Rule 45 concerns

created by its subpoena (Mot. at 14:10).

Discovery is monitored and regulated because it is often used, as in this case, to

harass and burden parties. *Highfields Capital Mgmt., L.P. v. Doe*, No. C0400176, 2005

U.S. Dist. LEXIS 29680, at *7 (N.D. Cal. May 31, 2005) (noting that one of the most

common abuses under Rule 45(c) is the "casting an indefensibly wide net, or of seeking

information from a non-party"). Undue burden to a nonparty is evaluated under both

Federal Rule of Civil Procedure 26 and 45. *See Exxon Shipping Co. v. U.S. Dep't. of

Interior.*, 34 F.3d 774, 779 (9th Cir. 1994).

By issuing its overly-broad subpoena, YouTube fails to "take reasonable steps to

avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R.

Civ. P. 45(c)(1) . The Court is particularly concerned anytime enforcement of a

---

[2] While BayTSP and YouTube had spent a good deal of time negotiating the scope of the documents to produce, it had understood that there were no outstanding issues and had heard nothing from YouTube for two months prior to its surprise filing of this motion. Thus, BayTSP does not feel that the spirit behind the meet and confer requirements was met with regard to the filing of this motion and had YouTube inquired when the document would be available before filing the motion, it would have learned that they were being reviewed by Viacom and available in November.

1   subpoena imposes an economic burden on a nonparty. *Gonzales v. Google, Inc.*, 234

2   F.R.D. 674, 680 (N.D. Cal. 2006); *see Compaq Computer Corp. v. Packard Bell*

3   *Electronics, Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995) *citing United States v. Columbia*

4   *Broadcasting System, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982); *Katz v. Batavia Marine &*

5   *Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) (noting nonparty status is a

6   significant factor in weighing the burdens imposed by the discovery requests); *see also*

7   *EEOC v. McCormick & Schmick's*, 2007 U.S. Dist. LEXIS 38049 *18 (N.D. Cal. May

8   15, 2007) (stating compliance with a subpoena is excused if "compliance threatens to

9   unduly disrupt or seriously hinder normal operations of a business.").

10  A burden is undue when it is not justified by an offsetting benefit to the

11  administration of justice, where compliance is unlikely to yield relevant evidence, as

12  illustrated by the Advisory Committee Notes to the 1991 amendments to Rule 45(c) .

13  Thus, the court balances the relevance of the discovery sought, the requested party's

14  need, and the potential hardship to the party subject to the subpoena. *Gonzales*, 234

15  F.R.D. at 680. BayTSP's nonparty status entitles it to considerations of the damage that

16  could be done to its business by requiring production of documents of parties unrelated to

17  the litigation. How and when a third party engages BayTSP to monitor the web to protect

18  their rights under the Copyright Laws is wholly irrelevant to the issues in the case.

19  Indeed, since YouTube is fully aware of the chilling effect its request for such material

20  from third parties like BayTSP would have on copyright holders in hiring people to

21  police its copyrighted works, it can only be inferred that it is employing this tactic to

22  convince copyright owners not to hire companies like BayTSP.

23  Applying these precedents, YouTube's subpoena imposes undue burden on

24  BayTSP. Contrary to YouTube's assertions, BayTSP has not refused to produce

25  responsive documents. Rather, BayTSP has furthered the discovery process by

26  negotiating the scope and formulating search term lists to render relevant documents.

27  YouTube, in violation of Fed. R. Civ. P. 45(c)(1), has not taken reasonable steps to avoid

28  imposing an undue burden upon BayTSP and has not allowed reasonable time for

compliance considering the depth and vagueness of YouTube's requests.  Thus, the

original scope of YouTube's subpoena runs afoul of the case law protecting nonparty

BayTSP from overly-board demands.

**B.      YouTube Attempts to Undermine its Negotiations with BayTSP**

Without providing any justification, YouTube now urges this Court to compel

BayTSP to produce documents responsive to the original scope of its subpoena (Mot. at.

15:23-24).  This result would wholly ignore negotiations over approximately seven

months – negotiations in which YouTube participated fully.  As set forth above,

YouTube and BayTSP engaged in extensive discussions regarding the scope of

YouTube's subpoena.  YouTube and BayTSP's mutual assent to the negotiated scope is

evident in each company's decision to continue toward production of responsive

documents under the narrowed subpoena.  Indeed, rather than filing a motion to quash

YouTube's subpoena, BayTSP turned its efforts toward colleting data and collaborating

with YouTube to create a search term list.  Similarly, YouTube, rather than filing a

motion to compel at that time, engaged in reviewing BayTSP's search terms, albeit

argumentatively.

