Steven D. Hemminger, State Bar No. 110665
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112
Telephone: (650) 838-2000
Fax: (650) 838-2001
Email: Steve.Hemminger@alston.com

Attorney for Nonparty BayTSP, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Viacom International Inc., *et al*.,<br><br>　　　　Plaintiffs,<br>　v.<br><br>YouTube, Inc. *et al*.,<br><br>　　　　Defendants. | Case No. CV08-80211-JF (PVTx)<br><br>**DECLARATION OF STEVEN D. HEMMINGER IN SUPPORT OF RESPONSE OF NONPARTY BAYTSP TO DEFENDANT YOUTUBE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| The Football Association Premier League Limited, *et al*.,<br><br>　　　　Plaintiffs,<br>　v.<br><br>YouTube, Inc. *et al*.,<br><br>　　　　Defendants. | Date: December 9, 2008<br>Time: 10:00 a.m.<br>Courtroom: 5, 4th Floor<br>Judge: Patricia V. Trumbull |

DECL. OF STEVE HEMMINGER ISO BAYTSP'S
RESPONSE TO YOUTUBE'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS

CASE NO. 08-MC-80211 JF (PVTx)

0

# DECLARATION OF STEVEN D. HEMMINGER

I, STEVEN D. HEMMINGER, declare:

1. I am a partner at Alston & Bird, LLP, counsel for nonparty BayTSP.com, Inc. and I make this declaration based on information known to me in that capacity. Unless indicated otherwise, I have personal knowledge of the facts contained in this declaration, and, if called upon to do so, I could and would testify competently thereto.

2. Attached hereto as **Exhibit A** is a true and correct copy of the October 29, 2007 letter from Mark Ishikawa to James Hartnett, stating, "I have been informed that you granted BayTSP an extension of time until November 7, 2007 in which to object or otherwise respond to the subpoena."

3. Attached hereto as **Exhibit B** is a true and correct copy of the November 27, 2007 email from Shayna Cook, counsel for YouTube, to me confirming our initial telephonic meet and confer.

4. During the telephonic meet and confer, I emphasized the need to identify all plaintiffs regarding which BayTSP will produce responsive information prior to commencing the process of collecting documents.

5. During the telephonic meet and confer, I explained that BayTSP does not store each client's information in a separate database such that it would be simple to extract data relating to any particular client.

6. During the telephonic meet and confer, YouTube's counsel agreed to seek clarification from YouTube on: (*i*) the breadth of the requests; (*ii*) the relevance of the information sought; (*iii*) whether YouTube agrees to limit the requests to include information relating to the named plaintiffs; and (*iv*) whether YouTube is seeking production of the BayTSP's source code.

7. Similarly, I agreed to consult with BayTSP regarding the following issues: (*i*) whether BayTSP would agree to a piecemeal production despite the burden; and (*ii*) whether BayTSP would agree to produce design specifications, user manuals, marketing materials and other such information discussing BayTSP's software.

8. YouTube's counsel and I conducted a telephonic meet and confer on December 4, 2008 to continue discussing BayTSP's response to YouTube's subpoena.

9. During the December 4 telephonic meet and confer, I explained that although BayTSP does not believe the requests are proper because they are overbroad, it would like to reach an agreement regarding the scope of the requests and produce relevant documents.

10. During the telephonic meet and confer, I then expressed BayTSP's concerns that the document requests, as written, sought information relating to each of BayTSP's clients and potential clients.

11. YouTube's counsel responded and raised for the first time the issue of whether BayTSP will agree to produce documents relating to Viacom's subsidiaries.

12. Because the subpoena did not define the term "Viacom," I agreed to consult with BayTSP regarding this issue and YouTube's counsel agreed to provide BayTSP with a list of Viacom's subsidiaries.

13. Attached hereto as **Exhibit C** is a true and correct copy of the December 5, 2007 email Shayna Cook, counsel for YouTube, to me attaching a list of Viacom subsidiaries.

