1   BRANDON BAUM, SBN 121318
      bbaum@mayerbrown.com
2   ERIC B. EVANS, SBN 232476
      eevans@mayerbrown.com
3   MAYER BROWN LLP
    Two Palo Alto Square
4   3000 El Camino Real
    Palo Alto, California 94306
5   Telephone:    (650) 331-2080
6   Facsimile:    (650) 331-4580

7   DAVID H. KRAMER, SBN 168452
      dkramer@wsgr.com
8   CAROLINE E. WILSON, SBN 241031
      cwilson@wsgr.com
9   WILSON SONSINI GOODRICH & ROSATI
    PROFESSIONAL CORPORATION
10  650 Page Mill Road
    Palo Alto, California 94304-1050
11  Telephone:    (650) 493-9300
12  Facsimile:    (650) 565-5100
    Attorneys for Defendants
13  YOUTUBE, INC., YOUTUBE, LLC, and
    GOOGLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT**

**SAN JOSE DIVISION**

| | |
|---|---|
| VIACOM INTERNATIONAL INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC. et al.,<br><br>Defendants. | CASE NO. 08-MC-80211 JF (PVTx)<br><br>**YOUTUBE'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:         December 9, 2008<br>Time:         10:00 a.m.<br>Courtroom:    5, 4th Floor<br>Judge:        Hon. Patricia V. Trumbull |

## INTRODUCTION

As the agent designated by a host of media companies, including Viacom, to search for and redress instances of alleged copyright infringement in the online world, BayTSP possesses a hoard of documents central to YouTube's defense of high-stakes copyright cases pending in New York. BayTSP concedes as much by not contesting relevance when opposing YouTube' motion to compel. Instead, BayTSP continues a campaign of misdirection and delay.

BayTSP abstractly claims burden, but does not provide any *evidence* that complying with YouTube's subpoena would actually cause it burden. While its failure of proof ends consideration of the issue, BayTSP actually refutes its own position by revealing that it has already collected a large cache of materials and made it available to its principal, Viacom, for pre-production review. Merely supplementing the extant production beyond what BayTSP has done thus far (to correct oversights and omissions) could not possibly cause significant burden, and BayTSP does not show how it would. In any event, Viacom is undoubtedly indemnifying BayTSP. Accordingly, BayTSP could not sustain a burden showing even if it had put in evidence on the point.

BayTSP also claims that YouTube should have continued meeting and conferring despite eleven months of active engagement, despite BayTSP's repeated broken promises of production, and despite the fact that YouTube is suffering severe prejudice as it is forced to proceed with depositions in the underlying cases without the evidence that BayTSP has withheld. Only after YouTube filed this motion did BayTSP again commit to a date on which it would begin producing materials. But even then it backtracked, insisting for the first time in its Opposition that YouTube's access to the documents be subject to absurd restrictions (two computers at BayTSP's counsel's office instead of the customary electronic transmittal of information that all parties to the litigation have employed). Those restrictions: (a) have no basis in law; (b) would render an effective review impossible; and (c) almost certainly were not imposed on Viacom for its pre-screening of the documents. Far from suggesting a need for further discussions, the meet and confer history demonstrates that BayTSP will not make its documents available absent

1 definitive Court direction. Accordingly, YouTube asks that the Court order BayTSP to comply
2 fully with YouTube's subpoena by December 30, 2008.

## ARGUMENT

### A.    YouTube's Subpoena Seeks Relevant Information

As we explained in our opening brief, YouTube's subpoena seeks essential information related to Viacom's infringement claims and YouTube's defenses. *See* YouTube's Motion to Compel ("YouTube's MTC") at 10-14. BayTSP does not dispute YouTube's relevance showing, and its silence answers affirmatively the threshold question of whether the discovery YouTube seeks "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

In the underlying case, Viacom asks the court to disregard the protections of the Digital Millennium Copyright Act ("DMCA") because the alleged burden on copyright owners to monitor websites for alleged infringement is so great. *See* Baum Decl. Ex. C (Complaint ¶¶ 43-44). YouTube wants to refute Viacom's burden claims, and there is no better source of information to do so than Viacom's primary agent, BayTSP, to whom Viacom has contracted out its monitoring efforts. In addition, Viacom claims that an online service should be able to detect alleged infringement merely by looking at a user-submitted video clip. But YouTube will undermine that position by showing that even Viacom's dedicated monitoring agent, BayTSP, cannot make such determinations on the fly, that it requires detailed instructions to perform the task at a rudimentary level, and that even with these instructions BayTSP often mistakenly identifies for removal content that plainly does not infringe the copyrights of its principal. These are not tangential points to the litigation but some of the most critical ones.

