ORIGINAL

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5   VIACOM INTERNATIONAL INC., *ET AL.*,    )
                                            )
6                    PLAINTIFFS,            )   CASE NO. C 08-80211-JF
        V.                                  )
7                                           )
    YOUTUBE, INC., *ET AL.*,                )   SAN JOSE, CA
8                                           )   DECEMBER 9, 2008
                     DEFENDANTS.            )
9   _____)   DEFENDANT'S MOTION TO
                                            )   COMPEL PRODUCTION OF
10  THE FOOTFALL ASSOCIATION PREMIER        )   DOCUMENTS OF THIRD
    LEAGUE LIMITED, *ET AL.*,               )   PARTY BAYTSP.COM, INC.
11                                          )
                     PLAINTIFFS,            )
12      V.                                  )
                                            )
13  YOUTUBE, INC., *ET AL.*,                )
                                            )
14                   DEFENDANTS.            )
15  _____)

16            TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE PATRICIA V. TRUMBULL
17        UNITED STATES DISTRICT MAGISTRATE JUDGE

18  A P P E A R A N C E S:

19

    FOR THE PLAINTIFFS:        JOHN P. MANCINI, ESQ.
20                             MAYER BROWN LLP
                               1675 BROADWAY
21                             NEW YORK, NY  10019
                               TEL:  212-506-2295
22                             FAX:  212-849-5895
                               JMANCINI@MAYERBROWN.COM
23

24        (APPEARANCES CONTINUED ON THE NEXT PAGE)

25  COURT REPORTER:            JANA L. RIDENOUR, CSR
                               LICENSE NO. 9302

1    A P P E A R A N C E S:   (CONTINUED)

2    FOR THE PLAINTIFFS:        BRANDON D. BAUM, ESQ.
                                MAYER BROWN LLP
3                               TWO PALO ALTO SQUARE, STE. 300
                                3000 EL CAMINO REAL
4                               PALO ALTO, CA  94306
                                TEL:  650-331-2000
5                               FAX:  650-331-4580
                                BBAUM@MAYERBROWN.COM
6
                                DAVID H. KRAMER, ESQ.
7                               WILSON SONSINI GOODRICH & ROSATI
                                650 PAGE MILL ROAD
8                               PALO ALTO, CA  94304
                                TEL:  650-493-9300
9                               FAX:  650-493-6811
                                DKRAMER@WSGR.COM
10
     FOR THE DEFENDANTS:        STEVEN D. HEMMINGER, ESQ.
11                              ALSTON & BIRD LLP
                                TWO PALO ALTO SQUARE, STE. 400
12                              3000 EL CAMINO REAL
                                PALO ALTO, CA  94306
13                              TEL:  650-838-2029
                                FAX:  650-838-2001
14                              STEVE.HEMMINGER@ALSTON.COM

15                              OSAMA A. HUSSAIN, ESQ.
                                IN-HOUSE COUNSEL FOR BAYTSP
16                              P.O. BOX 1314
                                LOS GATOS, CA  95031
17                              TEL:  408-341-2300
                                FAX:  408-341-2396
18                              OSAMAH@BAYTSP.COM

19                              STEPHEN D. HIBBARD
                                SHEARMAN & STERLING LLP
20                              525 MARKET STREET, STE. 1500
                                SAN FRANCISCO, CA  94105
21                              TEL:  415-616-1100
                                FAX:  415-616-1199
22                              SHIBBARD@SHEARMAN.COM

23

24

25

P R O C E E D I N G S

THE COURT:  GOOD MORNING.  THIS IS VIACOM INTERNATIONAL INC. VERSUS YOUTUBE, C 08-80211-JF.

SO ARE YOU SITTING AT THE RIGHT PLACES?

MR. MANCINI:  WE BELIEVE WE ARE, YOUR HONOR.  WE ARE THE MOVANT.

THE COURT:  PLAINTIFFS THERE?  OKAY.

WHY DON'T YOU COME, THEN, AND IDENTIFY YOURSELVES.

MR. MANCINI:  YOUR HONOR, JOHN MANCINI FROM MAYER BROWN ON BEHALF OF THE MOVANTS, GOOGLE AND YOUTUBE.  I HAVE WITH ME MY PARTNER, BRANDON BAUM -- AND CO-COUNSEL, BRANDON BAUM, IS HERE; AND CO-COUNSEL, DAVID KRAMER FROM WILSON SONSINI.

THE COURT:  WELCOME.

MR. KRAMER:  GOOD MORNING.

MR. HEMMINGER:  GOOD MORNING, YOUR HONOR.  STEVE HEMMINGER FROM ALSTON & BIRD FOR THIRD PARTY BAYTSP.  AND I HAVE WITH ME OSAMA HUSSAIN, WHO IS THE IN-HOUSE COUNSEL FOR BAYTSP.

MR. HIBBARD:  GOOD MORNING, YOUR HONOR.  I AM STEPHEN HIBBARD OF SHEARMAN & STERLING, AND I AM COUNSEL FOR VIACOM INTERNATIONAL, INC.  AND I'M SPECIALLY APPEARING FOR THE LIMITED PURPOSE TO FOCUS ON TIMING OF

PRODUCTION ISSUES, WHEN WE REACH THAT STAGE.

THE COURT: OKAY. THIS IS DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF THE THIRD PARTY BAYTSP.COM.

SO WHO IS ADDRESSING THIS?

MR. MANCINI: GOOD MORNING, YOUR HONOR.

I WILL BE ADDRESSING THE MOTION, AND I'M JOHN MANCINI FROM MAYER BROWN ON BEHALF OF GOOGLE AND YOUTUBE.

IF I MAY, I WILL BE BRIEF ON THE BACKGROUND OF THIS MOTION.

BAYTSP HAS BEEN ACTING AS AN AGENT FOR VIACOM IN CANVASSING THE YOUTUBE WEB SITE AND ISSUING NOTICES TO TAKE DOWN ALLEGEDLY INFRINGING CONTENT. IT'S UNDISPUTED THAT VIACOM USED BAYTSP TO ACTUALLY COMMENCE THE LAWSUIT IN THE CASE IN CHIEF IN THE SOUTHERN DISTRICT OF NEW YORK. THE SUBPOENA WAS ISSUED IN SEPTEMBER 2007, PURSUANT TO A DISCOVERY PLAN WHERE THE THIRD PARTY WOULD ACTUALLY COMMENCE FIRST, THE THIRD PARTY DISCOVERY WOULD ACTUALLY COMMENCE FIRST.

THEN AN EXTENSIVE MEET-AND-CONFER PROCESS FOLLOWED, NO LESS THAN SIX TELEPHONE CONFERENCES, 33 LETTERS FOLLOWING THE FILING OF THE MOTION.

BAYTSP FAILED TO MEET MULTIPLE SELF-SET DEADLINES TO PRODUCE THOSE DOCUMENTS, IN MAY OF 2008, JULY AGAIN; AND THEN ON AUGUST 21ST THE FINAL DEADLINE

1  WAS SET WHERE WE WERE TO GET DOCUMENTS WITHIN SEVERAL

2  WEEKS, THEY FAILED TO MEET THAT TIME AGAIN.  YOUTUBE HAD

3  NO OPTION BUT TO PROCEED WITH A MOTION TO COMPEL BECAUSE

4  WE HAVE BEEN PREJUDICED BY THIS.

5         THESE DOCUMENTS POSSESSED BY BAYTSP ARE AMONGST

6  THE MOST IMPORTANT IN THE ENTIRE CASE, NOT JUST BY THIRD

7  PARTIES, BUT ALSO BY THE PARTIES THEMSELVES.

8         INDEED, TWO DEPOSITIONS HAVE ALREADY OCCURRED

9  OF VIACOM WITNESSES, NAMELY MICHAEL HOUSLEY AND STANLEY

10  PIERRE LOUIS, WHERE EXTENSIVE REFERENCES WERE MADE TO THE

11  PROCESSES EMPLOYED BY BAYTSP AT VIACOM'S BEHEST TO LOCATE

12  ALLEGEDLY INFRINGING CONTENT ON THE SITE AND TO TAKE IT

13  DOWN.  IN ADDITION, FOUR MORE DEPOSITIONS ARE YET TO

14  PROCEED WHICH CANNOT PROCEED WITHOUT THESE DOCUMENTS.

15  THEY ARE KEY VIACOM WITNESSES, NAMELY WARREN SOLOW,

16  MICHELENA HALLIE, ALLAN BELL, AND LEE D'ARCHEVESQUE.

17         THERE ARE SIX ISSUES BEFORE THE COURT.  THE

18  FIRST IS THE SCOPE OF DOCUMENTS SOUGHT AND THERE ARE TWO

19  ISSUES THAT RELATE TO THAT, THE FIRST OF WHICH THERE MAY

20  NOT BE A DISPUTE, AND THAT IS DOCUMENTS RELATING TO

21  VIACOM ENTITIES.  IT APPEARS THAT BAYTSP IS READY TO

22  PRODUCE THOSE, BUT THE CONCERN IS THE MODE IN WHICH THEY

23  SEEK TO PRODUCE THEM.

24         THE SECOND ISSUE, THOUGH, IS ONE THAT IS RIPE

25  FOR DETERMINATION.  THEY SEEK TO -- THEY ARE REFUSING TO

1  PRODUCE DOCUMENTS RELATING TO NON-VIACOM ENTITIES.  THEY

2  PURPORT TO CLAIM THAT THE SOLE BASIS FOR WITHHOLDING

3  THOSE DOCUMENTS IS BECAUSE OF SOME HARM, SOME HARM TO

4  THEIR REPUTATION IF THE INFORMATION ABOUT THEIR DEALINGS

5  WITH OTHER CLIENTS WERE TO GET INTO THE PUBLIC REALM.

6       WE HAVE ALREADY DISCUSSED ENTERING A PROTECTIVE

7  ORDER.  THERE IS A PROTECTIVE ORDER IN THE CASE IN CHIEF

8  THAT HAS A PROVISION FOR THIRD PARTIES THAT SHOULD SOLVE

9  THAT ISSUE, BUT THAT IS AN ISSUE THAT THERE IS A DISPUTE

10  ON, AND WE NEED THIS COURT'S INTERVENTION.

11       BRIEFLY PUT, THOSE DOCUMENTS ARE CRITICALLY

12  IMPORTANT BECAUSE THEY WILL SHOW, AMONG OTHER THINGS,

13  THAT OTHER CLIENTS OF BAYTSP OTHER THAN VIACOM ENTITIES

14  HAVE GIVEN INSTRUCTIONS TO EITHER LEAVE CONTENT ON THE

15  YOUTUBE WEB SITE, PERHAPS FOR PROMOTIONAL REASONS OR FOR

16  STEALTH MARKETING REASONS, UNDERSTATING THE POWERFUL

17  VIRAL VALUE THAT YOUTUBE HAS TO MARKET THEIR CONTENT.

18  THE EXISTENCE OF THAT CONTENT WILL DISPUTE ONE OF

19  VIACOM'S CHIEF CLAIMS IN THE CASE IN CHIEF, NAMELY, THAT

20  YOUTUBE IS ABLE TO PERHAPS DISCERN THE AUTHORIZATION OF

21  CONTENT ON THE SITE MERELY BY ITS EXISTENCE.  THOSE

22  DOCUMENTS WILL INDISPUTABLY REFUTE THAT POSITION.  THEY

23  ARE CLEARLY WITHIN THE POSSESSION OF BAYTSP; THEY ARE

24  REFUSING AGAIN TO PROVIDE IT.  THE ONLY BASIS ARTICULATED

25  IS THIS HARM, WHICH WE WOULD SUBMIT IS DEALT WITH BY A

1  PROTECTIVE ORDER.

2          THEY ARE ALSO IMPORTANT DOCUMENTS BECAUSE THEY

3  WILL SHOW MISTAKES; FOR EXAMPLE, BAYTSP WILL MAKE

4  MISTAKES, DESPITE BEING ARMED WITH THE BEST KNOWLEDGE BY

5  THE CONTENT HOLDER OF WHAT IS OR IS NOT ITS CONTENT, OF

6  WHAT IS OR IS NOT AUTHORIZED BY IT.  BAYTSP ITSELF MAKES

7  MISTAKES WHEN IT SENDS A TAPE DOWN THE LINES TO YOUTUBE.

8  AGAIN, ONE OF THE CHIEF ISSUES IN DISPUTE IN THE CASE.

9  THEY ARE REFUSING TO PROVIDE THOSE DOCUMENTS.

10          THE SECOND ITEM FOR THIS COURT'S DETERMINATION

11  IS A DATE CERTAIN FOR THE EXCHANGE OF THESE DOCUMENTS.

12  WE HAVE HEARD AS RECENTLY AS YESTERDAY THAT -- IT'S

13  REALLY THE FIRST TIME WE HAVE ACTUALLY GOTTEN A DATE

14  CERTAIN -- THAT IT LOOKS LIKE THEY ANTICIPATE MAKING

15  THESE DOCUMENTS AVAILABLE BY MARCH 15TH.

16          AS YOUR HONOR HAS HEARD THIS MORNING, THERE ARE

17  FOUR UPCOMING DEPOSITIONS THAT SIMPLY CANNOT BE SCHEDULED

18  WITHOUT THESE DOCUMENTS.  WE DON'T THINK THAT'S LONG

19  ENOUGH -- WE THINK THAT'S TOO LONG.  WE THINK IT SHOULD

20  HAPPEN FAR EARLIER.  THESE DOCUMENTS ARE NECESSARY TO

21  SCHEDULE DEPOSITIONS, AND WE HAVE ALREADY BEEN PREJUDICED

22  IN DEPOSITIONS.

23          THE THIRD ISSUE FOR YOUR HONOR'S DECISION IS

24  THE FORMAT OF THIS PRODUCTION.  YOU HAVE SEEN FROM THE

25  PAPERS THAT BAYTSP HAS OFFERED TO PRODUCE THEM AT TWO

COMPUTER TERMINALS DURING REGULAR BUSINESS HOURS, BUT
WITH A TEMPORAL CUTOFF, NAMELY, TWO WEEKS AFTER THEY HAVE
FINALLY UPLOADED THE LAST FILES WERE DONE.  PERHAPS
UNDERSTANDING THE UNREASONABLENESS IN DEPOSITION,
YESTERDAY FOR THE FIRST TIME WE RECEIVED A NEW PROPOSAL.
THAT NEW PROPOSAL WOULD PURPORT TO GIVE US ELECTRONIC
ACCESS TO A KROLL DATABASE, WE UNDERSTAND, WHICH VIACOM'S
APPARENTLY HAD ACCESS TO.  THIS IS SOME TYPE OF
PASSWORD-PROTECTED ACCESS, BUT WE ARE NOT ALLOWED TO
PRINT.  THE PRINTING WILL ONLY OCCUR AT THEIR OFFICES AT
OUR EXPENSE, AND THEY WOULD NOT EVEN AGREE TO BLOCK
VIEWING ACTIVITY OF OUR ACTIVITIES ON THE SITE, WHICH IS
CLEARLY WORK PRODUCT MATERIAL.

          WE THINK THE SIMPLEST SOLUTION TO THIS --

          THE COURT:  IT'S ELECTRONIC, SO THAT'S WHY THE
PRINTING ISSUE IS IMPORTANT THERE, AS TO WHO PRINTS WHERE
AND WHEN THEY PRINT?

          MR. MANCINI:  WELL, IT'S ALSO IMPORTANT TO US,
YOUR HONOR, BECAUSE WITH DEPOSITIONS ONGOING, WE CAN'T BE
AT THEIR --

          THE COURT:  NO, I UNDERSTAND THE TIMING ISSUE.
BUT THE "WHERE" AND THE "WHEN" AND THE PRINTING ...

          MR. MANCINI:  IS AT THEIR OFFICES.

          THE COURT:  OKAY.  I WAS JUST TRYING TO FIGURE
OUT WHETHER IT'S PAPER THAT THEY ARE COPYING OR WHETHER

IT'S THE ELECTRONIC THING THAT YOU PRINT OUT.

MR. MANCINI: THE ELECTRONIC VERSION WOULD BE PRINTED OUT ON PAPER.

THE COURT: OKAY.

MR. MANCINI: SO WE THINK THE SIMPLEST SOLUTION TO THIS IS THAT THE DOCUMENTS OUGHT TO BE PRODUCED CONSISTENT WITH THE AMENDED ESI PLAN THAT IS IN EXISTENCE IN THE CASE IN CHIEF. WE ALREADY HAVE A REVIEW DATABASE. IF THOSE DOCUMENTS WERE PROVIDED TO US IN SOME ELECTRONIC MEDIUM, DVDS OR OTHERWISE, WE WOULD UPLOAD THEM TO OUR DATABASE. THE ONLY ARTICULATED CONCERN THERE IS COST.

NOW, WHEN PRESSED YESTERDAY, WE RECEIVED ONLY A HALF ANSWER IN THIS. IT SEEMS RATHER CLEAR TO US THAT VIACOM IS REIMBURSING THEM FOR ALL THEIR EXPENSES IN RESPONDING TO THE SUBPOENA. THEY DID NOT ANSWER TO US THE SIMPLE QUESTION: IF YOU WERE TO PUT IT ON DVDS FOR US, WOULD YOU BE REIMBURSED BY VIACOM? BECAUSE IF THEY ARE, THEN THE COST ISSUE IS OFF THE TABLE. PERHAPS THEY WILL ANSWER IT FOR YOUR HONOR.

BUT LEAVING THAT ASIDE, WE CAN'T IMAGINE, GIVEN THAT THEY HAVE ALREADY UPLOADED IT TO THIS KROLL DATABASE, THAT THE COST COULD BE THAT SIGNIFICANT AT ALL. IT'S A MATTER OF TAKING THOSE DATA FILES, PUTTING THEM INTO SOME OTHER ELECTRONIC MEDIUM, WE WILL UPLOAD IT TO OUR DATABASE. WE THINK THAT THAT OUGHT TO BE THE METHOD

1    IN WHICH THEY ARE ORDERED TO BE PRODUCED.

2         THERE ARE THREE OTHER ISSUES, PERHAPS ONLY ONE
3    OF WHICH IS OF EQUAL IMPORTANCE, AND THAT IS THE
4    PROVISION OF A PRIVILEGE LOG, CRITICALLY IMPORTANT,
5    BECAUSE WHAT WE NOW UNDERSTAND IS THAT VIACOM IS
6    REVIEWING EACH AND EVERY DOCUMENT THAT BAYTSP HAS
7    IDENTIFIED AS BEING RESPONSIVE, AND WE ARE NOT ALLOWED TO
8    SEE THOSE DOCUMENTS UNTIL VIACOM HAS MADE A DETERMINATION
9    ABOUT THEIR PRIVILEGE.  FRANKLY, WE ARE BIT SURPRISED BY
10   THIS BECAUSE WE WONDER HOW VIACOM HAS STANDING IN THIS
11   COURT TO BE ABLE TO ASSERT THAT PRIVILEGE; IN FACT,
12   BELIEVE THAT THEY HAVE WAIVED IT BECAUSE THERE'S BEEN
13   NO APPEARANCE BY THEM IN THIS PROCESS UNTIL JUST VERY
14   RECENTLY.

15        LEAVING THAT ASIDE, ASSUMING THAT THIS COURT
16   WILL ALLOW THEM TO ASSERT THE PRIVILEGE, WE JUST NEED A
17   PROCESS IN PLACE FOR PROVISION OF A PRIVILEGE LOG.  THAT
18   PRIVILEGE LOG OUGHT TO HAVE A REASONABLE CERTAINTY AS TO
19   IDENTIFICATION OF THE DOCUMENT AND THE BASIS FOR THE
20   PRIVILEGE, AND THERE OUGHT TO BE A PROCESS IN PLACE FOR
21   US TO CONTEST IT.  BASED ON DEPOSITIONS THAT HAVE TAKEN
22   PLACE ALREADY IN THE CASE IN CHIEF, WE EXPECT THAT THAT
23   PRIVILEGE LOG IS GOING TO CONTAIN AN INORDINATE NUMBER OF
24   THESE DOCUMENTS.

25        JUST TO GIVE SOME PERSPECTIVE TO YOUR HONOR, WE

ARE UNDERSTAND THAT BAYTSP HAS IDENTIFIED APPARENTLY 1.35
MILLION DOCUMENTS AGAINST WHICH THEY HAVE APPLIED SEARCH
TERMS AND HAVE DEEMED 650,000 OF THEM TO BE RESPONSIVE TO
OUR SUBPOENA.  THOSE DOCUMENTS ARE NOW BEING REVIEWED BY
VIACOM FOR PRIVILEGE AND AS OF, I GUESS, YESTERDAY
THERE'S ONLY A FEW THOUSAND OF THEM THAT ARE READY FOR US
TO VIEW ON THESE COMPUTER TERMINALS AT BAYTSP'S COUNSEL'S
OFFICES, WHICH TAKES ME TO THE NEXT ISSUE.

WE DO HAVE SOME CONCERN ABOUT THE METHODOLOGIES
THAT HAVE BEEN EMPLOYED BY BAYTSP TO RESPOND TO THE
SUBPOENA.  WE HAVE HAD LONG DISCUSSIONS WITH THEM ABOUT
THE SEARCH TERMS THAT WERE EMPLOYED; AT ONE POINT
CRITICAL TERMS LIKE "GOOGLE" AND "YOUTUBE" WERE MISSING.
WE HAVE NOT GOTTEN ANY CLARITY ON THIS, BUT WE THINK
THERE IS A SOLUTION, AND THAT IS THAT BAYTSP BE REQUIRED
TO PROVIDE FOR US A SIMPLE AFFIDAVIT ABOUT THE
METHODOLOGIES THAT HAVE BEEN USED TO RESPOND TO THE
SUBPOENA AND THAT WE BE ENTITLED TO A BRIEF MAY TWO- TO
THREE-HOUR ESI DEPOSITION TO EXAMINE THOSE.  AND
HOPEFULLY, AFTER THAT PROCESS, THERE WILL NOT BE ANY
REMAINING ISSUES ABOUT THE SUFFICIENCY OF THE SEARCH FOR
PURPOSES OF PRODUCTION.

FINALLY, THE SIXTH ISSUE IS THAT WE HAVE
REQUESTED DOCUMENTS RELATING TO THEIR SOURCE CODE BECAUSE
THEIR SOURCE CODE HAS EMBEDDED TECHNOLOGY THAT SEARCHES

THE YOUTUBE WEB SITE, AND WE UNDERSTAND THAT BAYTSP HAS
OFFERED TO GIVE US, INSTEAD OF THE CODE ITSELF, DOCUMENTS
SUFFICIENT TO SHOW THE OPERATION.  THAT MAY BE AN ISSUE
THAT WE CAN AGREE UPON, PROVIDED WE GET THOSE DOCUMENTS
IN A REASONABLE TIME BASIS.  BUT AGAIN, THEY WOULD BE
DOCUMENTS THAT WOULD BE SUFFICIENT TO SHOW THE OPERATION
OF THE CODE SO THAT WE CAN UNDERSTAND WHAT THE SERVICE IS
DOING ON THEIR SITE IN TERMS OF LOCATING POTENTIALLY
INFRINGING CONTENT, TAKING THEM DOWN OR LEAVING THEM UP.

THOSE ARE THE ISSUES FOR YOUR HONOR'S
DETERMINATION, AND AGAIN, WE REQUEST AN ORDER COMPELLING
THAT PRODUCTION UNDER THE CIRCUMSTANCES.

THE COURT:  RESPONSE?

MR. HEMMINGER:  GOOD MORNING, YOUR HONOR.
ONCE AGAIN, MY NAME IS STEVE HEMMINGER.  I'M REPRESENTING
BAYTSP.

