| | |
|---|---|
| 1 | Steven D. Hemminger (State Bar No. 110665) |
| | ALSTON & BIRD LLP |
| 2 | Two Palo Alto Square |
| 3 | 3000 El Camino Real, Suite 400 |
| | Palo Alto, CA 94306-2112 |
| 4 | Tel.: (650) 838-2000 |
| 5 | Fax: (650) 838-2001 |
| | Email: Steve.Hemminger@alston.com |
| 6 | |
| 7 | Attorneys for Non-Party |
| | BayTSP, Inc. |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Viacom International Inc., *et al.*, | Miscellaneous Action |
| Plaintiffs, | Case No. 08-MC-80211-JF-PVT |
| v. | **BAYTSP'S OBJECTION TO THE** |
| YouTube, Inc. *et al.*, | **JANUARY 14, 2009 ORDER RE** |
| Defendants. | **YOUTUBE SUBPOENA** |
| The Football Association Premier League Limited, *et al.*, | |
| Plaintiffs, | |
| v. | |
| YouTube, Inc. *et al.*, | |
| Defendants. | |

**BAYTSP'S OBJECTION TO THE**
**JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA**
CASE NO. 08-MC-80211 JF (PVTx)

## Table of Contents

I. BACKGROUND...................................................................................................1

II. STANDARD OF REVIEW...................................................................................4

III. THE RULING THAT ALL DOCUMENTS RELATED TO BAYTSP'S
NON-PARTY CLIENTS' MONITORING OF YOUTUBE.COM
SHOULD BE PRODUCED, IS CLEARLY ERRONEOUS AND
CONTRARY TO LAW..........................................................................................4

    A. BayTSP's Non-party Clients' Communications and Documents are
Not Relevant ............................................................................................... 8

    B. The Balance Between Relevance and Burden Dictates that the
Motion to Compel be Denied as to Non-Parties ("Fourth Parties")...................13

IV. THE JANUARY 14 ORDER PROPERLY LIMITED THE SUBPOENA
TO COMMUNICATIONS AND DOCUMENTS RELATED TO
YOUTUBE ..........................................................................................................15

V. CONCLUSION...................................................................................................17

Table of Authorities

Cases

*Beinin v. Ctr. for Study of Popular Culture,*
    No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. March 17, 2007 ............... 7

*Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006) ........................... 4

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), ............................................. 6

*Hamel v. General Motors Corp.,* 128 F.R.D. 281 (D. Kan. 1989) ................................... 4

*Reyes v. Yates*, No. 05-5435, 2006 WL 2310968 (C.D. Cal. May 26, 2006) ..................... 4

*United States v. Raddatz*, 447 U.S. 667 (1980) ................................................................. 4

Statutes

17 U.S.C. § 512(c) .............................................................................................................. 2

Rules

Fed. R. Civ. P. 45(c)(1) ...................................................................................................... 7

Fed. R. Civ. P. 72(a) .......................................................................................................... 4

Pursuant to the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Northern District of California, San Jose Division, BayTSP.com, Inc. ("BayTSP") hereby objects to certain aspects of Magistrate Judge Trumbull's January 14, 2009 Order Granting YouTube, Inc.'s ("YouTube") Motion to Compel Production of Documents Pursuant to Subpoena Duces Tecum ("January 14 Order"),[1] to the extent it requires the production of documents concerning BayTSP's non-party clients.

As set forth below, the January 14 Order includes rulings that are clearly erroneous and/or contrary to the law.

## I. BACKGROUND

The subpoena at issue in this miscellaneous action was issued by YouTube, in connection with civil actions filed by Viacom International Inc. *et al*. and The Football Association Premier League, *et al*. against YouTube, Inc. *et al*. in the United States District Court for the Southern District of New York, Case Nos. I :07-cv-021 03 (LLS) (FM) and I :07-cv-3582 (LLS) (FM), respectively ("SDNY Actions"). BayTSP is a non-party to the SDNY Actions and its only involvement in the SDNY Actions is the result of the YouTube subpoena.

