| | |
|---|---|
| 1 | A. JOHN P. MANCINI (*pro hac vice*) |
| | jmancini@mayerbrown.com |
| 2 | BRANDON BAUM, SBN 121318 |
| | bbaum@mayerbrown.com |
| 3 | ERIC B. EVANS, SBN 232476 |
| | eevans@mayerbrown.com |
| 4 | MAYER BROWN LLP |
| 5 | Two Palo Alto Square |
| | 3000 El Camino Real |
| 6 | Palo Alto, California 94306 |
| | Telephone: (650) 331-2080 |
| 7 | Facsimile: (650) 331-4580 |
| 8 | DAVID H. KRAMER, SBN 168452 |
| | dkramer@wsgr.com |
| 9 | BART E. VOLKMER, SBN 223732 |
| | bvolkmer@wsgr.com |
| 10 | WILSON SONSINI GOODRICH & ROSATI |
| 11 | PROFESSIONAL CORPORATION |
| | 650 Page Mill Road |
| 12 | Palo Alto, California 94304-1050 |
| | Telephone: (650) 493-9300 |
| 13 | Facsimile: (650) 565-5100 |
| | Attorneys for Defendants |
| 14 | YOUTUBE, INC., YOUTUBE, LLC, and |
| | GOOGLE INC. |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT

## SAN JOSE DIVISION

| | |
|---|---|
| VIACOM INTERNATIONAL INC. et al., | CASE NO. 08-MC-80211 JF (PVTx) |
| Plaintiffs, | **OPPOSITION TO BAYTSP'S OBJECTION TO JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA** |
| v. | |
| YOUTUBE, INC. et al., | Judge: Hon. Jeremy Fogel |
| Defendants. | |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 2

    A.    YouTube Is the World's Leading Online Video Hosting Website. ...................... 2

    B.    BayTSP, Viacom's Agent, Is an Internet Monitoring and Enforcement Company ................................................................................................................ 3

    C.    YouTube Subpoenaed Documents from BayTSP and Brought a Successful Motion to Compel. ............................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    A.    The Court May Only Set Aside or Modify Judge Trumbull's Order if It Is Clearly Erroneous or Contrary to Law................................................................. 5

    B.    BayTSP's Objection Should be Overruled Because the Order was Not Clearly Erroneous or Contrary to Law................................................................. 6

    C.    BayTSP's Non-Viacom Documents Are Relevant to Plaintiffs' Claims and YouTube's Defenses .......................................................................................... 9

    D.    The District Court Should Not Provide an Advisory Interpretation of the Magistrate Judge's Order ................................................................................... 10

CONCLUSION............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) ............................ 10

*Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254 (C.D. Cal. 2007) ........................................................ 10

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967) .................................. 11

*Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633 (9th Cir. 1988) ..................... 6, 7

*Io Group, Inc. v. Veoh Networks, Inc.*, No. C06-03926, 2008 WL 4065872 (N.D. Cal. Aug. 27, 2008) ................................................................................................................ 3

*Keithley v. Homestore.com, Inc.*, 2008 WL 4298203 (N.D. Cal., Sep. 18, 2008) .......................... 6

*Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 124 F.R.D. 75 (S.D.N.Y. 1989) .................................................................................................................. 6

*Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ....................................... 11

*Orgolf Transport Co. v. Grillot Co., Inc.*, 1998 WL 313732 (E.D. La. June 12, 1998) ............................................................................................................................. 11

*Paramount Pictures Corporation, v. Replay TV*, 2002 WL 32151632 (C.D. Cal. May 30, 2002) ......................................................................................................................... 6

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) ................................................. 3, 4

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ................................. 9, 10

*The Football Association Premier League, Ltd. v. YouTube, Inc.*, Case no. 07-cv-3582 LLS (FMx) (S.D.N.Y. filed Nov. 26, 2008) ................................................................ 3

*U.S. v. Abonce-Barrera*, 257 F.3d 959 (9th Cir. 2001) ................................................................. 5

*U.S. v. Howell*, 231 F.3d 615 (9th Cir. 2000) ............................................................................... 6

*Viacom Int'l, Inc. v. YouTube, Inc.*, Case no. 07-cv-2103 LLS (FMx) (S.D.N.Y. filed Mar. 13, 2007) ....................................................................................................... 3

