Steven D. Hemminger (State Bar No. 110665)
ALSTON & BIRD LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112
Tel.: (650) 838-2000
Fax: (650) 838-2001
Email: Steve.Hemminger@alston.com

Attorney for Nonparty
BayTSP, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| Viacom International Inc., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> YouTube, Inc. *et al.*, <br><br> Defendants. | Miscellaneous Action <br> Case No. 08-MC-80211-JF-PVT <br><br> **BAYTSP'S REPLY IN SUPPORT OF OBJECTION TO JANUARY 14, 2009 ORDER RE YOUTUBE SUBPOENA** |
| The Football Assoc. Premier League Ltd., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> YouTube, Inc. *et al.*, <br><br> Defendants. | |

**BAYTSP'S REPLY ISO OBJECTION TO ORDER RE YOUTUBE SUBPOENA**
CASE NO. 08-MC-80211 JF (PVTx)

# TABLE OF CONTENT

Page Nos.
I. PRELIMINARY STATEMENT ........................................................................... 1
II. ARGUMENT ........................................................................................................ 2
    A. YouTube's Broad Discovery Requests Seek Irrelevant Documents. .......... 3
        1. The Requested Fourth Party Documents Are Irrelevant to Whether YouTube.com Qualifies for the DMCA Safe Harbor. ................................................................................................ 4
        2. The Requested "Fourth Party" Documents Are Irrelevant to Whether YouTube.com has Substantial Non-Infringing Uses. ................................................................................................. 7
    B. The Burdens to BayTSP Substantially Outweigh The Relevance Of The Requested Documents ........................................................................ 9
III. BayTSP Does Not Seek An Advisory Opinion ................................................. 13
    A. The Order Requires YouTube to Reimburse BayTSP's Attorneys Fees Associated With The Production. ...................................................... 13
    B. The Order Does Not Compel Production Of Documents Pertaining To BayTSP's Monitoring Of Sites Other Than YouTube.Com. ................ 15
IV. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Beinin v. Center for the Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, at*2 (N.D. Cal. March 17, 2007) ..........................10

*Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007) ..............................14

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ..........................................................................................................10

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). See also *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005)..2

*Fleischman Distilling*, 386 U.S. 714, 719 (1967) ......................................14

*Gonzales v. Google, Inc.*, 234 F.R.D 674, 680 (N.D. Cal. 2006) ...................2

*Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988) .................................................................................................8

*Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)...........................................................................................................10

*Littlefield v. McGuffey*, 979 F.2d 101, 104 (7th Cir. 1992)..........................14

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) .....................6, 13

*Paramount Pictures Corp. v. Replay TV*, No. 1-9358, 2002 WL 32151632, at *1 (C.D. Cal. May 30, 2002).....................................................................8

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984)3

## Statutes

17 U.S.C. § 512(c)(1)(A)..................................................................................5

17 U.S.C. § 512(c)(1)(A)(ii).............................................................................7

## Rules

Fed. R. Civ. P. 45(c) .......................................................................................14

Fed. R. Civ. P. 45(c)(1) ....................................................................................2

In accordance with this Court's Order of February 9, 2009, BayTSP.com, Inc. ("BayTSP") hereby files this Reply in support of its January 29, 2009 Objection ("Objection") to certain aspects of Magistrate Judge Trumbull's January 14, 2009 Order ("January 14 Order" or "Order"). The Order granted YouTube, Inc. and Google, Inc. (collectively "YouTube")'s motion to compel a subpoena *duces tecum* issued to BayTSP.

As set forth below, YouTube's Opposition fails to refute BayTSP's objections that certain portions of the January 14 Order are clearly erroneous and/or contrary to law. Thus, the Court should sustain BayTSP's objections.

## I. PRELIMINARY STATEMENT

This Court must determine if YouTube, a party to a lawsuit, can compel a nonparty to the lawsuit, BayTSP, to produce perhaps millions of pages of commercial documents concerning complete strangers to the litigation where those documents are not relevant to the underlying proceeding and compliance with the subpoena would severely harm the nonparty's business. The answer is clearly no. The law protects non-parties from the harassment and burden of responding to grossly overbroad subpoenas such the one issued by YouTube.