Surprisingly, YouTube's motion omits its extensive negotiations with BayTSP.

In order to argue that YouTube is entitled the entire original scope of its unduly

burdensome subpoena, YouTube's motion entirely glosses over YouTube's and

BayTSP's seven month negotiations (*See* Mot. at 15).  YouTube instead chooses to

emphasize its purported need for BayTSP's documents – a need that is questionable at

best given YouTube's involvement in negotiations and periodic delays of up to two

months in responding to BayTSP during these negotiations.  In fact, YouTube dropped its

threats of a motion to compel related to electronic searching in June, apparently satisfied

with BayTSP's efforts toward production of this sizable volume of documents (Baum

Decl., ¶17; Ex. N).  YouTube cannot now claim BayTSP has stonewalled it and this

alleged refusal somehow entitles YouTube to overly-broad discovery when the facts

clearly show that BayTSP has worked diligently in good faith to produce responsive

1  documents.

2          Finally, allowing YouTube to undermine its more than half-year-long negotiations

3  with BayTSP will violate notions of fundamental fairness to a third party.  BayTSP has

4  spent 1900 hours undertaking extensive efforts to produce documents responsive to the

5  negotiated scope of YouTube's (Hemminger Decl., ¶63).  This scope was agreed to by

6  YouTube as sufficient to provide the documents it purports to need.  To allow YouTube

7  to violate its own agreement would cause BayTSP, a third-party to the litigation, to incur

8  even greater expense for no just cause.

9  **C.      BayTSP's Use of Search Terms is Entirely Appropriate**

10          In addition to reverting to the original scope of its subpoena, YouTube challenges

11 BayTSP's use of search terms to identify responsive, relevant documents.  BayTSP has

12 searched over a million of documents using a list of thousands of targeted search terms

13 (Hemminger Decl., ¶¶56, 66).  As set forth above, YouTube was granted ample

14 opportunity to contribute to this list, and the list ultimately searched includes several

15 terms suggested by YouTube.

16          "Employment of search terms is a reasonable means of narrowing the production

17 in this instance."  *In re CV Therapeutics, Inc. Securities Lit.*, 2006 WL 2458720 *2 (N.D.

18 Cal. 2006).   In *CV Therapeutics*, this Court allowed the application of search terms to

19 125,000 in order to identify responsive documents.  *Id.*  Here the potential burden to

20 nonparty BayTSP is much greater.  BayTSP has already applied the thousand-plus list

21 negotiated to millions of documents and has identified over half a million documents for

22 production (Hemminger Decl., ¶¶56, 67-70; Exs. V-Y).  Moreover, "[t]o the extent

23 Plaintiff contests the adequacy of the search terms, it has not set forth an alternative

24 search methodology . . . ."  *In re CV Therapeutics, Inc. Securities Lit.*, 2006 WL 2458720

25 *2 (N.D. Cal. 2006).  While YouTube now contests BayTSP's use of search terms, it fails

26 to provide any reasonable alternative compliant with Rule 45.  In light of BayTSP's

27 extraordinary efforts and YouTube's failure to act reasonably, there can be little doubt

28 that BayTSP's use of search terms is entirely appropriate.

**D.** **Substantial Harm Would Result from Compelling BayTSP to Comply with YouTube's Original Subpoena**

As set forth above, BayTSP, having negotiated a reasonable subpoena scope and search terms with YouTube, has invested considerable resources toward production. To compel BayTSP to now return to YouTube's original unduly burdensome requests without the assistance of search terms would result in at least the following harm.