14. During the December 4 telephonic meet and confer, YouTube's counsel communicated their proposal to limit the requests to seek information relating to BayTSP's ten biggest clients (in addition to documents relating to the named plaintiffs), including documents concerning the effectiveness of BayTSP's searching mechanism, the rules provided by the clients to BayTSP to guide BayTSP's search for infringing uses, and the process for sending takedown notices to YouTube.

15. In response, I explained several problems with YouTube's proposal including the substantial burden on BayTSP and likely chilling effect on BayTSP's business.

16. I further explained that BayTSP's documents are subject to confidentiality agreements and compliance with YouTube's proposal could put BayTSP's business at risk.

17. I explained that a copyright owner may opt not to hire BayTSP for fear of exposure to the following risks: (1) the production of the copyright owner's confidential information to YouTube; and/or (2) YouTube's issuance of a subpoena to the copyright owner.

18. Further, I questioned the relevance of the information regarding ten of BayTSP's clients and stated that the relevance to Viacom's claims was unclear.

19. At the conclusion of the December 4 telephonic meet and confer, I informed YouTube that the types of documents sought are not necessarily maintained by BayTSP. I am informed that, BayTSP does not take tallies of all of the takedown notices it sends on behalf of each client nor does BayTSP maintain documents concerning its effectiveness in identifying infringement. Which of course would be impossible. How does anyone know how many infringing videos are missed.

20. Counsel for YouTube was receptive to the concerns discussed and agreed to consult with YouTube in order to narrow its requests in light of the foregoing concerns.

21. On December 18, 2007, I met and conferred via telephone with counsel for YouTube.

22. On behalf of BayTSP, I proposed that the parties agree to limit the subpoena to seek information relating to the named plaintiffs and that BayTSP's production of this information would constitute compliance with the subpoena, and that BayTSP would not object to YouTube's issuance of a second subpoena at a later date seeking information relating to BayTSP's other clients.

23. YouTube's counsel agreed that this proposal made sense, but noted that counsel did not have the authority to agree without conferring with YouTube.

24. During the call, I also stated BayTSP's concern about the production of information relating to their clients other than the named plaintiffs. The issue I expressed was the possibility that the production of information relating to its clients would drag them into the lawsuit and have a chilling effect on BayTSP's business.

25. I also stated that BayTSP did not understand the relevance of the names of its clients to this litigation.

26. I objected to the production of information relating to BayTSP's clients on the grounds of relevance, confidentiality and burden.

27. With regard to the production of information relating to the named plaintiffs, I represented that BayTSP would contact each named plaintiff that is a client of BayTSP regarding the production of the client's information in response to YouTube's subpoena.

28. Further, I represented that if the client did not object to the production of its information, BayTSP would produce it and BayTSP would not object to the production of documents relating to any of these clients unless the client objected.

29. I also informed YouTube that BayTSP must follow this procedure because of its non-disclosure agreements and understandings with its clients was such that BayTSP may neither disclose that a particular entity is a client nor disclose that client's information without notifying the client and providing the client with the opportunity to object.

30. Attached hereto as **Exhibit D** is a true and correct copy of the January 2, 2008 email informing me that Mayer Brown LLP would replace Bartlit Beck Herman Palenchar & Scott LLP as counsel for YouTube in this matter.

31. To further the production process, I repeated BayTSP's proposal to YouTube's new counsel on January 7, namely that YouTube limit its excessive requests for documents to include only Plaintiffs and their subsidiaries and exclude BayTSP's proprietary software and nonparty clients.

32. YouTube's counsel agreed to speak to YouTube to determine whether it was willing to accept the following proposal by BayTSP: (1) YouTube would limit its subpoena to seek information relating to the named plaintiffs only; (2) YouTube would agree that BayTSP need not produce its source code; and (3) BayTSP would agree that it will not to object to the issuance of a second YouTube subpoena seeking this information at a later date because it had already responded one subpoena.