The documents that YouTube seeks are also relevant to its defenses. One of YouTube's primary defenses is that it has complied fully with the notice and take-down regime of the DMCA. *See* 17 U.S.C. § 512(c). BayTSP is the party that Viacom has charged with identifying allegedly infringing material, sending take-down notices to YouTube under the DMCA and following up on those notices. Accordingly, it has stores of percipient information showing that YouTube removes material upon BayTSP's request. Perhaps more telling will be the materials showing that Viacom knows that its content is on YouTube but, for promotional purposes, does

-2-

*not* ask BayTSP to remove it. Those documents will demonstrate Viacom's acquiescence to its content appearing on YouTube and will further show that, given this acquiescence, an observer of any particular video clip on the YouTube service could not tell merely by looking at it whether it has been authorized by a content owner to appear on the service.

BayTSP recognizes its central role in the underlying action given its agency relationship with Viacom and its daily communications with YouTube, but nonetheless seeks to exclude at least two categories of documents from production: (1) documents regarding BayTSP's interactions with third parties; and (2) documents regarding its proprietary software. *See* BayTSP's Opp'n at 18. These proposed exclusions are unjustifiable.

BayTSP asserts, without elaboration, that "documents related to BayTSP's clients other than the plaintiffs [are] wholly irrelevant." *Id*. at 3:21-22. That *ipse dixit* runs contrary to the facts. BayTSP's work with non-party content owners to identify material on YouTube and other websites is relevant for all of the reasons noted above and detailed in YouTube's opening brief. These documents will also show that:

- content owners all over the world, not just Viacom and the other Plaintiffs, use YouTube to market their content while issuing elaborate instructions to BayTSP for the selective enforcement of their copyrights, further dispelling the notion that one can look at a video clip and make an authorization determination at a glance.

- YouTube's industry-leading commitment to copyright protection far exceeds what any other online services have done. BayTSP wishes to limit the documents it produces to one narrow category – Plaintiffs' enforcement efforts on YouTube. But that tunnel view prevents YouTube from showing the full picture of online copyright enforcement and YouTube's place in it.

- copyright protection online is anything but standardized and that YouTube thus necessarily complies with Section 512(i) of the DMCA. *See* 17 U.S.C. § 512(i)(1)(B). (the DMCA requires a service provider to "accommodate[] and [] not interfere with standard technical measures" for copyright protection).

- the extra-judicial, rapid response option of the DMCA, and not the misguided litigation route selected by the Plaintiffs here, is the industry standard for copyright enforcement online.

For all of these reasons, BayTSP's arbitrary attempt to carve out from production documents related to non-party clients must be rejected.

With regard to software, Viacom placed the effectiveness of BayTSP's copyright monitoring system at issue by pleading that it "has a limited ability to monitor for infringing

-3-

1  videos and send takedown notices" and that it "cannot necessarily find all infringing videos."
2  Baum Decl. Ex. C (Complaint ¶¶ 43-44). YouTube must be allowed to evaluate the efficacy of
3  BayTSP's monitoring system in general to respond to Viacom's characterizations of the system.
4  Indeed, discovery about BayTSP's software will likely reveal that the notice and take-down
5  provisions of the DMCA provide ample protection to copyright owners. Documents regarding
6  BayTSP's software will also help YouTube prove the point that technical measures to protect
7  content online have not been standardized. *See* 17 U.S.C. § 512(i)(1)(B). BayTSP's contention
8  that YouTube agreed not to seek documents related to BayTSP's software badly misstates the
9  record. YouTube was willing to forego the production of these documents in the first instance as
10 a compromise to ensure the prompt production of other documents. *See* Baum Decl. Ex. J.
11 When BayTSP dragged its feet and failed to produce any documents, YouTube was forced to file
12 a motion to compel, and naturally did so for the full scope of its subpoena given the parties'
13 inability to arrive at a negotiated resolution.

In short, YouTube's subpoena seeks relevant materials and BayTSP's Opposition does not seriously dispute the point.