WITH REGARD TO THE ISSUES PRESENT, WHAT I WILL
DO FIRST IS GIVE A LITTLE BACKGROUND AS TO WHO BAYTSP IS
AND THE RELATIONSHIP THAT IT HAS BOTH WITH VIACOM AND
OTHER COPYRIGHT HOLDERS, THEN EXPLAIN AND ADDRESS SOME OF
THESE ISSUES RELATING TO RELEVANCE OF THE THIRD PARTIES
AND THE HARM IT WOULD IMPOSE.  I'LL ALSO ADDRESS THE
ISSUE RELATING TO THE METHODOLOGY WHICH HAS BEEN
DISCUSSED *AD NAUSEAM* WITH YOUTUBE, AND THEN ADDRESS A
LITTLE BIT THIS ISSUE OF THE DELAY BECAUSE IT PERMEATED

1  SO MUCH OF THEIR PAPERS, WHICH IT REALLY IS KIND OF MOOT

2  BECAUSE THE DOCUMENTS HAVE BEEN AVAILABLE, AT LEAST A

3  PORTION OF THEM.  AND QUITE FRANKLY, IT'S STRANGE TO ME

4  THAT IF THESE DOCUMENTS ARE ABSOLUTELY SO CRITICAL,

5  REGARDLESS OF THE METHODOLOGY TO BE ABLE TO REVIEW THEM,

6  IF I NEEDED DOCUMENTS, I CERTAINLY WOULD HAVE GONE IN AND

7  REVIEWED THEM WHEN I COULD HAVE IN THE PAST TWO OR THREE

8  WEEKS.

9          VIACOM'S COUNSEL WILL ADDRESS THE ISSUE WITH

10  REGARD TO THE DEPOSITIONS.  FRANKLY, BAYTSP IS TOTALLY

11  REMOVED FROM THE LAWSUIT.  IT HAS NO INVOLVEMENT --

12          THE COURT:  IS IT CORRECT TO CHARACTERIZE YOU

13  AS A CONTRACTOR BASICALLY HELPING THEM WITH THE

14  NON-DEPOSITION DISCOVERY?  I HATE IT CALL IT "PAPER";

15  IT'S NOT PAPER ANYMORE, IT'S ELECTRONIC MOSTLY.  IS IT

16  THAT YOU ARE BASICALLY HIRED BY THEM TO HELP THEM WITH

17  THE RESPONSE OR WITH THE ORGANIZING OF THE ELECTRONIC AND

18  THE PAPER DISCOVERY?

19          MR. HEMMINGER:  NO, THAT'S --

20          THE COURT:  IS THAT TOO SIMPLE?

21          MR. HEMMINGER:  WHETHER IT'S SIMPLE OR NOT,

22  THAT IS NOT AT ALL WHAT BAYTSP DOES.  SO LET ME START, IF

23  I CAN GIVE YOU A BACKGROUND.

24          BAYTSP STARTED A COMPANY AFTER THE DIGITAL

25  MILLENNIUM COPYRIGHT ACT CAME INTO PLACE.  THE DIGITAL

1  MILLENNIUM COPYRIGHT ACT HAD SOME PROVISIONS CALLED SAFE

2  HARBORS FOR INTERNET SERVICE PROVIDERS, PROVIDED THEY MET

3  CERTAIN CRITERIA.  THE DMCA ALSO ALLOWED COPYRIGHT

4  HOLDERS TO HIRE AN AGENT WHO WOULD BE AUTHORIZED TO ISSUE

5  TAKEDOWN NOTICES TO THE ISP WHEN THEY FOUND, OR IF THEY

6  FOUND, INFRINGING MATERIAL ON THE INTERNET.  BAYTSP

7  CONTRACTS WITH COPYRIGHT HOLDERS, OBVIOUSLY SOME OF THE

8  VIACOM ENTITIES -- FOX, HBO, UNIVERSAL, AND EVEN MANY

9  SMALLER TYPE ENTITIES -- WHO CREATE COPYRIGHTED MATERIAL,

10 AND IS FEARFUL THAT ITS MATERIAL WILL END UP ON THE

11 INTERNET.  YOUTUBE OBVIOUSLY ALLOWS PEOPLE TO POST

12 MATERIALS ONTO ITS WEB SITE.  IT'S BECOME VERY, VERY

13 POPULAR.  THERE ARE ALSO OTHER ISSUES DEALING WITH MOVIES

14 AND THE LIKE WHERE MOVIES WILL ALL OF A SUDDEN APPEAR ON

15 THE INTERNET A WEEK BEFORE THE RELEASE OF THE MOVIE.

16 THOSE ARE OTHER AREAS THAT BAYTSP WORKS ON.

17         SO BAYTSP'S INVOLVEMENT IS NOT WITH REGARD TO

18 LITIGATION.  BAYTSP WAS HIRED BY VIACOM, AS IT IS WITH

19 OTHERS, TO LOOK AT THE INTERNET, FIND OUT IF EXCERPTS OF

20 SOUTH PARK ARE APPEARING ON --

21         THE COURT:  BUT YOU ARE NOT A PARTY IN THIS

22 CASE; NO ONE IS COMING AFTER YOU FOR MONEY.

23         MR. HEMMINGER:  WE ARE ABSOLUTELY NOT A PARTY.

24 WE GET NO MONEY.  WE HAVE NO INTEREST WHATSOEVER IN THE

25 OUTCOME OF THIS SUIT.  IT HAS NOTHING TO DO WITH US.

EARLY ON --

THE COURT: SO YOUR ROLE -- CHARACTERIZE YOUR ROLE FOR ME IN THIS CASE, BECAUSE YOU ARE REALLY THE ONE WHO HAS MADE THE DECISIONS ABOUT WHAT TO PRODUCE AND NOT PRODUCE, AS FAR AS I SEE IT, AND I AM NOT SURE THAT I UNDERSTAND THAT SINCE I THINK THAT IT PROBABLY IS VIACOM INTERNATIONAL WHO HAS SOME ISSUES HERE. AND IF YOU DON'T DO WHAT THEY THINK SHOULD HAVE BEEN DONE -- AND I ASSUME THAT'S NOT TRUE -- THEN THE MOTION TO COMPEL -- AM I COMPELLING YOU? AM I COMPELLING THEM? AND IF I'M COMPELLING THEM, ARE THEY MAKING YOU A -- I DON'T UNDERSTAND THAT RELATIONSHIP.

MR. HEMMINGER: WELL, AND THAT'S BEEN LOST IN THE MOTION PAPERS. QUITE FRANKLY, ALL OF THE DISCOVERY THAT IS PRESENTED HERE WITH YOU, WITH THE EXCEPTION OF BAYTSP'S CUSTOMERS -- OTHER THAN THE PLAINTIFFS IN THE SUIT -- HAS BEEN DIRECTED AT VIACOM. THOSE DISCOVERIES ARE OUT THERE. THE FACT -- AND AGAIN, I'M TELLING YOU INFORMATION THAT HAS BEEN RELAYED TO ME BY VIACOM IN PREPARING FOR THIS HEARING. THE DISCOVERY REQUESTS HAVE BEEN DONE. VIACOM IS DOING THE EXACT SAME WORK PRODUCT PRIVILEGE REVIEW OF THE DOCUMENTS IT HAS, NAMELY, WHENEVER WE SEND SOMETHING TO VIACOM, OF COURSE, VIACOM HAS A COPY OF IT, AND THEY ARE THE ONES THAT HAVE ACTUALLY BEEN DECIDING WHAT THEY WANT TO DO WITH THE

1  INFORMATION BAYTSP SENDS.

2          SO THIS IS REALLY A LITTLE BIT OF AN END AROUND
3  OF WHAT THEY SHOULD BE DOING.  THEY SHOULD BE GOING WITH
4  JUDGE STANTON IN NEW YORK, WHO IS FULLY VERSED WITH WHAT
5  IS RELEVANT AND NOT RELEVANT AND CAN MAKE THE DECISIONS.
6  BUT THESE DEPOSITIONS THEY HAVE BEEN GOING FORWARD WITH,
7  THEY HAVE BEEN GOING FORWARD WITH WITHOUT EVEN FILING A
8  MOTION TO COMPEL FOR THE EXACT SAME MATERIAL THAT IS
9  SITTING THERE IN VIACOM, WHICH IS THE MATERIAL THAT WE
10 HAVE BEEN COLLECTING AND ORGANIZING TO PRODUCE.  SO IT'S
11 A BIT OF A MYSTERY TO US, AS IT IS TO YOUR HONOR.

12          BUT GETTING BACK TO THE ROLE THAT WE HAVE, IT
13 IS MERELY TO, FOR EXAMPLE, RECEIVE THE ACTUAL DIGITAL
14 VIDEO OF A SOUTH PARK EPISODE, HAVE THAT AND BE RETAINED
15 TO LOOK ON THE INTERNET, AND IN PARTICULAR, VIACOM ASKED
16 BAYTSP TO RESTRICT ITS SEARCHES ON THE INTERNET I BELIEVE
17 TO YOUTUBE.  SO IT GETS THE INFORMATION SAYING "SOUTH
18 PARK IS OWNED BY US; NICKELODEON IS OWNED BY US.  WE
19 WOULD LIKE YOU TO FIND OUT IF ANYONE HAS POSTED
20 INFRINGING MATERIAL ON YOUTUBE."  ITS ENTIRE METHODOLOGY
21 IS TO DO JUST WHAT YOU WOULD WANT TO DO.  IF YOU WANTED
22 TO TAKE A LOOK AT WHETHER A NICKELODEON EPISODE HAD BEEN
23 UP THERE, YOU WOULD TYPE IN A SEARCH TERM.

24          BAYTSP, WHICH IS A SMALL COMPANY -- I THINK IT
25 HAS ABOUT 100 EMPLOYEES, AND PROBABLY ABOUT HALF OF THOSE

```
 1    ARE PART-TIME OR HOURLY PEOPLE THAT SIT IN FRONT OF A
 2    MONITOR, PULL UP THE YOUTUBE WEB SITE AND ENTER SEARCHES.
 3    THEY DOWNLOAD THE VIDEOS JUST LIKE YOU WOULD ON YOUR
 4    COMPUTER.  OF COURSE THEY DOWNLOAD LARGE NUMBERS OF THEM.
 5    THEY SIT THERE.  THEY LOOK AT IT.  IS THIS A SOUTH PARK
 6    EPISODE?  IF IT IS, THEN THE FIRST REVIEWER SAYS, "I
 7    THINK THIS MAY DESERVE A COPYRIGHT TAKEDOWN NOTICE."  IT
 8    GETS PUT OVER INTO A BAY.  A SECOND, A SUPERVISOR, THEN
 9    LOOKS AT THE MATERIAL AND SAYS, "YES, THIS LOOKS LIKE
10    VIACOM'S INFORMATION.  WE WANT TO SEND A TAKEDOWN
11    NOTICE."
12            NOW, IF YOUTUBE REALLY IS MERELY JUST AN ISP,
13    ALL OF THIS ACTIVITY HAS NOTHING TO DO WITH YOUTUBE.  IN
14    OTHER WORDS, YOU SEND A TAKEDOWN NOTICE TO YOUTUBE, AND
15    THEY ARE OBLIGATED UNDER THE SAFE HARBOR PROVISIONS TO
16    TAKE DOWN THAT POSTING.  THEY THEN NOTIFY THE POSTER, THE
17    PERSON WHO PUT IT THERE, TO SAY, "WE HAVE RECEIVED A
18    NOTICE THAT THIS IS AN INFRINGEMENT OF VIACOM'S
19    COPYRIGHT."  THE PERSON WHO POSTED IT THEN WITHIN 10 DAYS
20    CAN GO BACK AND, IF YOU WILL, DISPUTE IT, SAYING -- JUST
21    LIKE THIS ONE WHERE THE SONG "CRAZY" I THINK THAT YOU
22    HAVE BEEN HEARING ABOUT, ABOUT UNIVERSAL AND WHETHER
23    THERE'S AN INFRINGEMENT -- THEY CAN COME BACK AND SAY, "I
24    DISPUTE THAT."  AND THEN IF THERE'S ANY LITIGATION, IT'S
25    VIACOM AGAINST THE PERSON WHO POSTED IT.
```

1    THE ISSUES THAT VIACOM HAS WITH YOUTUBE DOES
2    NOT HAVE TO DO WITH OUR PROCESSES.  MY UNDERSTANDING IS
3    IT HAS TO DO WITH SOME OF THE LIMITATIONS WITH THE
4    YOUTUBE SITES.  IT HAS FRIENDS AND FAMILIES WHICH MAKES
5    IT DIFFICULT TO SEARCH ALL OF THE CONTENT.  THE VOLUME OF
6    INFORMATION THERE THAT YOU NEED TO REVIEW, THE MILLIONS
7    OF POSTINGS A DAY -- WE ARE NOT PARTY TO THIS; I'M JUST
8    SPECULATING AS THE BASIS OF THEIR CLAIMS AGAINST YOUTUBE.
9    BUT IT CERTAINLY DOESN'T INVOLVE BAYTSP, OTHER THAN THE
10   FACT THAT BAYTSP DID WHAT THE COPYRIGHT ACT SAID IT
11   SHOULD DO, WHICH IS IDENTIFY INFRINGING MATERIAL, GET IT
12   TAKEN DOWN.  AND THE VOLUME OF THESE WAS HUGE.  I THINK
13   INITIALLY THERE WERE 300,000 POSTINGS THAT WERE SET OUT.
14       THE ISSUE ABOUT THIS RELEVANCE AS TO THE
15   INSTRUCTIONS, FIRST OF ALL TO THE EXTENT WE GET
16   INSTRUCTIONS FROM VIACOM, VIACOM HAS ALL THAT INFORMATION
17   AND THEY ARE THE ONES THAT CAN EXPLAIN WHY AND WHERE IT
18   CAME FROM.  HOWEVER, WHEN WE RECEIVED THE SUBPOENA A YEAR
19   AGO, WE BEGAN NEGOTIATING WITH THE PREVIOUS COUNSEL, AND
20   THIS MAY BE PART OF THE DELAY.  FOR TWO OR THREE MONTHS,
21   WE TALKED TO HER ABOUT THE SCOPE OF THE SUBPOENA, AND WE
22   SAID, "LOOK, WE ARE WILLING TO PROVIDE YOU THE
23   INFORMATION ABOUT THE VIACOM COMMUNICATIONS AND COLLECT
24   ALL THAT INFORMATION.  WE ARE WILLING TO PROVIDE YOU
25   INFORMATION OF OUR TRAINING MATERIALS, OF THE INFORMATION

                                                        18

1 THAT DESCRIBES THE CAPABILITIES OF OUR PROCEDURES AND ALL

2 OF THAT."  AND, IN FACT, IT'S TAKEN QUITE A WHILE, BUT WE

3 HAVE THAT AND THAT'S BEEN MADE AVAILABLE -- SOME OF IT --

4 FIRST TO VIACOM BECAUSE IT'S ALL VIACOM'S MATERIAL TO DO

5 THEIR REVIEW.  SO ALL OF THAT HAS BEEN DISCUSSED AND

6 EXPLAINED.

7 THE ISSUE WITH THE THIRD PARTIES AND THE

8 RELEVANCE IS DIFFICULT TO UNDERSTAND.  THEIR ARGUMENT

9 APPARENTLY IS THAT -- WHICH VIACOM HAS SAID THAT IT IS

10 DIFFICULT FOR COPYRIGHT OWNERS TO BE ABLE TO PROTECT ITS

11 CONTENT.  APPARENTLY, THEY WANT TO USE BAYTSP TO SAY,

12 "LOOK, BAYTSP IS SUCCESSFUL IN FINDING THESE MATERIALS."

13 CERTAINLY.  AND YOUTUBE KNOWS EXACTLY HOW MANY TAKEDOWN

14 NOTICES HAVE BEEN SENT ON BEHALF OF VIACOM, KNOWS WHO

15 THEY WERE FROM, WHEN THEY HAPPENED, HAS THE VIDEOS, HAS

16 ALL OF THE INFORMATION ABOUT THAT BECAUSE IT'S REQUIRED

17 TO BE SENT TO THEM WITH THE TAKEDOWN NOTICE.

18 SOMEHOW NOW THEY ARE SAYING BECAUSE HBO HIRED

19 BAYTSP TO DO SOME WORK THAT IT IS ENTITLED THROUGH BAYTSP

20 TO APPARENTLY DO AN END AROUND THE REAL PARTY IN INTEREST

21 IN HBO AND FORCE US, FORCE BAYTSP TO DIVULGE WHATEVER

22 INFORMATION THAT THEY HAVE, WHICH FRANKLY, IF THEY WOULD

23 LOOK AT THE MATERIAL, THEY WOULD FIND OUT IT'S NOTHING

24 STARTLING, NOTHING EARTH SHATTERING; IT IS NEVER GOING TO

25 PROVE WHATEVER IT IS THEY ARE THINKING IT'S GOING TO.

BUT REALITY?  IT'S THE COPYRIGHT OWNER.  THEY KNOW HOW
MANY TAKEDOWN NOTICES BAYTSP HAS SENT TO YOUTUBE FOR THE
OTHER PARTIES.  THEY ALSO KNOW HOW MANY OTHER DMCAS OR
HOW MANY UNIVERSALS AND OTHER PEOPLE HAVE SENT TAKEDOWN
NOTICES TO YOUTUBE, AND THEY HAVE THAT INFORMATION.  THEY
DON'T NEED US FOR THAT.

         SO WHAT WOULD HAPPEN IS, YOU NOW REQUIRE BAYTSP
TO CONTACT EVERY ONE OF ITS CUSTOMERS, TELL THEM THEY
HAVE RECEIVED A SUBPOENA FROM YOUTUBE, WHICH HAS ASKED
FOR EVERY SINGLE DOCUMENT THAT BAYTSP HAS WITH REGARD TO
THAT COMPANY.  THEN THAT COMPANY, YOU KNOW -- WHAT?  WE
ARE GOING TO HAVE TO THEN HAVE THEM COME IN AND MAKE
PROTECTIVE ORDERS AND DO ALL OF THAT?  THAT'S NOT THE WAY
TO DO IT.  IT'S NOT TO TAKE SOME THIRD PARTY AND TRY TO
DO AN END AROUND SOMEONE WHO ONLY HAS A VERY, VERY, VERY,
VERY LIMITED AGENCY ONLY TO SEND TAKEDOWN NOTICES.  WE
ARE NOT THEIR AGENT FOR ANY OTHER PURPOSE AND HAVE NO
OTHER INVOLVEMENT.

         SO GOING TO THESE THIRD PARTIES TO SUPPOSEDLY
UNDERSTAND THE INSTRUCTIONS AND THE DIFFICULTY, THOSE CAN
BE OBTAINED BY THE COPYRIGHT OWNERS.  YOUTUBE FOR
WHATEVER REASON PROBABLY DOESN'T WANT TO GO AGAINST HBO
OR FOX BECAUSE THEY MAY HAVE LICENSE AGREEMENTS WITH
THEM.  SO I'M NOT SURE WHY THEY ARE FORCING IT THROUGH US
TO GO THERE, BUT IT'S A HUGE BURDEN FOR THE THIRD PARTIES

AND THE RELEVANCE IS REMOTE.

IF IT'S ONLY THE INSTRUCTIONS THEY WANT, THEY CAN TALK TO HBO.

BUT AGAIN, IF INDEED THEY ARE TRULY AN ISP, THEY DON'T KNOW ABOUT THE CONTENT AND THEY DON'T CARE, THEY JUST TAKE IT DOWN AND THEY ARE DONE. IF THEY HAVE SOME OTHER INTERESTS, WELL, MAYBE THEY ARE NOT AN ISP AND MAYBE VIACOM'S SUIT GETS MERIT. WE DON'T KNOW; WE DON'T TAKE A POSITION.

THE OTHER THING THEY MENTIONED IS WE WANT TO KNOW HOW SUCCESSFUL, HOW GOOD IT IS -- BAYTSP IS. BAYTSP CERTAINLY SAYS, "WE'RE GOOD. WE GO OUT THERE AND FIND THEM." BUT IT IS ABSOLUTELY IMPOSSIBLE FOR BAYTSP TO HAVE STATISTICS ABOUT HOW MUCH INFRINGEMENT IS OUT THERE THAT IT DIDN'T FIND. IF IT DIDN'T FIND IT, IT DOESN'T KNOW IT EXISTS, AND THEREFORE THERE'S NO COMPARISON.

THE OTHER ISSUE IS ABOUT THESE QUOTE/UNQUOTE "MISTAKES" BY BAYTSP IN THEIR PAPERS SENDING THE TAKEDOWN NOTICE. IN THEIR PAPERS THEY REFER TO SOME PORNOGRAPHIC SITE AND A FEW OTHER THINGS THAT WERE POSTED UP ON YOUTUBE. I THINK THERE WERE MAYBE A HALF DOZEN. OUT OF THE THREE- TO 400,000 TAKEDOWN NOTICES THAT HAVE BEEN SENT, THAT'S A PRETTY SMALL PERCENTAGE. BUT AGAIN, THIS IS ALL DONE UNDER THE TERMS OF THE COPYRIGHT ACT, WHICH IT AUTHORIZES THEM TO DO THAT. AND THE FACT THAT THEY

1   WERE ABLE TO ATTACH THEM TO THEIR PAPERS INDICATES THEY

2   CERTAINLY KNOW, BECAUSE WHEN SOMEONE GETS A TAKEDOWN

3   NOTICE, APPARENTLY THEY GO BACK AND THEY CONTACT YOUTUBE.

4   YOUTUBE'S RESPONSE SHOULD BE, "SORRY.  YOU HAVE TO TALK

5   TO VIACOM AND YOU WORK IT OUT."  THEY DON'T NEED TO BE

6   INVOLVED.  SO WE DON'T HAVE THE STATISTICS, WE DON'T HAVE

7   THE INFORMATION THEY WANT.  PERHAPS THEY HAVE EXPERTS

8   THAT CAN DO IT, BUT IT'S NOT BAYTSP.

9           ALSO TALKED ABOUT IS THE SOURCE CODE.  THE

10  DETERMINATION OF WHAT IS AND IS NOT AN INFRINGEMENT FOR

11  THE VIACOM/YOUTUBE ANALYSIS IS DONE BY A PERSON.  THE

12  ONLY SOFTWARE THAT THEY HAVE IS SOFTWARE THAT ONCE YOU

13  HAVE DOWNLOADED IT, THEY WILL PUT IT INTO A DATABASE; IN

14  OTHER WORDS, THEY WILL PUT IT INTO A FILE LOCATION SO

15  THEY DON'T HAVE TO ACCESS THE INTERNET, WHICH IS

16  PERMITTED UNDER YOUTUBE.  THIS IS NOT AN ISSUE OF A

17  VIOLATION OF THEIR TERMS.  YOUTUBE WANTS PEOPLE TO

18  DOWNLOAD THE VIDEOS; THEY DO.  THEY PUT IT IN A

19  PARTICULAR PLACE, THE PERSON REVIEWS IT, HE PUTS A LITTLE

20  CHECK MARK, SAYS, "GO TO THE SECOND REVIEW."  IT IS JUST

21  A BIG DATABASE THAT HAS A FEW FIELDS.  WHEN THE NEXT

22  PERSON SEES IT, LOOKS AT IT, SAYS, "I HAVE REVIEWED IT,

23  SEND OUT A TAKEDOWN NOTICE," THE SYSTEM AUTOMATICALLY

24  SENDS OUT AN E-MAIL.

25          AND THIS IS AGAIN SOMETHING -- THE WAY WE DO IT

IS VERY PROPRIETARY AND EFFICIENT, BUT IT HAS NOTHING TO
DO WITH THE SUCCESS OR ABILITY TO MONITOR THE SOFTWARE
AND WHAT'S ON THE INTERNET.  AND IF THIS INFORMATION BORE
OUT, IT WOULD HAVE A VERY DELETERIOUS EFFECT ON BAYTSP'S
BUSINESS BECAUSE OTHER PEOPLE WOULD THEN BE ABLE TO COPY
THE SOFTWARE.

NOW, YOUTUBE'S COUNSEL ALLUDED TO THE
PROTECTIVE ORDER, AND THEY ATTACHED IT, AND I'M SURE YOU
HAVEN'T SPENT A LOT OF TIME REVIEWING; IT'S A PRETTY
STANDARD PROTECTIVE ORDER FOR THE PARTIES.  THERE IS ONE
CLAUSE THAT DEALS WITH THIRD PARTIES AND, IN FACT, IT'S
PARAGRAPH 18; IT'S FOUR LINES LONG.  IT SAYS, "ANY
NON-PARTY SUBPOENA" -- "ANY NON-PARTY SUBPOENA OR REQUEST
TO PRODUCE DOCUMENTS AND THINGS OR INFORMATION OR TO GIVE
DEPOSITION TESTIMONY SHALL HAVE THE FULL BENEFITS AND
PROTECTIONS OF THIS PROTECTIVE ORDER" -- SO IT'S
PERMISSIVE -- "AND MAY DESIGNATE DOCUMENTS OR DEPOSITION
TESTIMONY AS CONFIDENTIAL OR HIGHLY CONFIDENTIAL, SUBJECT
TO THE PROVISIONS HERE."