BayTSP is a service provider that is retained by over 100 copyright holders, typically as an agent and under the direction of the non-party client's legal departments to assist with detection, enforcement and prosecution of their rights against infringement of their copyrighted works. One aspect of the services that BayTSP provides in this capacity is to monitor, according to its clients' confidential instructions, the postings on internet websites that permit the uploading of User Generated Content (UGC) onto websites ("UGC websites") to protect the client's legal rights and provide information

---

[1] For the Court's convenience, a copy of the January 14 Order is attached as Exhibit A to the declaration of C. Augustine Rakow, Esq. ("Rakow Decl.") filed herewith.

that the client may potentially use to prepare for litigation. UGC is user-generated digital content, e.g., a video, that a user posts to a UGC website. An example of one of the many UGC websites is YouTube.com. A significant problem with UGC websites is that the people who post videos frequently post videos that they did not create or did not have the authority to post. BayTSP's clients include large and small owners of copyrighted material who hire BayTSP, sometimes as an arm of the client's legal department, to police the UGC websites for copyright infringement based on unique client specific criteria. BayTSP acts as its clients' Digital Millennium Copyright Act (DMCA) agent in many cases. In accordance with the procedures of the DMCA, BayTSP sends takedown notices to the operator of the UGC website. The takedown requests notify the UGC site operator, e.g., YouTube, that a particular video infringes BayTSP's customer's copyright. Under the terms of the DMCA, the operator of the UGC websites must expeditiously remove, i.e., "take down," the infringing posting. The person who posted the infringing video is informed and has 10 days to object to the notice to the copyright owner.

The DMCA includes a safe harbor position that allows an Internet Service Provider (ISP) that complies with the provisions of 17 U.S.C. §512(c) to be immune from damages liability for copyright infringement. Hearing TR 13:24-14:20.[2] YouTube claims it is an ISP that it is entitled to the safe harbor protections of Section 512(c). An ISP seeking immunity under the safe harbor provisions must meet numerous requirements, only one of which has been put at issue here by YouTube. The ISP must not have "actual knowledge" that the material posted is infringing, or in the absence of actual knowledge, must not be "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. §512(c)(1)(A)(i-ii) (cited in Reply at 2-3).[3]

---

[2] "Hearing TR" refers to the transcript of the hearing held December 9, 2009, attached to the Rakow Declaration as Exhibit B.

[3] For the convenience of the Court, the DMCA, 17 USC Section 512, referred to in the Reply, is attached to the Rakow Declaration as Exhibit B.

2
BAYTSP'S OBJECTION TO THE
JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTx)

BayTSP also provides other internet monitoring services for its clients totally unrelated to YouTube. *See* Rakow Decl. Ex. D.[4] For example, it provides services that monitor file sharing, including what is referred to as Peer to Peer (P2P) file sharing. P2P file sharing is where entire files, e.g., entire movies, are transferred from one computer user to another computer user without using a central server and without the need for uploading the file to a server. In other words, one user makes the files on his computer available to a second user, and the second user can simply transfer the file from the first user's computer to the second user's computer. Some of the more popular free P2P file sharing systems are LimeWire, BitTorrent and eDonkey. This methodology of transferring copyrighted files is different than the methodology used by UGC sites like YouTube, where the videos are uploaded to a particular site for later download. Since there is no ISP and no uploading of files to a server in the P2P model, there is no one to send takedown notices to. Hearing TR 16:24-17:11, 68:2-4.

Viacom retained BayTSP to monitor Youtube.com for infringing clips of Viacom's copyrighted content and to notify Viacom when an infringing video was located. Viacom also retained BayTSP to send takedown notices to YouTube on Viacom's behalf. In the lawsuits between Viacom and YouTube and the Premiere Football League and YouTube, plaintiffs have brought direct and secondary copyright infringement claims against YouTube, and YouTube has asserted Section 512(c) of the DMCA as one of its defenses. Significantly, BayTSP is not objecting to the portions of the January 14 Order that relate to the Viacom entities.[5]

BayTSP is, however, objecting to a very narrow category of documents -- only those documents in its possession that are controlled by its *non-Viacom, non-party clients*, i.e., Fourth Parties, if you will, to this subpoena. BayTSP asks only that the

---

[4] Rakow Decl. Ex. D includes exhibits originally filed by YouTube with its opening papers.

[5] Viacom is raising privilege/work product claims over the vast majority of the documents.