## STATUTES

17 U.S.C. § 512(c) ...................................................................................................................... 3, 9

28 U.S.C. 1920 ............................................................................................................................. 11

18 U.S.C. § 636(b)(1)(A) ............................................................................................................... 5

## RULES

Fed. R. Civ. P. 60(a) ..................................................................................................................... 10

Fed. R. Civ. P. 72(a) ............................................................................................................................. 5

**MISCELLANEOUS**

James W. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 72.03[6.-12] (2d ed. 1991) ............................................................................................................................................. 6

## INTRODUCTION

In two copyright infringement actions against YouTube and Google (collectively "YouTube"), pending in the Southern District of New York, plaintiff Viacom and a follow-on putative class of every copyright holder in the world seek billions of dollars in supposed damages. One of YouTube's first acts of discovery in the cases, in September 2007, was to subpoena Viacom's agent, BayTSP – a company that Viacom and others employ to identify their content on services like YouTube, and either request its removal or allow it to remain. On January 14, 2009, Magistrate Judge Trumbull issued an Order (the "Order") granting YouTube's motion to enforce the BayTSP subpoena in its entirety, ostensibly putting an end to BayTSP's sixteen months of delay.

BayTSP's objections to the Order should be denied as BayTSP has not and cannot carry its burden of showing that the Order is clearly erroneous or contrary to law. This standard for reviewing a discovery ruling of a Magistrate Judge is purposefully high to avoid the wasteful second-guessing and re-argument that BayTSP employs. Judge Trumbull carefully evaluated the record and measured it against the appropriate legal standards guided by extensive briefing and lengthy oral argument.

*First*, Judge Trumbull considered and rejected BayTSP's argument that documents relating to its non-Viacom clients were irrelevant: "the court finds that the document[] requests as they relate to non-Viacom related entities are relevant." Order 8:8-13. That relevance finding was amply supported by the record, fully vetted by Judge Trumbull and consistent with the broad standard of relevance set forth in Rule 26 for discovery in civil cases. It should not be disturbed.

*Second*, Judge Trumbull considered and rejected BayTSP's argument that ordering it to produce non-Viacom client documents would unduly burden BayTSP: "the court finds that BayTSP has not established undue burden as it relates to non-Viacom related entities." Order 10:4-5. That finding likewise should stand. In opposing YouTube's motion to compel, BayTSP offered no evidence whatsoever of any burden. Judge Trumbull nevertheless entertained over two hours of argument from BayTSP. After accounting for the unsubstantiated positions of BayTSP's counsel and balancing them against the importance of the requested information,

-1-

Judge Trumbull rejected BayTSP's burden claims, but afforded BayTSP a means of limiting its supposed burden through a subsequent meet and confer process. Order at 10:8-15. Far from being clearly erroneous, Judge Trumbull's ruling was clearly generous to BayTSP given its failure of proof. As for BayTSP's clients, Judge Trumbull found that the stipulated protective order in the underlying case -- which already safeguards the information of a dozen or more third parties -- provides adequate protection: "The court believes that the stipulated protective order, or subsequent amendments agreed thereto, by and between the parties, including BayTSP, will protect the interests of its other clients." *Id*. 10:5-7. There is no basis for deeming that conclusion clearly erroneous.

Finally, BayTSP asks this Court to adopt two highly strained "interpretations" of the unambiguous Order. While BayTSP's interpretations are frivolous, this Court need not consider them because they are not properly before it. If BayTSP contends that the Order is ambiguous, it should have sought clarification from Judge Trumbull, rather than asking this court to "interpret" an Order that it did not issue. BayTSP's not-so-subtle invitation to rewrite the Order falls outside the Court's review function and should be declined.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. YouTube Is the World's Leading Online Video Hosting Website

Since its founding in 2005, YouTube, an online video hosting service, has become a cultural and social phenomenon. YouTube users create videos and upload them to YouTube's service where they can be viewed for free by anyone with Internet access. As Judge Trumbull noted: "YouTube has a global audience of tens of millions of people and is the number one video site on the Internet." Order 2:12-19.