YouTube, a company with endless resources that is worth billions of dollars, must not be allowed to force BayTSP, a nonparty with limited resources and whose documents have no connection to the instant dispute, to undertake a costly and burdensome search of virtually all of BayTSP's documents in the hope that something, somehow, somewhere will turn up that will benefit YouTube. This is inappropriate to force upon a third party.

To be clear, BayTSP is *not challenging* the bulk of the Magistrate Judge's Order, which orders the production of documents relating to BayTSP clients that are *parties* in the litigation with YouTube, such as Viacom. BayTSP has long agreed to produce (and has been working on the production of) such documents. Instead, BayTSP's objection relates solely to the narrow portion of the Order that requires third-party BayTSP to produce documents in its custody that belong to its third-party clients – persons that have nothing to do with YouTube's lawsuit. These "Fourth Party" documents (the majority of

which are privileged) are not relevant to YouTube's lawsuit. YouTube's strained superficial theories of relevancy are belied by the fact that they already have documents in their *own* possession, and will receive documents from parties, like Viacom, that fully satisfy YouTube's purported need for more documents of exactly the same kind from non-parties and Fourth Parties.

This dubious relevancy needs to be balanced against the fact that BayTSP (and its non-party clients) are not parties to YouTube's lawsuit. YouTube's strong-arm tactics against BayTSP -- which YouTube has held a grudge against because BayTSP has provided copyright enforcement support to Viacom -- should not be allowed to devastate BayTSP's business by imposing crushing costs on it and by forcing to it disclose the confidences of its clients that are not parties to YouTube's lawsuit. This Court should impose rational limits on YouTube's fishing expedition into non-parties' files and order that YouTube is not entitled to documents (many of which are privileged) in BayTSP's custody that belong to its "Fourth Party" clients that are not named parties in YouTube's lawsuit.

## II. ARGUMENT

The Federal Rules expressly provide that "[a] party or attorney responsible for issuing…a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty…." Fed. R. Civ. P. 45(c)(1). The imperative to avoid unnecessary burden is even more significant where the entity receiving the subpoena is not a party to the litigation. As the Court explained in *Gonzales v. Google, Inc.*, "Underlying the protections of Rule 45 is the recognition that "the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third party' discovery." *Gonzales v. Google, Inc.*, 234 F.R.D 674, 680 (N.D. Cal. 2006) (citing and quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). *See also Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) (quashing a third party subpoena in part because the subpoena sought "any and all documents over a ten year or greater period," sought

documents that the requesting party could "more easily and inexpensively obtain" from other parties to the litigation, and sought "commercial information" by seeking "documents related to [the] nonparty['s] business relationship with other nonparties").

### A. YouTube's Broad Discovery Requests Seek Irrelevant Documents.

YouTube's subpoena requests virtually every document in BayTSP's possession. As YouTube interprets the subpoena, BayTSP would be required to review *any* document, from *any* time, concerning *any* client or *any* of BayTSP's internal protocols, and involving the monitoring of *any* website. BayTSP objects only to producing those documents that relate to BayTSP's clients that are not party to the underlying SDNY Actions, *i.e.*, "Fourth Party" clients, and those pertaining to its monitoring of sites other than YouTube.com.

In its Opposition, YouTube presents only two arguments for the purported relevance of its grossly overbroad request, yet neither of YouTube's arguments is availing. First, YouTube does not need any of BayTSP's nonparty documents in order to make its DMCA "safe harbor" claim that it is not "aware of facts or circumstances from which infringing activity is apparent." Opp'n at 9. Second, BayTSP's nonparty documents have no relevance to whether YouTube.com has the substantial infringing uses under *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984) as YouTube now claims for the first time in its Opposition. *See* Opp'n at 9:18-28. Stated differently, the instructions that BayTSP receives from its nonparty clients, and the communications between BayTSP and its nonparty clients have nothing to do with whether YouTube has infringed the copyright of the parties to the instant proceeding.

Moreover, YouTube ignores, and thereby concedes, key objections raised by BayTSP regarding the Order's relevance analysis. Specifically:

(1) YouTube's Opposition ignores the argument made in BayTSP's Objection that BayTSP's non-party clients' "takedown instructions" (*i.e.*, instructions as to which videos to have removed from YouTube) do not necessarily reflect whether the videos were legally posted, and therefore do not demonstrate the difficulty of determining which

videos are legal.