*First*, YouTube's original broad requests do not account for third-party confidentiality of documents. *See* Section I.B. *supra.* The vast majority of documents responsive to these requests do not relate to Viacom's suit with YouTube and are therefore irrelevant to this litigation (*see* Hemminger Decl., ¶58). Moreover, these documents are subject to confidentiality agreements requiring that BayTSP contact all clients whose data would be released in response to YouTube's requests (*id.*, ¶29). Releasing this significant amount of data unrelated to this litigation would undoubtedly adversely impact BayTSP's business. BayTSP's clients will likely not continue their relationships with BayTSP for fear that if there is any future lawsuit, the clients' confidentiality will be compromised (*see id.*, ¶¶15, 17, 24). BayTSP would suffer this harm for no appreciable benefit to YouTube, as the documents YouTube seeks are irrelevant to this litigation. Explored a little more closely, YouTube is essentially asking the court to rule that it can serve a subpoena on any copyright owner to seek information about how they police their rights. The mere fact that BaytSP is hired as a copyright owners agent does not render the agreements between these clients and BayTSP relevant to Viacom's claims in the lawsuit. What YouTube should focus on is discovering Viacom's bases for its claims and addressing those claims -- not fishing from third parties.

*Second*, BayTSP has already completed its review and preparation of documents (*id.*, ¶70; Ex. Y). BayTSP properly undertook this review pursuant to Rule 502 of the Federal Rules of Evidence, which provides that inadvertent disclosure of privileged documents does not result in waiver if "the holder of the privilege took reasonable steps

to prevent disclosure." Indeed, fully reviewing these documents for privilege contributed

significantly to the amount of time needed to prepare these more than half-million

documents for YouTube. Broadening the scope of BayTSP's search at this late stage

would only increase the number of irrelevant yet potentially privileged documents

BayTSP would be forced to review in order to discharge its Rule 502 duty.

*Third*, YouTube would have this Court preclude BayTSP from applying search

terms to BayTSP's documents in order to identify a responsive subset. As set forth

above, this process is entirely proper under this Court's precedent and has been agreed to

by YouTube. If this Court now requires BayTSP to cull through its entire universe of

documents again without the use of the comprehensive search term list previously

applied, BayTSP will be faced with individually reviewing four terabytes of data in order

to respond to YouTube's third-party subpoena (*see* Baum Decl., ¶17; Ex. N). A review

of that magnitude would require in excess of six months and not result in the

identification of documents not already available to YouTube (*see id.*).

## E.    YouTube's Procedural Violations

In addition to the foregoing, YouTube's motion should be denied for violating

Local Rule 37-1 and this Court's Standing Order. YouTube attempts to circumvent the

meet and confer requirement of Local Rule 37-1 by erroneously characterizing its

negotiations and requests for information as conferences sufficient to satisfy the local rule

(Mot. at 1). Further, at no point did YouTube confer with BayTSP with regard to its

intent to file the present motion. As such and in addition to the reasons stated above, the

Court should deny YouTube's motion.

## III.  THE COURT SHOULD REASONABLY LIMIT PRODUCTION

YouTube improperly attempts to now undermine the negotiated scope of its

subpoena. Further YouTube seeks to persuade this Court to compel third-party BayTSP

to produce documents under undue burdens contrary to established precedent. In light of

these tactics, BayTSP respectfully requests that this Court deny YouTube's motion and

Order the following:

1  (*i*)  YouTube's subpoena *duces tecum* to BayTSP be limited to include only

2  Plaintiffs and their subsidiaries;

3  (*ii*)  YouTube's subpoena *duces tecum* to BayTSP be limited to exclude BayTSP's

4  proprietary software and BayTSP's nonparty clients;

5  (*iii*)  Production by making responsive documents available for YouTube's

6  inspection on two computer terminals at Alston & Bird LLP's offices located at Two Palo

7  Alto Square, 3000 El Camino Real, Suite 400, Palo Alto, CA., shall be sufficient;

8  (*iv*)  Documents responsive to the limited scope allowed by this Order shall be

9  made available for inspection on a rolling-basis terminating two weeks after the totality

10  of responsive non-privileged documents has been made available;

11  (*v*)  Inadvertent production documents protected under the attorney-client

12  privilege, work-product protection, or any other applicable privilege or protection,

13  despite reasonable efforts to prescreen such documents prior to production, will not

14  waive the applicable privilege or protection, and YouTube will return such inadvertently

15  produced Discovery Material promptly after learning of its inadvertent production; and

16  (*vi*) Should YouTube indicate it seeks copies of documents made available for

17  inspection, electronic and paper copies such documents shall be provided to YouTube at

18  you YouTube's expense.

19

20

21  Dated:  November 18, 2008                    Respectfully Submitted,

22

23                                                              /s/ Steven D. Hemminger
                                                                Steven D. Hemminger
24                                                              ALSTON & BIRD, LLP

25
                                                                Attorneys for Nonparty
26                                                              BayTSP.com, Inc.

27

28