33. Attached hereto as **Exhibit E** is a true and correct copy of the January 18, 2008 letter from Brandon Baum to me accepting my proposal.

34. On January 30, I conducted a meet and confer with YouTube's counsel, during which I clarified that YouTube's January 18 letter did not accurately reflect BayTSP's proposal.

35. I proposed that the parties agree to limit the subpoena to seek documents specific to the named Plaintiffs only and to exclude production of BayTSP's source code.

36. I further proposed that its response to the subpoena would constitute full compliance with the subpoena without prejudice to YouTube's right to issue a subsequent subpoena seeking the production of additional information.

37. Counsel for YouTube expressed concern that YouTube would have no recourse should BayTSP produce very few responsive documents, to which I responded by stating that BayTSP would produce all responsive documents subject to these limitations and that YouTube could later issue a second subpoena seeking the production of the excluded categories of documents.

38. Counsel for YouTube agreed to my proposal and requested that I memorialize in writing the parties' agreement to the above terms as stated on January 30, 2008.

39. I then memorialized in writing the agreement made on January 30, 2008, and submitted a written summary of the parties' agreement for execution on February 13, 2008. Attached hereto as **Exhibit F** is a true and correct copy of the February 13, 2008 letter from Maria Ellinikos, an associate under my supervision, to Brandon Baum summarizing our agreement.

40. During our January 30 meet and confer, YouTube's counsel and I agreed to further limit YouTube's request to exclude the following: the history of BayTSP's software development, any development contributions made by entities other than named Plaintiffs (with the exception of development documents showing design specifications of the technology), and API's that do not belong to BayTSP (which I represented I believed BayTSP did not have).

41. I also informed YouTube's counsel that takedown notices sent by BayTSP on behalf of its clients did not exist at BayTSP in any documentary form.

42. I further explained to YouTube's counsel that the information contained in the takedown notices existed in a proprietary database such that they can be created, but to create the takedown notices would require creation of a script and processing on the current and archived databases.

43. I stated the entire process of generating takedown notices would be extremely burdensome and time consuming to BayTSP.

44. I also reminded YouTube's counsel that YouTube has a copy of the takedown notices and stated that it was unclear why these takedown notices were critical to YouTube's case.

45. I then declined to produce the entire database because to my understanding it contains proprietary information that would need to be redacted by BayTSP employees, preventing them from attending to their ordinary business.

46. In response, YouTube's counsel stated YouTube would consider reimbursing BayTSP for the expense of redaction. I also agreed to discuss with BayTSP the effort required to retrieve the takedown notices.

47. Attached hereto as **Exhibit G** is a true and correct copy of the February 15, 2008 email from Brandon Baum to Maria Ellinikos, in which YouTube sought to expand the negotiated subpoena's scope to "Viacom-related entities," rather than simply Viacom subsidiaries, but refused to clarify the meaning of this phrase.

48. Attached hereto as **Exhibit H** is a true and correct copy the February 20, 2008 email from Maria Ellinikos to Brandon Baum enclosing BayTSP's list of "Viacom-related entities."

49. Attached hereto as **Exhibit I** is a true and correct copy of the March 24, 2008 letter from Maria Ellinikos to Brandon Baum, in which BayTSP stated it would collect documents pursuant to the agreement, specifically omitting (*i*) documents related to BayTSP clients not named as plaintiffs and not included on the February 20 list of Viacom-related entities, and (*ii*) BayTSP's source code, firm ware, computer programs and algorithms.

50. Attached hereto as **Exhibit J** is a true and correct copy of the March 28, 2008 letter from Maria Ellinikos to Brandon Baum, in which BayTSP requested YouTube provide an alternate list of "Viacom-related entities."

51. Attached hereto as **Exhibit K** is a true and correct copy of the April 2, 2008 letter from Brandon Baum to Maria Ellinikos, in which BayTSP's list of over 470 "Viacom-related entities."