### B. BayTSP Has Not Made a Burden Showing of Any Kind

BayTSP cites law stating that courts may protect a third party from undue hardship occasioned by a subpoena. *See* BayTSP's Opp'n at 12-14. Those authorities have no place here because BayTSP has not even tried to prove up any burden it would suffer by complying with YouTube's subpoena. There is simply no evidence on the topic whatsoever. BayTSP's failure to put in *any* competent evidence attempting to make a burden showing disposes of the issue. *See, e.g., A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections.").

Regardless, BayTSP reports that it has collected and reviewed over one million documents and has deemed approximately 650,000 documents responsive to YouTube's subpoena. *See* BayTSP's Opp'n at 1-2, 11-12. Accordingly, BayTSP has already completed the

-4-

lion's share of the work; it can hardly complain that the incremental burden associated with full compliance with the subpoena would be prohibitive. Again, it has not even tried to prove that. Moreover, YouTube noted in its opening brief that "BayTSP almost certainly will be compensated by Viacom for its costs in responding to the subpoena." YouTube's MTC at 14. BayTSP does not dispute that point and notes that it has already provided Viacom with its proposed document production. *See* BayTSP's Opp'n at 2. The only conclusion to be drawn is that Viacom is in fact indemnifying BayTSP. Any burden claim therefore lacks merit.

BayTSP also invokes the apparition of third party confidentiality to continue withholding documents. It asserts, without explanation, that the requested materials describing third parties' use of YouTube and BayTSP are irrelevant. But as YouTube showed above and in its opening brief, such documents bear directly on the case. BayTSP's failure to respond to YouTube's relevance arguments speaks much louder than its conclusory assertion. Beyond that, BayTSP speculates, again without any evidentiary support, that its business might suffer if clients knew that BayTSP could be ordered to produce information relating to them.[1] But it will come as no surprise to BayTSP's clients that a business, particularly one as involved in litigation activities as BayTSP, faces discovery obligations. Far more relevant is the fact that in over a year since YouTube served its subpoena, no third party has come forward to assert an objection to the production of any information in BayTSP's possession. Regardless, the stringent Protective Order governing the underlying actions amply protects third party confidences. *See* Second Amended Stipulated Pre-Trial Protective Order (attached hereto as Exhibit A); *Malletier v. Dooney & Bourke, Inc.*, Case No. 04-Civ.5316 (RMB) (MHD), 2007 WL 187692, at *1 (S.D.N.Y. Jan. 22, 2007) ("concern about commercial sensitivity is belied by the availability of a mechanism under the governing protective order for a non-party to designate documents as confidential or even for attorney's eyes only."). Here, as in any context, confidentiality

---

[1] BayTSP heaps absurdity upon that speculation, claiming that YouTube actually desires to deter others' use of BayTSP through enforcement of its subpoena. If YouTube had any such objective, which it does not, enforcement of a subpoena after a year-long meet and confer would hardly be a sensible method of achieving it.

-5-

requirements to third parties that BayTSP has voluntarily assumed must yield to YouTube's need for relevant information to defend itself.[2]

BayTSP next implies that YouTube's unwillingness to bless BayTSP's search term list creates a burden for it. *See* BayTSP's Opp'n at 15. Indeed, it actually claims that YouTube objects to the use of search terms at all. Both are nonsense. YouTube objected to BayTSP using search terms as the *exclusive* basis for finding responsive documents and objected to an unending negotiation related to the list holding up production. *See* Hemminger Decl. Ex. R (May 29, 2008 letter from Baum to Ellinikos). At bottom though, only BayTSP possesses the intricate knowledge of its documents, systems and partners required to create an adequate list in the first instance. *See, e.g., U.S. v. O'Keefe*, 537 F. Supp. 2d 14, 23-24 (D.D.C. 2008) ("[w]hether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics."). YouTube does not seek an order requiring BayTSP to use any particular search term list (much less an order precluding search terms at all), but an order requiring BayTSP to perform a reasonably diligent search in response to YouTube's document requests. That process will invariably include keyword searching as well as interviewing custodians and collecting relevant materials as a result.