A COUPLE OF PROCEDURAL THINGS.

THIS PROTECTIVE ORDER IS ISSUED OUT OF NEW
YORK.  THAT WOULD MEAN THAT ANYTIME THERE WOULD BE AN
ENFORCEMENT, BAYTSP WOULD HAVE TO GO ALL THE WAY ACROSS
THE COUNTRY TO JUDGE STANTON'S COURT AND THEN PURSUE.

SECOND OF ALL, THERE'S ONLY TWO LEVELS OF

CONFIDENTIALITY THAT THIS PROTECTIVE ORDER ALLOWS THIRD

PARTIES TO USE.  THERE IS ANOTHER CATEGORY CALLED "HIGHLY

RESTRICTIVE SOURCE CODE" OR SOMETHING.  THIS PROTECTIVE

ORDER DOESN'T ALLOW IT.  SO THIS -- AT AN ABSOLUTE

MINIMUM, IF SOURCE CODE WERE TO BE PRODUCED, THERE WOULD

HAVE TO BE MODIFICATIONS UNKNOWN.  WE OFFERED TO TALK TO

THEM ABOUT IT AT THE TIME, BUT QUITE FRANKLY, WE REACHED

AN AGREEMENT THAT THEY DIDN'T WANT THE SOURCE CODE.  ALL

THEY WANTED TO KNOW IS WHAT IT DOES AND THE INFORMATION

AS TO HOW IT GOES.  THAT WAS THE AGREEMENT REACHED;

THAT'S WHY WE DIDN'T PURSUE NEGOTIATIONS.

        FURTHERMORE, "CONFIDENTIAL" AND "HIGHLY

CONFIDENTIAL" -- STICKING WITH THE "HIGHLY CONFIDENTIAL,"

IT ALLOWS ANYONE THAT EITHER VIACOM, YOUTUBE, OR THE

FOOTBALL LEAGUE -- AND IN THE PROTECTIVE ORDER -- IF YOU

EVER LOOKED AT THE FULL CITE, THERE'S LIKE A HUNDRED

PLAINTIFFS ALL INVOLVED HERE -- AND ANY ONE OF THEM, IF

THEY THINK THE INFORMATION IS USEFUL, CAN USE IT AT TRIAL

OR AT A DEPOSITION.  BAYTSP AND/OR ANY OF ITS CUSTOMERS

THAT THEY PRODUCE DOCUMENTS FOR, EVEN IF IT'S DESIGNATED

"HIGHLY CONFIDENTIAL," WOULD HAVE NO IDEA OF WHAT IT'S

BEING USED FOR.

        NOW, WE ARE WILLING TO DO THIS FOR VIACOM

BECAUSE WHEN THIS HAPPENED, WE SAID, "VIACOM, CAN WE

PRODUCE THIS MATERIAL?  IT'S YOUR INFORMATION.  IT'S

COMMUNICATIONS FROM YOU."

AND THEY SAID, "YES. WE ENTERED INTO THE
PROTECTIVE ORDER, WE ARE GOING TO BE AT THE HEARINGS, WE
ARE GOING TO BE AT THE DEPOSITIONS, WE ARE GOING TO BE AT
TRIAL, WE KNOW WHO HAS SEEN IT." SO IT'S OKAY TO THEM.
THE THIRD PARTIES HAVE NO WAY OF KNOWING WHO IS SEEING
IT.

THE COURT: BUT YOU ARE THE KEEPER OF THE
INFORMATION?

MR. HEMMINGER: OH, NO -- WELL, WE ARE THE
KEEPER --

THE COURT: I DON'T UNDERSTAND WHY YOU ARE HERE
AS OPPOSED TO VIACOM STANDING UP HERE. IT'S ADDRESSED TO
YOU, AND IT'S ADDRESSED TO YOU BECAUSE WHAT THEY WANT
FROM VIACOM THEY NEED AND -- MAYBE YOU CAN HELP THEM WITH
THIS -- YOU HAVE IT, YOU HAVE ACCESS TO IT, YOU ARE THE
ONE THAT'S STANDING HERE SAYING, "NO, THIS IS ONEROUS,
IT'S TOO MUCH, YOU ARE NOT GOING TO GET IT." AND THAT
CONFUSES ME AS TO WHICH PARTY I AM DEALING WITH OVER
HERE.

MR. HEMMINGER: FIRST OF ALL, WHY THEY
SUBPOENAED US -- NOT 100 PERCENT SURE. I DON'T THINK
SUBPOENAING BAYTSP FOR INFORMATION IT HAS ABOUT VIACOM
AND ITS COMMUNICATIONS IS -- IS IT RELEVANT? I DON'T
KNOW. BUT I WOULD NOT COME IN FRONT OF YOU, YOUR HONOR,

AND SAY, "NO, I DON'T HAVE TO PRODUCE THAT." WE AGREED

TO PRODUCE THAT. OKAY?

THE ONLY ISSUE AND THE REASON WE ARE HERE, I

THINK, IS WITH THESE THIRD PARTIES, THEIR ATTEMPT TO

CIRCUMVENT GOING TO HBO, UNIVERSAL, AND THE SMALLER

LITTLE ENTITIES WHO WE DO WORK FOR AND TRY TO GET THAT

INFORMATION FROM US. THEY AGREE THE ONLY ISSUE RELATED

TO THE VIACOM DOCUMENTS AND THE FOOTBALL LEAGUE DOCUMENTS

ISN'T IN FACT WITH REGARD TO HOW THEY GET COPIES OF THEM,

HOW THEY LOOK AT THEM AND HOW THEY REVIEW THEM WHICH,

QUITE FRANKLY, I THINK IS NOT NECESSARILY SOMETHING THAT

SHOULD BE HERE.

SO WHY ARE THEY GOING AFTER US? I DON'T SEE

THE RELEVANCE OF IT.

THE COURT: WELL, I GUESS WHAT I AM TRYING

TO -- I MEAN, IT'S NOT THE "WHY" AS MUCH AT THIS POINT AS

THE "PROCEDURAL," AS THIS IS A MOTION.

MR. HEMMINGER: YES.

THE COURT: AND IT'S A MOTION ABOUT GETTING

THINGS. AND IT'S FROM YOU AS OPPOSED TO -- WHAT ARE WE

DOING?

MR. HEMMINGER: THEY ARE LOOKING TO GET OUR

VIACOM-RELATED AND PLAINTIFF-RELATED MATERIAL WHICH WE

HAVE ALL ALONG BACK A YEAR AGO AGREED TO PRODUCE TO THEM.

AS I UNDERSTAND THE ISSUE NOW, THERE ARE TWO

CATEGORIES OF DOCUMENTS THEY WANT: ALL OF THE
INFORMATION THAT WE HAVE WITH ALL OF OUR THIRD PARTIES
WHICH, QUITE FRANKLY, WOULD BE EVERY DOCUMENT, AND
THERE'S OVER FOUR TERABYTES OF INFORMATION. IT'S A WHOLE
LOT OF INFORMATION, A THOUSAND OR WHATEVER GIGABYTES.

THE COURT: NO, I UNDERSTAND THAT.

MR. HEMMINGER: SO IT WOULD PROBABLY BE ABOUT A
YEAR OR MORE BEFORE THEY COULD GET THAT, EVEN IF THEY
WANTED IT, NOT TO MENTION THE OTHER THINGS.

SO THEY WANT THESE THIRD PARTIES: THE HBOS,
THE OTHERS. VIACOM DOESN'T HAVE THAT. I MEAN, BAYTSP'S
BUSINESS IS, "I WILL BE YOUR AGENT TO REVIEW THE
INTERNET." THAT'S ALL IT DOES. WE ARE GIVING THAT
MATERIAL TO THEM. WE DON'T WANT TO GIVE THE THIRD PARTY
INFORMATION; IT WOULD TOTALLY DESTROY OUR BUSINESS AND IT
WOULD CREATE A HUGE BURDEN -- FORGET THE MONEY ISSUE --
IT WOULD CREATE A HUGE BURDEN IN TRYING TO CONTACT AND
DEAL WITH ALL OF THESE PEOPLE. AND THEY WANT OUR SOURCE
CODE, WHICH THE SOURCE CODE EXACTLY HOW IT DOES IT,
DOESN'T MATTER. THE SOURCE CODE FOR THE SIMS, WHICH IS
USED FOR THE YOUTUBE, IS BACK-END DATABASE SOFTWARE. IF
DOESN'T HAVE TO DO WITH MONITORING THE CONTENT.

SO WHY ARE THEY WITH US? THOSE ARE THE ONLY
TWO REASONS I CAN THINK. THE WHOLE ISSUE OF DELAY AND
EVERYTHING THEY ARE TALKING ABOUT WITH THE VIACOM

DOCUMENTS, FRANKLY, I DON'T REALLY KNOW WHY THEY ARE HERE
COMPLAINING TO YOU.  OKAY?  WE HAVE AGREED TO GIVE IT TO
THEM.  VIACOM, YOU KNOW, THEY COULD HAVE GONE IN FRONT OF
STANTON AND GOTTEN THIS PERHAPS SIX, NINE MONTHS AGO IF
THEY THOUGHT IT WAS IMPORTANT.  MY UNDERSTANDING IS THE
AGREEMENT -- THEY ARE PRODUCING THE DOCUMENTS FOR THE
DEPOSITIONS BEFORE THE DEPOSITIONS OF THE PEOPLE.

        AND MY OTHER UNDERSTANDING IS ALSO THAT JUDGE
STANTON HAS ADDRESSED THIS VERY ISSUE.  AND HE SAID,
"VIACOM AND YOUTUBE, I'M SORRY.  I'M NOT GOING TO SIT
HERE AND WAIT FOR ALL THE DOCUMENTS TO BE PRODUCED,
WHETHER IT'S THIRD PARTIES OR IN-HOUSE PEOPLE.  YOU ARE
GOING TO START TAKING YOUR DEPOSITIONS, AND I UNDERSTAND
THERE MAY HAVE TO BE SOME DUPLICATE DEPOSITIONS.  THAT'S
THE WAY IT IS."

        SO THIS WHOLE CRITICAL NEED -- "WE ABSOLUTELY
NEED" -- THIS HAS BEEN ADDRESSED, AS I UNDERSTAND IT, BY
JUDGE STANTON, AND IT SHOULD NOT BE HERE THROWN ON YOU OR
BAYTSP.  THAT'S AN ISSUE BETWEEN THEM.

        THE COURT:  WELL, THAT'S NOT QUITE HOW IT
HAPPENS; THAT'S WHY IT IS HERE.  BUT --

        MR. HEMMINGER:  NO, I UNDERSTAND.

        THE COURT:  BUT IN THE PAPERS, I DIDN'T SORT OF
UNDERSTAND THE RELATIONSHIPS, AND THAT WAS CONFUSING TO
ME.

MR. HEMMINGER: RIGHT.

THE COURT: COUNSEL, COME UP NEXT TO HIM AND HELP WITH THIS.

MR. HIBBARD: YOUR HONOR, MAY I SPEAK BEFORE WE HEAR AGAIN FROM MR. MANCINI?

THE COURT: GO AHEAD.

MR. HIBBARD: YOUR HONOR, STEVE HIBBARD OF SHEARMAN & STERLING FOR VIACOM INTERNATIONAL.

MR. MANCINI BEGAN BY SAYING THERE ARE SIX ISSUES. AND THE FIRST ISSUE, I THINK, REALLY RELATES IN PART WHY THIS COURT HAS THIS MOTION TO COMPEL IN FRONT OF IT.

THE COURT: WELL, IT'S A DISCOVERY -- AN OUT OF DISTRICT DISCOVERY MOTION, AND THAT USUALLY ENDS UP IN THE DISTRICT THEY ARE SEEKING THE DISCOVERY. SO THAT'S WHY YOU ARE HERE, RIGHT?

MR. HIBBARD: YES, YOUR HONOR. BUT WHAT I MEAN SPECIFICALLY IS IF YOU THINK OF BAYTSP SERVICING DOZENS AND DOZENS OF CLIENTS, THE SCOPE OF THE SUBPOENA REACHES THE ENTIRE CLIENT BASE OF BAYTSP. A SMALL NUMBER OF THOSE CLIENTS WOULD BE THE VIACOM ENTITIES, VIACOM INTERNATIONAL.

NOW, AS TO THE VIACOM INTERNATIONAL DOCUMENTS, THERE HAS BEEN AN AGREEMENT TO PRODUCE THOSE DOCUMENTS, SUBJECT TO THE APPROPRIATE WORK PRODUCT REVIEW. SO THAT

1  ISSUE OF "SHOULD THOSE DOCUMENTS BE PRODUCED BY BAYTSP?"

2  IS NOT REALLY BEFORE THE COURT.  WHAT I THINK THE COURT

3  WAS HEARING IS THE GREAT CONCERN OF BAYTSP AS TO THOSE

4  DOCUMENTS OF ALL OF ITS OTHER CUSTOMERS, AND AS TO WHICH,

5  OF COURSE, VIACOM HAS NO POSITION OR NO INTEREST AT ALL.

6  SO I THINK THAT IS PART OF WHAT MAY BE A LITTLE BIT OF

7  THE CONFUSION ABOUT WHAT IS ASKED OF THE COURT AND SO

8  FORTH.

9          LET ME SPEAK, THOUGH, TO THAT PART OF IT THAT

10  RELATES SPECIFICALLY TO THE DOCUMENTS RELATING TO VIACOM,

11  IF I MAY.  THOSE DOCUMENTS HAVE BEEN SOUGHT BY DOCUMENT

12  REQUESTS BY THE DEFENDANTS FROM VIACOM DIRECTLY.  THOSE

13  REQUESTS ARE SUBSTANTIALLY OVERLAPPING WITH THE SUBPOENA

14  DIRECTED TO BAYTSP.  THOSE DOCUMENTS ARE IN THE PROCESS

15  OF BEING PRODUCED BY VIACOM, A PROCESS THAT'S BEEN GOING

16  ON FOR SOME TIME, AND WILL BE TURNED OVER.  SO IN SOME

17  RESPECTS, TO THE EXTENT THE SUBPOENA DIRECTED TO BAYTSP

18  SEEKS THE DOCUMENTS RELATING TO VIACOM, ALTHOUGH IT'S NOT

19  TRUE FOR ALL CATEGORIES -- FOR EXAMPLE, SOURCE CODE AND

20  SO ON -- IT WOULD BE SUBSTANTIALLY OVERLAPPING AND WE

21  WOULD EXPECT THAT THE PRODUCTION WHEN MADE BY VIACOM WILL

22  BE --

23          THE COURT:  AND SO WHEN IS THAT?

24          MR. HIBBARD:  THAT IS -- IT IS HAPPENING ON A

25  ROLLING-BASIS.

THE COURT:  WHEN IS THE ROLL OVER?

                    MR. HIBBARD:  EXCUSE ME, YOUR HONOR?

                    THE COURT:  WHEN IS THE ROLL OVER?

                    MR. HIBBARD:  I DON'T KNOW THAT.  I BELIEVE
IT'S MARCH 15, YOUR HONOR.  I THINK THAT WE ARE TRYING TO
HAVE THESE THINGS MOVE ON A CALENDAR THAT IS THE SAME
TIME BECAUSE ESSENTIALLY IT'S THE SAME DOCUMENT REVIEW AT
THIS POINT.

                    WITH RESPECT TO THE TIMING, ONE OF THE
THINGS -- THIS IS A VERY, VERY LARGE LAWSUIT.  BOTH
SIDES, I THINK, ARE BURDENED FOR THEIR OWN DOCUMENTS, LET
ALONE ISSUES INVOLVING THIRD PARTIES.  AND THERE'S A
GREAT AMOUNT OF ENERGY BEING DEVOTED BY ALL SIDES TO MOVE
THIS CASE FORWARD AS RAPIDLY AS POSSIBLE.

                    ONE OF THE THINGS, FOR EXAMPLE, THAT YOUTUBE
HAS TOLD JUDGE STANTON IN NEW YORK IS THAT EVEN THOUGH IT
HAS 100 ATTORNEYS REVIEWING ITS OWN DOCUMENTS TO BE ABLE
TO PRODUCE THOSE DOCUMENTS TO VIACOM, IT TAKES YOUTUBE AT
LEAST A MONTH TO REVIEW HALF A MILLION DOCUMENTS.  AND SO
WE HAVE A SET OF DOCUMENTS THAT ARE SUBJECT TO NOW A WORK
PRODUCT REVIEW; THAT'S ABOUT 650,000 DOCUMENTS.  SO WE
HAVE TOLD YOUTUBE THAT WE WILL WORK EXTREMELY DILIGENTLY,
DEPLOY A LARGE NUMBER OF ATTORNEYS, AND WE WILL GET THAT
DONE BY MARCH 15, AND THAT'S WHAT WE ARE WORKING
EXTREMELY HARD TO DO AND TO ACCOMPLISH.  AND, OF COURSE,

IT'S ON A ROLLING-BASIS.

THERE ARE ALREADY OVER 100,000 PAGES AVAILABLE
TO YOUTUBE FOR REVIEW, WHICH THEY HAVEN'T BEGUN TO REVIEW
FOR REASONS THAT RELATE TO, I THINK, A DISPUTE WITH
BAYTSP OVER ACCESS, BUT AN OFFER HAS BEEN MADE THAT THEY
SHOULD HAVE THE EXACT SAME ACCESS TO THIS DATABASE THAT
VIACOM HAS. AND INDEED, WE HAVE TOLD YOUTUBE THAT WE DO
NOT BELIEVE -- "WE," VIACOM -- WOULD BE ABLE TO SEE
TECHNICALLY ANYTHING THAT YOUTUBE IS LOOKING AT IN THE
SAME DATABASE BECAUSE WE BELIEVE WE ARE GOING TO BE IN A
DIFFERENT USER GROUP. SO WE WILL APPROACH IT FROM AN
ENTIRELY DIFFERENT POINT OF VIEW. WE, VIACOM, WOULD
NEVER SEE WHAT YOUTUBE DOES OR DOES NOT DO WITH THE
DATABASE. IF THAT WERE NOT TECHNOLOGICALLY THE CASE,
YOUR HONOR, WE HAVE SAID TO THEM, SPECIFICALLY, WE WILL
STIPULATE THAT WE WOULD NOT DO THAT AS A MATTER OF ETHICS
AND THE WAY ATTORNEYS SHOULD PRACTICE LAW; WE WILL NOT IN
ANY WAY, SHAPE OR FORM SEEK TO FIND OUT WHAT AND HOW THEY
DO WHEN THEY CHOOSE TO LOOK AT THE ELECTRONIC DOCUMENTS.
AND SO WE WILL NOT DO THAT.

THE COURT: BUT IT'S PHYSICALLY POSSIBLE? IN
OTHER WORDS --

MR. HIBBARD: NO, I BELIEVE IT'S NOT. I
BELIEVE THAT WE ARE IN A DIFFERENT ACCESS POINT TO A
DATABASE AND SO WE CAN'T SEE HOW THEY GO IN. FRANKLY, I

DON'T KNOW THAT THE TECHNICAL PEOPLE HAVE FULLY
INVESTIGATED THAT. WE BELIEVE THAT THERE WILL BE NO
ISSUE THERE. BUT WE HAVE SAID FORTHRIGHTLY THAT EVEN IF
IT WERE TECHNOLOGICALLY POSSIBLE, IT IS SOMETHING THAT WE
WILL NOT GO ANYWHERE NEAR.

I BELIEVE THERE IS AN ISSUE THAT THEY STILL
HAVE WITH REGARD TO --

THE COURT: THAT'S LIKE IN AN ORDINARY PAPER
CASE TELLING THEM, "GEE, GIVE ME EVERYTHING THAT YOU HAVE
EVER DONE IN THIS CASE, AND WE PROMISE NOT TO LOOK AT
THAT WHICH WE ARE NOT SUPPOSED TO SEE"?

MR. HEMMINGER: YOUR HONOR, MAY I ADDRESS THAT?
BECAUSE THIS CAME UP YESTERDAY.

THE COURT: COME ON.

MR. HEMMINGER: AND THE QUESTION WAS, YOU KNOW,
"WELL, WITH THIS DATABASE YOU HAVE, WE DON'T WANT BAYTSP
OR VIACOM SEEING WHAT WE ARE LOOKING AT." SETTING ASIDE
WHETHER THEY LOOK AT ONE DOCUMENT OR THE SEARCH TERMS
THEY USE, WHETHER OR NOT THAT IS WORK PRODUCT, FRANKLY,
BAYTSP DOESN'T CARE. VIACOM SAID IT DOESN'T CARE.

AND WE WERE ABLE TO EARLY THIS MORNING CONFIRM
WITH KROLL -- THIS IS ALL BEING HANDLED BY AN OUTSIDE
THIRD PARTY, KROLL. KROLL INTERNATIONAL IS A WELL KNOWN
ELECTRONIC DISCOVERY FIRM, HIGHLY REPUTABLE. WE WENT
WITH THEM BECAUSE OF THE SECURITY OF BAYTSP'S DOCUMENTS.