3
BAYTSP'S OBJECTION TO THE
JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTx)

1 Magistrate Judge's order be narrowed to exclude documents related to BayTSP's non-
2 party clients entities, because the burden on BayTSP's non-party clients of producing
3 these Fourth Party documents vastly exceeds any possible relevance to the SDNY
4 Actions.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 72(a) governs the review of orders issued by a magistrate judge in nondispositive matters. If a party objects to a magistrate's order, the district judge to whom the matter is assigned will consider the objections and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *United States v. Raddatz*, 447 U.S. 667, 673 (1980) ("Review by the district court of the magistrate's determination of [] nondispositive motions is on a 'clearly erroneous or contrary to law standard.'"); *Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229 (E.D. Cal. 2006) (reversing the magistrate judge's order as "contrary to law"); *Reyes v. Yates*, No. 05-5435, 2006 WL 2310968, at *4 (C.D. Cal. May 26, 2006) (modifying the magistrate judge's order as "contrary to law").

Failures to properly apply the appropriate balancing test with regard to third party subpoenas has been found to be clearly erroneous and contrary to law resulting in modification of the magistrate's orders. *See, e.g., Ocasek v. Hegglund,* 116 F.R.D. 154 (D. Wyo. 1987) (reversing magistrate's order compelling third party depositions as "clearly erroneous or contrary to law" under Rule 26 three-prong balancing test); *Hamel v. General Motors Corp.,* 128 F.R.D. 281, 285 (D. Kan. 1989) (reversing magistrate's order compelling discovery of third party documents as "clearly erroneous and contrary to law" under Rule 26 balancing test).

## III. THE RULING THAT ALL DOCUMENTS RELATED TO BAYTSP'S NON-PARTY CLIENTS' MONITORING OF YOUTUBE.COM SHOULD BE PRODUCED, IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

The January 14 Order granted YouTube's motion to compel and described the

4

BAYTSP'S OBJECTION TO THE
JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTx)

documents BayTSP would be required to produce in response to the subpoena.

Specifically, the January 14 Order described the categories of documents that are covered by the Order:[6]

> The subpoena includes 13 specific document requests. YouTube describes the following four general categories of documents:
>
> (1) All documents and communications concerning YouTube, including those reflecting use of YouTube by BayTSP **and its clients**, monitoring of YouTube by BayTSP **and its clients**, and comparisons of the responsiveness of YouTube to **other online services** (Document Request Nos. 1, 3, 4, 5, 8. 13);
>
> (2) All documents and communications regarding BayTSP's relationship with Viacom, including documents regarding copyrights Viacom claims to own and the litigations in New York (Document Request Nos. 6, 9);
>
> (3) All documents and communications regarding the nature of BayTSP's monitoring and identification processes, its training of monitors, and its effectiveness or lack thereof with respect to identification of allegedly infringing materials online (Document Request Nos. 2, 7, 10); and
>
> (4) All documents sufficient to identify **the entities that have retained BayTSP** to monitor the YouTube service, and documents sufficient to identify prior litigations in which BayTSP has provided testimony (Document Request Nos. 11, 12).

Order at 6 (emphasis added).

BayTSP only objects to the following: Category (1) with respect to its non-party clients; Category (3) with respect to processes and procedures specific to non-party clients; and Category (4) that requires, *inter alia*, BayTSP to produce documents that identify the names of its non-party clients. To reiterate, BayTSP has never objected to, and does not object to, producing documents and communications between BayTSP and any of the plaintiffs in the SDNY Actions.[7] These documents are the core of what

---

[6] While BayTSP believes that the Order is clear that the subpoena was limited to the four categories described at page 6, based on the arguments presented in the papers and at the hearing, YouTube has disagreed. This issue is addressed in detail below. Given YouTube's position, BayTSP requests that the Court clarify the Order to make it clear that it is so limited, and if it was not so limited, to so limit it.

[7] Although BayTSP has never objected to the production of the Viacom documents in its possession, virtually the entirety of YouTube's opening brief was directed to arguing why the Viacom documents that BayTSP has are relevant. *See* BayTSP Opposition, at page 1, lines 7-15. It was only in its Reply and at the hearing that YouTube presented any specific arguments as to why documents of clients other than Viacom were relevant to the litigation.

YouTube wanted from non-party BayTSP, and BayTSP has already collected and is preparing to produce these documents for production. BayTSP has solely objected to the January 14 Order to the extent it requires BayTSP, a third party to this action, to identify the names of its "Fourth Party" clients (*i.e.*, clients other than Viacom-related entities in the SNDY Action), and to the extent it requires BayTSP to produce documents related to the monitoring of and communications about YouTube that may be in BayTSP's possession but are controlled by its Fourth Party clients.