In March 2007, Viacom International, Inc. ("Viacom") filed a complaint against YouTube in the Southern District of New York. *See Viacom Int'l, Inc. v. YouTube, Inc*., Case no. 07-cv-2103 LLS (FMx) (S.D.N.Y. filed Mar. 13, 2007). Viacom's suit claims damages in excess of ***one billion dollars*** on the theory that YouTube should be liable for alleged copyright infringement for video clips uploaded to the service by its users. In May 2007, the Premier League and Bourne Co. filed a putative class action mirroring the claims in Viacom's suit and

seeking damages on behalf of every copyright holder in the world. *See The Football Association Premier League, Ltd. v. YouTube, Inc.*, Case no. 07-cv-3582 LLS (FMx) (S.D.N.Y. filed Nov. 26, 2008).

### B. **BayTSP, Viacom's Agent, Is an Internet Monitoring and Enforcement Company**

Online services like YouTube that host video clips at the direction of users have a safe harbor from liability for copyright infringement claims so long as they expeditiously remove or disable access to materials after receiving proper notice by copyright holders. *See* 17 U.S.C. § 512(c); *Io Group, Inc. v. Veoh Networks, Inc.*, No. C06-03926, 2008 WL 4065872 (N.D. Cal. Aug. 27, 2008). This notice and take-down protocol accords copyright holders an extra-judicial process to receive "a rapid response to potential infringement" occurring on online services. Sen. Rep. No. 105-190, at 21 (1998). However, "[t]he DMCA notification procedures place the burden of policing copyright infringement - identifying the potentially infringing material and adequately documenting infringement - squarely on the owners of the copyright." *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). Media companies, including Viacom and certain of the putative Class Plaintiffs, have hired BayTSP as their agent to engage in this copyright policing under the DMCA.[1]

While monitoring YouTube's website for its clients, BayTSP routinely praised YouTube for its approach to protecting copyrights and cooperating with content owners and their agents. *See* Declaration of Caroline E. Wilson ("Wilson Decl.") ISO YouTube's Motion to Compel (Docket No. 3) Exs. 3 (BayTSP thanks YouTube for setting up accounts for its work on behalf of Viacom), 4 (BayTSP thanks YouTube for quickly responding to its takedown notice), 5 (BayTSP thanks YouTube for its efforts), 6 (BayTSP thanks YouTube for being patient with its requests). Although armed with considerable information regarding its clients' content, BayTSP routinely

---

[1] Notably, BayTSP often acts to ensure the continuing presence of content that Viacom and other clients affirmatively want to remain on the YouTube service. *See* 12/9/2008 Hearing Tr. at 68:17-70:1 (Rakow Decl., Ex. B (filed 1/29/2009)); Wilson Decl., Exs. 7, 8, 9, 12. This common practice among content owners of taking down some content under the DMCA and leaving other content up makes it all the more impossible for YouTube to determine if a clip is authorized merely by looking at it.

-3-
OPPOSITION TO BAYTSP OBJECTION TO ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTX)

made mistakes in requesting that YouTube remove clips from its service that either were not owned by its clients or were on the service with its clients' assent. *See, e.g., id.*, Exs. 9 (BayTSP took down content uploaded by Viacom), 10 (Viacom takes down someone else's content), 11 (Viacom takes down someone else's content), 12 (mistaken Best Week Ever takedown), 13 (e-mail entitled "Another Viacom mistake"). BayTSP also monitors on behalf of its clients other online services that, like YouTube, host user-generated videos, as well as peer-to-peer file sharing networks. BayTSP's Objection at 1:22-2:3, 3:1-13.

### C. YouTube Subpoenaed Documents from BayTSP and Brought a Successful Motion to Compel

On September 27, 2007, YouTube served BayTSP with a subpoena ("Subpoena") seeking the production of documents: (1) regarding YouTube, including documents comparing YouTube with similar online services; (2) regarding BayTSP's relationship with Viacom; (3) regarding BayTSP's monitoring and content identification processes; (4) sufficient to identify the entities that have retained BayTSP to monitor the YouTube service; and (5) sufficient to identify prior litigations in which BayTSP has provided testimony. Order at 6:5-14. BayTSP filed objections and "the parties met and conferred in numerous efforts to resolve their discovery dispute." Order at 4:10-11. When BayTSP failed to produce a single document over 14 months, YouTube filed a motion to compel compliance. The motion papers and accompanying separate statement described in detail the justification for compelling production on each individual request for documents in the subpoena and the Court entertained lengthy argument on the question of relevance. *See* YouTube's Motion to Compel at 10-14 and supporting declarations of Brandon Baum and Caroline E. Wilson (Docket Nos. 1-3) (filed October 20, 2008); YouTube's Civil L.R. 37-2 Statement, Baum Decl., Ex. P; YouTube Reply ISO Motion to Compel (Docket No. 12) (filed November 28, 2008) at 2-4; Hearing Tr. at 69-94.