(2) YouTube's Opposition ignores BayTSP's objection that the requested documents cover a broad range of *types* of documents such as invoices, work plans and schedules that far exceed the scope of either of YouTube's defenses, as well as documents spanning an unlimited temporal range.

1. The Requested Fourth Party Documents Are Irrelevant to Whether YouTube.com Qualifies for the DMCA Safe Harbor.

YouTube claims that it needs the nonparty documents in order to qualify for the DMCA's "safe harbor." YouTube asserts that it will be able to use the nonparty documents to show that in some instances takedown notices were *not* sent for certain infringing materials, and therefore that YouTube cannot have "knowledge" of what activity on its site is infringing activity and what activity is authorized. However, YouTube ignores and mischaracterizes the nature of its own claim to a safe harbor defense in the underlying litigation. How and why BayTSP's other clients instructed BayTSP as they did with respect to infringing material on YouTube.com is not relevant to the dispute between the plaintiffs and YouTube. And BayTSP's interactions with sites *other than YouTube.com* certainly are not relevant to YouTube's safe harbor claim.

Under the DMCA, an Internet Service Provider ("ISP") under Chapter 5, 17 U.S.C. can be exempt from liability if it complies with the requirements of Chapter 5. *See* Rakow Decl., Ex. C, Dkt. No. 21-4. As YouTube points out, Opp'n at 9:5-7, one requirement is that the ISP not have "knowledge" of infringing activity on its site:

> (1) In general. — A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider –
>
> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>
> (ii) in the absence of such actual knowledge, is not *aware of facts or circumstances from which infringing activity is apparent*; or

17 U.S.C. § 512(c)(1)(A) (emphasis added). YouTube inexplicably claims that infringement can be evidenced only where YouTube has been instructed to take down videos, and, YouTube suggests, the absence of a takedown instruction therefore somehow provides evidence that the video is legitimately posted. YouTube's position is untenable. The reasons why take down instructions are sent for some infringing material but may not be sent for all infringing material are various. It is not true that every failure to send a take down instruction means that the clip is suddenly authorized to be on YouTube.com, or that its presence there is legitimate. YouTube seemingly intends to offer comparisons of takedown instructions that illustrate the difficulty of predicting which videos are infringing. As such, even assuming Viacom has made the argument that "YouTube should be able to tell by looking at a particular video clip whether or not it infringes someone else's copyright," the Fourth Party documents are useless for refuting Viacom's allegation that YouTube possesses such knowledge.

For one, the instructions and communications between BayTSP and its Fourth Party clients do not reveal which videos are considered to be infringing. As BayTSP explained in its Objection, the takedown instructions that BayTSP receives from its clients are based on many other factors that are unique to each individual client. These may include a particular client's budget, the length of videos the client chooses to focus its priorities on, or other factors. *See, e.g.*, Objection at 10:21-11:25. For this reason the instructions, typically from the clients' legal departments, do not provide a reliable guide (or any guide, for that matter) as to which clips have been posted legally and are non-infringing. Consequently, the instructions and communications between BayTSP and its nonparty clients cannot be used to illustrate the difficulty of knowing which videos are infringing, and therefore they cannot help YouTube disprove the statutory "knowledge" that would disqualify its safe harbor defense under the DMCA.[1]

---

[1] Even if the takedown instructions did illustrate which videos are legal, the type of knowledge that YouTube needs to disprove — *i.e.*, **apparent** knowledge — is different
(footnote continued)

Even if the Court wanted to give YouTube's farfetched theory some credit, YouTube already has documents -- both in its own possession and from the parties to the lawsuits -- that satisfy its purported need for evidence that copyright owners take some things down from YouTube.com but not others. For example, copyright owners who participate in YouTube's filtering program must provide YouTube with their "white list" of content that is approved and authorized to be on YouTube.com. YouTube claims in public statements that it has hundreds of copyright owners that chose to post content to YouTube.com, so YouTube must have hundreds of examples of these "white lists" already in its own possession. YouTube also has actual possession of every takedown notice that any copyright owner has ever sent it. ***Therefore, YouTube already has an enormous amount of evidence -- in its very own possession -- that it could use to show that copyright owners authorize some content to remain on and take down other content down from YouTube.com.*** YouTube has also sought, or presumably will seek, the exact same documents from the actual parties in the litigation. It is hard to fathom why YouTube needs more of the same, let alone those belonging to a fourth party in a third party's possession. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) (quashing a third party subpoena in part because the subpoena sought documents that the requesting party could "more easily and inexpensively obtain" from other parties to the litigation).