52. The excessive volume of data collected made clear to BayTSP that targeted searches would be necessary to identify and then review documents responsive to the narrowed scope of YouTube's subpoena.

53. Attached hereto as **Exhibit L** is a true and correct copy of the April 23, 2008 letter from Maria Ellinikos to Brandon Baum, in which BayTSP informed YouTube that BayTSP had completed its document collection and was in the process of developing a search term list.

54. Attached hereto as **Exhibit M** is a true and correct copy of the May 2, 2008 letter from Maria Ellinikos to Brandon Baum and Josh Masur, in which BayTSP solicited a list of relevant search terms from YouTube.

55. Attached hereto as **Exhibit N** is a true and correct copy of the May 9, 2008 letter from Maria Ellinikos to Brandon Baum.

56. Attached hereto as **Exhibit O** is a true and correct copy of May 14, 2008 letter from Maria Ellinikos to Brandon Baum, enclosing BayTSP's preliminary search term list.

57. Attached hereto as **Exhibit P** is a true and correct copy of May 28, 2008 letter from Maria Ellinikos to Brandon Baum, responding to YouTube's May 21 refusal to provide BayTSP with search terms.

58. The vast majority of documents responsive to YouTube's original subpoena requests do not relate to Viacom's suit with YouTube.

59. Attached hereto as **Exhibit R** is a true and correct copy of the May 29, 2008 letter from Brandon Baum to Maria Ellinikos.

60. Attached hereto as **Exhibit S** is a true and correct copy of the May 30, 2008 letter from Maria Ellinikos to Brandon Baum, acknowledging YouTube's May 29 refusal to provide BayTSP with search terms and stating BayTSP will proceed with its list of terms.

61. Attached hereto as **Exhibit T** is a true and correct copy of the May 30, 2008 letter from Brandon Baum to Maria Ellinikos, attempting to renege on the agreed upon limited scope of its subpoena.

62. Attached hereto as **Exhibit U** is a true and correct copy of the June 2, 2008 letter from Brandon Baum to Maria Ellinikos, stating BayTSP intended to use its search term list to retrieve properly requested documents to renege on the agreed upon limited scope of its subpoena.

63. At least seventeen attorneys and staff members have worked for months reviewing documents for privilege and responsiveness and preparing documents for production.

64. Collectively, these attorneys and staff have spent over 1900 hours identifying documents and assisting with their production to YouTube.

65. It is my understanding that BayTSP's internal employees have invested substantial amounts of time and resources in identifying documents and assisting with their collection.

66. Over 1.35 million documents were electronically processed and loaded into a database for review.

67. Attached hereto as **Exhibit V** is a true and correct copy of the October 24, 2008 letter from Kamran Jivani, an associate under my supervision, to Brandon Baum, stating BayTSP anticipates a significant number of documents to available for review beginning November 21, 2008.

68. Attached hereto as **Exhibit W** is a true and correct copy of the October 31, 2008 letter from Kamran Jivani to Eric Evans, counsel for YouTube, stating approximately half a million documents have been identified for production.

69. Attached hereto as **Exhibit X** is a true and correct copy of the November 12, 2008 letter from Kamran Jivani to Eric Evans, stating BayTSP, counsel for YouTube stating BayTSP anticipates a significant number of documents identified for production will be made available for review on a rolling basis beginning November 21, 2008.

70. Attached hereto as **Exhibit Y** is a true and correct copy of the November 18, 2008 letter from Kamran Jivani to Eric Evans, stating BayTSP, counsel for YouTube stating BayTSP anticipates a significant number of the over 650,000 documents identified for production will be made available for review on a rolling basis beginning November 21, 2008.

71. I declare under penalty of perjury that the foregoing is true and correct and I executed this declaration at Los Angeles, California.

Dated: November 18 , 2008

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　Steven D. Hemminger