The Court, however, should reject BayTSP's blanket assertion that its keyword list is "entirely appropriate" (BayTSP's Opp'n at 15:9). That position has no factual support; BayTSP has not provided the Court or YouTube with the list that it has employed. YouTube is especially

---

[2] BayTSP also suggests that it would face undue burden in reviewing documents for privilege. *See* BayTSP's Opp'n at 16-17. It is not clear whether BayTSP's concern is for its own privilege or those of third parties. If its interest is in protecting its own privilege, BayTSP has already reviewed a substantial majority of the relevant documents for privilege. It should not be heard to claim undue burden based upon the marginal, additional effort required to review the documents YouTube actually sought (as opposed to those BayTSP unilaterally selected to produce). If BayTSP's concern relates to privileges held by third parties, it lacks standing to assert such privileges. *See Avago Technologies General IP Pte. Ltd. v. Elan Microelectronics Corp.*, 2007 WL 841785, *2 (N.D. Cal. March 20, 2007) ("the attorney-client privilege is personal and can only be asserted by the holder of the privilege, which is the client."). Put simply, BayTSP cannot rely on others' privileges to withhold materials responsive to YouTube's subpoena. PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES (2d Ed. 1999) § 11:1 ("Neither an attorney on his own behalf … nor third parties who attempt to excuse their failure to produce information or communications in their possession or to suppress evidence possessed by others, may employ the privilege.").

leery of BayTSP's claims given the facial inadequacy of BayTSP's first set of proposed search terms, which omitted, among many other obvious terms, "Google" and "YouTube" (see excerpts below):

```
101.  GC
102.  Gladiator
103.  Global Film
104.  Golden UIP
105.  Grace Productions
```

```
232.  XFire
233.  Yalian
234.  Z+
235.  Zarina
236.  Zoo Films
```

Hemminger Decl. Ex. O. Any search based on inadequate lists of search terms is almost certain to "fail[] to locate or perceive the significance of" responsive information. *Diabetes Centers of America, Inc. v. Healthpia America, Inc.*, 2008 WL 336382, *2 (S.D. Tex. Feb. 2, 2008). Accordingly, the Court should order BayTSP to perform a reasonably diligent search as opposed to relying entirely on an undisclosed list of search terms.

### C. The Failed Negotiations Demonstrate Why an Order Compelling Production is Appropriate and Necessary

There can be no dispute that YouTube adequately met and conferred prior to bringing the instant motion to compel. Indeed, YouTube served its subpoena in September 2007. Baum Decl. Ex. A. BayTSP originally responded with a series of boilerplate objections, without any commitment to produce a single document. Since that time, YouTube has repeatedly met and conferred with counsel for BayTSP in an effort to convince BayTSP to agree to produce the documents sought by the subpoena. *See* Baum Decl. Exs. J-N. In that extensive meet and confer process, BayTSP created a host of obstacles to production. At each turn, YouTube tried to accommodate BayTSP's concerns – *on the express condition that such accommodations would be without prejudice to revisit any limitation and on the further express condition that documents be produced to YouTube on an expedited basis. See* Baum Decl. Ex. J (May 13, 2008 letter from Baum to Ellinikos) ("as we have previously agreed, [BayTSP's expedited production] is without prejudice to further meet and confer after these documents are produced and have been reviewed, and if necessary, to a further subpoena seeking code.").

After many months of back and forth, the parties engaged in a lengthy teleconference on May 12, 2008 to reach a final agreement on all outstanding issues. Baum Decl. Ex. J. (May 13,

-7-

YOUTUBE'S REPLY ISO MOTION TO COMPEL;
CASE NO. 08-MC-80211 JF (PVTx)

2008 letter from Baum to Ellinikos). YouTube confirmed its understanding of BayTSP's commitments in a detailed letter the next day, setting forth, among other things, BayTSP's commitment to produce documents the week of May 26, 2008. *Id.* BayTSP responded the following day by merely saying that YouTube "failed to accurately reflect our discussions" but without detailing any specific disagreements or issues or setting forth an alternative date for production. Baum Decl. Ex. N. (May 14, 2008 letter from Ellinikos to Baum). When the week of May 26 came and went, it became clear that BayTSP's commitments were once again hollow. In response, YouTube requested one last meet and confer -- in person so there could be no misunderstandings -- to resolve outstanding issues, clearly stating that absent a definitive resolution YouTube would "be filing a motion to compel full compliance with the subpoena with the court." Hemminger Decl. Ex. T. (May 30, 2008 letter from Baum to Ellinikos). YouTube's letter also withdrew "[a]ll prior offers to narrow the scope of the subpoena in an effort to secure speedier compliance." *Id.* In response, BayTSP attempted to forestall the inevitable by again promising that the document production process was underway. Baum Decl. Ex. N. (June 10, 2008 letter from Ellinikos to Baum) ("Hence, we will be better able to estimate when BayTSP can complete its document production after processing, *which we expect to be completed around the second week in July*.") (emphasis added). Thus, BayTSP was clearly on notice, as of May 30th, that YouTube would be seeking judicial intervention, as the protracted meet and confer process had accomplished nothing except significant prejudice to YouTube. That prejudice has grown considerably since, given that YouTube has already deposed numerous Viacom witnesses without the benefit of documents from BayTSP and that many more depositions will take place in the coming months.