1    I HAVE BEEN INFORMED THAT IT CAN BE SET UP THAT THEY CAN

2    LOCK IT OUT AND WE CANNOT SEE THE SEARCH TERMS.  OF

3    COURSE, WHEN THEY CHECK A DOCUMENT AND SAY, "WE WOULD

4    LIKE YOU TO PRODUCE A FORMAL COPY WITH A PRODUCTION

5    NUMBER AND CONFIDENTIALITY DESIGNATION," WE WOULD KNOW

6    THAT AND WE WOULD ONLY KNOW THAT.

7         MR. HIBBARD:  YOUR HONOR, BOTH SIDES HAVE

8    ACCESS TO THE DATABASE SO WE CAN ALL LOOK AT WHATEVER WE

9    WANT TO LOOK AT.  THE ISSUE IS WHETHER WE ARE LOOKING

10   OVER THEIR SHOULDER.

11        THE COURT:  OKAY.  THAT WAS MY QUESTION.

12        MR. HIBBARD:  YEAH, AND WE WOULDN'T BE.  AND

13   IT'S THE SAME AS IN A PAPER CASE.

14        THE COURT:  IT JUST WOULDN'T BE THAT YOU CAN OR

15   WOULDN'T BE BECAUSE YOU CAN'T?

16        MR. HEMMINGER:  BECAUSE YOU CAN'T.

17        MR. HIBBARD:  IT WOULD BE BOTH; IT WOULD BE

18   BOTH.  WE WOULD NOT DO IT BECAUSE WE HAD SAID WE WOULD

19   NOT DO IT, AND WE WOULD NOT DO IT BECAUSE WE CANNOT DO

20   IT.  AND THE ANALOGY WOULD BE THIS: --

21        THE COURT:  OH, I'M SURE THE COMFORT LEVEL IS

22   MORE IF YOU CANNOT DO IT.

23        MR. HIBBARD:  CLEARLY.  AND WE ARE IN FAVOR OF

24   THAT AND WE SUPPORT WE THAT AND WE WANT THAT.

25        THE COURT:  EVEN IN THE PAPER WORLD, THAT IS A

1  PRETTY DICEY PROPOSITION.

2          MR. HIBBARD:  WELL, YOU ARE RIGHT, YOUR HONOR.

3  I SUPPOSE IT WAS.  BUT IF YOU PUT A BUNCH OF DOCUMENTS IN

4  A ROOM AND YOU PROMISE THAT YOU ARE NOT GOING TO GO IN

5  AND WATCH THEM WHILE THEY DO IT, THAT'S REALLY THE SAME

6  SORT OF THING WE ARE SAYING; WE ARE NOT GOING TO GO WATCH

7  IT.

8          THE COURT:  EXCEPT THEY DON'T WON'T LET YOU IN

9  THE ROOM TO -- THEY HAVE THEIR COPY MACHINE IN THERE AND

10 THEY ARE DOING THAT.

11         MR. HIBBARD:  MY POINT IS SIMPLY -- I DON'T

12 MEAN TO QUIBBLE OR ARGUE ABOUT THIS AT ALL, YOUR HONOR,

13 BUT --

14         THE COURT:  I JUST WANT TO MAKE SURE I

15 UNDERSTAND IT, BECAUSE THE TECHNOLOGY IN THIS IS A LITTLE

16 BIT MORE COMPLICATED THAN USUAL, AND SO I'M TRYING TO

17 MAKE SURE I UNDERSTAND WHO IS ASKING FOR WHAT AND WHY AND

18 UNDER WHAT CONDITIONS.

19         MR. HIBBARD:  WE ARE DELIGHTED AND HOPE THAT

20 THE TECHNOLOGY FULLY BLOCKS US OUT PERPETUALLY AND

21 PERMANENTLY AS TO ANYTHING THEY ARE LOOKING AT.  WE HAVE

22 NO INTEREST IN SEEING WHAT THEY SEE AND HOW THEY SEE IT.

23         THE COURT:  AND I DON'T DOUBT THAT.  BUT IS IT

24 POSSIBLE, OR IS THERE --

25         MR. HIBBARD: I UNDERSTAND --

```
 1          THE COURT:  -- A REAL TECHNICAL DOUBT ABOUT

 2     THAT?

 3          MR. HIBBARD: I HAVE NOT DISCUSSED THIS WITH

 4     KROLL ONTRACK.  WE HAVE JUST HEARD THAT HE HAS HAD A

 5     CONVERSATION, AND KROLL ONTRACK SAYS WE ARE LOCKED OUT.

 6     SO I THINK THE ANSWER IS WE ARE LOCKED OUT.

 7          THE COURT:  IS THAT THE MAJOR PROBLEM?

 8          MR. MANCINI:  YOUR HONOR, THERE'S TWO PROBLEMS.

 9     MAY I SPEAK?

10          THE COURT:  WHY DON'T YOU JUST COME UP.  MIGHT

11     AS WELL STAND UP HERE.

12          MR. MANCINI:  SO THERE'S TWO PROBLEMS.  THE

13     PROPOSAL THAT WE JUST GOT YESTERDAY IS THAT WE HAVE

14     ACCESS TO THEIR DATABASE.  WE ASKED THEM SPECIFICALLY

15     YESTERDAY, "IF THE SYSTEM HAS A BLOCKING FUNCTION, WOULD

16     YOU AGREE TO ENABLE THE BLOCKING FUNCTION SO YOU COULD

17     NOT VIEW OUR ACTIVITY?"  NEITHER OF THEM WOULD SAY THEY

18     WOULD AGREE.

19          MR. HIBBARD:  THAT'S NOT CORRECT.

20          MR. MANCINI:  LET ME FINISH.

21          THE COURT:  DON'T STAND AT THE PODIUM AND TALK

22     TO EACH OTHER.

23          MR. HIBBARD:  I APOLOGIZE, YOUR HONOR.

24          MR. MANCINI:  WHAT VIACOM SAID IS THAT THEY

25     WILL AGREE AS A MATTER OF PROFESSIONAL RESPONSIBILITY TO
```

NOT DO THAT, BUT THEY WOULD NOT AGREE TO ENABLE THE BLOCK
FUNCTION.  BAYTSP WOULD NOT MAKE EITHER REPRESENTATION;
THEY WERE GOING TO INVESTIGATE.

THAT'S THE FIRST PROBLEM.

THE SECOND PROBLEM IS THE CALL WE ARE TALKING
ABOUT.  THEY --

THE REPORTER:  COUNSEL, YOU NEED TO SLOW DOWN.

THE COURT:  SLOW DOWN.

MR. MANCINI:  SORRY.

THEY WILL PRINT THE DOCUMENTS FOR US.  NO
BETTER WAY TO KNOW ABOUT OUR WORK PRODUCT ACTIVITY THAN
TO SEE EVERYTHING WE ARE LOOKING AT AND PRINT IT.

THE COURT:  IF YOU AGREE TO THAT, THAT'S FINE.

MR. MANCINI:  NO, THERE'S NO WAY WE WILL AGREE.
WE THINK --

THE COURT:  YOU DO NOT ORDER THAT.

MR. MANCINI:  I'M SORRY, YOUR HONOR, WITH ALL
DUE RESPECT -- I UNDERSTAND.

WE THINK THE SIMPLEST SOLUTION IS SIMPLY BURN
IT ONTO CDS, AND WE WILL UPLOAD IT TO OUR SYSTEM.  WE CAN
AVOID ALL THESE THORNY WORK PRODUCT, WAIVER -- OR
POTENTIAL WAIVER PROBLEMS THAT THEY ARE SUGGESTING BY
THEIR SYSTEM.  IT SHOULD NOT BE THAT BIG OF A BURDEN.
THEY HAVE ALREADY UPLOADED IT TO THE KROLL DATABASE; JUST
GIVE IT TO US IN THE NATIVE FORMAT AND WE WILL UPLOAD IT

TO OUR EPIC DATABASE.  IT'S AS SIMPLE AS THAT.

MR. HIBBARD:  YOUR HONOR, TO BE VERY CLEAR,
I MADE THE REPRESENTATION -- MY COLLEAGUE MADE THE
REPRESENTATION YESTERDAY THAT WE WOULD ABSOLUTELY,
ABSOLUTELY DEPLOY ANY TECHNICAL BLOCK THAT WE COULD.
SO MR. MANCINI IS INCORRECT IN THAT REGARD.

WITH REGARD TO THE FORM OF THE DATABASE AND
WHETHER IT'S DOWNLOADED, PROVIDED TO THEM, THAT IS NOT A
VIACOM ISSUE.  THE POINT WE WERE SPEAKING TO WAS BAYTSP
HAS MADE IT AVAILABLE THE WAY IT HAS CHOSEN TO MAKE IT
AVAILABLE AND THAT THEY HAVE UNDERTAKEN TO GIVE
DEFENDANTS THE SAME ACCESS THAT VIACOM HAS.  IF BAYTSP
CHOOSES TO GIVE IT IN ONE FORM VERSUS ANOTHER FORM,
THAT'S NOT A POSITION THAT VIACOM TAKES ONE WAY OR THE
OTHER.

I JUST WANT IT TO BE CLEAR FOR THE RECORD THAT
VIACOM HAS SAID YESTERDAY AND SAYS TODAY -- STANDS BEFORE
YOUR HONOR -- THAT IF IT WERE THROUGH THIS DATABASE,
VIACOM EMBRACES ANY TECHNOLOGICAL BLOCK THAT MAKES IT
BLIND AS TO ANYTHING THE DEFENDANTS ARE DOING, AND BEYOND
THAT MAKES ITS REPRESENTATION TO THE COURT THAT IT WOULD
NOT LOOK, EVEN IF IT COULD.  THAT WAS REALLY THE POINT WE
WERE MAKING AND NOTHING MORE THAN THAT.

MR. MANCINI:  YOUR HONOR, CAN I BE -- AT SOME
POINT I WANT TO RESPOND TO THE ARGUMENTS THAT HAVE BEEN

SAID IN OPPOSITION.  SHOULD I SIT AND COME BACK?

THE COURT:  NO, YOU MIGHT AS WELL ALL JUST STAND THERE.

MR. HEMMINGER:  EXCUSE ME, YOUR HONOR.

I KNOW HOW THE DOCUMENTS ARE KEPT.  I KNOW -- I CAN ADDRESS ALL OF THESE ISSUES, IF I MAY.

THE COURT:  WELL, LET ME -- WHY DON'T I GIVE YOU MY PROPOSED -- WHAT I WALKED OUT HERE WITH, AND THEN WE WILL FIGURE OUT WHERE YOU WANT TO GO FROM THERE.

DOCUMENT REQUEST NO. 1, GRANT.

DOCUMENT REQUEST NO. 2, GRANT.

DOCUMENT REQUEST NO. 3, GRANT.

DOCUMENT REQUEST NO. 4, GRANT.

DOCUMENT NO. 5, GRANT, WITH SOME NARROWING.

NO. 6, TOO BROAD, MIGHT HAVE TO LIMIT THAT.

NO. 7, GRANT.

NO. 8, GRANT.

NO. 9, GRANT, WORRIED ABOUT ATTORNEY-CLIENT PRIVILEGE ISSUES THERE.

NO. 10, BROAD, SEE IF YOU CAN NARROW THAT.

NO. 11, GRANT.

NO. 12, GRANT.

NO. 13, GRANT.

NOW, THOSE ARE SIMPLISTIC RESPONSES TO THE REQUESTS.  I DIDN'T EVEN ATTEMPT TO FIGURE OUT HOW TO DO

THE ELECTRONIC ISSUES AND SOME OF THOSE OTHER THINGS.

SO WHAT I AM GOING TO DO IS, I AM GOING TO ADJOURN THIS FOR A HALF HOUR AND I AM GOING TO LET YOU USE MY COURTROOM AND THE CONFERENCE ROOM OUT FRONT AND SEE IF YOU CAN FIGURE OUT THE TECHNOLOGICAL PROBLEMS, BECAUSE THIS IS PRETTY MUCH WHERE I AM GOING ON THE SUBSTANTIVE ISSUES. BUT I DON'T FEEL LIKE I HAVE THE TECHNOLOGICAL ABILITY TO GRASP WITH THE TECHNOLOGICAL PROBLEMS, AND I WOULD BE HAPPY TO ORDER ANYTHING THAT THE THREE OF YOU CAN AGREE ON.

BUT SUBSTANTIVELY, AS FAR AS REQUESTS FOR DISCOVERY, THIS IS PRETTY MUCH WHERE MY POSITION IS. BUT IT'S MORE COMPLICATED BECAUSE OF THESE OTHER ISSUES, AND I DON'T KNOW THAT I CAN DO THAT WITHOUT YOUR HELP OR YOUR AGREEMENT, AND I DON'T THINK I GOT THAT KIND OF HELP IN YOUR PLAIN OLD ORDINARY DISCOVERY MOTION I HAD IN FRONT OF ME WITH ALL OF ITS TECHNOLOGICAL NUANCES.

SO DOES THAT MAKE SENSE TO YOU TO DO IT THAT WAY?

MR. MANCINI: YES.

MR. HIBBARD: YES.

THE COURT: OKAY.

MR. HEMMINGER: MAY I ASK A COUPLE QUESTIONS?

THE COURT: YOU MAY.

MR. HEMMINGER: BECAUSE, QUITE FRANKLY, THE

PRODUCTION AND TECHNOLOGICAL ISSUES ARE ABSOLUTELY MINOR.
WE HAD OFFERED TO PRODUCE THE DOCUMENTS, ALL OF THEM, IF
THEY PAID FOR IT, WHICH IS SIX CENTS A PAGE, WHICH IS
ABOUT SIX TIMES SEVERAL MILLION, WHICH IS SIX HUNDRED,
700,000.

   THE COURT:  I'LL PUT "COST" ON HERE, QUESTION
MARK.  IS THAT WHAT YOU ARE WORRIED ABOUT?

   MR. HEMMINGER:  YES.  THAT'S ONE ISSUE.

   THE OTHER THING IS YOU ARE SAYING GOING THROUGH
AND GRANTING THESE -- ARE YOU SAYING THAT YOU ARE
REJECTING THE ARGUMENTS ABOUT THE THIRD PARTIES?  BECAUSE
ALL OF THESE INCLUDE WITH THEM ANYBODY WHO HAS EVER DONE
ANY WORK -- WE HAVE DONE ANY WORK FOR AT BAYTSP.

   THE COURT:  CAN THAT BE RESOLVED BY PROTECTIVE
ORDER?

   MR. HEMMINGER:  NO.  I EXPLAINED THE ISSUES.
AND WE ONLY HAVE LIMITED INFORMATION ABOUT THEM.  AND THE
BURDEN OF REQUIRING US TO GO ON AND -- IT'S LIKE --

   THE COURT:  COUNSEL, THAT'S PRETTY MUCH WHERE I
AM AT, BASED ON THE PAPERS I HAVE.  SO GO OUT AND TALK
AND COME BACK TO ME AND YOU CAN RAISE THAT AGAIN AFTER
THAT.

   I DON'T KNOW, MAYBE THE THREE OF YOU CAN COME
UP WITH SOMETHING CREATIVE I CAN BUY INTO, BUT RIGHT NOW
THAT'S WHERE I AM AT.  SO HALF HOUR -- COME BACK AT 20

MINUTES AFTER?

MR. MANCINI:  THANK YOU, YOUR HONOR.

MR. HIBBARD:  THANK YOU, YOUR HONOR.

MR. HEMMINGER:  THANK YOU.

THE COURT:  AND LIKE I SAID, YOU CAN HAVE THE COURTROOM HERE -- THERE'S NOBODY ELSE HERE -- OR YOU CAN USE THE CONFERENCE ROOM, WHICH IS RIGHT OUTSIDE THE FRONT DOOR.  I WILL MAKE SURE IT'S UNLOCKED.

(RECESS FROM 10:49 TO 11:28 A.M.)

THE CLERK:  REMAIN SEATED.  PLEASE COME TO ORDER.

THE COURT:  YOU CAN SIT DOWN.  RETURNING TO VIACOM INTERNATIONAL VERSUS YOUTUBE, C 08-80211.

SO, COUNSEL, WHERE ARE WE?

MR. MANCINI:  YOUR HONOR, I THINK WE MADE SOME PROGRESS.

THE COURT:  GOOD.

MR. MANCINI:  SO THERE WERE A FEW ITEMS LEFT OPEN BY YOUR HONOR'S RULINGS.  THE FIRST IS THE FORM OF DISCOVERY.

IT SEEMS THAT THE PARTIES HAVE AGREED TO PERMIT AN ELECTRONIC DOWNLOAD FROM THEIR SERVICE PROVIDER, KROLL, TO OUR SERVICE PROVIDER.  THE OPEN REMAINING QUESTION IS REIMBURSEMENT OF COSTS.  WE DO NOT BELIEVE WE NEED TO INCUR THAT COST BECAUSE WE BELIEVE THIS IS

1 ALREADY VIACOM'S OBLIGATION. WE WOULD BE WILLING TO
2 CONSIDER, PROVIDED THERE WERE A REPRESENTATION THAT
3 VIACOM IS NOT ALREADY COMMITTED TO REIMBURSE BAYTSP FOR
4 THE COSTS OF COMPLIANCE WITH THE SUBPOENA, AND THAT THERE
5 BE SOME CLARITY ON -- SO THAT WE CAN UNDERSTAND WHAT
6 THESE COSTS ARE AND HAVE A FRAMEWORK OF THE OUTER
7 GOALPOST FOR THOSE COSTS.
8            THE SECOND --
9            THE COURT:  GO AHEAD.
10           MR. MANCINI:  THE SECOND --
11           THE COURT:  OH, YOU WANT TO RESPOND ONE BY ONE?
12           MR. HEMMINGER:  I THINK IT WOULD BE BETTER IF
13 WE RESPOND BY ONE BY ONE.
14           THE COURT:  OKAY.  SO WHY DON'T YOU DO THE COST
15 ISSUE.
16           MR. HEMMINGER:  CERTAINLY.  THERE IS NO
17 PROVISION IN THE FEDERAL RULES OF CIVIL PROCEDURE THAT
18 REQUIRES THE PRODUCING PARTY TO BEAR THE COST OF MAKING
19 THE COPY PRODUCED FOR INSPECTION.
20           IN THIS REGARD THE INFORMATION WAS COLLECTED
21 AND PUT ON A DATABASE.  TO GET IT OFF THE DATABASE, THE
22 ELECTRONIC DISCOVERY PROVIDER IN THIS CASE, KROLL
23 ONTRACK, REQUIRES A FEE IN THE NEIGHBORHOOD OF SIX CENTS
24 A PAGE TO DOWNLOAD IT.
25           WE HAVE OFFERED TO THEM ALL ALONG THAT WE WOULD

BE HAPPY TO PUT IT IN WHATEVER FORMAT THEY WANT IF THEY
PAID KROLL, NOT TO PAY BAYTSP, NOT TO ANYBODY, THEY JUST
PAID FOR THE ACTUAL COST OF GETTING IT DOWNLOADED IN THE
FORMAT THEY WANT FOR THE DATABASE.  AND I DON'T THINK
THIS IS A BURDEN THAT ANY PARTY PRODUCING DOCUMENTS --
WHETHER OR NOT THERE'S ANY INDEMNIFICATION AGREEMENT OR
NOT IN THIS CASE.

THE COURT:  AND WHY SHOULDN'T IT BE THAT WAY?

MR. MANCINI:  WELL, YOUR HONOR, THESE WOULD
OTHERWISE BE VIACOM COSTS, AND THERE'S A SIMPLE QUESTION
ON THE TABLE.  IS THERE ALREADY AN AGREEMENT IN PLACE FOR
VIACOM TO REIMBURSE THIS EXPENSE?  OTHERWISE, THERE WOULD
BE A CLEAR WINDFALL HERE.  AND THEY ARE VIACOM'S COSTS
BECAUSE THEY JUST OUTSOURCED THIS FUNCTION TO BAYTSP.
VIACOM COULD HAVE ITSELF DECIDED TO SEND TAKEDOWN NOTICES
TO YOUTUBE.  IT HIRED BAYTSP TO DO THAT; THEY ARE THEIR
AGENT.  THESE ARE VIACOM'S DOCUMENTS THAT ARE PRODUCED AT
THEIR REQUEST BY BAYTSP, BUT APPARENTLY NOT ALL KEPT BY
VIACOM, WHICH IS WHY WE ARE HERE; WE NEED THEM FROM
BAYTSP.  SO WE ARE SIMPLY SAYING IT IS A COST THAT VIACOM
ALREADY HAS AN OBLIGATION TO INCUR.  THERE MAY ALREADY BE
AN AGREEMENT, AND IF THAT AGREEMENT EXISTS, THEY SHOULD
INCUR THEM.

MR. HIBBARD:  YOUR HONOR, IF I MAY.  STEVE
HIBBARD FROM SHEARMAN & STERLING.

I DON'T BELIEVE THE CHARACTERIZATION OF THESE

DOCUMENTS AS "VIACOM'S DOCUMENTS" IS CORRECT.  BAYTSP IS

AN INDEPENDENT COMPANY CONTRACTED TO PROVIDE A SERVICE,

AND I DON'T BELIEVE THAT WE HAVE POSSESSION, CUSTODY OR

CONTROL OVER THESE DOCUMENTS, SO I DON'T BELIEVE IT'S

ACCURATE TO CALL THEM "VIACOM'S DOCUMENTS."

AS TO THE ISSUE OF WHETHER OR NOT THERE'S ANY

WRITTEN AGREEMENT --

THE COURT:  ARE THEY ANYBODY'S DOCUMENTS?

MR. HIBBARD:  ARE THEY BAYTSP'S DOCUMENTS, YOUR

HONOR?  AND THAT'S EXACTLY THE POINT, I THINK, THAT

MR. HEMMINGER WAS MAKING WITH REGARDS TO BAYTSP HAVING

SATISFIED THE OBLIGATIONS OF MAKING THE DOCUMENTS

AVAILABLE FOR INSPECTION.  I AM NOT AWARE OF ANY WRITTEN

UNDERTAKING BY VIACOM TO INDEMNIFY BAYTSP FOR THE COSTS

OF COMPLYING WITH THE SUBPOENA.  AND IF THERE WERE ANY

UNDERSTANDINGS, I AM FAIRLY CONFIDENT THAT THOSE

UNDERSTANDINGS WOULD NOT REACH THE SCOPE OF THE KIND OF

PRODUCTION THAT'S BEEN SOUGHT FROM BAYTSP, WHICH IS FAR

BEYOND ANYTHING FOR WHICH VIACOM HAD RETAINED BAYTSP TO

PROVIDE SERVICES.

SO I THINK WE ARE LEFT WITH THE POINT THAT THIS

IS A FINANCIAL ISSUE BETWEEN BAYTSP AND THE DEFENDANTS IN

THIS ACTION.  AND AS I UNDERSTAND IT, BAYTSP HAS MADE THE

DOCUMENTS AVAILABLE FOR INSPECTION AND THE ISSUE IS THAT

1  DEFENDANTS WISH TO HAVE THEM IN A DIFFERENT FORMAT MORE

2  CONVENIENT FOR THEM.  IT'S JUST THAT TO OBTAIN THAT,

3  KROLL ONTRACK, WHICH NOW HAS CREATED ITS DATABASE,

4  CHARGES FOR THAT.

5          THE COURT:  RESPOND.

6          MR. MANCINI:  YOUR HONOR, GIVEN THAT

7  REPRESENTATION, WE SIMPLY ASK FOR CONFIRMATION OF THAT

8  FACT.  AND AGAIN, WE DO BELIEVE THEY ARE ACTING AS THEIR

9  AGENT, SO IT IS THEIR OBLIGATION, AND UNDER THE CASE LAW

10  THAT MR. HEMMINGER HAS CITED.

11          BUT GIVEN THAT REPRESENTATION, THIS IS

12  SOMETHING THAT, FRANKLY, WE DON'T BELIEVE WE SHOULD PAY

13  FOR, BUT IF WE ARE OBLIGATED TO PAY FOR IT, WE JUST NEED

14  AN UNDERSTANDING HERE OF WHAT IT IS.  KROLL, I'M SURE,

15  HAS A LISTING OF HOW MANY DOCUMENTS ARE IN THE DATABASE,

16  WHAT THE CHARGES ARE.  IF WE CAN HAVE FULL DISCLOSURE OF

17  THESE CHARGES, WE BELIEVE WE ARE ENTITLED TO IT.

18          THE COURT:  AND IS THAT POSSIBLE, FULL

19  DISCLOSURE OF THE CHARGES?

20          MR. HEMMINGER:  OH, ABSOLUTELY.

21          THE COURT:  IT'S POSSIBLE, BUT IT'S NOT BEEN

22  COMPUTED?  I'M SORRY, I KEEP INTERRUPTING YOU.

23          MR. HEMMINGER:  NO, NO, THAT'S OKAY.

24          WHAT KROLL'S CHARGES ARE ARE THE ONES I HAVE

25  BEEN TELLING YOU.  IT DEPENDS ON THE FORMAT, BUT IT'S

ROUGHLY SIX TO EIGHT CENTS A PAGE FOR THEM TO DOWNLOAD
THAT.

   THE COURT:  THE MATH, ULTIMATELY --
APPROXIMATELY?

   MR. HEMMINGER:  WELL, IF YOU ARE GOING TO
CONTINUE WITH YOUR ORDER THAT IT REQUIRES EVERY DOCUMENT
IN BAYTSP WHICH, IF YOU DON'T CHANGE ANY OF YOUR
PRELIMINARIES -- I CAN'T TELL YOU.  IT COULD BE -- LET'S
SEE, WE JUST PULLED OUT OF THIS ONE A MILLION -- COULD BE
THREE, FOUR MILLION DOCUMENTS AT 10 PAGES A DOCUMENT.  IT
COULD BE 40 MILLION PAGES AT WHAT, 10 CENTS APIECE?  WHAT
DOES THAT COME OUT TO?

   THE COURT:  A LOT OF MONEY.

   MR. HEMMINGER:  YEAH.

   MR. MANCINI:  AGAIN, WE NEED TO HAVE A BETTER
UNDERSTANDING OF WHAT'S IN THE DATABASE.  I THINK WHAT
MR. HEMMINGER JUST ARTICULATED IS THAT'S WHAT HE THINKS
THE NEXT PRODUCTION IS, GIVEN YOUR HONOR'S RULINGS.  BUT
WHAT WE UNDERSTAND THE CURRENT PRODUCTION IS, IS 650,000
DOCUMENTS.  WE ARE HYPOTHECATING SOME MULTIPLIER, EITHER
FIVE OR 10 PAGES PER, SO ESTIMATING IN THE RANGE OF
SOMEWHERE BETWEEN THREE MILLION AND SIX MILLION PAGES.

   AND IF I UNDERSTOOD HIM CORRECTLY, THE CHARGE
THAT KROLL WOULD TRANSFER TO US IS APPROXIMATELY SIX
CENTS PER PAGE TO UPLOAD THE FILES TO US.  WE JUST WANT

GREATER CLARITY.  FOR EXAMPLE, I WOULD IMAGINE KROLL

WOULD HAVE SOME BULK RATES; AFTER SEVERAL HUNDRED

THOUSAND DOCUMENTS, PERHAPS THAT COST PER PAGE GOES TO

SOME LOWER AMOUNT.