The magistrate Judge's finding that these "Fourth Party" documents should be produced is contrary to law and clearly erroneous. In reaching its conclusion, the Court failed properly to apply the law with regard to requiring nonparties to produce documents in response to a Rule 45 subpoena. YouTube's papers and the Magistrate Judge's order primarily focused on the Viacom-related documents, to which BayTSP is not objecting. But, the Magistrate Judge used the same standard for "party" documents and for "non-party" documents. This is clearly erroneous. Specifically, the Court failed to properly balance the alleged relevance against the burden on BayTSP and its non-party clients. At pages 4 and 5 of the January 14 Order, the Court sets forth the legal standard it applied. However, the Court failed to apply the standards with respect to weighing the relevance of the material sought against the burden of producing the material, let alone weighing the relevance of documents owned by a Fourth Party that happen to be in the custody of BayTSP, against the burden to BayTSP and those parties.

It is well-settled that under Fed. R. Civ. P. 45(c)(1) of the that non-parties are to be protected from undue hardship imposed by unreasonable subpoenas. This was conceded by YouTube. *See* Mot. at 14:10. While the Court mentions Rule 45, *see* Order at 5:17-23, it did not apply the proper balancing test between the relevance and the burden. The Court discusses the relevance and the burden separately, without performing the required balancing test.

The decision in *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), which

was cited in BayTSP's Opposition, is particularly instructive. It notes that when determining the propriety of a non-party's refusal to comply with a subpoena, a court must bear in mind the distinction between a party and non-party. *Id.* at 680; *see also Beinin v. Ctr. for Study of Popular Culture,* No. C 06-2298 JW (RS), 2007 WL 832962, at*2 (N.D. Cal. March 17, 2007 (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("Underlying this protection is the understanding that, the word 'non party' serves as a constant reminder of the reasons for the limitations that characterize 'third party' discovery.")) (citations omitted). A court keeps this distinction in mind by balancing "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id*. at 680; *see also Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986).

The *Gonzales* court acknowledged, as the Court did in its January 14 Order, that:

> [a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt ... the court should be permissive.

*Gonzales*, 234 F.R.D. at 681 (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987). "However," the *Gonzales* court went on to note:

> the Court does not construe a general policy of permissiveness to require this Court to abdicate its responsibility to review a subpoena under the Federal Rules when presented with a motion to compel.

*Gonzales,* 234 F.R.D. at 681.

As is explained below, the relevance of these "Fourth Party" documents is highly remote at best. The documents sought are not relevant to the claims or defenses in the SDNY Actions and are not likely to lead to the discovery of admissible evidence. These "Fourth Party" documents concern non-party BayTSP's interactions with other non-party entities even further removed from the underlying Viacom/YouTube lawsuit than BayTSP. When that negligible relevance is balanced against the substantial burden to BayTSP and its non-party clients as set forth herein, along with the alternative methods

7

JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTx)

for obtaining the information sought, YouTube's motion to compel should have been denied as it relates to these removed entities.

### A. BayTSP's Non-party Clients' Communications and Documents are Not Relevant

Only at the hearing on YouTube's motion to compel was there any real discussion of the purported relevance of communications and documents concerning BayTSP's non-party clients. At the hearing, when pushed to explain the relevance of these communications and documents, YouTube was able to articulate only two grounds of relevance. First, YouTube argued that it needs the information to challenge Viacom's apparent claim that YouTube should be able to know when a video infringes Viacom's copyrights:

> Viacom's allegations in this case, coupled with the plaintiff putative class action allegations in this case, are that is a pirate site, that YouTube is rife with infringing content, that YouTube knows simply by virtue of seeing the content that it is unauthorized infringing content -- not just for Viacom, but YouTube should know simply by seeing a particular piece of professional content that that content is unauthorized. And because of that, YouTube should be held liable for copyright infringement for all Viacom content that's on the service and for all of the putative class plaintiffs' content that's on the service.
>
> * * * *
>
> BayTSP spends its days reviewing YouTube looking for content -- BayTSP -- on behalf of not just Viacom, but all sorts of third parties. And what is critical in this case is that third parties and Viacom use YouTube for its promotional value. They flood the service with content they put there themselves; they want it to be there. And then they have to tell BayTSP, "well, here's the content we want on YouTube. Don't take this content down. Here's the content we don't want. Go get this content off."
> In order to demonstrate the scale of that issue, what we call stealth or viral marketing, it's critical that we not just be limited to what Viacom is doing. Although we are quite sure that there is a significant amount of stealth and viral marketing by Viacom, we need to be able to present the picture to the jury that refutes the suggestion that YouTube should know it when it sees it. Because there is this universe of content owners in the world filling YouTube with content that is authorized, that they want to be there. There is a host of other content that the world of content owners is aware of on YouTube and instructs BayTSP not to remove.
> So that's why these requests sweep not just to Viacom, but to the activities of other parties whom BayTSP represents. BayTSP will have the instructions that these parties provide saying, "This is authorized content. All of this content is authorized. This content we want you to take down."

8

Hearing TR 68:4-16; 23-70:1.

> Another critical issue is, and Mr. Mancini referenced it in his remarks, but when BayTSP takes stuff down, they routinely make mistakes. It's not a handful of examples that we put into the court as examples; it's on a regular basis. Possessed of all of the information that BayTSP has about who owns what and whether content is authorized, BayTSP routinely sends notices to YouTube asking it to remove stuff that the user had every right to post, that's there with authorization. And that demonstrates again that YouTube can't possibly know when it's looking at content on the service whether or not it's authorized. If BayTSP can't know – acting as the agent for these copyright holders – whether content is or is not authorized, then it routinely is making mistakes. Surely YouTube, which is merely a passive repository for content that users are uploading to the service – how is YouTube supposed to know?
> That knowledge issue, "you know it when you see it," is critical to Viacom's claims; it's critical to YouTube's defenses.

Hearing TR 70:6-71:1.

To begin with, YouTube improperly claims "all" of the communications that BayTSP has with its non-party clients are relevant to whether or not YouTube meets the knowledge requirements, i.e., whether it is "aware of facts or circumstances from which infringing activity is apparent," pursuant to §512(c)(1)(A), or that mistaken takedown notices have anything to do with YouTube's " knowledge."[8]  YouTube's arguments lack merit.

The communications between BayTSP and its non-party clients are based on individualized criteria unrelated to the issues in the SDNY Actions: e.g.,  legal

---

[8] Although receipt of a valid takedown notice can undoubtedly be a source of actual knowledge, the statute expressly refers to both *actual* and *constructive knowledge*, thereby demonstrating that a formal notice is not required. Second, and perhaps more importantly, Section 512(c)(1)(A) -- the very provision requiring the expeditious removal of infringing material once an ISP has actual or constructive knowledge -- would be rendered superfluous if a takedown notice were the only thing that could constitute knowledge. A separate provision of the statute, Section 512(c)(1)(C), already requires an ISP to "respond[ ] expeditiously to remove" infringing material that is the subject of a takedown notice.  Section 512(c)(1)(A) would serve no purpose beyond that already served by Section 512(c)(1)(C) if actual or constructive knowledge of infringement were limited to receipt of a valid takedown notice.  By including a separate provision requiring expeditious removal upon receipt of a takedown notice, Congress unambiguously contemplated that knowledge under Section 512(c)(1)(A) can be gained by far more than the receipt of a takedown notice.

instructions and directions from a copyright owner's legal department; reports to in-house attorneys regarding projects done at their direction; documents relating to the financial relationship or invoices between BayTSP and its non-party clients; the business relationship between BayTSP and its non-party clients; which websites to monitor; what copyrighted works to monitor for the non-party clients; invoices and billing communications; formats of reports; internal procedures used by BayTSP to keep track of the work it is doing for a non-party client; the scope of work that BayTSP is going to perform; the criteria that BayTSP should use for a non-party client in determining what to monitor; system and resource capacity and limitations; system and resource capabilities; implementation schedules (including implementation lead times); work plans; and work rosters (including vacation and holiday coverage).

As is readily apparent, these types of communications, even if limited to communications concerning monitoring on YouTube.com, have nothing to do with YouTube's "knowledge" that a particular video is infringing or whether there has been a mistake. For example, invoices to BayTSP's non-party clients have nothing to do with mistakes, much less YouTube's knowledge of infringement. To provide another example, instructions by the legal department of the non-party client telling BayTSP what copyrighted works or websites to monitor[9] do not relate to YouTube's or others' "knowledge" or mistakes. Nevertheless, all of these documents are called for under the January 14 Order.