On January 14, 2009, Judge Trumbull granted YouTube's motion to compel in its entirety and ordered BayTSP to "produce responsive documents related to the Viacom-related entities no later than March 6, 2009" and to "produce responsive documents related to non-Viacom related entities no later than July 15, 2009." Order 11:26-12:2. To facilitate BayTSP's

1  production of documents related to non-Viacom clients, the Court ordered BayTSP to "provide
2  YouTube with a roster of its other clients no later than January 30, 2009." *Id*. 10:12-13. The
3  Court further specified that it would be "appropriate for YouTube to reimburse BayTSP for *costs*
4  of the production of documents for non-Viacom related entities." (*id.* 10:9-10) (emphasis added).
5  These provisions rely on an explicit finding that non-Viacom client documents are relevant --
6  "the court finds that the documents requests as they relate to non-Viacom related entities are
7  relevant" (Order 8:8-13) -- because they may "show that other clients of the company may have
8  also instructed BayTSP that certain of their content remain on the YouTube website." *Id*. 8:2-5.
9  The Court further found that "BayTSP has not established undue burden as it relates to non-
10 Viacom related entities." *Id*. 10:4-5. The Order also recognized, in response to BayTSP's
11 argument that production of non-Viacom client documents might harm its business or its clients,
12 that "the stipulated protective order, or subsequent amendments agreed thereto, by and between
13 the parties, including BayTSP, will protect the interests of [BayTSP's] other clients." *Id*. 10:5-7.
14       On January 29, BayTSP filed its Objection to the Court's Order. BayTSP, however, did
15 not seek a stay of its obligations under the Order, and already is in clear violation of the
16 obligations Judge Trumbull imposed.[2]

## ARGUMENT

### A. The Court May Only Set Aside or Modify Judge Trumbull's Order if It Is Clearly Erroneous or Contrary to Law

Judge Trumbull's findings of fact should only be modified or set aside if they are "clearly erroneous." 18 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Findings of law must be "contrary to law." *Id*. "[D]ecisions by the magistrate judge on nondispositive matters are essentially final decisions of the district court which may be appealed in due course with other issues." *U.S. v. Abonce-Barrera*, 257 F.3d 959, 968 (9th Cir. 2001). This standard of review guards against gamesmanship: "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an

---

[2] While the Court ordered BayTSP to provide YouTube with a "roster of its other clients" by "no later than January 30, 2009," it failed to do so. Order 10:12-13.

-5-
OPPOSITION TO BAYTSP OBJECTION TO ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTX)

1  unfavorable recommendation-shift gears before the district judge." *U.S. v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000).

Discovery orders issued by Magistrate Judges are final and are not stayed merely by filing an objection: "the filing of objections to a ruling by a magistrate judge on a nondispositive matter does not automatically stay operation of the order." *Keithley v. Homestore.com, Inc.*, 2008 WL 4298203, at *1 (N.D. Cal., Sep. 18, 2008). A contrary result, "would not only encourage the filing of frivolous appeals, but would grind the magistrate [judge] system to [a] halt." *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 124 F.R.D. 75, 79 (S.D.N.Y. 1989); *accord, e.g.*, 7 (Part 2) James W. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 72.03[6.-12] at 72-53 to -54 (2d ed. 1991) ("A magistrate's order will not determine anything if it can be automatically stayed by filing an objection. Indeed, such an interpretation would essentially reduce the magistrate's order to the status of a recommendation where an objection is raised.").

Moreover, in considering an objection to a Magistrate Judge's order, the Court should not go beyond the evidence and arguments presented to the Magistrate Judge:

> This Court's function, on a motion for review of a magistrate judge's discovery orders, is not to decide what decision this Court would have reached on its own, nor to determine what is the best possible result considering all available evidence. It is to decide whether the Magistrate Judge, based on the evidence and information before him, rendered a decision that was clearly erroneous or contrary to law[.]