In addition, YouTube's Opposition completely ignores BayTSP's argument that the Order requires BayTSP to produce a broad range of *other types of confidential legal communications* and *confidential commercial communications* such as invoices, report formats, scheduling, work plans, and rosters, which YouTube has not even attempted to argue are relevant to the "knowledge" element of its safe harbor defense. In its

---

from *actual* knowledge, which is what a takedown notice triggers. Section 512(c)(1)(A) would serve no purpose beyond that already served by Section 512(c)(1)(C) if knowledge of infringement were limited to receipt of a valid takedown notice. *See* Objection at 9 n.8

Objection, BayTSP gave an illustrative list of the types of documents involved:

> The communications between BayTSP and its non-party clients are based on individualized criteria unrelated to the issues in the SDNY Actions: e.g., legal instructions and directions from a copyright owner's legal department; reports to in-house attorneys regarding projects done at their direction; documents relating to the financial relationship or invoices between BayTSP and its non-party clients; the business relationship between BayTSP and its non-party clients; which websites to monitor; what copyrighted works to monitor for the non-party clients; invoices and billing communications; formats of reports; internal procedures used by BayTSP to keep track of the work it is doing for a non-party client; the scope of work that BayTSP is going to perform; the criteria that BayTSP should use for a non-party client in determining what to monitor; system and resource capacity and limitations; system and resource capabilities; implementation schedules (including implementation lead times); work plans; and work rosters (including vacation and holiday coverage).

Objection at 9:19-10:11. The relevance of non-party invoices and the like to YouTube's defenses is nil. Although BayTSP points this out in its Objection, *see* Objection at 9:12-14-10:11, YouTube has not attempted to articulate the relevance of such a broad range of documents. ***YouTube does not explain (obviously because it cannot explain) how a single one of these categories of documents relates to whether it is or was "aware of facts or circumstances from which infringing activity is apparent."*** 17 U.S.C. § 512(c)(1)(A)(ii). Likewise, YouTube does not even attempt to explain how documents pertaining to BayTSP's monitoring of sites other than YouTube.com could support its claimed DMCA Safe Harbor defense. *See* § III-B, below.

For the above reasons, YouTube cannot justify the Order's analysis of relevance by pointing to its need to disprove "knowledge" for its safe harbor defense.

2. <u>The Requested "Fourth Party" Documents Are Irrelevant to Whether YouTube.com has Substantial Non-Infringing Uses.</u>

In its Opposition, YouTube asserts a brand new argument, not previously raised, that the requested Fourth Party documents are necessary for YouTube to demonstrate that YouTube.com has substantial non-infringing uses under *Sony Corp. of Am. v. Universal*

*City Studios, Inc.*, 464 U.S. 417, 456 (1984).[2] Opp'n at 9:18-28. The Court should not even entertain this argument since it was not before the Magistrate Judge. *Paramount Pictures Corp. v. Replay TV*, No. 1-9358, 2002 WL 32151632, at *1 (C.D. Cal. May 30, 2002); *Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988). Even if YouTube could advance this new argument at this stage, the argument is substantively flawed.

Although YouTube seeks a much broader range of documents than simply the takedown instructions that BayTSP receives from its clients, even these take down instructions do not establish which video clips constitute infringing or non-infringing uses of YouTube.com. As BayTSP explained both above and in its Objection, the takedown instructions reflect highly confidential and privileged instructions from its clients' legal counsel that may be guided by myriad (confidential and privileged) considerations.[3] Thus, BayTSP frequently acts as a mere extension of its clients' legal departments and, in implementing their instructions, itself may not know why it is instructed to prioritize the detection and removal of some types of infringing activity but not others.

In fact, YouTube, based on information it already has in its possession, is well suited to determine what is and is not authorized, and YouTube's own documents can evidence any YouTube claim that certain materials on its website are non-infringing. Thus, as shown in an internal Google memo that YouTube submitted with its original

---

[2] It is unclear how the *Sony* defense would even apply to YouTube, which is a hosted service that maintains an ongoing relationship with its users. *See Sony Corp.*, 464 U.S. 442-43, 456 (a product manufacturer is not liable for selling a standalone product like the VCR into the stream of commerce when that product has substantial non-infringing uses).