In August, to stave off motion practice again, BayTSP promised to "present [documents] [] for inspection in the next several weeks." Baum Decl. Ex. P (August 21, 2008 email from Hemminger to Baum). BayTSP then *broke its promise once more*. When "the next several

-8-

weeks" turned into radio silence for *over two months*, YouTube was left with no option but to file the instant motion to compel.[3]

BayTSP's opposition brief not only glosses over key points of this history, but affirmatively misstates it. It is false to claim, as BayTSP does, that YouTube ever accepted BayTSP's unilateral limits on its production. Hemminger Decl. Ex. T (May 30, 2008 letter from Baum to Ellinikos). It is likewise false to claim that there was an agreement between that parties that led "YouTube [to] drop[] its threats of a motion to compel related to electronic searching in June, apparently satisfied with BayTSP's efforts towards production of this sizable volume of documents." BayTSP's Opp'n at 14:23-26 (citing Baum Decl. Ex. N (June 9, 2008 letter from Baum to Ellinikos)). Indeed, in the very letter BayTSP cites for its fictional proposition, YouTube informed BayTSP that there was no such agreement and that:

> we have carried on this way for nine months—when BayTSP takes what appears to be a hard-line refusal to produce, YouTube informs BayTSP that the position is unacceptable and that we are at an impasse, and Bay TSP then 'clarifies' that it did not mean what it said.
>
> ***In the meantime, not a single document has been produced.***

*Id*. (emphasis in original).

Only by moving to enforce the subpoena did YouTube ostensibly make progress towards obtaining the information it has long sought. After YouTube filed this motion, BayTSP again promised a date certain on which its production would begin – this time, November 21, 2008. Hemminger Decl. Ex. V. But that promise also proved illusory. In its Opposition, BayTSP revealed that it did not truly intend to produce documents on that date. Instead, that was merely the date on which BayTSP would begin making available two computer terminals in its counsel's office from which it expected YouTube to conduct a review of some 650,000 documents. *See* BayTSP's Opp'n at 2:1-2, 18:5-10.

---

[3] It is difficult to imagine how BayTSP could legitimately have interpreted YouTube's forbearance as an indication that "there were no outstanding issues" between the parties (BayTSP's Opp'n at 12 n.2). YouTube had expressed, again and again, its dissatisfaction with BayTSP's unilateral restrictions and its delayed production. But even if BayTSP truly believed the parties had an accord, such an accord would have required it to adhere to its promised production deadlines – something that it plainly did not do.

-9-

1    While YouTube first learned of these planned access restrictions in BayTSP's Opposition, they are reminiscent of the tactics BayTSP used during the parties' meet and confer to defer its document production indefinitely.  Such restricted access is unworkable for a host of reasons and would impose massive cost, burden and delay on YouTube.  Nowhere does BayTSP offer authority for these draconian restrictions, or even attempt to explain how they could be justified in the modern world of electronic discovery.  BayTSP certainly did not review the documents under such conditions, nor did Viacom.  And no party acting in good faith would make such a proposal.

This most recent episode reconfirms what YouTube said in its opening brief – absent this Court's intervention, Viacom's agent, BayTSP, will continue to deny YouTube information that is not only undisputedly relevant, but central to the litigation of Viacom's claims.  BayTSP's delaying tactics have gone on long enough.  It should be ordered to produce all documents responsive to YouTube's subpoena, in a manner designed to provide as easy access to them as that afforded to Viacom, by no later than December 30, 2008.

## **CONCLUSION**

For the foregoing reasons, YouTube respectfully requests an Order compelling BayTSP to produce documents responsive to YouTube's subpoena and overruling BayTSP's objections.

November 25, 2008                    Respectfully submitted,

                                     WILSON SONSINI GOODRICH & ROSATI

                                     By:   /s/ David H. Kramer
                                           David H. Kramer

                                     Attorneys for Defendants
                                     YOUTUBE, INC., YOUTUBE, LLC,
                                     and GOOGLE INC.