THE COURT:  WE HAVE A SHAKING "NO" HEAD HERE.

MR. HEMMINGER:  LOOK, WE ARE WASTING A LOT OF

TIME ON AN ISSUE WHICH I -- AS TO THE COST THAT KROLL IS

GOING TO CHARGE.  I OFFERED, YOU KNOW, THAT WE WOULD BE

MORE THAN HAPPY TO SIT DOWN AND IF THEY WANT TO ENTER

INTO A SEPARATE AGREEMENT WITH KROLL TO TRY TO GET THE

INFORMATION AND TRY TO DO WHAT THEY WANT, THAT'S FINE;

HOWEVER, I DON'T THINK WE OUGHT TO BE COMING BACK AND

REVISITING THIS IF INDEED AND AFTER WE FIND OUT THAT

THERE ARE 40 MILLION PAGES OF DOCUMENTS THAT HAVE TO BE

PRODUCED, AND THEM COMING IN AND SAYING, "WELL, GEEZ, WE

DON'T WANT TO HAVE TO PAY FOR THAT."

SO FROM BAYTSP'S STANDPOINT, IT WOULD SIT THERE

AND WHATEVER -- IF THEY DON'T HAVE A SEPARATE AGREEMENT,

WHATEVER AGREEMENT THAT -- WHATEVER KROLL CHARGES, WE

WOULD PASS ON OFF TO YOUTUBE FOR THEM TO MAKE THE PAYMENT

TO KROLL FOR THE DOCUMENTS IN WHATEVER FORMAT THEY WANT.

MR. MANCINI:  AND AGAIN, WE ARE SIMPLY ASKING

FOR A FULL DISCLOSURE TO UNDERSTAND THIS PROCESS BETTER.

FOR EXAMPLE, YOUR HONOR, WHAT WE ARE NOT UNDERSTANDING IS

THIS DATA WAS UPLOADED TO KROLL AT SOME POINT.  I CAN'T

1 IMAGINE THAT UPLOADING WAS AT SIX CENTS A PAGE. IF THERE

2 ARE DISKS AT BAYTSP -- IN OTHER WORDS, IF WE STARTED FROM

3 SCRATCH, THEY SHOULD JUST GIVE US COPIES OF THOSE DISKS;

4 THAT WOULD BE FAR LESS THAN SIX CENTS A PAGE.

5 MR. HEMMINGER: YOUR HONOR, THE PROCESS THAT

6 WAS PROCEEDED THROUGH TO OBTAIN THIS INFORMATION, WE

7 RETAINED KROLL. KROLL CAME IN, WENT TO EVERYBODY IN

8 BAYTSP, UPLOADED AN IMAGE OF THEIR COMPUTER AS WELL AS

9 OFF OUR SERVERS. THEY THEN PROCESSED THAT REMOVING

10 SYSTEM FILES AND THE LIKE. THERE ARE NO QUOTE/UNQUOTE

11 "DISKS." AND THEN TO TURN BACK AND SAY THAT IN RESPONSE

12 TO THE SUBPOENA WE WOULD NEED TO JUST GO IN AND TURN OVER

13 EVERYBODY'S COMPUTER REGARDLESS OF WHETHER THEY HAD ANY

14 RELEVANT INFORMATION IS JUST UNWORKABLE.

15 THE COURT: WELL, I'M NOT SURE HE SAID THAT. I

16 THOUGHT HE THOUGHT IT WAS MORE ISOLATED THAN WHAT YOU ARE

17 SAYING.

18 MR. HEMMINGER: NO, WE TRIED TO COMPLY AS BEST

19 WE COULD TO GET THEM ALL THE DOCUMENTS RELATED TO VIACOM

20 AND YOUTUBE AND THE PLAINTIFFS. SO THEY UPLOADED THE

21 INFORMATION AND IT'S ALL SITTING ON A KROLL DATABASE,

22 WHICH WE ARE PAYING A MONTHLY FEE TO MAINTAIN IT AND

23 STORE IT, AND THEN WE ARE PAYING A MONTHLY FEE ONCE WE

24 PROCESS THOSE THROUGH A FILTER. SO THERE'S NO DISK.

25 THE COURT: THAT'S AVAILABLE TO THE OTHER SIDE?

I'M SORRY, GO AHEAD.

MR. HEMMINGER: AFTER WE FILTERED IT, DID OUR REVIEW, AND NOW IT'S UP TO VIACOM TO DO THEIR WORK PRODUCT PRIVILEGE REVIEW. YES, THEY WILL BE ABLE TO USE KROLL'S ONTRACK'S END-VIEW DATA PROCESSOR TO LOOK AT THAT, IF THEY WANT. THEY ARE SAYING THEY DON'T WANT TO DO THAT. WHAT THEY ARE SAYING IS, "WE WOULD MUCH RATHER GET A HARD DISK, A CD OR DVD WITH THIS INFORMATION ON IT."

TO DOWNLOAD THE INFORMATION THAT VIACOM SAYS IS NOT PRIVILEGED AND "YOU CAN HAVE" IS GOING TO REQUIRE THIS COST. I DON'T KNOW HOW MANY, YOU KNOW, PAGES OR HOW MANY DOCUMENTS THAT'S GOING TO BE, BUT IT IS A FIXED FEE THAT KROLL WILL CHARGE.

MR. MANCINI: YOUR HONOR, ALL I'M SAYING IS THERE MUST HAVE BEEN SOME INTERMEDIATE COPIES BEFORE KROLL UPLOADED IT TO THIS DATABASE.

MR. HEMMINGER: THERE IS NOT.

MR. MANCINI: WELL, ALL I'M ASKING FOR IS SOME DISCLOSURE ON THIS BECAUSE THERE MAY BE A SOLUTION THAT'S LESS THAN SIX CENTS A PAGE.

MR. HEMMINGER: YOUR HONOR, THERE IS NO SOLUTION OTHER THAN TURNING OVER THE RAW COMPUTERS, WHICH EXCEEDS THE SCOPE OF THE REQUEST. THERE'S INFORMATION ON THERE THAT IS NOT AT ALL CALLED FOR. AND THEN WHAT WE

WOULD HAVE TO DO, WE WOULD HAVE TO GO THROUGH AND LOOK --
WE WOULD HAVE TO RE-DO EVEN THE WORK WE HAVE DONE BEFORE
TO FILTER IT.  I MEAN, THIS IS -- I CANNOT BELIEVE THAT
THEY ARE REPRESENTING THAT WITH ALL THEIR EXPERIENCE THAT
THERE MUST BE SOME RAW DATA THAT COULD BE PROVIDED THAT
HASN'T BEEN REVIEWED.  WHEN YOU ARE TALKING ABOUT FOUR
TERABYTES OF DATA, YOU ARE TALKING ABOUT MILLIONS AND
MILLIONS AND MILLIONS OF PAGES OF DOCUMENTS WHICH CAN
ONLY BE REVIEWED THROUGH ELECTRONIC SEARCHES.

MR. MANCINI:  YOUR HONOR, I HAVE A SUGGESTION.

THE COURT:  GO AHEAD.

MR. MANCINI:  I BELIEVE WHAT IS THE ISSUE HERE
IS -- KNOWING A LITTLE BIT ABOUT DISCOVERY, I BELIEVE
WHAT MR. HEMMINGER IS TALKING ABOUT IS THIS COST PER PAGE
IS PROBABLY WHAT IS KNOWN IN THE INDUSTRY AS A
"BLOWBACK."  KROLL HAS TO CREATE SOME DATA.  ALL WE WOULD
SUGGEST -- AND I THINK MR. HEMMINGER IS OFFERING THIS --
IS WE, COUNSEL FOR GOOGLE AND YOUTUBE, OPEN UP A DIALOG
WITH KROLL AND THAT WE NEGOTIATE AN ARRANGEMENT TO FIGURE
OUT WHAT IS THE MOST EXPEDITIOUS AND INEXPENSIVE MEANS TO
GET THAT DATA TO OUR DATABASES.  BECAUSE I WOULD SUSPECT
THAT IF WE HAVE THAT DIALOG, WE WOULD FIND A WAY TO DO
THIS FOR LESS THAN SIX CENTS A PAGE.  AND I THINK HE IS
OFFERING THAT.

MR. HEMMINGER:  I OFFERED THAT BEFORE.  AND

IT'S NOT CALLED A "BLOWBACK"; IT'S CALLED "CREATING A
LOAD FILE."

       MR. MANCINI:  BUT I THINK THERE IS A SOLUTION
THAT WE CAN FIGURE OUT THAT'S LESS EXPENSIVE.

       MR. HEMMINGER:  WELL, ONCE AGAIN, THOUGH, WITH
THIS, PROVIDED THAT WE HAVE PRODUCTION NUMBERS TO CONTROL
THESE DOCUMENTS, AND ALSO PUTTING ON THEM THE
CONFIDENTIALITY DESIGNATION BECAUSE WE WILL NOT AND DO
NOT WANT TO PRODUCE DOCUMENTS WHICH ARE UNCONTROLLED.

       MR. MANCINI:  WE HAVE NO DISAGREEMENT WITH
THAT, YOUR HONOR.

       THE COURT:  OKAY.  SO IT SOUNDS LIKE THIS IS
SOMETHING THAT I SHOULD SUBMIT, AND GIVE YOU AN
OPPORTUNITY TO WORK IT OUT.

       MR. MANCINI:  I WOULD AGREE, YOUR HONOR.

       THE COURT:  BECAUSE IT SOUNDS LIKE IF YOU
UNDERSTAND EACH OTHER, AND I'M NOT COMPLETELY SURE THAT
YOU DO, BUT I THINK YOU ARE CLOSER THAN YOU WERE BEFORE,
THAT THIS MIGHT BE SOMETHING THAT YOU CAN WORK OUT.

       MR. MANCINI:  I THINK THAT'S RIGHT, YOUR HONOR.

       THE COURT:  I CAN'T HELP BUT CONFUSE IT.

       MR. MANCINI:  WELL, YOU CAN HELP CERTAINLY IN
ONE RESPECT, WHICH, WITH ALL DUE RESPECT, WE THINK THAT
THIS COST SHOULD NOT BE BORNE BY US.  BUT IF YOUR HONOR
IS INCLINED TO CAUSE US TO BEAR THAT -- AT LEAST WITH

RESPECT TO VIACOM'S DOCUMENTS -- WE BELIEVE THAT THIS IS
A SOLUTION THAT WE CAN WORK OUT WITH KROLL.

THE COURT:  AND YOU ANTICIPATE THAT IT'S LESS
THAN SIX CENTS A PAGE THE WAY THAT YOU ARE --

MR. MANCINI:  I WOULD THINK THAT WE CAN FIGURE
OUT A TECHNOLOGICAL FIX THAT WOULD BE LESS THAN THAT.

MR. HEMMINGER:  I HOPE TO LEARN THAT
INFORMATION BECAUSE KROLL IS GENERALLY INFLEXIBLE, BUT
MORE POWER TO YOU.

MR. MANCINI:  SO THE SECOND ISSUE, YOUR HONOR,
IS DEADLINES FOR PRODUCTION OF DOCUMENTS.  THE FIRST
CATEGORY RELATES TO VIACOM ENTITIES.  IT SEEMS THAT WE
HAVE AGREED WITH COUNSEL FOR VIACOM THAT THEY WILL
PRODUCE -- THAT THEY WILL COMPLETE THEIR REVIEW OF
DOCUMENTS THAT BAYTSP HAS IDENTIFIED AS BEING RESPONSIVE
FROM VIACOM-RELATED ENTITIES, AND PRODUCE TO US BY
FEBRUARY 15TH.

AS FOR NON-VIACOM-RELATED ENTITIES,
MR. HEMMINGER HAS REPRESENTED TO US, BUT WILL NOT COMMIT,
THAT HE BELIEVES IT WILL TAKE HIM SIX MONTHS.  WE THINK
THAT THEY SHOULD BE ORDERED TO PRODUCE THOSE DOCUMENTS
WITHIN SIX MONTHS, OR ROUGHLY JUNE 15TH.

I BELIEVE THERE'S NO DISPUTE AS TO THE FEBRUARY
15TH DATE.  I BELIEVE MR. HEMMINGER IS NOT WILLING TO
COMMIT TO JUNE 15TH, BUT WE THINK THAT THAT SHOULD BE

ORDERED BECAUSE THAT IS SUFFICIENT TIME; IT'S SIX MONTHS,
ESSENTIALLY.

MR. HEMMINGER:  OF COURSE, IT WILL DEPEND ON
THE SCOPE OF WHAT WE END UP COMING OUT OF HERE.  BUT WHAT
THIS INVOLVES IS NOTIFYING ALL OF THE THIRD PARTIES,
GETTING A RESPONSE BACK FROM THEM, ALLOWING THEM AT SOME
POINT TO INTERCEDE.  I HAVE NO DOUBT THEY WILL WANT TO DO
THE SAME TYPE OF REVIEW THAT VIACOM IS DOING, AND VIACOM
RECEIVED ACCESS TO THIS EITHER -- SOMETIME IN OCTOBER, SO
WE ARE LOOKING AT FIVE MONTHS THERE.  THAT DOESN'T EVEN
INCLUDE THE FIVE TO SIX MONTHS IT TOOK BAYTSP TO FILTER
AND PROCESS THE DATA TO GET IT THERE.

SO WHAT I TOLD COUNSEL WAS, I THINK INTERNALLY
THAT WE CAN HAVE THE BAYTSP REVIEW -- IN SEPARATING OUT
THE FEW NONRESPONSIVE DOCUMENTS THERE ARE AND PRIVILEGED
DOCUMENTS THAT MAY EXIST THAT AREN'T CALLED FOR -- WITHIN
ABOUT SIX MONTHS.

I DON'T KNOW ABOUT THE THIRD PARTIES BECAUSE,
FRANKLY, I HAVEN'T LOOKED AT THE SCOPE OF THAT AS TO
EXACTLY HOW MANY THERE ARE, HOW LONG IT'S GOING TO TAKE
THEM TO RESPOND AND SO FORTH.

AND THEN WE ALSO NEED TO WORK OUT A PROTECTIVE
ORDER IN THAT REGARD AS WELL.  AND AGAIN, WE CAN
CERTAINLY WORK OUT A PROTECTIVE ORDER THAT IS -- TRY TO
ANTICIPATE THIRD PARTIES, BUT WE ARE NOT SURE WHAT THE

THIRD PARTIES WILL SAY ABOUT THE PROTECTIVE ORDER AND

WHETHER THEY THINK THE PROTECTIONS ARE SUFFICIENT.

MR. MANCINI:  IF YOUR HONOR -- IF I MAY, I

WOULD LIKE TO SPEAK TO THE PROTECTIVE ORDER SECOND, AND

START WITH THE DEADLINE.

THE COURT:  OKAY.

MR. MANCINI:  SO WITH RESPECT TO THE DEADLINE,

IF HISTORY IS ANY GUIDANCE HERE, SOFT COMMITTALS TO

PRODUCE BY A CERTAIN DATE HAVE NOT SERVED US WELL, WHICH

IS WHY WE ARE HERE.  WE THINK THAT A COURT-ORDERED

DEADLINE FOR THE PRODUCTION OF THOSE DOCUMENTS BY JUNE

15TH IS MORE THAN FAIR, AND IT WILL GUIDE BAYTSP TOWARDS

COMPLIANCE.  OTHERWISE, I FEAR IF WE HAVE -- JUST LIKE WE

HAVE HAD FOR THE LAST 13 MONTHS, SOFT DEADLINES, WE WILL

SIMPLY BE BACK BEFORE YOUR HONOR RATHER QUICKLY BECAUSE

WE HAVE NO ASSURANCE OF AN OUTSIDE DATE.  AND WHAT AN

OUTSIDE DATE DOES IS CERTAINLY CRYSTALLIZE THE

OBLIGATIONS OF THE PARTIES TO PRODUCE IN A TIMELY

FASHION.

THE COURT:  AND YOUR PROPOSED OUTSIDE DATE IS

JUNE 15TH?

MR. MANCINI:  JUNE 15TH, YES.

THE COURT:  CONCEPTUALLY, IS A FIRM DEADLINE

BETTER FOR YOU, WHETHER YOU AGREE WITH THE JUNE 15TH

DEADLINE OR NOT?

MR. HEMMINGER: WELL, WE CERTAINLY -- AND WHAT WE CAN AGREE TO IS THAT WE WILL BE DONE WITH OUR REVIEW BY JUNE 15TH. I'M NOT SURE WHAT OTHER THIRD PARTIES WOULD SAY OR DO OR WHEN WE WOULD BE ABLE -- SO BY THAT DATE WE COULD HAVE THE DOCUMENTS AVAILABLE FOR THIRD PARTIES TO COME IN AND REVIEW. I DON'T KNOW HOW LONG THEY WOULD TAKE. AND I JUST -- I'M WILLING TO COMMIT TO THE HARD DEADLINE FOR THINGS THAT I CAN CONTROL, BUT NOT THINGS I CAN'T.

MR. MANCINI: SO YOUR HONOR --

THE COURT: HOW MUCH DOES A THIRD PARTY KNOW ABOUT -- I MEAN, OBVIOUSLY YOU CAN SAY TO THIRD PARTIES, "WE ARE DOING THIS REVIEW AND WE HAVE A REVIEW THAT WE HAVE TO DO BY COURT ORDER, AND WE HAVE COMMITTED THAT WE CAN FINISH OUR REVIEW BY JUNE 15." WHEN CAN THEY START THEIR REVIEW? IS THERE ANY WAY THAT THEY CAN START IT EARLIER?

MR. HEMMINGER: AGAIN, I DON'T FULLY KNOW THE SCOPE OF WHAT WE ARE TALKING ABOUT AND THE COMMITMENT THAT BAYTSP WOULD HAVE TO HAVE TO REVIEW THE DOCUMENTS. SO I DON'T KNOW IF I WOULD HAVE, YOU KNOW, EVERYBODY'S DOCUMENTS AVAILABLE EARLIER. IF WE COULD, WE WOULD, BUT MY GUESS IS IT'S GOING TO BE SOMETHING WE FIRST COLLECT IT, DO A SEARCH, GO THROUGH, DO OUR PRIVILEGE AND RESPONSIVENESS REVIEW TO THEM, AND WE WILL DO THAT ON THE

WHOLE THING.  AND WE CAN DO THAT, AS I SAY -- IF WE LOOK
AT HISTORY, WHICH WAS IT TOOK US ABOUT SIX MONTHS TO GET
IT DONE BASED UPON THIS LIMITED SCOPE.

WE ARE A LITTLE BETTER AT IT.  I THINK WE CAN
GET SOME EFFICIENCIES.  AND INTERNALLY, WE CAN HAVE IT
READY FOR THIRD PARTIES TO REVIEW BY JUNE 15TH.  WE
CERTAINLY WOULD TRY TO GET IT DONE EARLIER IF WE COULD.
BUT AS FAR AS A COMMITMENT, THAT'S ALL I CAN COMMIT TO.
I DON'T KNOW WHAT A THIRD PARTY IS GOING TO SAY.

THE COURT:  CAN YOU DO IT PIECEMEAL?  IN OTHER
WORDS, YOU CAN DO -- I DON'T KNOW HOW YOU WOULD ...

MR. HEMMINGER:  PIECEMEAL ENDS UP BEING LESS
EFFECTIVE.

THE COURT:  "PIECEMEAL" BEING THIS HUNK, AND
THEN IT'S DONE AND IT'S AVAILABLE TO THE PARTIES, AND
THEN THIS HUNK IS DONE AND AVAILABLE TO THE PARTIES.  I
DON'T KNOW HOW YOU DEFINE THE "HUNK."

MR. HEMMINGER:  THAT'S THE PROBLEM.  WE WOULD
DO THE FILTERING ONCE, OKAY, AND WE WOULD DO ALL OF OUR
SEARCHES ON THE ONE THING.  TO TRY TO DO IT IN PIECES,
YOU DON'T GET TO SEE THEN WHEN THERE ARE DUPLICATE
DOCUMENTS AND THINGS BECAUSE -- THE DATABASE IS PRETTY
GOOD, BUT YOU CAN SIT THERE AND, OKAY, HERE'S ALL THESE
DOCUMENTS THAT LOOK LIKE THEY ARE SIMILAR.  OUR REVIEW IS
BETTER IF WE DO IT ONLY ONCE RATHER THAN COMING IN AND

LOOKING AT THEM MULTIPLE TIMES.

MR. MANCINI:  SO I THINK YOUR HONOR'S SUGGESTION IS A GOOD ONE.  THERE OUGHT TO BE SOME ROLLING OR PARALLEL-BASIS THAT THEY CAN MAKE THESE DOCUMENTS AVAILABLE TO THESE VARIOUS THIRD PARTIES SO THAT WE CAN HAVE PRODUCTION ON JUNE 15TH.  OTHERWISE, I FEAR THAT IF THEY ARE FIRST GOING TO MAKE THEM AVAILABLE ON JUNE 15TH, THERE COULD BE ANOTHER SEVERAL-MONTH DELAY FOR THESE THIRD PARTIES TO REVIEW.  WHY NOT HAVE PARALLEL PRODUCTION TO THESE THIRD PARTIES SO THEY CAN REVIEW IT AT THE SAME TIME, AND WE CAN GO BE DONE BY JUNE 15TH.

MR. HEMMINGER:  WE CAN'T HAVE PARALLEL PRODUCTION BECAUSE I CAN'T GIVE -- JUST LIKE I CAN'T GIVE VIACOM HBO'S INFORMATION TO LOOK AT, I CAN'T GIVE FOX HBO'S INFORMATION.  SO WE HAVE TO GO THROUGH, DO OUR REVIEW, THEN SORT THEM OUT.  AND IT JUST -- TO TAKE A REVIEW AND, FOR EXAMPLE, SEARCH ON ENTITIES FOR ANY ONE OF THESE PEOPLE, WE END UP LOOKING AT THEM TWICE.  WHILE IT WOULD BE NICE TO DO THAT, THAT IS NOT THE REALITIES OF ELECTRONIC DISCOVERY.

ELECTRONIC DISCOVERY IS A MARVELOUS THING FOR HANDLING LARGE GROUPS OF DOCUMENTS, LETS YOU LOOK AT THEM, BUT IT DOESN'T NECESSARILY MAKE THE TASK THAT MUCH QUICKER.  IT ALLOWS YOU TO DO SOMETHING THAT YOU COULDN'T DO, WHICH IS TO LOOK AT --

THE COURT:  BUT TO SEARCH IT, YOU PUT A SEARCH
TERM INTO IT AND PULL THINGS OUT, RIGHT?

MR. HEMMINGER:  WE COME UP WITH SEARCH TERMS;
WE FILTER IT ON THAT.  AND THEN WHEN YOU HAVE A MILLION
DOCUMENTS, OKAY, THEN YOU HAVE TO START MANIPULATING
THOSE AND YOU LOOK AT ALL OF THOSE AND YOU DO YOUR
SEARCHES.  AND IF WE BREAK IT UP INTO PIECES, WE ARE
GOING TO BE DOING THOSE SEARCHES MULTIPLE TIMES AND NOT
GETTING THE BENEFIT OF LOOKING AT IT IN ITS ENTIRETY
ONCE.

THE COURT:  YOU COULDN'T TAKE ONE ENTITY AND
THEN PUT ALL OF THE CATEGORIES THAT YOU ARE LOOKING FOR
AND DO IT FOR THAT ONE ENTITY?

MR. HEMMINGER:  THAT IS GROSSLY INEFFICIENT.
YOU COULD, BUT IT'S GROSSLY INEFFICIENT AND WILL END UP
COSTING A LOT MORE MONEY TO GO THROUGH IT.  I MEAN,
THAT'S THE ISSUE.  I MEAN -- AND IT'S JUST -- YOU COULD
DO ANYTHING, BUT IT TAKES TIME AND MONEY.  AND THE MORE
YOU BREAK IT UP, THE MORE TIME IT'S GOING TO TAKE.

THE COURT:  EXCEPT THEY WOULD HAVE ROLLINGS ON
THE END OF IT.