Furthermore, even communications between BayTSP and its non-party clients about whether any particular infringements on YouTube should be removed are irrelevant to Plaintiffs' allegations and YouTube's defenses. For example, at the hearing there was a discussion about the instructions or "rules" that a non-party client provides to BayTSP

---

[9] As explained further below, most of the communications between BayTSP and its clients are likely to be subject to an attorney work product/privilege claim, for the same reasons that Viacom has withheld documents from production.

1 with regard to how BayTSP should determine what to monitor and whether to send a
2 takedown notice. *See, e.g.,* Hearing TR 16:12-24, 85:10-13, 86:17-20. These
3 "instructions" do not constitute a determination of infringement, and are not a proxy for
4 the knowledge requirements under copyright law – rather they are instructions to BayTSP
5 as to how to prioritize its monitoring activities based on the business decisions of its non-
6 party clients, which may include legal judgments and priorities.

7 These instructions are business and legal decisions by BayTSP's non-party clients
8 and they are reflective of the non-party clients business and legal strategies. They have
9 nothing to do with the knowledge standard under the DMCA. BayTSP's contractual
10 arrangements with its clients for monitoring UGC websites are based on the client
11 purchasing a set number of hours per month. The more money the client has in its budget
12 for use in protecting its copyrights from infringement on the internet, the more hours it
13 can purchase. The "rules" the clients set prioritize which videos BayTSP should review
14 for infringement. For example, hypothetically, a client may instruct BayTSP to only
15 review videos that exceed five minutes in length, or only review videos that relate to a
16 particular title or series. This does not mean that a video of less than five minutes does
17 not infringe, it only means that given the limited number of resources the content owner
18 has and the huge volume of infringing postings, the client had to prioritize what BayTSP
19 reviews. The fact that only one title of a client's copyrighted works is being monitored
20 does not mean that the posted videos of the other titles do not infringe BayTSP's clients'
21 copyrights; it means only that the client had to decide which titles to protect, given the
22 allocated resources. The clients create these rules, not BayTSP. While BayTSP cannot
23 speak to the reasons that a client may have a particular rule, it is aware that these "rules"
24 are business and legal decisions of BayTSP's clients that reflect how they have decided to
25 protect their copyrighted works.[10]

---

[10] As was mentioned at the hearing, the instructions and communications are highly confidential and potentially privileged and work product information. If the order stands, BayTSP's clients will forced to
(footnote continued)

11

1   These rules say nothing about YouTube's knowledge, and have nothing to do
2   with the knowledge standards under the DMCA.  The question of whether YouTube has
3   constructive knowledge under the DMCA is focused on what YouTube knows, not the
4   decisions that BayTSP's non-party clients make as to how to protect their intellectual
5   property.  Furthermore, nothing that BayTSP can produce from its roughly 100 non-party
6   ("Fourth Party") clients could ever be relevant to "the world of content owners," Hearing
7   Tr. 69:18, which numbers in the tens of millions.  Neither the Court nor YouTube present
8   any reason why the particular subset of BayTSP non-party clients provide a useful or
9   proper sample of content owners generally, or why isolated examples of communications
10  from this subset about infringements that are not directly at issue in the SDNY Actions
11  would ever be admissible to make the broad-brush claims concerning "the world of
12  content owners" that YouTube wishes to make.
13       YouTube's arguments regarding "mistakes" also fall short of establishing the
14  requisite relevance.  Whether or not BayTSP or a copyright owner might send out a
15  takedown notice that the person who posted it objects to, has nothing to do with whether
16  or not YouTube has apparent knowledge that videos on its website infringe.  The DMCA
17  includes provisions for the person who posts the video to object to a takedown notice.
18  The fact that a person who posts a video believes it does not infringe a copyrighted work,
19  however, has nothing do with YouTube's "apparent knowledge" of infringement.
20  Viacom's claim does not require that YouTube has knowledge of each infringing act,
21  only that it has knowledge that some of Viacom's videos infringe and that it receive
22  financial benefit from those Viacom infringing videos.  To the extent that YouTube
23  desires evidence of "mistakes" that BayTSP has made in the hundreds of thousands of
24  takedown notices that it has sent to YouTube, YouTube will have all the Viacom-related

---

come to the Northern District of California to seek protective orders or to quash the subpoena as it relates to them even if they are located in distant jurisdictions.  This is discussed further below with regard to the balancing of relevance against the burden.