*Paramount Pictures Corporation, v. Replay TV*, 2002 WL 32151632, at *1 (C.D. Cal. May 30, 2002); *see also Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988) ("We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.").

### B. BayTSP's Objection Should be Overruled Because the Order was Not Clearly Erroneous or Contrary to Law

BayTSP has shown no clear error of fact and no clearly erroneous determinations of law, and thus its objection should be overruled.

While difficult to decipher, BayTSP seems to take issue with Judge Trumbull's ruling that documents related to BayTSP's non-Viacom clients are relevant to the claims and defenses in the underlying case. *See* Order 8:12-13. That holding, however, was manifestly appropriate as "the documents pertaining to the non-Viacom related entities were relevant to show that other clients of the company may have also instructed BayTSP that certain of their content remain on the YouTube website." *Id*. 8:2-5. The parties extensively briefed the issue of whether BayTSP's non-Viacom documents were relevant. *See* BayTSP's Opposition to YouTube's Motion to Compel ("Opp'n," Docket No. 9) at 3:7-25; YouTube's Reply ISO Motion to Compel ("Reply," Docket No. 12) 3:10-26; YouTube's Civil L.R. 37-2 Statement, Baum Decl, Ex. P (Docket No. 2) at 1, 3, 5, 7-8, 11-12. Accordingly, BayTSP's claim that "[o]nly at the hearing on YouTube's motion to compel was there any real discussion of the purported relevance of communications and documents concerning BayTSP's non-party clients" is false. Objection 8:5-6. Regardless, there is no conceivable ground on which this Court could conclude that Judge Trumbull's thoughtful relevance determination was clearly erroneous. Judge Trumbull heard from both sides and concluded that YouTube's arguments were more persuasive. BayTSP asks this Court to substitute its own judgment for the Magistrate Judge's and come to a different conclusion on relevance. The standard of review prohibits such a *de novo* evaluation.

BayTSP's burden arguments were also appropriately considered and rejected by Judge Trumbull. As an initial matter, BayTSP utterly failed to substantiate any supposed burden from producing non-Viacom documents when opposing YouTube's motion. *See* (Hemminger Decl. ISO BayTSP's Opp'n to YouTube Mot. to Compel (filed November 18, 2008)) (Docket No. 10). That fact alone precludes an argument that Judge Trumbull committed clear error when finding that the subpoena would not cause BayTSP undue burden. Regardless, even though BayTSP did not offer any competent evidence of burden, the Order is infused with accommodations to ameliorate any hypothetical burden that BayTSP might face when producing documents related to non-Viacom clients. *See* Order at 10:8-15 (ruling that YouTube is to reimburse BayTSP for "costs of production" of non-Viacom documents and suggesting a meet and confer on the scope of the production).

-7-
OPPOSITION TO BAYTSP OBJECTION TO ORDER RE YOUTUBE SUBPOENA
CASE NO. 08-MC-80211 JF (PVTX)

1 | Ignoring the dispositive evidentiary deficiency, BayTSP simply reargues that "the scope of the requests unduly burdens its business and will likely have a chilling effect on its other customers who have come to believe that their business dealings with BayTSP would remain confidential." Objection at 9:19-21. The Magistrate Judge considered and rejected BayTSP's "chilling effect" argument, finding instead that "BayTSP has not established undue burden as it relates to non-Viacom related entities." *Id*. 10:4-5. BayTSP cannot plausibly claim that Judge Trumbull committed clear error by considering and rejecting its argument given that: (i) the protective order shields documents from disclosure outside of the main litigation; and (ii) BayTSP failed to put in any competent evidence from which the Court could have concluded that BayTSP actually faced a "chilling effect." In fact, even if BayTSP had made an exemplary showing regarding an alleged "chilling effect," Judge Trumbull would have acted well within her discretion in concluding that YouTube's need for the documents at issue (in a case where plaintiffs seek billions of dollars in damages) outweighed any harm that allegedly would have befallen BayTSP.