[3] It is inconceivable that the Fourth Party clients' legal instructions from their legal departments could ever be discoverable and it is unreasonable that YouTube is demanding them. BayTSP has not asserted or argued the legal privileges that are held by its Fourth Party clients on behalf of those clients, and these clients did not have prior notice of YouTube's subpoena or the motion before the Magistrate Judge.

motion and its Opposition, YouTube does not treat the takedown notices as necessarily indicating an infringing use. In fact, YouTube renders its own independent decision as to a video's legality based on feedback from the person who posted the video:

> We received a DMCA from Viacom with a request for the removal of 19 Spongbob [sic] URLs. However, when I looked them up, they were uploaded by joe.ruffolo@nick.com and are marked Premium. Before I noticed, I took down two links, but immediately reinstated them so they should stay up. Still, Mark probably received two email notifications that we took down a video, fyi.

Wilson Decl. Ex. 9 accompanying YouTube's Motion to Compel.[4] This email clearly refutes YouTube's claim that non-parties' takedown instructions to BayTSP are necessary to (or could possibly) demonstrate YouTube.com's substantial noninfringing uses. In any event, YouTube necessarily already has copies of all take down notices that every copyright owner has ever sent to YouTube and can make whatever arguments it wants to make from these notices in its own possession.

Finally, as pointed out above with respect to YouTube's safe harbor defense under the DMCA, YouTube's subpoena demands *a broad range of types of documents* such as invoices, work plans and BayTSP's procedures. YouTube has not even attempted to argue how such documents are relevant its new substantial non-infringing use defense.

For the reasons above, YouTube fails to justify the Order's analysis of the relevance of the broad range of communications between BayTSP and its non-party clients that YouTube seeks to obtain.

### B. The Burdens to BayTSP Substantially Outweigh The Relevance Of The Requested Documents

The Court must be "particularly concerned anytime enforcement of a subpoena imposes an economic burden on a non-party. Under Rule 45(3)(a), a court may modify

---

[4] Submitted herewith for convenience as Rakow Decl., Ex. A.

or quash a subpoena even for relevant information if it finds that there is an undue burden on the non-party." *Gonzales*, 234 F.R.D. at 683. In this case, YouTube failed to demonstrate that the third party documents sought are relevant and non-duplicative of party documents and documents already in YouTube's own possession, yet the burdens imposed on BayTSP (and its clients) are great—including the fact that BayTSP may have to turn over sensitive, commercial documents to YouTube, and that BayTSP's business may be crippled as a result— and substantially outweigh any remote relevance.

YouTube nowhere attempts to refute BayTSP's objection that the Magistrate Judge was required to, but did not, weigh the burdens on non-party BayTSP under a more protective standard. *See* Objection at 6:21-7:21. BayTSP pointed to *Gonzales v. Google, Inc.*, which held that, when determining the propriety of a nonparty's objections to a subpoena, a court must bear in mind the distinction between a party and nonparty. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006); *see also Beinin v. Center for the Study of Popular Culture,* No. C 06-2298 JW (RS), 2007 WL 832962, at*2 (N.D. Cal. March 17, 2007) (citing *Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980) ("Underlying this protection is the understanding that, the word 'non party' serves as a constant reminder of the reasons for the limitations that characterize 'third party' discovery.")) (citations omitted). BayTSP repeatedly contended that a court must keep this distinction in mind by balancing "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* at 680; *see also Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986). The Magistrate Judge failed to weigh the burdens to non-party BayTSP under the proper standard.

Side-stepping this crucial legal point, YouTube instead offers two other arguments justifying the Order's analysis of the burden on BayTSP. YouTube's first argument is that BayTSP failed to offer competent evidence of the "chilling effect" which the subpoena is likely to have on BayTSP's business as a DMCA agent. Opp'n at 8:8-10. Its second argument is that the Order is sufficient because it acknowledges both the

protective order that is in place between BayTSP and YouTube and the *future possibility* of protective orders for BayTSP's non-party clients.[5] Opp'n at 8:7-8.