MR. MANCINI:  SO YOUR HONOR, THERE MAY BE A
SOLUTION.  THEY CAN CERTAINLY -- AND I THINK WE HAVE
HEARD THIS MORNING A FEW ENTITIES LIKE FOX AND
UNIVERSAL -- THEY CAN CERTAINLY PRIORITIZE A FEW SO THAT

1    WE CAN GET SOME ROLLING PRODUCTION EARLIER.  OTHERWISE --

2          THE COURT:  WELL, DO YOU HAVE PRIORITIES?  I

3    MEAN, ARE THERE THINGS THAT YOU ARE MORE INTERESTED IN

4    HAVING FIRST?

5          MR. MANCINI:  OTHER THAN THE LIST THAT WE HEARD

6    THIS MORNING, WE DON'T KNOW THE UNIVERSE THAT WE ARE

7    BIDDING AGAINST.  BUT PERHAPS IF WE SAW THAT LIST, WE CAN

8    IDENTIFY THOSE THAT WE WOULD WANT TO PRIORITIZE SO THAT

9    WE CAN GET THEM EVEN EARLIER.

10         THE COURT:  IS THERE ANY REASON YOU CAN'T SIT

11   DOWN AND TALK ABOUT THE LIST SO HE CAN --

12         MR. HEMMINGER:  THE CLIENTS ARE CONFIDENTIAL.

13   I HAVE TO TALK TO THE CLIENTS BEFORE I CAN EVEN TELL

14   YOUTUBE POTENTIAL -- AND WE HAVE HUGE -- I KNOW YOU SAY

15   SIX MONTHS.  BY GOLLY, THAT'S A LONG TIME.  THAT REQUIRES

16   A WHOLE LOT OF WORK AND PROCESSING.  SO I MEAN, EVEN IF

17   WE WERE ABLE TO DO IT IN PIECES, AT MOST WE ARE MAYBE

18   TALKING ABOUT A MONTH EARLIER TO GET THESE BROKEN UP INTO

19   PIECES, WHICH IS IN MY VIEW NOT WORTH JUSTIFYING THE

20   BREAKING UP INTO PIECES.

21         THE COURT:  AND THE CASE MEETS A SCHEDULE IN

22   NEW YORK?

23         MR. HEMMINGER:  I DON'T KNOW.

24         MR. MANCINI:  WELL, THAT'S EXACTLY WHAT I WAS

25   ABOUT TO SAY, YOUR HONOR.  ALTHOUGH THERE IS NO

DEFINITIVE SCHEDULE, THE PARTIES ARE SCHEDULING

DEPOSITIONS FOR THE FIRST QUARTER OF '09 NOW. AND AS YOU

HAVE HEARD THIS MORNING, THESE DOCUMENTS ARE A GATING

ISSUE TO SCHEDULING THESE DEPOSITIONS. SO NOW WE ARE

HEARING POSSIBLY BY JUNE 15TH. IT WILL HAVE A

DETRIMENTAL IMPACT ON THAT SCHEDULE IF WE MAY NOT BE

GETTING DOCUMENTS UNTIL PERHAPS EVEN THREE MONTHS LATER,

IF I UNDERSTAND MR. HEMMINGER'S PROPOSAL. YOU ARE

TALKING ABOUT SCHEDULING DEPOSITIONS OUT TO THE FALL OF

'09, BECAUSE THESE DOCUMENTS ARE ESSENTIAL FOR SOME OF

THESE DEPOSITIONS.

THE COURT: AND I TAKE IT THAT THE JUDGE IN NEW

YORK DOESN'T YET KNOW ABOUT HOW COMPLEX THIS IS.

MR. MANCINI: I DON'T BELIEVE -- CORRECT.

THE COURT: SO YOU HAVE FURTHER STATUS

CONFERENCES IN FRONT OF HIM?

MR. MANCINI: INDEED. WE HAVE THEM QUITE

REGULARLY ABOUT THE DISCOVERY. THERE IS NO SCHEDULE, BUT

THERE IS A COMMITMENT BY BOTH PARTIES TO SCHEDULE

DEPOSITIONS AS QUICKLY AS POSSIBLE, AND THEY ARE ONGOING.

BUT THIS WILL BE A GATING ISSUE FOR SEVERAL DEPOSITIONS.

THE COURT: SO YOU NEED SIX MONTHS IS WHAT YOU

ARE SAYING?

MR. HEMMINGER: IF YOU ARE GOING TO MAINTAIN --

AND I STILL WOULD LIKE TO GO THROUGH THESE BECAUSE I

1    DON'T THINK YOUR COMMENTS, SUCH AS NO. 5 "SHOULD BE

2    NARROWED," MAKES ANY SENSE WHEN YOU HAVE ONES THAT ARE

3    BROADER THAN THAT WHICH SWEEP WITHIN THE SCOPE.

4             THE COURT:  SO LET'S GO THROUGH THEM.

5             MR. MANCINI:  WELL, YOUR HONOR, THERE ARE A

6    COUPLE OF THESE THAT I THINK ARE EASY, AND THEN WE CAN

7    GET DO THAT ARGUMENT.

8             THE COURT:  OKAY.

9             MR. MANCINI:  SO THE NEXT IS THE PRIVILEGE LOG.

10   AGAIN, RELATING NOW JUST TO VIACOM, IT SEEMS THAT WE HAVE

11   AN AGREEMENT THAT VIACOM WILL PRODUCE ITS FIRST PRIVILEGE

12   LOG ON OR ABOUT JANUARY 15TH -- ASSUMING THAT'S NOT A

13   WEEKEND -- AND THEN A ROLLING PRODUCTION OF PRIVILEGE

14   LOGS TWO WEEKS THEREAFTER.  TWO WEEKS AFTER THE

15   COMPLETION OF --

16            THE COURT:  JANUARY 15TH IS A THURSDAY.

17            MR. MANCINI:  FINE.  SO THE FIRST PRIVILEGE LOG

18   BY JANUARY 15TH, ROLLING PRIVILEGE LOGS TWO WEEKS AFTER

19   PRODUCTIONS, WITH THE FINAL ONE TWO WEEKS AFTER THE

20   COMPLETION DATE OF FEBRUARY 15TH.  I THINK WE ARE IN

21   AGREEMENT ON THAT.

22            MR. HIBBARD:  WE ARE, YOUR HONOR.

23            THE COURT:  OKAY.

24            MR. MANCINI:  SO THE NEXT ITEM IS SEARCH TERMS,

25   YOUR HONOR.  IT SEEMS THAT WE HAVE AGREED WITH

MR. HEMMINGER THAT WE WOULD MEET AND CONFER ON A PROCESS
WHERE WE WILL BOTH EXCHANGE TOPICS FOR SEARCH TERMS --
NOW THESE ARE AS THEY APPLY TO THIRD PARTIES -- AND THAT
WE WILL RESOLVE BY MONTH END TO AGREE ON A DEFINITIVE
LIST OF SEARCH TERMS SO IT DOES NOT DELAY THE COLLECTION
OF DOCUMENTS FROM THIRD PARTIES.

     MR. HEMMINGER:  PROVIDED I GET APPROVAL FROM
THE THIRD PARTIES TO EVEN REVEAL WHO THEY ARE TO PUT
THEIR NAMES IN THE SEARCH.

     THE COURT:  HOW FAST ARE YOU GOING TO BE ABLE
TO DO THAT?

     MR. HEMMINGER:  YOUR HONOR, I DON'T KNOW.
I DON'T KNOW THE FULL SCOPE OF THE LIST, BUT I WOULD
THINK THAT WITHIN THE NEXT -- BY A WEEK FROM FRIDAY
I COULD GET LETTERS OUT TO EVERYBODY TELLING THEM ABOUT
THE SUBPOENA AND ASKING IF WE COULD REVEAL THEIR NAME TO
YOUTUBE UNDER THE TERMS OF THE EXISTING PROTECTIVE ORDER.
IF THEY WON'T DO IT ON THAT, WE WILL TRY TO FIGURE OUT
WHAT OTHER TERMS WE COULD REVEAL THE INFORMATION FROM.

     THE COURT:  IF THEY DON'T DO THAT, THEN WHAT?

     MR. MANCINI:  SO WITH RESPECT TO THAT -- THAT
ACTUALLY TAILS TO THE NEXT ISSUE, WHICH IS A PROTECTIVE
ORDER.  WE HAVE SAID TO MR. HEMMINGER THAT WE ARE HAPPY
TO SIT WITH HIM AND CONSIDER SUGGESTIONS THAT HE HAS TO
THE PROTECTIVE ORDER, PERHAPS CHANGE THE VENUE IF HE

WANTS, OR PERHAPS HAVE A THIRD-PARTY-SPECIFIC PROTECTIVE

ORDER. WE THINK THAT THAT SOLVES ALL OF THESE THIRD

PARTY CONFIDENTIALITY CONCERNS. IF HE WANTS TO VENUE IT

HERE, WE ARE AMENABLE TO THAT, BUT WE SHOULD DO THAT

QUICKLY SO THAT TOO IS NOT A GATING ISSUE.

THE COURT: THEN YOU WOULD HAVE A PROTECTIVE

ORDER TO TAKE TO THE INDIVIDUALS TO SAY "THIS IS THE

PROTECTION ORDER." THAT WOULD MAKE IT EASIER FOR YOU,

PROBABLY.

MR. HEMMINGER: WELL, WHAT I WOULD DO INITIALLY

IS SEE IF THEY WOULD AGREE TO THE EXISTING PROTECTIVE

ORDER -- AT LEAST REVEALING THEIR NAMES, WE COULD GET THE

SEARCH TERMS. AND WE WOULD WORK QUICKLY TRYING TO COME

UP WITH NEW TERMS AND SO FORTH FOR THE PROTECTIVE ORDER

THAT WE HOPE WOULD SATISFY OUR CUSTOMERS.

THE COURT: SO LET'S SET A SCHEDULE FOR WORKING

ON A PROTECTIVE ORDER BECAUSE THAT SEEMS THAT THAT'S KIND

OF IMPORTANT TO DO.

MR. MANCINI: WE WOULD ACTUALLY SUBMIT, YOUR

HONOR -- BECAUSE WE HAVE DONE THIS MANY TIMES -- THAT WE

WOULD ACTUALLY SUBMIT SOMETHING TO YOUR HONOR BY MONTH

END, WHICH SHOULD NOT BE A DIFFICULT THING TO DO.

THE COURT: WELL, YOU NEED TO DO A LOT OF MEET

AND CONFER ABOUT IT TO MAKE SURE THAT ALL OF THE ISSUES

ARE RESOLVED.

1        MR. HEMMINGER:  I THINK MONTH END IS REASONABLE

2   TO SUBMIT A PROTECTIVE ORDER OR COME TO YOU WITH ANY

3   ISSUES WE HAVE.

4        THE COURT:  "MONTH END" BEING THE DECEMBER

5   MONTH?

6        MR. HEMMINGER:  YES.

7        THE COURT:  WELL, IT'S A COMPLICATED MONTH, AND

8   I WANTED TO MAKE SURE THAT'S WHAT YOU MEANT.

9        MR. MANCINI:  YES.

10       MR. HEMMINGER:  YES, I DID MEAN DECEMBER.

11       THE COURT:  SO DECEMBER 31ST?

12       MR. MANCINI:  YES.  PERHAPS WE SHOULD JUST SAY

13  THE 30TH, YOUR HONOR, FOR THE HOLIDAY.

14       THE COURT:  RIGHT.  SINCE YOU WOULD PROBABLY

15  LIKE TO GO PARTY, PERHAPS.

16       MR. MANCINI:  AT LEAST MY KIDS WOULD.

17       MR. HEMMINGER:  DEPENDING ON YOUR RULING, I

18  WON'T BE PARTYING MUCH.

19       THE COURT:  YOUR LIFE IS FILLED WITH THIS, SO

20  YOU HAVE ALWAYS GOT TO TAKE OCCASIONS IN THE MIDDLE OF IT

21  TO PARTY.

22       MR. MANCINI:  SO YOUR HONOR, I BELIEVE WE HAVE

23  WORKED OUT THE ITEMS THAT WE ARE ABLE TO.

24       I THINK MR. HEMMINGER WANTS TO SPEAK TO THIRD

25  PARTY DISCOVERY.

1           THANK YOU, YOUR HONOR.

2           THE COURT:  THANK YOU.

3           MR. HEMMINGER:  YOU INDICATED IN YOUR TENTATIVE

4   THAT YOU THOUGHT NO. 5 WOULD HAVE TO BE NARROWED.  AND

5   NO. 5 TALKS ABOUT ALL DOCUMENTS AND COMMUNICATIONS

6   CONCERNING BAYTSP'S RELATIONSHIP WITH ANY THIRD PARTY

7   CONCERNING THE MONITORING, SEARCHING OR SCREENING OF THE

8   YOUTUBE WEB SITE FOR ALLEGED VIOLATIONS, INCLUDING BUT

9   NOT LIMITED TO, SERVICE CONTRACTS, INVOICES OR

10  AGREEMENTS.  MAYBE GETTING SOME INFORMATION TO YOU AS FAR

11  AS NARROWING WILL HELP ME IN EXPLAINING WHAT THESE ARE.

12  WHAT WERE YOUR THOUGHTS THAT THIS NEEDED TO BE NARROWED?

13          THE COURT:  WELL, TO LIMIT THE PRODUCTION TO

14  VIACOM AND VIACOM-RELATED ENTITIES.  IS THAT ONE WAY OF

15  LIMITING IT?  I MEAN, I'M KIND OF SHOOTING IN THE DARK

16  WHEN I COME UP WITH LIMITING, SINCE I DON'T KNOW AS MUCH

17  ABOUT THIS AS YOU DO.

18          MR. HEMMINGER:  AND IN FACT, WE HAVE NO PROBLEM

19  AND WE HAVE COLLECTED UP THE DOCUMENTS RESPONSIVE TO THE

20  REQUEST, NOTWITHSTANDING OUR OBJECTIONS FOR THE VIACOM

21  AND VIACOM-RELATED ENTITIES AND THE FOOTBALL LEAGUE

22  THINGS.  WE HAVE ALREADY DONE THAT NARROWING.

23          THE COURT:  OKAY.

24          MR. HEMMINGER:  AND IF THAT, IN FACT, IS A

25  NARROWING, CAN WE LOOK AT NO. 1?  IT SAYS, "ALL DOCUMENTS

                                                        66

AND COMMUNICATIONS CONCERNING BAYTSP'S MONITORING,

SEARCHING OR SCREENING OF YOUTUBE." THAT THEN JUST

BRINGS BACK EVERYTHING THAT WE WERE TALKING ABOUT IN

NO. 5 AND EVERYTHING. IT RELATES TO ALL COMMUNICATIONS

WITH THIRD PARTIES AND, YOU KNOW, A HUGE PIECE OF OUR

BUSINESS. SO THIS IS WHERE WE GET INTO ALL OF THESE

ISSUES WITH THESE THIRD PARTIES AND THEN THEIR LACK OF

RELEVANCE.

THE COURT: "ALL DOCUMENTS AND COMMUNICATIONS

CONCERNING MONITORING, SEARCHING AND SCREENING OF

YOUTUBE." SO WHAT DOES THAT MEAN TO YOU? BECAUSE IT'S

HARD FOR ME TO TELL WITH THESE AS TO WHAT THAT MEANS FROM

YOUR POINT OF VIEW.

MR. HEMMINGER: THAT MEANS EVERY CLIENT, EVERY

CUSTOMER WE HAVE THAT HAS WITHIN IT ANYTHING RELATING TO

"PLEASE GO OUT AND MONITOR OUR CONTENT" BECAUSE YOUTUBE

OBVIOUSLY IS A SITE THAT'S MONITORED. SO THAT THEN JUST

BRINGS IN ALL OF THE EFFORT -- PROBABLY EVERYTHING AT

BAYTSP.

THE COURT: IS THERE ANY WAY THAT THAT CAN BE

MORE SPECIFIC?

MR. KRAMER: YOUR HONOR, DAVID KRAMER FROM

WILSON SONSINI. MAY I SPEAK TO THESE ISSUES?

THE COURT: SURE.

MR. KRAMER: THANK YOU, YOUR HONOR.

YOUR HONOR, THAT REALLY IS THE WHOLE BALL OF
WAX HERE.  THE QUESTION IS, THIS IS A COMPANY WHOSE
EXISTENCE IS MONITORING THE ONLINE WORLD FOR ALLEGED
INSTANCES OF COPYRIGHT INFRINGEMENT.  VIACOM'S
ALLEGATIONS IN THIS CASE, COUPLED WITH THE PLAINTIFF
PUTATIVE CLASS ACTION ALLEGATIONS IN THIS CASE, ARE THAT
YOUTUBE IS A PIRATE SITE, THAT YOUTUBE IS RIFE WITH
INFRINGING CONTENT, THAT YOUTUBE KNOWS SIMPLY BY VIRTUE
OF SEEING THE CONTENT THAT IT IS UNAUTHORIZED INFRINGING
CONTENT -- NOT JUST FOR VIACOM, BUT YOUTUBE SHOULD KNOW
SIMPLY BY SEEING A PARTICULAR PIECE OF PROFESSIONAL
CONTENT THAT THAT CONTENT IS UNAUTHORIZED.  AND BECAUSE
OF THAT, YOUTUBE SHOULD BE HELD LIABLE FOR COPYRIGHT
INFRINGEMENT FOR ALL VIACOM CONTENT THAT'S ON THE SERVICE
AND FOR ALL OF THE PUTATIVE CLASS PLAINTIFFS' CONTENT
THAT'S ON THE SERVICE.

AND I SHOULD POINT OUT THE PUTATIVE CLASS
ACTION HERE IS ON BEHALF OF EVERY COPYRIGHT HOLDER IN THE
WORLD CLAIMING THAT THEIR CONTENT HAS BEEN UPLOADED TO
YOUTUBE WITHOUT AUTHORIZATION.  NO CLASS VERIFICATION
YET, BUT THAT'S THE SCOPE OF THE CASE THAT WE ARE DEALING
WITH.

BAYTSP SPENDS ITS DAYS REVIEWING YOUTUBE
LOOKING FOR CONTENT -- BAYTSP -- ON BEHALF OF NOT JUST
VIACOM, BUT ALL SORTS OF THIRD PARTIES.  AND WHAT IS

CRITICAL IN THIS CASE IS THAT THIRD PARTIES AND VIACOM

USE YOUTUBE FOR ITS PROMOTIONAL VALUE. THEY FLOOD THE

SERVICE WITH CONTENT THEY PUT THERE THEMSELVES; THEY WANT

IT TO BE THERE. AND THEN THEY HAVE TO TELL BAYTSP,

"WELL, HERE'S THE CONTENT WE WANT ON YOUTUBE. DON'T TAKE

THIS CONTENT DOWN. HERE'S THE CONTENT WE DON'T WANT. GO

GET THIS CONTENT OFF."

IN ORDER TO DEMONSTRATE THE SCALE OF THAT

ISSUE, WHAT WE CALL STEALTH OR VIRAL MARKETING, IT'S

CRITICAL THAT WE NOT JUST BE LIMITED TO WHAT VIACOM IS

DOING. ALTHOUGH WE ARE QUITE SURE THAT THERE IS A

SIGNIFICANT AMOUNT OF STEALTH AND VIRAL MARKETING BY

VIACOM, WE NEED TO BE ABLE TO PRESENT THE PICTURE TO THE

JURY THAT REFUTES THE SUGGESTION THAT YOUTUBE SHOULD KNOW

IT WHEN IT SEES IT. BECAUSE THERE IS THIS UNIVERSE OF

CONTENT OWNERS IN THE WORLD FILLING YOUTUBE WITH CONTENT

THAT IS AUTHORIZED, THAT THEY WANT TO BE THERE. THERE IS

A HOST OF OTHER CONTENT THAT THE WORLD OF CONTENT OWNERS

IS AWARE OF ON YOUTUBE AND INSTRUCTS BAYTSP NOT TO

REMOVE.

SO THAT'S WHY THESE REQUESTS SWEEP NOT JUST TO

VIACOM, BUT TO THE ACTIVITIES OF OTHER PARTIES WHOM

BAYTSP REPRESENTS. BAYTSP WILL HAVE THE INSTRUCTIONS

THAT THESE PARTIES PROVIDE SAYING, "THIS IS AUTHORIZED

CONTENT. ALL OF THIS CONTENT IS AUTHORIZED. THIS

CONTENT WE WANT YOU TO TAKE DOWN."

THERE'S MORE, AND WE DISCUSSED THIS IN OUR
SEPARATE STATEMENT AT SOME LENGTH -- IT'S ON PAGE 3 AND 4
OF OUR REPLY BRIEF IN SOME DETAIL -- AND IT WAS NOT
RESPONDED TO BY BAY.

ANOTHER CRITICAL ISSUE IS, AND MR. MANCINI
REFERENCED IT IN HIS REMARKS, BUT WHEN BAYTSP TAKES STUFF
DOWN, THEY ROUTINELY MAKE MISTAKES.  IT'S NOT A HANDFUL
OF EXAMPLES THAT WE PUT INTO THE COURT AS EXAMPLES; IT'S
ON A REGULAR BASIS.  POSSESSED OF ALL OF THE INFORMATION
THAT BAYTSP HAS ABOUT WHO OWNS WHAT AND WHETHER CONTENT
IS AUTHORIZED, BAYTSP ROUTINELY SENDS NOTICES TO YOUTUBE
ASKING IT TO REMOVE STUFF THAT THE USER HAD EVERY RIGHT
TO POST, THAT'S THERE WITH AUTHORIZATION.  AND THAT
DEMONSTRATES AGAIN THAT YOUTUBE CAN'T POSSIBLY KNOW WHEN
IT'S LOOKING AT CONTENT ON THE SERVICE WHETHER OR NOT
IT'S AUTHORIZED.

IF BAYTSP CAN'T KNOW -- ACTING AS THE AGENT FOR
THESE COPYRIGHT HOLDERS -- WHETHER CONTENT IS OR IS NOT
AUTHORIZED, THEN IT ROUTINELY IS MAKING MISTAKES.  SURELY
YOUTUBE, WHICH IS MERELY A PASSIVE REPOSITORY FOR CONTENT
THAT USERS ARE UPLOADING TO THE SERVICE -- HOW IS YOUTUBE
SUPPOSED TO KNOW?

THAT KNOWLEDGE ISSUE, "YOU KNOW IT WHEN YOU SEE
IT," IS CRITICAL TO VIACOM'S CLAIMS; IT'S CRITICAL TO

YOUTUBE'S DEFENSES.

THE COURT:  IT'S LIKE YOU DON'T EVEN KNOW IT
WHEN YOU SEE IT.

MR. KRAMER:  OH, CERTAINLY NOT, YOUR HONOR.
CERTAINLY, YOUTUBE CAN'T KNOW IT WHEN IT SEES IT BECAUSE
VIACOM IS ROUTINELY UPLOADING THIS CONTENT ITSELF TO THE
YOUTUBE SERVICE, OR WHEN IT'S AWARE OF THAT CONTENT ON
THE SERVICE, CHOOSING TO LEAVE IT THERE AND INSTRUCTING
ITS AGENT NOT TO TAKE IT DOWN, EVEN IF VIACOM DIDN'T PUT
IT THERE ITSELF.

SO THAT'S WHAT'S AT ISSUE WITH BAYTSP, AND THAT
KNOWLEDGE ISSUE IS ONE OF THE MOST IMPORTANT PARTS OF THE
CASE.  MR. MANCINI STARTED HIS REMARKS BY SAYING THE
DOCUMENTS SOUGHT FROM BAYTSP ARE AMONG THE MOST IMPORTANT
IN THE CASE.  HE IS NOT OVERSTATING THE ISSUE.

THERE IS ONE OTHER POINT TO MAKE HERE, AND THAT
IS WITH RESPECT TO THE WAY THAT YOUTUBE COMPARES TO OTHER
ONLINE SERVICES.  AS I SAID, VIACOM IN THE PUTATIVE CLASS
WANTS TO PAINT YOUTUBE AS A PIRATE SITE, AS A SITE THAT
WANTS TO BENEFIT FROM COPYRIGHT INFRINGEMENT.  IN FACT,
YOUTUBE DOES FAR MORE THAN ANY OTHER SITE ON THE
INTERNET, AS FAR AS WE CAN TELL, TO PROTECT THE RIGHTS OF
COPYRIGHT OWNERS.  THEY ARE FAR MORE RESPONSIVE THAN ANY
OTHER SITE, AS FAR AS WE KNOW, TO REQUESTS TO REMOVE
CONTENT.  THEY HAVE FAR BETTER TOOLS.