1  documents on that topic that BayTSP has in its possession (as BayTSP is not objecting to
2  that portion of the Magistrate's order).  Even if the court had not ordered production of
3  these documents, YouTube itself already has those documents because when "mistakes"
4  are made, BayTSP sends YouTube a written retraction notice so YouTube already has
5  that evidence in its possession for *all* BayTSP's clients.  There is no reason to burden a
6  third party to produce documents that YouTube already has.
7      Hence, the ruling that all communications between BayTSP and its non-party
8  clients as they relate to YouTube should be produced is clearly erroneous.

### B. The Balance Between Relevance and Burden Dictates that the Motion to Compel be Denied as to Non-Parties ("Fourth Parties")

11     A burden is undue when it is not justified by an offsetting benefit to the
12  administration of justice, where compliance is unlikely to yield relevant evidence.  *See*
13  Advisory Committee Notes to the 1991 amendments to Rule 45(c).  Thus, the court
14  balances the relevance of the discovery sought, the requested party's need, and the
15  potential hardship to the party subject to the subpoena.  *Gonzales*, 234 F.R.D. at 680.  A
16  review of the January 14 Order reveals that this balancing was not done.
17     As noted above, the communications and documents exchanged between BayTSP
18  and its non-party clients related to monitoring YouTube.com (and other sites) is not
19  relevant.  However, even if the Court were to conclude that there is some scintilla of
20  relevance, a balancing of the burden to BayTSP and its non party clients dictates that the
21  motion to compel as to them should have been denied.
22     With regard to the economic burden to BayTSP, BayTSP acknowledges that the
23  January 14 Order requires YouTube to reimburse BayTSP for all of its costs with regard
24  to complying with the Order. Order at 10:8-11.  Given the arguments at the hearing
25  regarding the costs BayTSP has already incurred, *i.e.*, the costs from its outside vendor
26  and the legal costs from its attorneys related to the privilege review and sorting of the

13

documents, BayTSP understands that this includes all costs, both legal and other.[11] Even with these costs covered, the reimbursement cannot fully account for the time and effort expended by BayTSP's employees in responding to the subpoena. Moreover, there are other significant burdens on BayTSP. Forcing BayTSP to produce the confidential communications of clients unrelated to the SDNY Actions is severely detrimental to BayTSP's business; non-party clients would of course be troubled by the disclosure of these communications, and would need to take time to determine what to withhold based on immunities or other privileges preventing disclosure. The Court failed to take this burden on BayTSP's business into account.

The Court also failed to take into account other burdens, in particular the burden to BayTSP's non-party ("Fourth Party") clients. YouTube brought this action in the Northern District of California because that is where BayTSP resides. BayTSP's non-party clients, however, reside all over the country and the world.

The portions of Categories (1), (3) and (4) objected to in this pleading cover documents over which BayTSP only has possession, not control. Those documents are controlled by BayTSP's non-party clients. That means that any document will have to be reviewed by the non-party client's prior to turning over to YouTube. For example, with regard to Viacom, BayTSP has collected and sorted the documents in its possession that are controlled by Viacom and has provided them to Viacom for a privilege review. The same review would need to happen with BayTSP's other non-party clients, *see* Hearing TR 16:6-11, who will have to spend a great deal of time and effort reviewing the documents collected by BayTSP and deciding whether to produce the documents, and whether to claim privilege or move the court for a protective order, or to quash the

---

[11] During a teleconference with YouTube's counsel the question of costs associated with the production of non-Viacom related documents, BayTSP informed YouTube that if the same number of documents survived the filter as did for the Viacom production, the costs would be roughly estimated to be north of $1 million with about $500,000 being attributable to the cost of processing of the documents and another $500,000 being attributable to searching/sorting and privilege review. YouTube did not indicate that it did not read the Order not to cover both of these costs.

14

BAYTSP'S OBJECTION TO THE
JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTx)

1  subpoena as it relates to them.