Finally, Judge Trumbull properly rejected BayTSP's argument that its *clients*, now misleadingly termed "fourth parties," would somehow be unfairly burdened if they were obliged to intervene to protect their interests. Judge Trumbull wisely ruled that BayTSP's clients "may independently move for a protective order pursuant to Rule 26(c)" if they wish to prevent their documents from being disclosed. *Id*. 10:3-4. BayTSP does not and cannot explain how this protocol amounts to clear error. Indeed, it reflects the opposite: Judge Trumbull understood that third parties might wish to be heard and did not foreclose that possibility, demonstrating, again, the care that Judge Trumbull took to ensure that all stakeholders' interests were protected.

While BayTSP now hypothesizes as to a number of supposed burdens on its clients -- including a "great deal of time and effort" to review documents and "tremendous" amounts of privilege review -- BayTSP failed to present evidence to the Magistrate Judge regarding any actual burden on its clients, by affidavit or otherwise. The Court should ignore BayTSP's hypothetical parade of horribles, manufactured by its counsel after the fact.

### C. BayTSP's Non-Viacom Documents Are Relevant to Plaintiffs' Claims and YouTube's Defenses

Even if the Court were to consider the Magistrate Judge's relevance determinations *de novo*, it would reach the same conclusion: BayTSP's non-Viacom documents are plainly relevant to Plaintiffs' claims and YouTube's defenses. *First*, YouTube is protected from liability under the safe harbor of Section 512(c) of the DMCA. However, an online service can lose safe harbor protection if it fails to remove materials when it is "aware of facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(ii). In this litigation, Viacom has argued that YouTube should be able to tell by looking at a particular video clip whether or not it infringes someone else's copyright, thus imparting knowledge triggering a removal obligation. BayTSP's non-Viacom documents will show that many professionally-produced clips on YouTube are there with the authorization of BayTSP's customers, even though that fact is impossible to discern from a review. For example, BayTSP's media company customers instruct it to take down certain clips and to leave up others for promotional purposes (often ones that have been uploaded surreptitiously by the media companies themselves). Regardless of which BayTSP client is responsible, the widespread use of selective removals and tactical placements gives the lie to Viacom's position that a service like YouTube can determine, simply by looking at a video clip, whether or not the copyright owner has authorized its presence on YouTube.

*Second*, BayTSP's documents regarding clients other than Viacom are relevant because they will establish the seemingly obvious, but contested, defense that the YouTube service has substantial non-infringing uses. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984) (setting forth substantial non-infringing use defense to claims of secondary copyright infringement). It is beyond dispute, and Viacom has conceded, that to the extent non-Viacom entities have instructed BayTSP to allow certain clips to remain on YouTube, those clips would be authorized, and therefore non-infringing. Evidence of non-infringing use -- no matter whether the clips are owned by a Plaintiff in this action or another entity -- is relevant to YouTube's *Sony* defense. Accordingly, YouTube is entitled to the production of non-Viacom documents for this reason as well. *See also* YouTube's Reply ISO Motion to Compel (Docket No. 12) at 3 (setting forth numerous relevance grounds for the requested documents).

### D. The District Court Should Not Provide an Advisory Interpretation of the Magistrate Judge's Order

Beyond its misguided objections, BayTSP disregards well-settled procedure in asking this Court to resolve purported ambiguities in the Magistrate Judge's Order. An objection is not the proper procedural vehicle for seeking interpretation or clarification: "the district judge may modify or set aside *only* those portions of the magistrate judge's order that are clearly erroneous or contrary to law." *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1274 (C.D. Cal. 2007) (emphasis added). While BayTSP seeks an interpretation of certain provisions of the Order, it does not argue that those provisions are either clearly erroneous or contrary to law. Accordingly, the proper procedural vehicle for its request is a motion for clarification to Magistrate Judge Trumbull under Fed. R. Civ. P. 60(a). *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105-06 (9th Cir. 1999). Having failed to move for clarification before the Magistrate Judge, BayTSP's request from this Court for an advisory ruling interpreting Judge Trumbull's Order is properly rejected.