It is self-evident that compliance with this subpoena could significantly disrupt BayTSP's relationship with its clients and devastate BayTSP's business. Clients who have retained BayTSP to perform its copyright monitoring function (a necessarily sensitive endeavor), assume that their communications will be kept confidential, and will not be subject to disclosure in litigation in which the clients are complete strangers. Indeed, the DMCA specifically provides for DMCA agents to provide the type of service that Bay TSP provides. See § 512(c)(3)(A). Maintaining privileges and confidentiality is a key component that allows a company like BayTSP to act as legal agents for the copyright holders. Given the hegemonic position of YouTube and its parent company Google, the DMCA's goals would be frustrated if a precedent is set that ISPs like Google and YouTube are permitted to require third parties acting as legal agents for copyright owners to turn over all of their communications with all of their clients whenever *any* ISP is sued for infringement by *any* company. Not only would there be a chilling effect on BayTSP, but on every similarly situated third party company that acts as a legal agent for copyright monitoring purposes, which would undermine the entire foundation of the take down process set forth in the DMCA.

YouTube's claim that the Order is sufficient simply because it allows the Fourth Parties to seek protective orders also wholly misses the point. For example, nowhere in the Opposition does YouTube address the fact that it would be unduly burdensome to require BayTSP's many clients worldwide to file motions and police compliance with their protective orders. See Objection at 15:13-17 (raising the geographical burden); Order at 9:18-10:15 (analyzing burdens without noting the geographical burden to

---

[5] YouTube states the Order is "*infused* with accommodations to ameliorate any hypothetical burden," Opp'n at 7:24-25 (emphasis added), but YouTube points to no specific measures.

BAYTSP'S REPLY ISO OBJECTION TO
ORDER RE YOUTUBE SUBPOENA     11
CASE NO. 08-MC-80211 JF (PVTx)

BayTSP's clients). Also, as YouTube acknowledges, the Order completely overlooks the enormous costs (including *legal* fees) associated with BayTSP's non-party clients' technical, administrative, and legal privilege review of their documents. Opp'n at 10:15-22. Nor does the Order discuss the costs (including legal fees) that will be incurred by BayTSP's non-party clients in having to having file motions to protect their privileged and confidential documents from disclosure, whether in this district or elsewhere, and the costs incurred with having to monitor compliance with any protective order that might issue.[6]

And, maybe most importantly, while protective orders may provide reliable confidentiality against trade secrets and the like in most cases, *the existence of a protective order simply does not mean a party (or a third party) must to turn over privileged documents.* The extent the subpoena seeks documents that are not privileged, a protective order provides little protection under the current circumstances. The Fourth Parties are direct competitors of many of the copyright owner parties in the YouTube litigation (such as Viacom). Given the size and complexity of the underlying SDNY Actions, there could easily be 100 people that will see the Fourth Parties' confidential documents, even under a protective order.

Finally, any production of Fourth Party documents by BayTSP would be largely cumulative of other evidence already in YouTube's possession. To the extent that any of BayTSP's documents relating to Fourth Party clients are relevant to YouTube's Safe Harbor defense, YouTube already has them in its possession. *See* above and Objection at 13:2-5. To the extent any of BayTSP's documents relating to Fourth Party clients are relevant to YouTube's substantial non-infringing uses defense, it cannot be disputed that

---

[6] YouTube has argued that the Court's use of the term "costs" does not include all of the costs that BayTSP will incur. Particularly, YouTube argues that the January 14 Order will only cover the fees charged by the outside vendor Kroll and not the fees incurred for the privilege and client review that will be done by the attorneys. That YouTube's understanding is incorrect is addressed below.

YouTube already has research and data of its own documenting legitimate uses of YouTube.com, as well as voluminous documents to be received from the plaintiffs in the underlying SDNY Actions. As such, the marginal relevance of any production is even further lessened by their cumulative and redundant nature, which are clearly outweighed by the many burdens detailed above. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) (quashing a third party subpoena in part because the subpoena sought "any and all documents over a ten year or greater period," sought documents that the requesting party could "more easily and inexpensively obtain" from other parties to the litigation, and sought "commercial information" by seeking "documents related to [the] nonparty['s] business relationship with other nonparties").

### III. BayTSP Does Not Seek An Advisory Opinion

In the last section of its Opposition, YouTube argues that the Objection filed by BayTSP improperly seeks *advisory rulings* that YouTube must reimburse BayTSP's costs as well as its attorneys fees associated with the productions, Opp'n at 10:14-22, and that BayTSP need only produce documents related to BayTSP's monitoring of YouTube.com, not its monitoring of other sites, Opp'n at 10:23-12:14.