AND BAYTSP'S INTERNAL DOCUMENTS -- BECAUSE THEY ARE CHARGED NOT WITH JUST POLICING YOUTUBE, BUT POLICING THE ENTIRE WEB -- BAYTSP'S INTERNAL DOCUMENTS WILL SHOW HOW MUCH BETTER YOUTUBE IS THAN ALL OF THESE OTHER SITES AND -- WE THINK -- UNDERMINE VIACOM'S POSITION THAT YOUTUBE IS A SLACKER, THAT YOUTUBE WANTS THIS STUFF ON THE WEB. YOUTUBE IS IN FACT AN INDUSTRY LEADER.

SO THAT'S A BRIEF SUMMARY. AS I SAY, IT'S IN OUR PAPERS, AND IT WAS NOT RESPOND TO DO, BUT I THOUGHT I WOULD PROVIDE THAT CLARIFICATION.

MR. HEMMINGER: WELL, WE DISAGREE IT WAS NOT RESPONDED TO -- PERHAPS NOT IN GREAT DETAIL.

HOWEVER, A COUPLE OF POINTS HAVE COME UP. HE HAS INDICATED HE WANTED INSTRUCTIONS -- WELL, PERHAPS IF WE WERE LIMITED TO THE INSTRUCTIONS. ALSO, HE IS TALKING ABOUT WHEN THERE WERE COMMUNICATIONS BACK FROM THE COPYRIGHT HOLDER AS TO A COMPLAINT THAT, I'M SORRY, I THINK IT WAS IMPROPERLY -- I THINK IT WAS PROPERLY POSTED AND WE THINK IT IS NOT SOMEBODY'S COPYRIGHT, LIMITED TO THE COMMENTS BACK. IF THOSE ARE THE TYPES OF THINGS THEY ARE TALKING ABOUT, IT IS MUCH EASIER TO GO THROUGH ON A MUCH SMALLER SCOPE TO GO FIND THOSE TYPES OF DOCUMENTS.

THERE'S ANOTHER ISSUE THAT COMES UP, WHICH WE REALLY HAVEN'T TALKED ABOUT, BECAUSE PREVIOUSLY THE AGREEMENT WAS THE SCOPE WOULD BE LIMITED TO YOUTUBE.

```
 1   THERE ARE OTHER CLIENTS THAT BAYTSP HAS, MOVIE
 2   MANUFACTURERS -- OR PRODUCERS THAT MAKE THE FILMS.  AND I
 3   MENTIONED EARLIER THAT WE HAVE CLIENTS WHO WANT TO KNOW
 4   WHEN AND WHERE A DIGITAL COPY OF A MOVIE SHOWED UP ON THE
 5   INTERNET.  NOW, THAT HAS ABSOLUTELY NOTHING TO DO WITH
 6   THE YOUTUBE-TYPE SITE FOR THE POSTING.  THIS IS ACTUALLY
 7   INFORMATION ABOUT WHERE, IN FACT, PEOPLE ARE -- IT'S A
 8   SERVICE CALLED FIRST SOURCE WHERE BAYTSP SAYS, "WHICH WEB
 9   SITE WAS THE FIRST SOURCE FOR THE DOWNLOAD OF -- FOR THE
10   LAST RELEASE OF THE JAMES BOND MOVIE," SO THAT THEN THE
11   COPYRIGHT OWNER COULD FIGURE OUT IF THEY WANT TO PROCEED
12   OR WHAT PROTECTION.  THAT HAS NOTHING TO DO WITH THE
13   ISSUES IN THIS LAWSUIT.
14        SO THE THING IS THEN TO LIMIT THAT AND
15   ELIMINATE THE WORK THAT BAYTSP IS DOING FOR MOVIE
16   PRODUCERS AND/OR DISTRIBUTORS IN THAT REGARD, BECAUSE
17   IT'S COMPARING APPLES AND ORANGES.
18        AND I THINK, IF I HEARD COUNSEL RIGHT, IT'S THE
19   INSTRUCTIONS AND THE COMMENTS BACK THAT THEY THINK ARE
20   THE MOST RELEVANT.  I'M GOING TO WITHHOLD MY COMMENTS
21   WITH REGARD TO WHETHER I THINK THEY ARE RELEVANT, BUT AT
22   LEAST THAT WOULD PUT A LIMIT ON THE INFORMATION THAT THEY
23   ARE GOING -- AND STREAMLINE THE ABILITY TO, ONE, GET
24   APPROVAL FROM THE CLIENTS, AND TWO, PRODUCE THEM AND GET
25   THE DOCUMENTS TO THEM SOONER.
```

MR. KRAMER: SORRY, YOUR HONOR, DOING THIS ON
THE FLY AND NARROWING IT IS VERY DIFFICULT. AS I SAID,
THIS WASN'T IN OUR -- THIS WASN'T IN THEIR PAPERS AND IT
WAS IN OURS, AND THESE REQUESTS HAVE BEEN OUTSTANDING FOR
MORE THAN A YEAR.

THE COURT: NO, AND THIS ENDED UP BEING A MUCH
BIGGER MONSTER THAN IT LOOKED LIKE ON PAPER WHEN I WALKED
OUT HERE.

MR. KRAMER: I UNDERSTAND, YOUR HONOR. I
UNDERSTAND, AND I APOLOGIZE FOR IT BEING THE MONSTER THAT
IT IS, BUT WE ARE DEALING WITH IT IN THE DAY-TO-DAY OF
THE LITIGATION.

THE COURT: BUT ABSOLUTELY. I MEAN, THERE ARE
A LOT OF ISSUES HERE WE ARE GOING TO HAVE TO ADDRESS AND
THEN PARSE THEM OUT.

MR. KRAMER: SO WITH RESPECT TO THE FIRST
SOURCE SERVICE, YOU KNOW, THINKING ABOUT IT, AS I SAY,
"ON THE FLY," I CAN THINK OF REASONS WHY THAT ACTUALLY
WOULD BE RELEVANT, BECAUSE PARAMOUNT IS ONE OF THE
PLAINTIFFS IN THIS ACTION. PARAMOUNT WANTS TO KNOW WHEN
AND WHERE ITS MOVIES APPEARED ONLINE. IF A PORTION OF
THAT MOVIE APPEARED ON YOUTUBE AND PARAMOUNT IS CHOOSING
TO SUE YOUTUBE OVER THAT ALLEGED INFRINGEMENT, THEN WHEN
AND WHERE THAT CONTENT APPEARED FIRST ONLINE WILL THEN
FORM THE QUESTION OF HOW LONG IT'S BEEN THERE, WHETHER

VIACOM TOOK STEPS TO MITIGATE DAMAGES, WHETHER IT
ACTUALLY REQUESTED THE REMOVAL OF THE CONTENT FROM THE
ORIGINAL SOURCE.

IF VIACOM, KNOWING THROUGH FIRST SOURCE THAT
ITS CONTENT WAS ON THE WEB JANUARY OF 2004, DID NOTHING
ABOUT IT AND CHOSE TO LEAVE IT THERE FOR FOUR YEARS, IT'S
HARDLY IN A POSITION TO CLAIM THAT IT WAS DAMAGED TO THE
TUNE OF HUNDREDS OF THOUSANDS OF DOLLARS BY HAVING A
SHORT CLIP OF THAT FILM ACCESSIBLE THROUGH YOUTUBE.

SO I CAN MAKE RELEVANCE ARGUMENTS TO THE STUFF
THAT I'M HEARING FOR THE FIRST TIME, BUT THESE ARE THE
KINDS OF THINGS THAT SHOULD HAVE BEEN RAISED DURING THE
MEET-AND-CONFER PROCESS, AND WEREN'T.

THESE ARE ISSUES THAT AT THIS POINT WE HAVE NO
CHOICE BUT TO COME TO THE COURT AND REQUEST. I'M NOT
ASKING THAT THE COURT LIMIT THIS. IN FACT, I'M ASKING
THAT THE COURT NOT LIMIT THIS TO INSTRUCTIONS AND
COMMENTS.

I HAVE NO IDEA HOW BAYTSP KEEPS ITS DOCUMENTS.
THEY MAY HAVE HOARDS OF E-MAIL IN BETWEEN PEOPLE THAT
WORK FOR THE COMPANY TALKING ABOUT HOW GREAT YOUTUBE IS.
THAT'S NOT AN INSTRUCTION. THAT'S NOT A COMMENT. I
WON'T KNOW ABOUT THAT, AND I WANT THAT DOCUMENT. SO WE
CRAFTED THE REQUESTS THE WAY THAT WE DID IN AN EFFORT TO
GET AT DOCUMENTS THAT ARE REASONABLY CALCULATED -- THE

REQUESTS ARE REASONABLY CALCULATED TO LEAD TO THE
DISCOVERY OF ADMISSIBLE EVIDENCE.

WITH RESPECT TO REQUEST NO. 5, WHICH I THINK
YOUR HONOR ALLUDED TO AS ONE THAT SHOULD BE NARROWED, I
BELIEVE THAT THAT REQUEST REALLY IS WHAT WE NEED.  I
REALLY BELIEVE THAT WE NEED TO KNOW HOW THESE THIRD
PARTIES ARE MONITORING THE YOUTUBE SERVICE.  I DON'T KNOW
THAT WE NEED -- NO, I'M SORRY.  I BELIEVE THAT THAT'S
EXACTLY WHAT I'M TALKING ABOUT.  HOW THESE THIRD PARTIES
ARE USING BAYTSP TO MONITOR THE YOUTUBE SERVICE IS AS
RELEVANT AS ANY DOCUMENT -- AS RELEVANT AS ANY DOCUMENT
THERE IS IN THIS CASE.

THE COURT:  SO THIS ONE IS "ALL DOCUMENTS AND
COMMUNICATIONS CONCERNING YOUR RELATIONSHIP WITH ANY
THIRD PARTY CONCERNING THE MONITORING, SEARCHING,
SCREENING OF WWW.YOUTUBE.COM FOR ALLEGED COPYRIGHT
VIOLATIONS INCLUDING, BUT NOT LIMITED TO, ANY SERVICE
CONTRACTS INVOICES AND AGREEMENTS."  I GOT THE IMPRESSION
THAT IN A MEET AND CONFER, THERE WAS SOME NARROWING OF
THIS.  IS THAT --

MR. HEMMINGER:  YOUR HONOR, THERE WAS.  AND HE
WASN'T INVOLVED IN ANY OF THE MEET AND CONFERS.  AND IN
THE FIRST MEET AND CONFER, QUITE FRANKLY, WE TALKED ABOUT
THESE ISSUES ABOUT FIRST ALERT WITH SHANE & COOK AT THE
TIME.  SO I UNDERSTAND HE WASN'T INVOLVED AND WASN'T

AWARE, BUT THESE ARE NOT BEING RAISED FOR THE FIRST TIME.
WE HAVE HAD LENGTHY --

     THE COURT:  MY UNDERSTANDING IS THERE WAS SOME
NARROWING CONCERNING THE PRODUCTION OF VIACOM AND
VIACOM-RELATED ENTITIES.

     MR. HEMMINGER:  THAT WAS WHAT THE AGREEMENT
WAS, AND THAT IS WHAT WE HAVE COLLECTED UP TO PRODUCE.

     THE COURT:  BUT THAT WASN'T IN THE AGREEMENT?

     MR. KRAMER:  NO.  CERTAINLY NOT, YOUR HONOR.
ABSOLUTELY, POSITIVELY NOT.  WE COULD NOT POSSIBLY HAVE
ENTERED INTO THAT AGREEMENT.  THE OTHER INFORMATION IS
FAR TOO IMPORTANT TO US TO HAVE ENTERED INTO THAT
AGREEMENT.

     I WOULD SAY THAT THE DISCUSSIONS THE PARTIES
HAD DURING THIS MEET-AND-CONFER PROCESS WERE INTENDED TO
SEGMENT PRODUCTIONS SO THAT THE STUFF THAT WAS MOST
IMPORTANT WOULD BE PRODUCED FASTEST AND WOULD BE
AVAILABLE TO US FOR USE IN DEPOSITIONS.  THEY WERE ALL
CONDITIONED ON THE IDEA THAT, "OKAY, YOU GOT THE SUBPOENA
IN SEPTEMBER OF '07.  IF YOU GIVE US THESE DOCUMENTS BY
FEBRUARY OF '07, GREAT, WE CAN WAIT ON SOME OTHER
DOCUMENTS.  BUT THESE ARE THE ONES YOU SHOULD PRIORITIZE.
THESE ARE THE ONES WE CAN WAIT ON."  WE DIDN'T GET ANY.
THIS WAS THE BACK AND FORTH OF THE MEET-AND-CONFER
PROCESS.  IT WAS ALL CONDITIONED ON TIMELY COMPLIANCE

1    WITH THE SUBPOENA, AND OBVIOUSLY WE HAVEN'T GOTTEN THAT.

 2              MR. HEMMINGER:  WELL, AGAIN, HE WASN'T INVOLVED

 3    IN THE MEET AND CONFERS, AND THERE WAS NEVER A DISCUSSION

 4    ABOUT THE DATE, "WE'LL AGREE TO THIS IF YOU GET IT BY

 5    SUCH AND SUCH."  I THINK THE RECORD -- YOU HAVE GOT ALL

 6    THE COMMUNICATIONS.  YOU CAN SEE ALL THE EFFORTS AND

 7    DISCUSSIONS THAT WENT BACK AND FORTH WITH REGARD TO

 8    NARROWING AND HOW WE GOT TO THE POINT WHERE WE ARE AT.

 9    I DON'T REALLY WANT TO BELABOR IT.

10              WHAT I AM TRYING TO DO NOW IS TO PUT THIS TO A

11    REASONABLE SCOPE OF TRULY DOCUMENTS THAT THEY KNOW THAT

12    THEY WANT.  THE COMMENT ABOUT THIS FIRST SOURCE AND

13    PARAMOUNT, QUITE FRANKLY, BECAUSE PARAMOUNT IS IN FACT A

14    VIACOM ENTITY, AS PART OF OUR AGREEMENT, THOSE TYPES OF

15    DOCUMENTS WERE MADE AVAILABLE.  I, HOWEVER, THINK THAT

16    THOSE DOCUMENTS MAY BE BEING WITHHELD ON WORK PRODUCT

17    BECAUSE A DECISION AS TO WHAT A CLIENT DOES WITH THE

18    INFORMATION WITH REGARD TO SOMETHING TOTALLY DIFFERENT

19    THAN, YOU KNOW, THE ISP IS -- WHERE UNDER THE SAFE HARBOR

20    ACT, "WHAT DO I DO WITH THE UNDERLYING INDIVIDUAL?"  THAT

21    IS A LITIGATION QUESTION AND DEALS WITH MENTAL

22    IMPRESSIONS OF THE CLIENTS AS TO WHAT THEY DO.

23              SO THIS OPENS UP A HUGE CAN OF WORMS, WHICH WE

24    HAVE NO TROUBLE WITH BECAUSE VIACOM IS A PLAINTIFF; THEY

25    CAN GO IN AND PROTECT THEMSELVES.  OUR OTHER CLIENTS AND

CUSTOMERS ARE NOT IN THAT SITUATION, AND THE BURDEN THAT
THIS IS GOING TO PUT ON THEM IS HUGE.

AND AGAIN, THIS -- IN THESE TIMES WITH THIS
ECONOMIC SITUATION WHERE EVERYBODY IS LAYING OFF -- AND
BAYTSP HAS HAD TO LAY OFF -- TO REQUIRE US TO GO IN AND
SAY, "I'M SORRY. NOW IF YOU USE US, YOU ARE GOING TO
HAVE TO GIVE UP ALL YOUR DOCUMENTS AND GET INVOLVED IN
THIS VIACOM/GOOGLE HUGE LAWSUIT" WHEN THEY REALLY HAVE NO
SAY IN IT, IT IS JUST OUTRAGEOUSLY BROAD.

AND THE COMMENT THAT, "WELL, IT MAY NOT BE
WORTH $100,000," THAT'S A MISREPRESENTATION, YOUR HONOR,
OF WHAT THE CASE IS ABOUT. AND I'VE READ THE COMPLAINTS
AND I HAVE GOT SOME SENSE OF THE ANSWERS AND SO FORTH
ABOUT WHAT'S GOING ON, MORE THAN YOU HAVE HAD THE
OPPORTUNITY TO DO. SO I UNDERSTAND.

BUT WHAT YOU HEAR, THE CRITICALITY IN THESE
THINGS, QUITE FRANKLY, I CAN'T ADDRESS, BUT KNOWING WHAT
I KNOW ABOUT READING THE COMPLAINT, THESE ARE GROSS
OVERSTATEMENTS OF THE NEED FOR THESE TYPES OF DOCUMENTS.
AND, IN FACT, IF THEY NEEDED THEM, THE WAY TO GO IS NOT
BACK TOWARD -- THROUGH SMALL LITTLE BAYTSP AND DESTROY
ITS BUSINESS.

IF ONE WERE TO STEP BACK AND LOOK AT IT -- I
MEAN, THIS IS YOUTUBE SAYING, "GOD, YOU KNOW, BAYTSP,
THEY ARE ONE OF THE PEOPLE THAT SEND US A HUGE NUMBER OF

1 TAKEDOWN NOTICES. IF WE CAN GET RID OF THEIR BUSINESS,
2 IT'S GOING TO MAKE OUR LIFE EASIER." SO IF YOU WANT TO
3 CAST ASPERSIONS, WHICH I HAVE BEEN TRYING TO AVOID DOING,
4 THE TACTIC OF NOT GOING TO THE PEOPLE WHO ACTUALLY ARE
5 DOING COPYRIGHT PROTECTION, THE ACTUAL COPYRIGHT OWNERS,
6 INSTEAD GOING TO SOME THIRD PARTY WHO HAPPENS TO ONLY BE
7 AN AGENT UNDER THE COPYRIGHT ACT TO DO THE THINGS FOR
8 THEM, IS CIRCUMVENTING, AND IN OUR VIEW IS JUST BAD
9 FAITH, QUITE FRANKLY.
10 GO TO THE CONTENT PROVIDERS, ASK FOR ALL OF
11 THEIR DOCUMENTS RELATING TO COPYRIGHT PROTECTION AND THE
12 INSTRUCTIONS AND THE THINGS THEY DO, AND THEN THEY DON'T
13 HAVE TO WORRY ABOUT WHAT GOES IN BETWEEN AND PIECEMEAL
14 EFFORTS AND SO FORTH.
15 AN ORDER ORDERING US FOR THE NEXT SIX MONTHS TO
16 SPEND TIME GOING THROUGH ALL OF THIS, CONTACTING ALL OF
17 OUR CUSTOMERS, IS GOING TO HAVE A DEVASTATING EFFECT ON
18 BAYTSP'S BUSINESS. AND IT'S JUST NOT JUSTIFIED BY THE
19 RELEVANCE HERE. YOU ARE HEARING, YOU KNOW, VERY GREAT
20 RHETORIC. HE IS DOING A GOOD JOB EXPLAINING HOW HORRIBLE
21 AND HOW CRITICAL THESE ARE. QUITE FRANKLY, AS I SAID, WE
22 DON'T HAVE STATISTICS AS TO WHEN THERE IS OR IS NOT AN
23 INFRINGEMENT. THEY HAVE ALL OF THE TAKEDOWN NOTICES FROM
24 EVERYBODY. THEY ARE IN THE BEST POSITION TO KNOW WHETHER
25 OR NOT THERE'S BEEN A TAKEDOWN.

AND AS FAR AS PUTTING IT BACK UP, TO THE EXTENT
THE COPYRIGHT OWNER OBJECTS, THEY ARE OBLIGATED -- THEN
THEY CAN PUT IT BACK UP; THEY KNOW THAT. THEY HAVE
VIACOM; THEY CAN DO ALL OF THOSE THINGS THROUGH VIACOM.
SO THIS IS NOT SOMETHING THAT NEEDS TO TAKE AND REQUIRE A
SMALL COMPANY IN THE BAY AREA HERE -- WHO IS HAVING ITS
OWN TROUBLES, LIKE EVERYBODY IS -- TO SPEND THE NEXT SIX
MONTHS TELLING ITS CUSTOMERS THAT, YOU KNOW, "BECAUSE YOU
USE ME, YOU ARE GOING TO END UP HAVING TO GET EMBROILED
IN THIS LAWSUIT."

FOOTBALL LEAGUE WENT OUT AND SAID, "ANYBODY WHO
WANTS TO PARTICIPATE, IT'S A CLASS ACTION SUIT," OR AT
LEAST -- I DON'T KNOW IF IT'S BEEN CERTIFIED, BUT "IT'S A
CLASS ACTION SUIT." THEY WENT OUT LOOKING FOR PEOPLE.
ANY OF THE COPYRIGHT OWNERS THAT WANTED TO GET INVOLVED,
THEY COULD GET INVOLVED; OTHERS DON'T. THEY SHOULD NOT
BE DRAGGED IN, AT LEAST THROUGH THIS BACK DOOR. THEY
SHOULD GO -- IF THEY WANT THEM, THEY KNOW WHO HAVE BEEN
USING YOUTUBE. THEY SHOULD GO OUT AND GO AFTER THEM
DIRECTLY AND HAVE THE REAL PARTIES OF INTEREST RATHER
THAN TAKING THESE INTERMEDIARIES.

AND THESE ARGUMENTS ABOUT RELEVANCE ARE VERY,
VERY REMOTE. THE ISSUE IS NOT WHETHER OR NOT THE
TAKEDOWN NOTICES WERE PROPER. EVEN IF IT IS, THEY HAVE
THAT INFORMATION -- OKAY? -- OR THEY COULD GO AFTER THEIR

COMPETITOR ISPS IF THEY WANT TO GET THE INFORMATION ABOUT
OTHER PEOPLE THAT ARE DOING THOSE THINGS.  BUT THAT IS
NOT THE ISSUE.

THE ISSUE HERE IN THE CASE IS REALLY WHETHER OR
NOT VIACOM -- I'M SORRY, WHETHER YOUTUBE BY ALL OF ITS
OTHER ACTIVITIES, OF ITS DRESSING UP AND PRESENTING AND
THE WAY THAT IT ENDS UP SHOWING THE VIDEOS, WHETHER THAT
BRINGS IT OUTSIDE THE SCOPE OF THE SAFE HARBOR ACT AND
THE COPYRIGHT ACT.  IT IS NOT WHETHER OR NOT THE PUBLIC
POLICY OF ALLOWING A COPYRIGHT OWNER TO HIRE BAYTSP OR
ANY OTHER THIRD PARTY TO SEND A TAKEDOWN NOTICE IS
PROPER.  THE QUESTION IS "THEIR" ACTIVITY.  AND THEY ARE
TRYING TO GO OUT AND, FRANKLY, CREATE ISSUES THAT WILL
NOT FURTHER THE CORE OF THE ISSUE BEFORE THE COURT.

NOW, I'M NOT INVOLVED IN THAT.  THIS IS MY
READING OF THE COMPLAINTS AND THE ANSWER, AND I'M
ADDRESSING IT BECAUSE THE SCOPE OF THE SUBPOENA
DRAMATICALLY IMPACTS THE BUSINESS, REGARDLESS OF ANY
AGREEMENT BY VIACOM TO REIMBURSE BAYTSP -- OKAY? -- AND I
KNOW THEY HAVE MADE A BIG DEAL ABOUT THAT SAYING IT'S NOT
THE BURDEN.  AND YES, I DON'T KNOW OF ANY WRITTEN
AGREEMENT, BUT THERE HAVE BEEN SOME EFFORTS BY VIACOM --
HAS BEEN TRYING TO HELP OUT.  WHETHER THEY WILL PAY ALL
OF IT, WHO KNOWS?  BUT THIS WILL HAVE A DRAMATIC BURDEN;
EVEN IF VIACOM WERE TO PAY ALL OF THE EXPENSES IN DOING

ALL OF THIS, IT WILL HAVE A DRAMATIC IMPACT ON THE
CUSTOMER SERVICE PEOPLE WHO NOW HAVE TO DEAL WITH THESE
CLIENTS TO TELL THEM, "I HAVE THIS BROAD ORDER ASKING FOR
EVERY DOCUMENT I HAVE ABOUT YOU." IT'S JUST NOT FAIR AND
NOT AT ALL RELEVANT.