2       This could be particularly burdensome for the non-party clients.  On January 15,
3  2009 Viacom produced its First Privilege Log Installment.  This initial privilege log is
4  over 5,000 pages and lists tens of thousands of documents.  That log only covers the
5  portion of BayTSP's documents as to which Viacom's privilege review was complete as
6  of January 15, 2009.  While BayTSP cannot predict at this time the volume of documents
7  that concern each of its other non-party clients, and how many of those documents each
8  non-party client will claim as privileged, if the numbers are even a fraction of those for
9  Viacom, the burden on BayTSP's non-party clients will be tremendous.  Considering that
10 the non-party's documents are irrelevant, or at least duplicative of documents YouTube
11 will receive relating to actual parties or already in YouTube's possession, there is no just
12 reason why production of the documents of these non-parties should be compelled.

13      In addition, when YouTube challenges the privilege designations of the non-party
14 clients and moves to compel production of those documents, BayTSP's non-party clients
15 are scattered across the country may be forced to come to the Northern District of
16 California to protect their documents.  These are burdens that no Third Party, much less a
17 Fourth Party, should bear.

18      If the Court had properly balanced even these few identified burdens against
19 YouTube's claims of relevance, the motion should have been denied as it relates to
20 BayTSP's clients other than Viacom–related entities.

21 **IV.  THE JANUARY 14 ORDER PROPERLY LIMITED THE SUBPOENA TO COMMUNICATIONS AND DOCUMENTS RELATED TO YOUTUBE**

22      As indicated above, the January 14 Order relied on YouTube's characterization of
23 the requests of the subpoena, which put them into four categories. Order at 6.  Categories
24 (1) and (4) relate to documents and communications between BayTSP and non-party
25 clients with regard to YouTube and monitoring YouTube.com.  BayTSP understands the
26 January 14 Order to have limited the underlying requests to communications and
27 documents related to YouTube.  In discussions with YouTube's counsel, YouTube's

15

counsel has indicated that it does not believe that the Order limited the scope of the subpoena in this manner.

BayTSP believes the Order is so limited in part because during the hearing the issue of the scope of the requests was discussed. During the course of the hearing the Court provided its tentative rulings with regard to individual requests. That tentative ruling indicated that the Court believed that request number 5 should be limited. Hearing TR at 39:14. Subsequently, BayTSP's counsel asked the Court how the Court thought request No. 5 should be limited, and the Court responded that it should be limited to communications with Viacom. Hearing TR 66:3-23. Further, such a limitation reflects the realities of the scope of the Complaint and the original arguments in YouTube's Motion.

As noted above, BayTSP provides other services to clients besides monitoring UGC websites like YouTube.com. *See* Rakow Decl. Ex. D. For example, it provides what is called Peer to Peer file transfer monitoring which has nothing to do with the YouTube website. As explained above, the concept of takedown notices is completely foreign to P2P systems. Additionally, the record is devoid of any arguments by YouTube that any of BayTSP's services other than monitoring on YouTube.com is relevant to its defenses the SDNY plaintiffs' claims.

Furthermore, although YouTube has taken the position that the Order is not limited to YouTube, it has only taken that position so that it can use it as a bargaining chip to extract concessions from BayTSP. In an e-mail exchange, BayTSP asked YouTube to let BayTSP know YouTube's position on the scope of the Order. In response, YouTube stated that it did not agree that the Order was so limited, but then proceeded to use that position as a bargaining chip to extract concessions from BayTSP:

> We are amenable to BayTSP excluding from its production documents related to enforcement efforts on P2P networks on behalf of its clients, with the exception of enforcement efforts on behalf of Viacom entities or other plaintiffs in the putative class action, so long as BayTSP expedites the production of certain other documents, namely all contracts between BayTSP and Viacom, or BayTSP and any other plaintiff, including all schedules of work to be performed by BayTSP

Rakow Decl. Ex. E. Clearly YouTube does not believe that these documents are relevant. If they did they would not be willing to use it as leverage to extract concessions from BayTSP.

## V. CONCLUSION

Based on the foregoing, BayTSP submits that the January 14 Order should be modified to deny YouTube's request that BayTSP produce documents and communications between itself and its non-party clients related to YouTube and the monitoring of YouTube.com.

Dated: January 29, 2009            Respectfully Submitted,

/s/ Steven D. Hemminger
Steven D. Hemminger
ALSTON & BIRD, LLP

Attorneys for Non-party
BayTSP.com, Inc.