Even setting aside the procedural impropriety of BayTSP's arguments, its positions are without merit. BayTSP seeks to have YouTube pay its attorneys' fees for the production of non-Viacom client documents. Judge Trumbull ordered nothing of the sort. The Order merely requires YouTube to "reimburse BayTSP for *costs* of the production of documents for non-Viacom related entities." Order 10:9-10 (emphasis added). BayTSP offers no support for its novel argument that the "costs of the production of documents" actually means attorneys' fees, and its position has no basis in the law. *See, e.g.*, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967) ("the statutory definition of the term 'costs' [under 28 U.S.C. 1920] does not include attorney's fees").

*Second*, BayTSP relies on the Court's "summary" of the document requests -- rather than the document requests themselves -- in a misguided attempt to limit the Court's Order to documents pertaining to monitoring of YouTube and to exclude documents related to BayTSP's operations with respect to websites that operate just like YouTube. The Order, which granted defendants' motion to compel without any limitation, cannot bear this reading. Order 11:25. It

merely, for ease of reference, groups YouTube's document requests into four "general categories of documents" as follows:

> (1) All documents and communications concerning YouTube, including those reflecting use of YouTube by BayTSP and its clients, monitoring of YouTube by BayTSP and its clients, and comparisons of the responsiveness of YouTube to other online services *(Document Request Nos. 1, 3, 4, 5, 8, 13)*;
>
> (2) All documents and communications regarding BayTSP's relationship with Viacom, including documents regarding copyrights Viacom claims to own and the litigations in New York *(Document Request Nos. 6, 9)*;
>
> (3) All documents and communications regarding the nature of BayTSP's monitoring and identification processes, its training of monitors, and its effectiveness or lack thereof with respect to identification of allegedly infringing materials online *(Document Request Nos. 2, 7, 10)*; and
>
> (4) All documents sufficient to identify the entities that have retained BayTSP to monitor the YouTube service, and documents sufficient to identify prior litigations in which BayTSP has provided testimony *(Document Request Nos. 11, 12)*.

Order 6:4-14 (emphasis added). Those are precisely the same groupings that YouTube supplied for ease of reference in its motion to compel. *See* YouTube's Motion to Compel at 7. Ignoring their plain language, BayTSP suggests that the requests underlying categories 1 and 4 are limited to documents regarding YouTube. But neither YouTube in proposing these groupings, nor the Court in granting YouTube's motion in full, ever applied such a limitation. Indeed, each category contains document requests that are not plausibly limited in this fashion. For example, category 1 includes Document Request 8, which specifically applies to "any website, network or other location, including *but not limited to* www.youtube.com." (emphasis added). Category 1 also expressly includes, both in the actual requests and the summary, documents comparing YouTube to other online services. Similarly, both the incorporated requests and the summary language of category 4 call for the production of documents sufficient to identify "any civil action" in which BayTSP has given testimony -- again, these requests are plainly not limited in the manner BayTSP urges. In the underlying action, YouTube seeks to demonstrate that its compliance with the DMCA far exceeds that of similar websites, and expressly advanced that

-11-

rationale as justification for seeking the documents covered by specific requests. BayTSP's phantom limitations would foreclose that line of argument, which Judge Trumbull found meritorious.

Even more mystifying are BayTSP's arguments with regard to Document Request No. 5. BayTSP invokes a "tentative ruling" as well as "the realities of the scope of the Complaint" in an impenetrable argument purporting to limit in some unexplained way the relief granted by the Court. Objection 16:5-11. BayTSP never explains, because it cannot, how such vague propositions, not reflected in the final Order, could possibly supersede the Order itself. Whatever is to be made of BayTSP's unsupported attempt to limit the Court's Order, it is clear that the Order compels BayTSP to "produce responsive documents related to the Viacom-related entities no later than March 6, 2009" and to "produce responsive documents related to non-Viacom related entities no later than July 15, 2009." Order 11:26-12:2 (emphasis added). "Responsive" means responsive to YouTube's document requests, as written, and BayTSP's attempt to argue otherwise should be disregarded.

## **CONCLUSION**

For the reasons cited herein, BayTSP's objection should be overruled.


February 20, 2009                    Respectfully submitted,

                                     WILSON SONSINI GOODRICH & ROSATI

                                     By:   /s/ David H. Kramer
                                           David H. Kramer
                                           Attorneys for Defendants
                                           YOUTUBE, INC., YOUTUBE, LLC,
                                           and GOOGLE INC.