Contrary to YouTube's assertion, BayTSP is not seeking an advisory opinion. BayTSP believes the January 14 Order is clear on both of these points. YouTube, however, has since indicated it has a different opinion of the Order. Since the Order would be clearly erroneous if YouTube's position were adopted, this is the proper vehicle for resolving this issue. To the extent the Court disagrees with BayTSP's reading of the Order, BayTSP respectfully requests that the Court send this matter back to the Magistrate Judge for further clarification.

#### A. The Order Requires YouTube to Reimburse BayTSP's Attorneys Fees Associated With The Production.

As BayTSP pointed out in its Objection, the "costs" that were at issue and discussed during the hearing included *legal* costs. *See* Objection at 13:23-14:1; Hearing Transcript ("Tr.") at 93:3-7. If the Order did not intend to cover all the costs incurred by

BayTSP, both legal and processing costs, then the burden on BayTSP would even more clearly outweigh what is at best the very minimal relevance of the documents requested, and it would be clearly erroneous.

YouTube unpersuasively cites *Fleischman Distilling Corp. v. Maier Brewing Co.* to support its argument that the Order does not cover attorneys fees. That case, however, provides no support for YouTube's position. That case does not pertain to the explicit duty under Fed. R. Civ. P. 45(c) to protect third-parties (let alone "Fourth Parties") from the various costs of complying with a subpoena. Instead, it addresses a complex cost-shifting framework within the trademark statue in which "Congress meticulously detailed the remedies available to a ***plaintiff***" in a trademark action. *Fleischman Distilling*, 386 U.S. 714, 719 (1967) (emphasis added). The trademark statute and the Federal Rules of Civil Procedure are entirely different. Moreover, YouTube's appeal to *Fleischman* ignores the difference between parties and non-parties. In contrast to the trademark statute, the language of the Federal Rules provides a broader basis to reimburse non-parties for all financial burdens including not only costs but lost earnings and reasonable attorney's fees:

> (c) Protection of Persons Subject to Subpoenas.
> (1) Avoiding Undue Burden or Expense; Sanctions.
> A party . . . responsible for issuing . . . a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may ***include lost earnings and reasonable attorney's fees*** — on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c) (emphasis added). In fact, courts have determined the word "costs" to include attorney's fees. *See, e.g., Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007) (costs may include attorney fees where the underlying statutory provision provides opportunity to recovery attorney fees); *Littlefield v. McGuffey*, 979 F.2d 101, 104 (7th Cir. 1992) (rejecting defendant's argument that historical meaning of "costs" excludes attorney fees and holding that in federal law "'costs' has no uniform meaning, and . . .

can include attorney's fees").

### B. The Order Does Not Compel Production Of Documents Pertaining To BayTSP's Monitoring Of Sites Other Than YouTube.Com.

YouTube also argues that the Order compels production of documents related to BayTSP's monitoring of any website, not only YouTube.com. Opp'n at 10:23-12:14. This contention is an overly literal interpretation that ignores the record before the Court, as well as the YouTube's own arguments about the relevance of the documents YouTube seeks.

The relevance arguments that YouTube has advanced pertain only to infringing activity on YouTube.com. Nowhere does YouTube take the position that the plaintiffs' allegations require YouTube to refute knowledge of infringing activity on other websites. Even under YouTube's newly raised *Sony* argument, YouTube does not take the position that it needs to show that **other websites besides YouTube.com** have substantial non-infringing uses.

If YouTube is correct that the Magistrate's Order is in fact premised on the idea that YouTube must refute knowledge of infringing activity on other websites (or that other websites have substantial non-infringing uses) then the Order is clearly erroneous and contrary to law because this argument appears nowhere in the record of proceedings before the Magistrate Judge.

### IV. CONCLUSION

The January 14, 2009 Order is clearly erroneous and should be modified to deny YouTube's request that BayTSP produce documents and communications between itself and its non-party clients, and to deny YouTube's request that BayTSP produce documents pertaining to its monitoring of sites other than YouTube.com.

Alternatively, if the Court declines to so modify the Order, the Court should order YouTube to pay all costs, including legal fees.

Dated: February 27, 2009

Respectfully Submitted,

/s/ Steven D. Hemminger
Steven D. Hemminger
ALSTON & BIRD, LLP

Attorneys for Nonparty
BayTSP.com, Inc.