MR. KRAMER: VERY BRIEFLY, YOUR HONOR. THE
TIME TO MAKE A BURDEN SHOWING WAS IN RESPONSE TO OUR
MOTION TO COMPEL. THERE IS NOT ONE SCINTILLA OF EVIDENCE
OF ANY BURDEN SHOWN BY BAYTSP IN RESPONSE TO THE
SUBPOENA. THERE IS NO BURDEN SHOWING AT ALL.

WITH RESPECT TO WHAT YOU SAY TO THIRD PARTIES,
GOOGLE GETS MORE SUBPOENAS THAN ANYBODY COULD POSSIBLY
RECEIVE; IT GETS MORE SUBPOENAS THAN ANYBODY. PEOPLE
UNDERSTAND THAT WHEN THEY USE THIRD PARTIES TO FULFILL
FUNCTIONS THAT THEY THEMSELVES COULD FULFILL, THAT THOSE
THIRD PARTIES POSSESS INFORMATION THAT IS SUBJECT TO
SUBPOENA.

NOW, I HEARD MR. HEMMINGER SUGGEST THAT WE
SHOULD JUST GO AFTER THESE THIRD PARTIES AND GET
INFORMATION FROM HUNDREDS OF THEM OR DOZENS OF THEM BY
SEPARATE SUBPOENAS. A NUMBER OF PROBLEMS WITH THAT.
ONE, IS THE JUDICIAL EFFICIENCY PROBLEM.

MORE IMPORTANTLY, THOUGH, THERE IS NO
INDICATION THAT THOSE PARTIES ACTUALLY HAVE THESE
DOCUMENTS. YOU HEARD VIACOM SAY, "OH, NOT OURS. WE

DON'T HAVE POSSESSION, CUSTODY OR CONTROL OF THESE
DOCUMENTS.  THESE ARE BAYTSP'S DOCUMENTS."  WHY WOULDN'T
A THIRD PARTY SAY THE SAME THING?  OF COURSE THEY WOULD.

THERE IS NO RESPONSE THAT I HEARD TO OUR
RELEVANCE ARGUMENTS.  THEY ARE NOT MAKEWEIGHT RELEVANCE
ARGUMENTS.  THEY GO TO THE CORE OF THE CASE.

THE LANGUAGE THAT COUNSEL IS PUTTING OUT THERE
ABOUT TAKEDOWN NOTICES AND RESPONSES TO TAKEDOWN NOTICES,
THAT'S NOT THE ISSUE.  I DESCRIBED THE ISSUE WHEN I GOT
UP FOR THE FIRST TIME.  THERE ISN'T A RESPONSE TO THAT
BECAUSE IT IS CRITICALLY RELEVANT INFORMATION, AND BAYTSP
HAS HAD PLENTY OF OPPORTUNITY TO PROVIDE A RESPONSE ON
THAT ISSUE AND STILL HASN'T DONE SO.

FINALLY, WITH RESPECT TO BAYTSP ITSELF, IT WENT
INTO A BUSINESS THAT CONSISTS OF AIDING PARTIES IN
BRINGING LITIGATION.  VIACOM HAS IDENTIFIED BAYTSP AND
PRAISED IT FOR HELPING TO BRING THIS VERY ACTION.
BAYTSP, AT VIACOM'S DIRECTION, TROLLED THE YOUTUBE SITE,
COLLECTED UP INSTANCES OF ALLEGED INFRINGEMENT FOR MONTH
AFTER MONTH AFTER MONTH, AND THEN BLASTED IT TO YOUTUBE
IN ONE DAY, AND THEN ANNOUNCED IT IN THE PRESS.

WHEN YOU DO THAT, WHEN YOU ARE A BUSINESS THAT
SETS OUT TO AID IN A BILLION-DOLLAR LAWSUIT, IT SHOULD
NOT COME AS A SURPRISE TO YOU THAT THE DEFENDANT IN THAT
LAWSUIT WANTS TO KNOW WHAT YOU KNOW.  AND THAT'S WHY WE

SENT THE SUBPOENA.  IT WAS THE VERY FIRST SUBPOENA THAT

WAS SERVED IN THIS CASE, I BELIEVE, SEPTEMBER OF 2007.

WE HAVE BE WAITING A VERY LONG TIME FOR THIS INFORMATION.

AND AS MR. MANCINI HAS REPEATEDLY REFERRED TO, WE NEED IT

TO CONDUCT DEPOSITIONS.

I THINK WITH THAT, I'LL SUBMIT THE MATTER.

MR. HEMMINGER:  BAYTSP IS NOT IN THE BUSINESS

OF LITIGATION.  THE WHOLE PURPOSE OF THE DMCA WAS TO

PROVIDE A WAY TO AVOID LITIGATION.

WHAT YOUTUBE IS TALKING ABOUT IS WHAT BAYTSP'S

CLIENTS AND CUSTOMERS DO WITH THE INFORMATION.  THEY ARE

AN AGENT THAT SENDS TAKEDOWN NOTICES BASED UPON

INSTRUCTIONS.  HE SAID, "TAKEDOWN NOTICES AREN'T THE

ISSUE."  WELL, THAT'S COMPLETELY CONTRARY TO WHAT

MR. MANCINI SAID.  ARE THEY OR AREN'T THEY?  THEY ARE

TRYING TO COME UP WITH EVERY ARGUMENT THEY CAN TO GET THE

BROADEST, MOST SWEEPING PRODUCTION OF DOCUMENTS, HOPING

THEY CAN FIND SOMETHING.  IT'S A FISHING EXPEDITION OF A

THIRD PARTY.

BAYTSP HAS NO INTEREST IN THE OUTCOME OF THIS

LITIGATION -- AT ALL.  WHETHER OR NOT YOUTUBE IS AN ISP

PROVIDER OR NOT MAKES NO DIFFERENCE TO BAYTSP.

EVEN STILL, EVEN IF YOU WANT TO PAINT THAT

PICTURE WITH REGARD TO VIACOM SAYING, "OH, THEY GOT INTO

THIS BUSINESS, THEY SHOULD ACCEPT THEIR BURDEN AND

PRODUCE THE DOCUMENTS," BAYTSP HAS.  IT HAS SPENT A YEAR

AND OVER $1 MILLION.  I THINK WELL OVER $1 MILLION HAS

BEEN EXPENDED IN COLLECTING AND GETTING THESE DOCUMENTS

READY TO PRODUCE.

SO TO THE EXTENT THERE'S AN ISSUE WITH VIACOM

OR ANY OF ITS ENTITIES, THAT'S BEEN TAKEN CARE OF.  IT IS

NOT IN THE BUSINESS OF LITIGATION, AND I THINK IF YOU

WENT AND DID A SEARCH OF ANY OF THE RECORDS, I DON'T

THINK YOU WILL SEE BAYTSP INVOLVED IN ANY LITIGATION.

THAT IS NOT ITS BUSINESS; ITS BUSINESS IS ENFORCING THE

DIGITAL MILLENNIUM COPYRIGHT ACT PROVISIONS ON BEHALF OF

ITS CLIENTS.

SO IT WOULD JUST BE IMPROPER TO GO FORWARD AND

ASK FOR EVERY DOCUMENT RELATING TO EVERY ONE OF ITS

CLIENTS.  THERE SHOULD BE A RESTRICTION WITH -- AT LEAST

WITH REGARD TO THE INSTRUCTIONS, IF THAT'S WHAT THEY ARE

LOOKING FOR.  ALTHOUGH IF THEY ARE LOOKING FOR THE

INSTRUCTIONS FROM THE CLIENT, THE COPYRIGHT OWNER WOULD

HAVE THAT.  IF THEY ARE LOOKING FOR ERRONEOUS TAKEDOWN

NOTICES, YOUTUBE HAS THAT.

BUT EVEN STILL, IF YOU LIMIT IT TO THOSE

THINGS, THOSE ARE MUCH MORE REASONABLE AND THINGS THAT I

THINK CAN BE DONE MUCH MORE QUICKLY AND WOULD SERVE THEIR

PURPOSES.  THOSE ARE THE ONLY TWO BONA FIDE ARGUMENTS

THAT I SAW WITH REGARD TO RELEVANCE IN THIS WHOLE MIX

THAT WE HAVE SEEN TODAY.

SO I WOULD ASK YOUR HONOR TO RECONSIDER A
TENTATIVE AND LIMIT IT TO THE EXTENT IT GOES TO THIRD
PARTIES, TO BE LIMITED TO THE INSTRUCTIONS AND, IF YOU
WILL, ERRONEOUS TAKEDOWN NOTICES.  I THINK THAT SATISFIES
ALL OF THEIR RELEVANCE CLAIMS.  TO THE EXTENT THEY WANT
ANYTHING ELSE, THEY SHOULD GO AHEAD AND TALK TO MAYBE THE
OTHER ISP SITES, MAYBE THE OTHER COPYRIGHT OWNERS, BUT
NOT THROUGH BAYTSP.

THANK YOU.

THE COURT:  RESPONSE TO HIS CONCLUSION?

MR. KRAMER:  YOUR HONOR, THERE IS A HOST OF
INFORMATION AT BAYTSP THAT WE CAN'T IDENTIFY THAT BEARS
ON THE ISSUES THAT I MENTIONED IN MY REMARKS.  THERE ARE
E-MAILS, THERE ARE ACCOUNT NAMES, YOUTUBE ACCOUNT NAMES
SHOWING HOW BAYTSP ITSELF ACCESSES THE YOUTUBE SERVICE
USING ACCOUNT NAMES THAT WE DON'T EVEN KNOW.

COUNSEL MENTIONED THAT WE WOULD KNOW ABOUT
ERRONEOUS TAKEDOWN NOTICES.  WE HAVE NO IDEA WHETHER A
TAKEDOWN NOTICE WAS ERRONEOUS.  WE GOT A TAKEDOWN NOTICE
FROM BAYTSP AND A USER COMPLAINED OR A CONTENT OWNER
COMPLAINED TO BAYTSP THAT THIS CONTENT SHOULDN'T BE TAKEN
DOWN.  WE DON'T KNOW THAT; BAYTSP KNOWS THAT.  YOUTUBE
HAS NO IDEA THAT THE TAKEDOWN NOTICE WAS ERRONEOUS OR
NOT.  WE MAY NEVER KNOW.  WE HAVE NO IDEA WHAT'S GOING ON

AT BAYTSP, HOW THEY ARE MONITORING THE YOUTUBE SITE, HOW
THEY ARE ACCESSING VIDEOS.  THE ENTIRE PROCESS, WHAT THEY
ARE DOING, IS A MATTER OF EXTREME SIGNIFICANCE IN THIS
CASE.

     I WISH I COULD IDENTIFY FOR YOU EVERY SINGLE
CATEGORY OF DOCUMENTS, BUT THAT'S WHY WE ASKED THE
REQUESTS THAT WE DID.

     THE COURT:  HOW ARE YOU GOING TO LEARN WHAT
THEY DO?  YOU HAVE NO IDEA WHAT THEY DO IN THESE
INSTANCES.  IS THAT ULTIMATELY WHAT YOU WILL FIND OUT IN
SOME SORT OF A DEPOSITION?

     MR. KRAMER:  WE BELIEVE THAT ONCE WE GET
THESE -- WE BELIEVE THAT IT WOULD HAVE ALREADY TAKEN
PLACE, BUT WE BELIEVE THAT ONCE WE GET THESE DOCUMENTS,
WE ARE GOING TO TAKE A DEPOSITION OF BAYTSP AND ASK
QUESTIONS THAT ARE SUGGESTED BY THE DOCUMENTS WE RECEIVE,
BUT DOCUMENTS SUGGESTING THE PROCESS BY WHICH THEY
MONITOR THE YOUTUBE SITE.

     THEY HAVE 20 PEOPLE TRAINED TO LOOK FOR CERTAIN
THINGS.  WHAT THINGS?  WHAT ARE THEY LOOKING FOR?  WHY
ARE THEY LOOKING FOR THAT?  THERE ARE ALL SORTS OF
OPERATIONAL ISSUES WITH WHAT THEY DO THAT -- AND AGAIN, I
THINK WE DISCUSSED THEM AT SOME LENGTH IN OUR SEPARATE
STATEMENT, SO I'M NOT GOING TO GO BACK AND REHASH THEM,
BUT I BELIEVE THAT IT WOULD BE EXTREMELY PREJUDICIAL TO

YOUTUBE TO NARROWLY CONSTRUE REQUESTS TO SPECIFIC TYPES
OF DOCUMENTS. WE DON'T KNOW WHAT DOCUMENTS THEY HAVE;
THAT'S WHY WE ASKED THE REQUESTS THAT WE DID.

THAT'S ALL.

MR. HEMMINGER: I'M SORRY, YOUR HONOR, BUT ONE
LAST COMMENT. HE RAISED NEW ISSUES.

THE COURT: I'M GOING TO LISTEN UNTIL NONE OF
YOU CAN TALK ANYMORE.

MR. HEMMINGER: THANK YOU, YOUR HONOR, I
APPRECIATE IT. IT'S A VERY IMPORTANT ISSUE, AS YOU
RECOGNIZE.

THE COMMENT ABOUT WE NEED TO KNOW HOW BAYTSP
DOES WHAT IT DOES, TO THE EXTENT THEY TAKE THE TIME TO
LOOK AT THE VIACOM-RELATED DOCUMENTS, THEY ARE GOING TO
GET ALL OF THAT INFORMATION. THEY DO NOT HAVE TO SEE
THAT IT'S THE SAME PROCESS FOR EVERYBODY ELSE. AND TO
THE EXTENT THEY WANT TO KNOW THAT, THIS IS THE FIRST I
HAVE HEARD THAT THEY ARE GOING TO WANT TO TAKE A
DEPOSITION.

THE COURT: SO MUCH FOR MEET AND CONFER.

MR. HEMMINGER: OVER A YEAR, TOO. YOU WOULD
THINK. BUT ANYWAY, THEY CAN ASK THAT QUESTION AT THE
MEET AND CONFER, THAT IT IS THE SAME. TO FORCE AND SAY
"GIVE US EVERY DOCUMENT" IS JUST NOT WITHIN THE SCOPE OF
RELEVANCE BECAUSE THEY ARE FISHING. HE SAID, "I DON'T

KNOW WHAT THEY HAVE." AND QUITE FRANKLY, HOW BAYTSP

OPERATES, ITS INTERNAL BUSINESS ACTIVITIES IS WHOLLY

IRRELEVANT TO WHETHER OR NOT YOUTUBE IS A PIRATE SITE.

WHAT DOES HOW BAYTSP HAS ITS EMPLOYEES -- WHAT

DOES IT MATTER IF THEY ARE THERE FOUR HOURS, HAS AN HOUR

OFF? DOES THAT IMPACT WHETHER OR NOT VIACOM --

THE COURT: I WOULD BE SURPRISED IF THOSE WERE

THE QUESTIONS.

MR. HEMMINGER: WELL, HE IS TALKING ABOUT THE

OPERATIONAL ASPECTS. I DON'T KNOW WHAT THAT MEANS. AND

THEIR SUBPOENA IS SO BROAD; ARGUABLY, IT COVERS

EVERYTHING. AND AGAIN, WHAT THEY HAVE SAID THEY WANT TO

KNOW, WHAT THEY THINK IS RELEVANT IS HOW THE DECISION IS

MADE OR WHAT INSTRUCTIONS BAYTSP HAS FROM ITS CLIENTS TO

TAKE DOWN -- TO SEND A TAKEDOWN NOTICE. OKAY? FRANKLY,

THOSE TYPES OF INSTRUCTIONS I DON'T THINK ARE RELEVANT AS

TO WHAT THEY DO. IT MAY BE RELEVANT AS TO WHETHER OR NOT

THE PERSON WHO POSTED IT IS VIOLATING A COPYRIGHT OR

WHETHER OR NOT THE INSTRUCTIONS WERE SUFFICIENT TO

CAPTURE EVERYTHING. BUT THOSE THINGS, ALL OF THAT

INFORMATION IS GOING TO BE OBTAINED -- IF IT EXISTS --

THROUGH THE VIACOM DOCUMENTS, TO THE EXTENT THAT THEY ARE

PRODUCED THAT ARE NOT WORK-PRODUCT RELATED.

INSTEAD, THEY ARE COMING IN HERE AND SAYING,

"I DON'T KNOW WHAT ALL THEY ARE GOING TO SAY ABOUT ALL OF

THEIR CLIENTS, BUT WE WANT TO LOOK AT IT AND SEE IF WE
CAN FIND ANYTHING RELEVANT," OTHER THAN THE TWO THINGS
THAT THEY HAVE INDICATED.  HOW WE SIT THERE AND MAINTAIN
A SERVER THAT HAS A COPY OF A VIDEO, THAT -- TO THE
EXTENT IT COMES OUT, THAT'S GOING TO COME OUT THERE.  AND
THEY ALREADY KNOW THAT, I'M SURE.  THAT'S NOT AN ISSUE.
THEY DON'T NEED DOCUMENTS TO SEE THAT.

      SO ALL OF THE QUOTE/UNQUOTE "RELEVANCE" IS JUST
SUPERFICIAL.  IT DOES NOT GET INTO THE HEART OF THE REAL
ISSUE, WHICH IS WHAT YOUTUBE DOES IN COMPLIANCE WITH THE
COPYRIGHT ACT, AND THAT IS WHAT THE LAWSUIT IS IN FACT
ABOUT.  AND EXACTLY HOW BAYTSP, A THIRD PARTY WHO DOES
NOT GET INVOLVED IN LITIGATION AND HAS ONLY DONE ONE
THING, WHICH IS SEND TAKEDOWN NOTICES -- OKAY? -- SHOULD
NOT BE FORCED TO DISGORGE THE ENTIRETY OF ITS DOCUMENTS.

      SO I THINK YOU SAW AN ADMISSION THAT THEY ARE
JUST FISHING.  AND I JUST THINK THAT THERE ARE OTHER MORE
EFFICIENT WAYS TO GET IT, EITHER THROUGH THE COPYRIGHT
OWNERS -- PERHAPS THE DEPOSITION WOULD RESOLVE THEIR
ISSUE.  PERHAPS THAT IS A WAY TO GO INSTEAD OF REQUIRING
THE PRODUCTION OF MILLIONS AND MILLIONS OF PAGES OF
DOCUMENTS.  BUT IT IS CERTAINLY NOT SOMEONE WHO IS A
THIRD PARTY.  AND MERELY BECAUSE THE THIRD PARTY USED THE
INFORMATION THAT WAS PROVIDED BY BAYTSP BECAUSE IT FOUND
OVER 300,000 INSTANCES OF INFRINGEMENT, THAT SOMEHOW NOW

1    IT IS SUBJECT TO BEING DRAGGED INTO THIS HUGE LAWSUIT,

2    THAT CONNECTION IS NOT THERE.

3            THERE ARE OTHER MORE MEANINGFUL AND EFFICIENT

4    WAYS TO GET THIS THAN THROUGH THE BURDENING OF A THIRD

5    PARTY.

6            THANK YOU.

7            THE COURT:  QUICK RESPONSE, AND THEN I'LL ASK

8    ANYBODY ELSE IF YOU HAVE ANYTHING TO SAY, AND THEN I'M

9    SUBMITTING IT.

10            MR. KRAMER:  THANK YOU, YOUR HONOR.

11            THERE ISN'T A RELEVANCE ARGUMENT -- A RESPONSE

12    TO THE RELEVANT ARGUMENTS WE ARTICULATED.  THERE ISN'T A

13    SHOWING OF BURDEN.  AND EVEN IF THERE HAD BEEN A SHOWING

14    OF BURDEN, WE STILL HAVEN'T GOTTEN TO THE BOTTOM OF THE

15    QUESTION OF HOW MUCH VIACOM IS PAYING OF THIS.  THE

16    PARTIES IN THIS LITIGATION ARE EACH BEARING MILLIONS OF

17    DOLLARS IN COST.  THERE'S NO QUESTION ABOUT THAT.

18            BAYTSP SHOULD NOT BE HEARD TO CLAIM BURDEN FOR

19    DOING THAT WHICH VIACOM COULD HAVE DONE ITSELF AND FOR

20    WHICH VIACOM WOULD HAVE HAD TO BEAR THE COST OF PRODUCING

21    THIS INFORMATION, PARTICULARLY IF VIACOM IS NOW PAYING

22    FOR BAYTSP TO COMPLY WITH THE SUBPOENA, AS WE THINK IT

23    IS, AND WE HAVE HEARD NO SUGGESTION TO THE CONTRARY

24    TODAY.

25            THAT'S ALL I HAVE, YOUR HONOR.

MR. HEMMINGER:  LAST COMMENT, YOUR HONOR, THIS
ISSUE ABOUT VIACOM REIMBURSING.

AS I SAID, THERE'S NO WRITTEN AGREEMENT.
VIACOM HAS BEEN PAYING AND REIMBURSING BAYTSP FOR ITS
LEGAL COSTS AND SO FORTH FOR RESPONDING.  BAYTSP HOPES
THAT IT WILL CONTINUE TO DO SO.  WITH THE SCOPE OF YOUR
ORDER, I DON'T KNOW.

THAT ASIDE, EVEN ASSUMING -- EVEN ASSUMING THAT
VIACOM WOULD CONTINUE TO REIMBURSE BAYTSP, AND THE BURDEN
AND THE IMPACT ON ITS BUSINESS -- WHICH IS IN FACT IN OUR
OPPOSITION, CONTRARY TO THE REPEATED STATEMENTS BY
COUNSEL -- COULD BE DEVASTATING TO ITS BUSINESS BECAUSE
IT'S GOING TO THIRD PARTIES REQUIRING THEM TO NOW GET
EMBROILED IN A LAWSUIT WHERE IT HADN'T BEFORE.

THE FACT THAT GOOGLE, A MULTI-BILLION-DOLLAR
COMPANY, I ASSUME -- I DON'T KNOW HOW MUCH IT MAKES --
WHICH IS HUNDREDS OF THOUSANDS OF TIMES BIGGER THAN
BAYTSP -- OKAY, THAT'S IN THEIR BUSINESS; THAT IS NOT
BAYTSP'S BUSINESS.  BAYTSP IS SIMPLY "I'M GOING TO LOOK
AT THE WEB, I'M GOING TO FIND INFRINGEMENT, I'M GOING TO
SEND A TAKEDOWN NOTICE."  AND IF THE ISP WANTS TO COMPLY
WITH THE DMCA, IT TAKES IT DOWN.  AND THAT SHOULD BE THE
END OF IT.

THE OTHER ARGUMENTS BY VIACOM RELATE TO "YOU
ARE OUTSIDE THE SCOPE OF THE SAFE HARBOR ACT AND THE

DMCA, SECTION 512; YOU ARE OUTSIDE OF THAT."  THAT

DOESN'T HAVE ANYTHING TO DO WITH THIS, THE ACTIVITIES OF

BAYTSP.

       THANK YOU.

       THE COURT:  THANK YOU, GENTLEMEN.  IT'S

SUBMITTED.

       MR. KRAMER:  THANK YOU, YOUR HONOR.

       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

              ---OOO---

1

2 <u>CERTIFICATE OF REPORTER</u>

3

4

5         I, JANA L. RIDENOUR, OFFICIAL REPORTER PRO TEM

6 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

7 DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE,

8 CALIFORNIA, DO HEREBY CERTIFY:

9         THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE AND

10 CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN CASE NO.

11 C 08-80211-JF-PVT, VIACOM INTERNATIONAL, INC., ET AL., V.

12 YOUTUBE, INC., ET AL., AND THE FOOTBALL ASSOCIATION PREMIER

13 LEAGUE LIMITED, ET AL., V. YOUTUBE, INC., ET AL., DATED

14 DECEMBER 9, 2008; THAT I REPORTED THE SAME IN STENOTYPE

15 AND TRANSCRIBED THE SAME BY COMPUTER-AIDED TRANSCRIPTION

16 TO THE BEST OF MY ABILITY AS HEREIN APPEARS.

17         DATED THIS _16th_ DAY OF DECEMBER, 2008.

18

19

20

21                   *Jana L. Ridenour # 9302*

22                   JANA L. RIDENOUR, CSR
                  OFFICIAL REPORTER PRO TEM

23                   LICENSE NUMBER 9302

24

25                   ORIGINAL