1   DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2   SHARON M. BUNZEL (S.B. #181609)
    sbunzel@omm.com
3   COLLEEN M. KENNEDY (S.B. #227107)
    ckennedy@omm.com
4   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5   San Francisco, CA 94111
    Telephone:   (415) 984-8700
6   Facsimile:   (415) 984-8701

7   Attorneys for Plaintiff eBay Inc.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12  EBAY INC.,                           Case No.  C 08-04052 JF

13                Plaintiff,             **CONSOLIDATED OPPOSITION OF
                                         EBAY INC. TO THE MOTIONS TO
14         v.                            DISMISS THE FIRST AMENDED
                                         COMPLAINT BY DEFENDANTS
15  DIGITAL POINT SOLUTIONS, INC.,       THUNDERWOOD HOLDINGS,
    SHAWN HOGAN, KESSLER'S               INC., BRIAN DUNNING,
16  FLYING CIRCUS, THUNDERWOOD           BRIANDUNNING.COM, TODD
    HOLDINGS, INC., TODD DUNNING,        DUNNING, DUNNING
17  DUNNING ENTERPRISE, INC., BRIAN      ENTERPRISE, INC. AND
    DUNNING, BRIANDUNNING.COM,           KESSLER'S FLYING CIRCUS**
18  and DOES 1-20,

19                Defendants.            Hearing Date: December 12, 2008
                                         Time:         9:00 a.m.
20                                       Judge:        Hon. Jeremy Fogel

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF KEY FACTS ......................................................................... 2

III. ARGUMENT ...................................................................................................... 3

    A.   eBay Has Properly Alleged a Claim Against All Defendants for Violation of the CFAA .................................................................................. 3

        1.   eBay Has Alleged That Defendants Caused Unauthorized Access to eBay's Computers ................................................................ 4

        2.   eBay Has Alleged Loss or Damage Within the Meaning of the Statute ......................................................................................................... 6

    B.   eBay Has Properly Alleged a RICO Claim Against All Defendants ........... 9

        1.   eBay's RICO Allegations Meet the Particularity Requirements of Rule 9(b) ................................................................................................. 9

        2.   eBay Has Adequately Alleged a Pattern of Racketeering Activity .................................................................................................... 12

    C.   This Action Is Properly Venued in the Northern District of California ..... 14

        1.   Venue Is Proper Under Either 28 U.S.C. § 1391(b)(1) or (b)(2) ..... 14

        2.   The Forum Selection Clause Cited by Defendants Does Not Govern Venue in This Action ............................................................. 17

        3.   There Is No Justification for Transfer of Venue ............................. 18

    D.   There Are No Grounds for the Court's Abstention .................................... 18

IV. CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allwaste, Inc. v. Hecht,*
    65 F.3d 1523 (9th Cir. 1995) ..................................................................... 12, 13

*American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.,*
    843 F.2d 1253 (9th Cir. 1988) ......................................................................... 19

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
    223 F.3d 1082 (9th Cir. 2000) ..................................................................... 16, 17

*Beth Israel Med. Ctr. v. Smith,*
    576 F. Supp. 1061 (S.D.N.Y. 1983) ................................................................. 10

*Calder v. Jones,*
    465 U.S. 783 (1984) ........................................................................................ 16

*Center Cadillac, Inc. v. Bank Leumi Trust Co.,*
    808 F. Supp. 213 (S.D.N.Y. 1992) ................................................................... 10

*Civic Motors, Ltd. v. Mason St. Import Cars, Ltd.,*
    387 F. Supp. 2d 378 (S.D.N.Y. 2005) ............................................................... 7

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ........................................................................................ 19

*Connors v. Lexington Ins. Co.,*
    666 F. Supp. 434 (E.D.N.Y. 1987) ................................................................... 10

*Creative Computing v. Getloaded.com, LLC,*
    386 F.3d 930 (9th Cir. 2004) ............................................................................. 8

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ........................................................................... 18

*Diaz v. Gates,*
    420 F.3d 897 (9th Cir. 2005) ........................................................................... 12

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ..................................................................... 16, 17

*EF Cultural Travel BV v. Explorica, Inc.,*
    274 F.3d 577 (1st Cir. 2001) ............................................................................. 5

*H.J., Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ........................................................................................ 12

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,*
    556 F. Supp. 2d 1122 (E.D. Cal. 2008) ............................................................. 6

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Ikuno v. Yip,*
  912 F.2d 306 (9th Cir. 1990) ............................................................................ 12

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) ............................................................................ 18

*M&A Gabaee v. Cmty. Redevelopment Agency,*
  419 F.3d 1036 (9th Cir. 2005) .......................................................................... 19

*McColm v. Restoration Group, Inc.,*
  2007 WL 1470106 (E.D. Cal. May 18, 2007) .................................................... 13

*Medallion Television Enter. v. SelecTV,*
  833 F.2d 1360 (9th Cir. 1987) .......................................................................... 13

*Miller v. Glen & Helen Aircraft, Inc.,*
  777 F.2d 496 (9th Cir. 1985) ............................................................................ 12

*Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.,*
  48 F.3d 1066 (8th Cir. 1995) ............................................................................ 11

*Myers v. Bennett Law Offices,*
  238 F.3d 1068 (9th Cir. 2001) ...................................................................... 14, 15

*Nexans Wires S.A. v. Sark-USA, Inc.,*
  319 F. Supp. 2d 468 (S.D.N.Y. 2004) ................................................................. 7

*Pacific Aero. & Elecs., Inc. v. Taylor,*
  295 F. Supp. 2d 1188 (E.D. Wash. 2003) ........................................................... 6

*Panavision Int'l, L.P. v. Toeppen,*
  945 F. Supp. 1296 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) .............. 15

*Pesnell v. Arsenault,*
  543 F.3d 1038 (9th Cir. 2008) .......................................................................... 12

*Royce Int'l Broad. Corp. v. Field,*
  2000 WL 236434 (N.D. Cal. Feb. 23, 2000) ...................................................... 14

*Schmuck v. United States,*
  489 U.S. 705 (1989) ........................................................................................ 11

*Scott v. Boos,*
  215 F.3d 940 (9th Cir. 2000) ............................................................................ 12

*Sebastian Int'l, Inc. v. Russolillo,*
  128 F. Supp. 2d 630 (C.D. Cal. 2001) ............................................................... 11

*SecureInfo Corp. v. Telos Corp.,*
  387 F. Supp. 2d 593 (E.D. Va. 2005) ................................................................ 13

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*,
119 F. Supp. 2d 1121 (W.D. Wash. 2000) ..................... 9

*Therapeutic Research Faculty v. NBTY, Inc.*,
488 F. Supp. 2d 991 (E.D. Cal. 2007) ..................... 8

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..................... 5

*Walling v. Beverly Enters.*,
476 F.2d 393 (9th Cir. 1973) ..................... 10

*Williams v. Bowman*,
157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..................... 18

## STATUTES

18 U.S.C. § 1030 (a)(4) ..................... 4

18 U.S.C. § 1030(a)(5)(B) ..................... 4

18 U.S.C. § 1030(a)(5)(C) ..................... 4

18 U.S.C. § 1030(c)(4)(A)(i)(I) ..................... 4

18 U.S.C. § 1030(e)(11) ..................... 6, 9

18 U.S.C. § 1030(e)(8) ..................... 6

18 U.S.C. § 1343 ..................... 13

28 U.S.C. § 1391(b)(1) ..................... 14, 15, 17

28 U.S.C. § 1391(b)(2) ..................... 14, 15

28 U.S.C. § 1391(c) ..................... 15

28 U.S.C. § 1404 ..................... 18

28 U.S.C. § 1404(a) ..................... 18

Cal. Penal Code § 502 ..................... 6

## RULES

Fed. R. Civ. P. 9(b) ..................... 9, 10, 11

Fed. R. Civ. P. 12(h)(1) ..................... 14

## I.  **INTRODUCTION**

This case is not a "simple breach of contract claim"—as Defendants would have it. This case seeks redress for massive, illegal "cookie stuffing" schemes that Defendants used to defraud eBay over several years.  Those schemes involved the improper placement of data known as "cookies" on the computers of potential eBay users so that eBay would be tricked into paying commissions to Defendants when no commissions were owed.  And it is those schemes that caused the Federal Bureau of Investigation to raid named Defendants Shawn Hogan and Brian Dunning in June 2007 and to seize their computers.

Defendants Brian Dunning, BrianDunning.com, Thunderwood Holdings, Inc., Todd Dunning, Dunning Enterprise, Inc. and Kessler's Flying Circus (the "KFC Defendants") advance a variety of arguments for dismissal or transfer of this action, but each is meritless.[1]  The KFC Defendants' arguments can be reduced to five essential claims.  First, the KFC Defendants argue that the stuffing of cookies on users' computers does not violate the CFAA because it did not involve access by Defendants to eBay's computers.  But this misses the point:  Defendants caused the unsuspecting users' computers to improperly access eBay's computers to effectuate Defendants' fraud.  (Compl. ¶¶ 25-26.)  This improper access—directly and intentionally caused by Defendants—violated the CFAA.

Second, the KFC Defendants claim that eBay has failed to adequately plead loss or damage under the CFAA.  But again the KFC Defendants rely on the mistaken notion that the Complaint is focused on Defendants' improper access to third party users' computers.  This is not the basis of eBay's claims, and Ninth Circuit law makes clear that eBay's

---

[1] Three separate motions to dismiss have been filed by the KFC Defendants: (1) the Motion to Dismiss by Brian Dunning, BrianDunning.com and Thunderwood Holdings, Inc. (hereinafter "B. Dunning Mot."); (2) the Motion to Dismiss by Todd Dunning and Dunning Enterprise, Inc. (hereinafter "T. Dunning Mot."); and (3) the Motion to Dismiss by Kessler's Flying Circus (hereinafter "KFC Mot.").  In the interests of efficiency, eBay has consolidated its opposition to these motions, which raise duplicative issues, in a single brief.  The fourth motion pending before the Court in this matter, a Partial Motion to Dismiss filed by Digital Point Solutions, Inc. and Shawn Hogan, is addressed in a separate opposition brief filed herewith.

1    CFAA claims are properly pled.

2           Third, the KFC Defendants urge that eBay failed to plead its RICO claims with

3    Rule 9(b) particularity.  But eBay pled substantial detail regarding the nature and

4    mechanics of Defendants' fraudulent schemes, and that level of detail is sufficient to

5    survive a motion to dismiss because it is more than adequate to enable Defendants to

6    answer the Complaint.

7           Fourth, the KFC Defendants argue that eBay failed to allege a pattern of

8    racketeering activity because the fraud affected only one victim (eBay), was part of a

9    single scheme (made up of millions of communications), and was of limited duration

10   (from 2003 until the FBI raid in 2007).  Controlling law makes clear that none of these

11   arguments merits dismissal of eBay's RICO claims.

12          Fifth, the KFC Defendants challenge venue in this District.  But the essence of all

13   Defendants' schemes was to defraud a corporation based in this District: eBay.  By

14   directing their conduct at eBay, Defendants subjected themselves to jurisdiction under

15   both 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).  That result cannot be changed

16   by a forum selection clause in a contract to which eBay is not a party.  Nor can it be

17   changed by the existence of litigation to which eBay is not a party, that involves damages

18   that are entirely separate from the damages at issue in this action, and that is set for trial in

19   March 2009.

20          The KFC Defendants' Motions should therefore be denied.

21   **II.    SUMMARY OF KEY FACTS**

22          Over the course of at least three years, Defendants engaged in sophisticated

23   schemes to wrongfully obtain advertising commissions from eBay.  Defendants' schemes

24   made it appear that potential customers were visiting eBay's website by clicking on ads

25   for eBay that were placed by Defendants.  But this appearance was a deception, and

26   Defendants did not legitimately drive users to eBay's site.  Instead, Defendants caused a

27   massive number of users' computers to access eBay's computers without any user

28   clicking on an eBay link or even becoming aware that their computer had accessed the

eBay site. (Compl. ¶ 25-26.) This unauthorized access caused a cookie to be stuffed on each unsuspecting user's computer; then, when any of these users went to eBay and purchased an item, eBay paid a commission to Defendants.[2] (*See* Compl. ¶¶ 24-27.) These schemes ended when the FBI seized Defendants' computer equipment in June 2007 as part of an investigation into whether the fraudulent activities alleged in this case constitute federal crimes.

As the KFC Defendants point out, Commission Junction ("CJ") has filed a suit in Orange County Superior Court against some of the KFC Defendants for breach of contract. But eBay does not own or control CJ, and that litigation—which has been pending since January 2008 and is set for trial in March 2009—has no bearing on eBay's case. It involves rights and remedies that are entirely separate from the action before the Court, and none of the damages sought by eBay overlap with the damages sought by CJ. This other lawsuit is fundamentally premised on a breach of a contract to which eBay is not a party and seeks to recover only one thing: a single disbursement of monies that it paid to KFC as commissions for one month in 2007 and for which CJ was never reimbursed by eBay. (*See* B. Dunning Mot., Ex. 1, ¶¶ 16, 17.)

## III. ARGUMENT

### A. eBay Has Properly Alleged a Claim Against All Defendants for Violation of the CFAA

The Motions to Dismiss filed by the KFC Defendants argue that eBay failed to state a claim under the Computer Fraud and Abuse Act ("CFAA"). (B. Dunning Mot. at 10-14; T. Dunning Mot. at 5-11; KFC Mot. at 8-10.) But eBay's allegations regarding Defendants' fraudulent cookie stuffing scheme, when taken as true, satisfy the statutory requirements for a CFAA claim on any one of several independent grounds.

A defendant is civilly liable under the CFAA if he or she:

> [K]nowingly and with intent to defraud, accesses a protected

---

[2] eBay pays commissions to its affiliates based on the number of "Revenue Actions" taken by users who come to eBay by clicking on an affiliate's advertisement for eBay. (Compl. ¶¶ 19, 23.)

computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . (18 U.S.C. § 1030(a)(4)); or

[I]ntentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage (18 U.S.C. § 1030(a)(5)(B)); or

[I]ntentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss (18 U.S.C. § 1030(a)(5)(C)); and

[C]auses loss to one or more persons during any 1-year period . . . aggregating at least $5,000 in value (18 U.S.C. § 1030(c)(4)(A)(i)(I)).

The KFC Defendants claim that eBay failed to allege that they "accessed" eBay's computers or that the KFC Defendants caused "damage" or "loss" to eBay within the meaning of the statute. These arguments ignore the numerous and specific allegations in eBay's Complaint regarding Defendants' fraudulent scheme as well as established case law.

       1.    **eBay Has Alleged That Defendants Caused Unauthorized Access to eBay's Computers**

The KFC Defendants argue that the Complaint does not allege unauthorized access to eBay's computers, and that the KFC Defendants are therefore not liable under the CFAA. However, these arguments are premised on the faulty proposition that access to third-party users' computers is the "unauthorized access" alleged by eBay. (*See, e.g.*, KFC Mot. at 8 ("[T]he KFC Defendants are alleged to have accessed *other internet users' computers*, but not Plaintiff's.") (emphasis in original).) This is not the case. eBay's Complaint alleges that Defendants caused third parties to access ***eBay's computers*** in an unauthorized way or in a way that exceeded their authorized access.

As stated in the Complaint, Defendants acted as principals and caused unwitting Internet users to access eBay's computers in an unauthorized manner. (*See, e.g.*, Compl. ¶ 26 ("[S]oftware programs utilized by each of DPS and KFC caused the user's computer to access eBay's computers in an unauthorized way and/or to exceed the authorized access to eBay's computers.").) Defendants' access (through their agents), was unauthorized

and/or in excess of authorization because, among other things, it violated the express terms of the eBay User Agreement, by which Defendants Shawn Hogan, Brian Dunning and Todd Dunning each agreed to be bound. (Compl. ¶ 35.)

Courts have repeatedly concluded that a defendant can violate the CFAA in a principal-agent manner, as pled in eBay's Complaint. For example, in *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 579 (1st Cir. 2001), the plaintiff sold travel services to students online. Defendant was a competitor who hired Zefer, a computer consultant, to develop a "scraper"—a computer program designed to access and quickly gather information from a series of successive web pages. Zefer developed and used the scraper to automatically navigate plaintiff's web site to gather information on plaintiff's pricing structure. Defendant never accessed the plaintiff's web site with the scraper itself; only defendant's agent did. *Id.* at 580. In issuing a preliminary injunction, the district court held that the plaintiff had shown a likelihood of success on the merits of its CFAA claim based on the ***agent's*** unauthorized access and collection of data from the plaintiff's web site. *Id.* at 580-81.

The court in *Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007), reached the same conclusion. There, Ticketmaster sued RMG, a company that made software to allow ticket brokers and resellers to buy large quantities of tickets on the Ticketmaster web site. *Id.* at 1102-03. The terms of use for the Ticketmaster site precluded the use of any automated software such as RMG's to manipulate the system. *Id.* at 1107. The court found that Ticketmaster had shown a likelihood of success on this element of its CFAA claim against RMG, based on RMG's ***clients'*** unauthorized access to the Ticketmaster site. *Id.* at 1113.

The Complaint presents grounds for liability more compelling than those in *EF Cultural* and *Ticketmaster*. Defendants used unsuspecting web users (who had no idea of the fraudulent use to which their computers were being put) as their agents. Because Defendants caused these users' unauthorized access for Defendants' purposes, the Defendants are liable under the CFAA.

The argument by Defendants Todd Dunning and Dunning Enterprise, Inc. that eBay failed to state a claim under California Penal Code § 502 must be rejected for the same reasons. Section 502 has similar elements to the CFAA and the two claims are often addressed together. *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131-32 (E.D. Cal. 2008). Defendants' argument regarding eBay's California Penal Code § 502 is based on the faulty assertion that "eBay alleges [that] only Internet users made contact to eBay's computer." (T. Dunning Mot. at 11.) As discussed above, this assertion is contradicted by the allegations in the Complaint, and eBay's § 502 claim is therefore properly pled.

### 2. eBay Has Alleged Loss and Damage Within the Meaning of the Statute

Defendants argue that eBay has not properly alleged "loss" or "damage" as defined by the CFAA. Relying exclusively on out-of-circuit authority, Defendants urge this Court to adopt a rule that would require eBay to allege that it suffered some sort of physical damage to its computers or an interruption in its service. (*See* KFC Mot. at 10; B. Dunning Mot. at 13; T. Dunning Mot. at 9-10.) But controlling Ninth Circuit authority directly contradicts Defendants' arguments.

Defendants cannot escape the fact that "damage" and "loss" are broadly defined under the CFAA. "Damage" includes "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). This language led one district court to note the "ease" with which a plaintiff can make out the damage element under the CFAA. *See Pacific Aero. & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1197 (E.D. Wash. 2003).

eBay has alleged that the fraudulent cookie stuffing schemes operated by

Defendants "caused harm to eBay's computers and caused loss to eBay in each year [of the scheme] aggregating more than $5,000." (Compl. ¶ 38.) On their face, these allegations, which must be taken as true, state a claim under the CFAA. No authority requires eBay to plead the "damage" or "loss" it has suffered with particularity, and Defendants cite none. Nevertheless, eBay has alleged a number of facts concerning the nature of the monetary loss caused by Defendants' schemes. (*See, e.g.*, Compl. ¶ 38 ("Through their unauthorized access, Defendants KFC and DOES 11-20 fraudulently obtained commissions for Revenue Actions that were in no way related to those Defendants' advertisements and for which those Defendants were due no compensation.").)

Defendants rely on the faulty assertion that eBay has not alleged "access" to eBay's computers. (*See, e.g.*, KFC Mot. at 10.) As discussed above, this contention is incorrect. eBay has alleged access and that its computers were damaged by that access. (Compl. ¶ 38.)

Defendants rely on authority from district courts in the Second Circuit that is both factually distinguishable from the present case and contradicted by controlling Ninth Circuit law. For example, all of the KFC Defendants' Motions cite *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004), and *Civic Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378 (S.D.N.Y. 2005). (*See* B. Dunning Mot. at 13; T. Dunning Mot. at 10; KFC Mot. at 10.) But the losses claimed by the plaintiffs in those cases were much more attenuated from the unauthorized access than the losses claimed by eBay. *See Nexans*, 319 F. Supp. 2d at 476-77 (plaintiffs sought to recoup travel costs for senior executives and lost business opportunities "as a result of defendants' use of their information to unfairly compete for business"); *Civic Motors*, 387 F. Supp. 2d at 382 (plaintiffs sought compensation for "lost profits resulting from Defendants' unfair competitive edge and for their now wasted investment in the development and compilation of the database information").

More importantly, the Ninth Circuit broadly interprets the statutory definitions of

"loss" and "damage" and has held that there is a "loss" any time "money or property are impaired in value, or money or property is lost, or money must be spent to restore or maintain some aspect of a business affected by a violation." *Creative Computing v. Getloaded.com, LLC*, 386 F.3d 930, 935 (9th Cir. 2004). eBay's Complaint alleges in detail the money and property lost as a result of paying commissions to Defendants for marketing referrals the Defendants never made. (*See, e.g.*, Compl. ¶¶ 32, 38.) Further, the facts alleged indicate that eBay expended substantial resources to investigate, remedy and prevent further instances of cookie stuffing by Defendants. (*See id.* ¶¶ 28-31.) These costs all fall within the Ninth Circuit's expansive definition of statutory "loss."

District courts in the Ninth Circuit have applied this standard to find "loss" and "damage" in cases analogous to eBay's. For example, in *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991 (E.D. Cal. 2007), the court upheld a claim for "loss" under the CFAA based on consequential economic harm resulting from defendants' unauthorized access. In that case, plaintiff sued several companies for their unauthorized access to plaintiff's online trade publications and database. Defendants had purchased a single-user, limited-purpose subscription which restricted access to "one and only one person" but breached the terms of the license and disseminated the username and password to multiple employees within their companies. *Id.* at 993. The court held that the plaintiff had sufficiently alleged a CFAA "loss" based on defendants' alleged use of the database that would rightfully entitle plaintiff to payments totaling nearly $40,000— substantially more than the $100 membership purchased by defendant. *Id.* at 996-97. The ill-gotten gain obtained by the defendants in *Therapeutic Research* is no different from the unearned commissions obtained by Defendants in this case. Both are actionable "losses" under the CFAA.

The court in *Therapeutic Research* held further that plaintiff had alleged "damage" under the CFAA because the unauthorized access to the online publication and disclosure of the information therein "could constitute an impairment to the integrity of data or information, even though 'no data was physically changed or erased.'" *Id.* at 996. The

same conclusion was reached by another district court in *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000). In that case, the court found that a plaintiff alleging misappropriation of trade secret information had pled CFAA "damage" based on allegations that the defendant had "infiltrated" plaintiff's computer network and "collected and disseminated confidential information." *Id.* at 1127. In addition to finding an impairment to the "integrity" of the data despite a lack of physical damage, the court found that actionable "damage" had occurred through the defendant's acquisition of confidential information and the "subsequent corrective measures" the plaintiff took to prevent further infiltration of its system. *Id.* As in *Shurgard* and *Therapeutic Research*, Defendants' cookie stuffing scheme caused damage by compromising the integrity of the data transferred to eBay by its users, which formed the basis for the payment of commissions through eBay's affiliate marketing program. Although no physical damage to eBay's computers occurred, this impairment constitutes "damage" under the CFAA.

Finally, Defendants cannot contest that the definition of "loss" under the CFAA explicitly includes "the cost of responding to an offense," including "conducting a damage assessment." 18 U.S.C. § 1030(e)(11). Accepting the facts and all reasonable inferences pled by eBay as true, there can be no serious dispute that the cost to eBay from investigating and responding to Defendants' fraudulent scheme exceeded $5,000. (*See, e.g.*, Compl. ¶¶ 28-31, 38.)

**B.    eBay Has Properly Alleged a RICO Claim Against All Defendants**

Contrary to the KFC Defendants' arguments, eBay's allegations regarding their fraudulent schemes also state a claim under the civil RICO statute. Defendants' contentions regarding eBay's RICO allegations are contrary to law and improperly attempt to elevate the pleading standards governing RICO claims.

**1.    eBay's RICO Allegations Meet the Particularity Requirements of Rule 9(b)**

Defendants argue that eBay's RICO claim lacks sufficient particularity and

therefore does not satisfy Federal Rule of Civil Procedure 9(b). This argument fails for at least two reasons. First, contrary to Defendants' claims, the Complaint sets out a detailed explanation of Defendants' RICO scheme and how the wires (*i.e.*, the Internet) were used in furtherance of that scheme. (*See* Compl. ¶¶ 24-30.) The Complaint also describes the time frame in which the alleged use of the wires occurred—"approximately December 2003 through June 2007." (*Id.* ¶ 43.) And the Complaint sets out the contents of the wire transmissions at issue:

> The members of the Hogan Group and the Dunning Group each, by use of their technology, caused users' web browsers to convey a representation by the Hogan Group and/or the Dunning Group to eBay that the user had accessed the eBay website via an advertisement placed by either DPS or KFC, when in fact, a substantial portion of those users never knowingly or intentionally visited the eBay website based on an advertisement placed by either DPS or KFC.

(*Id.* ¶ 45.)

These allegations provide Defendants with the information they need to fashion an informed response to the Complaint, which is all that is required under Rule 9(b). *See Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer"). eBay's Complaint "need not specify the time, place and content of each . . . communication where the nature and mechanics of the underlying scheme is sufficiently detailed, and it is enough to plead the general content of the misrepresentation." *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213, 229 (S.D.N.Y. 1992); *see also Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 450-51 n.10 (E.D.N.Y. 1987) ("While it might have been helpful for plaintiff to provide specific dates, his failure to do so is not fatal given his detailed allegations as to the nature and mechanics of the alleged scheme."); *Beth Israel Med. Ctr. v. Smith*, 576 F. Supp. 1061, 1071 (S.D.N.Y. 1983) ("In view of the complaint's detailed description of the defendants' scheme . . . the failure to describe particular letters or telephone calls is not fatal to the complaint.").

eBay's wire fraud allegations are also sufficient for the independent reason that the time-place-and-content pleading requirement of Rule 9(b) does not apply to fraudulent schemes in which the use of the wires does not involve specific "misstatements." "The mail and wire fraud statutes encompass two types of fraud: those in which misrepresentations are made and those in which no misrepresentations are made." *Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 635 (C.D. Cal. 2001) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995)). In other words, there are mail and wire fraud cases in which the mailings or use of the wires "only need to be in furtherance of a scheme to defraud, and do not themselves need to be fraudulent or untrue." *Id.* For cases in which the use of the wires does not involve a misrepresentation of fact, Rule 9(b) requires only that the following be pled with particularity: (1) a scheme to defraud; (2) intent to defraud; (3) reasonable forseeability that the wires would be used; and (4) use of the wires in furtherance of the scheme. *Id.*

In this case, the Internet was not used to transmit a traditional written misrepresentation or false statement. Instead, the Defendants used cookie stuffing technology to trick a third party user's computer into sending to eBay an otherwise innocent transmission indicating that they had been referred to the eBay website by an advertisement placed by the Defendants. (*See* Compl. ¶ 45.) This is analogous to the situation in *Schmuck v. United States*, where mail fraud was established when the mails were used by innocent third parties to register vehicles (with incorrect mileage) whose odometers had been surreptitiously rolled back by the defendant. *See* 489 U.S. 705, 711 (1989). Here, as in *Schmuck*, innocent third parties unknowingly used the wires to further the execution of Defendants' scheme by sending Internet transmissions to eBay. In such circumstances, it is unnecessary for the plaintiff to plead false statements with specificity; rather 9(b) is satisfied when the plaintiff alleges the four elements laid out in *Murr Plumbing*. *See Sebastian Int'l*, 128 F. Supp. 2d at 635. Because eBay has pled those elements, its RICO claim has been pled with sufficient particularity to satisfy Rule 9(b).

1          2.    **eBay Has Adequately Alleged a Pattern of Racketeering Activity**

2          The KFC Defendants separately argue that the Complaint cannot state a RICO

3    cause of action because the pattern of racketeering activity alleged by eBay consists of:

4    (1) a single victim; (2) a single fraudulent scheme; and (3) was of limited duration. (*See,*

5    *e.g.*, T. Dunning Mot. at 13.) Defendants misstate the law with regard to the first two

6    elements of their argument and misread the facts alleged in the Complaint with regard to

7    the third element.

8          First, there is no prohibition against RICO claims that involve a single injured

9    party. To the contrary, RICO claims involving only a single victim are routinely upheld

10   in this Circuit. *See, e.g., Pesnell v. Arsenault*, 543 F.3d 1038, 1040 (9th Cir. 2008); *Diaz*

11   *v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005); *Scott v. Boos*, 215 F.3d 940, 942 (9th Cir.

12   2000); *Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990); *Miller v. Glen & Helen Aircraft,*

13   *Inc.*, 777 F.2d 496, 497 (9th Cir. 1985).

14         Second, the Supreme Court has held that a single fraudulent scheme can be the

15   basis for a pattern of racketeering activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

16   229, 240-41 (1989). In *H.J., Inc.*, the Supreme Court rejected the "multiple schemes"

17   approach taken by some circuits and held that "a party alleging a RICO violation may

18   demonstrate continuity over a closed period by proving a series of related predicates

19   extending over a substantial period of time." *Id.* at 242. It also held that a pattern of

20   racketeering activity may be established where "the racketeering acts themselves include a

21   specific threat of repetition extending indefinitely into the future" or where "the predicate

22   acts or offenses are part of an ongoing entity's regular way of doing business." *Id.*

23         The Ninth Circuit has distilled the Supreme Court's *H.J., Inc.* opinion into two

24   separate tests: "closed-ended" continuity and "open-ended" continuity. *Allwaste, Inc. v.*

25   *Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Closed-ended continuity is established by

26   showing that the predicate acts occurred over a substantial period of time; open-ended

27   continuity is established where the criminal conduct may not have occurred over a

28   substantial period of time but where it nevertheless threatened repetition or became a part

of the entity's regular way of doing business. *Id.* eBay's allegations meet both of these tests: the predicate acts of wire fraud were part of a course of conduct that continued for a period of over two and a half years (Compl. ¶ 44); the predicate acts were also carefully concealed to allow them to continue undetected for an indefinite period of time into the future (*Id.* ¶¶ 28-31) and were the Defendants' regular way of doing business with eBay (*Id.* ¶ 32). Importantly, open-ended continuity exists even where, as is the case here, the conduct is interrupted by law enforcement or by the commencement of the RICO action. *Allwaste, Inc.*, 65 F.3d at 1529.

Third, Defendants' argument that the alleged RICO scheme was of "short duration" is groundless. eBay's Complaint alleges that Defendants' scheme was ongoing over a period of more than two and a half years, that Defendants' fraudulent acts and omissions occurred multiple times over the course of that period, and that each act of fraud constituted a separate violation of 18 U.S.C. § 1343. (Compl. ¶¶ 44-46.) As explained in *SecureInfo Corp. v. Telos Corp.*: "A party may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time"; it is only "predicate acts extending over a few weeks or months and threatening no future criminal conduct [that] do not satisfy this requirement." 387 F. Supp. 2d 593, 614 (E.D. Va. 2005) (internal quotations omitted).

Here, eBay has alleged a pattern of continued racketeering activity by describing a scheme involving numerous acts of wire fraud that continued over a period of years and measures that threatened to allow it to continue indefinitely. eBay's allegations are a far cry from the limited schemes alleged in the cases that Defendants cite. *See Medallion Television Enter. v. SelecTV*, 833 F.2d 1360, 1364 (9th Cir. 1987) ("Medallion's allegations concern a single fraudulent inducement to enter a contract."); *McColm v. Restoration Group, Inc.*, 2007 WL 1470106, at *7 (E.D. Cal. May 18, 2007) ("[P]laintiff's allegations concern events arising from a single contract, and plaintiff's dissatisfaction with defendants' services performed (or not) thereunder."); *SecureInfo Corp.*, 387 F. Supp. 2d at 615 (defendants sought to fraudulently induce one victim during a four-month

period "for a narrow and specific purpose"); *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at *3 (N.D. Cal. Feb. 23, 2000) ("[T]he six predicate acts alleged by Royce . . . constitute little more than the steps necessary to consummate a single contract between two parties.").

eBay's allegations describe precisely the sort of complex, continuous and nefarious activity that civil RICO was designed to address. Because a RICO complaint may be based on fraud allegations involving a single victim and a single fraudulent scheme, and because eBay has alleged a pattern of continued racketeering activity, eBay has stated a claim against Defendants under RICO.

## C. This Action Is Properly Venued in the Northern District of California

The KFC Defendants request dismissal or transfer of the case based on what they claim is improper venue in the Northern District. However, the KFC Defendants do not provide any basis for such action, and their co-defendants, DPS and Hogan, have conceded that venue is proper. *See* Fed. R. Civ. P. 12(h)(1). Indeed, there are two independent statutory bases for venue in this District, and the forum selection clause cited by the KFC Defendants does not govern the claims in eBay's Complaint.

### 1. Venue Is Proper Under Either 28 U.S.C. § 1391(b)(1) or (b)(2)

There are two independent grounds for venue in the Northern District. First, venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to eBay's claims occurred in the Northern District. Second, venue is proper under 28 U.S.C. § 1391(b)(1) because several of the Defendants are subject to personal jurisdiction in this District and are therefore deemed to reside here under § 1391(c).

#### a. Venue Is Proper Under 28 U.S.C. § 1391(b)(2) Because a Substantial Part of the Events Giving Rise to the Claim Occurred in the Northern District

Under 28 U.S.C. § 1391(b)(2), venue is proper in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred . . . ." In the Ninth Circuit, § 1391(b)(2) is satisfied where, as here, the harm suffered from a defendant's actions occurred in the judicial district in question. *See Myers v. Bennett Law*

*Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). In *Myers*, the Court found that "a substantial part of the events giving rise to the claim occurred in Nevada" because "at least one of the 'harms' suffered by plaintiffs . . . was felt [there]." *Id.*; *see also Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1298-1300 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) (finding venue under § 1391(b)(2) in the district in which the plaintiff corporation had its principal place of business because the harm from trademark infringement was allegedly suffered there). Because the harm suffered by eBay as a result of Defendants' fraudulent scheme was felt in the Northern District, venue is proper here under § 1391(b)(2).

b.      **Venue Is Proper Under 28 U.S.C. § 1391(b)(1) Because the Corporate Defendants Are Subject to Personal Jurisdiction in the Northern District**

Section 1391(b)(1) provides a separate and independent basis for venue in the Northern District. That subsection provides for venue in a judicial district "where any defendant resides, if all defendants reside in the same State . . . ." In turn, § 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."[3] Here, at least two of the KFC Defendants—Thunderwood Holdings, Inc. ("THI") and Dunning Enterprise, Inc. ("DEI")—were corporations at the time eBay's suit was filed. (Compl. ¶¶ 2, 6, 8.) As discussed below, these corporate Defendants are subject to personal jurisdiction in the Northern District; accordingly, venue is proper.

The Ninth Circuit applies a three-part test for finding specific jurisdiction: (1) whether the "non-resident" defendants have purposefully directed their activities at the forum and have purposefully availed themselves of the privilege of conducting activities in the forum; (2) whether the plaintiff's claims arise out of and relate to the defendants'

---

[3] In a state like California that has more than one judicial district and in which a defendant corporation is subject to personal jurisdiction at the time an action is commenced, "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).

forum-related activities; and (3) whether the exercise of jurisdiction over the defendants comports with fair play and substantial justice, and is therefore reasonable. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Each of these factors is satisfied here.

First, eBay has alleged the "purposeful direction or availment" required for the exercise of specific jurisdiction. In the Ninth Circuit, "the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783 (1984)," which stands for the proposition that "purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Dole*, 303 F.3d at 1111 (internal quotations omitted). To satisfy this "effects" test, Defendants must allegedly have committed an intentional act expressly aimed at the forum, and which caused harm that they knew was likely to be suffered in the forum. *Id.*

The "effects" test is satisfied here because eBay alleges a scheme of intentional wrongful conduct aimed at fraudulently obtaining commissions from eBay, a company that Defendants know has its principal place of business in the Northern District. (*See, e.g.*, Compl. ¶¶ 24-31, 34, 43, 44, 54, 61.) *See Dole*, 303 F.3d at 1114 ("[W]hen a forum in which a plaintiff corporation has its principal place of business is [] the same forum toward which defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal jurisdiction."); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000) (the "effects" test is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state").

Second, the contacts constituting purposeful availment alleged by eBay are the same actions that give rise to the current suit. There can be no dispute given eBay's allegations that its claimed injuries would not have arisen "but for" Defendants' course of fraudulent conduct directed at eBay in the Northern District. *See Bancroft*, 223 F.3d at

1088.

Third, this Court's exercise of jurisdiction over the corporate Defendants comports with fair play and substantial justice and is therefore reasonable.  Once a court has decided that the first two prongs of the specific jurisdiction test have been satisfied, the defendant carries a "heavy burden" to present a "compelling case" that the presence of some other considerations would render jurisdiction unreasonable.  *Dole*, 303 F.3d at 1114-17. Defendants have not attempted to and cannot meet this burden, because nearly all of the factors considered by the Ninth Circuit in determining whether personal jurisdiction is reasonable weigh strongly in eBay's favor.  *See id.* (listing factors).  For example, Defendants have purposefully injected themselves into the Northern District, Defendants would not be burdened by litigating such a short distance away from their places of residency, much of the evidence and many witnesses will be located in the District, the harm from and investigation into Defendants' cookie stuffing scheme took place in the District, and the federal criminal investigation is based in the District.  The corporate Defendants are subject to personal jurisdiction in the Northern District and venue is therefore proper under § 1391(b)(1).

> ### 2. The Forum Selection Clause Cited by Defendants Does Not Govern Venue in This Action

Nor does the Publisher Service Agreement ("PSA") establish that the parties selected state courts as their forum for this suit.  eBay is not a party to the PSA and has never agreed to be bound by its terms.  Instead, the PSA is a contract between CJ and the Defendants and, by its explicit terms, applies only to "actions related to this Agreement." (*See* B. Dunning Mot. at 17, Ex. A at 1, 5.)  And the KFC Defendants provide no basis for their contention that eBay ever "required" them to enter into the PSA with CJ, as none of the Defendants claim that eBay demanded that they sign the "T&C Supplement," or that they ever actually signed that document.  (*See, e.g.*, KFC Mot. at 6 ("affiliates *such as KFC* were required to enter into . . . the 'T&C Supplement'") (emphasis added).) Moreover, eBay has alleged that agreements between parties to this action—the User

Agreements between eBay and the individual Defendants—were violated and provide for venue in the Northern District.  (Compl. ¶ 16.)

### 3. There Is No Justification for Transfer of Venue

Some of the Defendants make the alternative argument that the case should be transferred pursuant to 28 U.S.C. § 1404, which allows a District Court to transfer an action "for the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a); *see* B. Dunning Mot. at 17; T. Dunning Mot. at 17.  Although they bear the burden on this issue, *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001), Defendants present no persuasive grounds for transferring this action.

Defendants "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Yet Defendants utterly fail to make *any* showing that the many factors relevant to a transfer request weigh in their favor.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing the many factors relevant to the "case-by-case consideration of convenience and fairness" necessary to determine a motion for transfer under § 1404(a)); *Williams*, 157 F. Supp. 2d at 1105-06 (same).  Defendants do not even state that litigating in the Northern District would be inconvenient for them.  In light of Defendants' complete failure to meet their burden of proof, no transfer should be granted.[4]

### D. There Are No Grounds for the Court's Abstention

Although this Court has jurisdiction over eBay's claims and venue is proper, Defendants Todd Dunning and Dunning Enterprise, Inc., nevertheless contend that this

---

[4] In fact, even a cursory review of the circumstances presented by this case reveals that the Northern District is a convenient forum.  For example, the Northern District is eBay's chosen forum, the harm occurred here, the evidence of that harm is located here, eBay and the current and former eBay employees who may be witnesses to this action are located here, Defendants have substantial contacts with this forum through their participation in eBay's Affiliate Marketing Program, and not all Defendants have joined in contesting venue.  In addition, the relatively short distance separating the Northern District from Defendants' requested fora in Southern California weighs strongly against transfer. *See Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, 2007 WL 1152682, at *2 (N.D. Cal. Apr. 18, 2007).

Court should "abstain from hearing this lawsuit." (T. Dunning Mot. at 18.)  However, Defendants fail to provide any cogent justification for abstention, which is considered "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

Defendants have cited no authority that would place this case within one of the "few well-defined areas" where abstention is appropriate.[5]  *American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).  Their argument appears to be based solely on the mistaken contention that there are "dangers of conflicting or inconsistent rulings or awards" presented by the fact that another lawsuit is currently pending against some of the Defendants in Orange County Superior Court.  (*See* T. Dunning Mot. at 18.)  But the other lawsuit referenced by Defendants—which is near trial—is wholly distinct from and unrelated to eBay's action against these Defendants, and the prospect of inconsistent awards is fanciful at best.

The referenced suit was brought by CJ against only some of the Defendants here—Thunderwood Holdings, Inc., Kessler's Flying Circus, Todd Dunning and Brian Dunning (the "CJ Defendants")—for breach of contract to recover undeserved payments made by CJ to those defendants.  (*See* B. Dunning Mot., Ex. 1 ("CJ Compl.").)  eBay is not a party to CJ's action or even to the contract sued upon by CJ.  In fact, the contract at issue in the CJ suit was not entered into until April 14, 2005, well into the period of eBay's damages.  (CJ Compl. ¶ 12.)  While CJ's action is based on a breach of contract, eBay's suit is based on fraud theories and federal statutory causes of action.  DPS and Hogan are not Defendants to the CJ action.  The only commonality between the two actions is that CJ's

---

[5] Although most of the cases cited by Defendants deal with *Younger* abstention, which seeks to avoid federal interference with state court civil proceedings (T. Dunning Mot. at 18-19), Defendants do not even attempt to argue that the present case meets any of the requirements for invoking that doctrine, including the requirement that the proceedings "implicate important state interests," *M&A Gabaee v. Cmty. Redevelopment Agency*, 419 F.3d 1036, 1039 (9th Cir. 2005), a requirement highly unlikely to be met in a private dispute concerning fraud in a business relationship.

claim for contract breach appears to be based at least partially on cookie stuffing by the CJ Defendants. (*See* CJ Compl. ¶ 16 (alleging that the CJ Defendants "further breached the Agreement by, *inter alia*, . . . forcing cookies").)

However, the two actions seek to remedy entirely distinct wrongs, and the compensatory damages sought by eBay and CJ are necessarily mutually exclusive of one another. This is because the compensatory damages sought by CJ relate exclusively to funds that CJ paid to the CJ Defendants *but for which it was not reimbursed by eBay*. (*See* CJ Compl. ¶ 17.) eBay cannot seek to recover funds it never paid to CJ for disbursement to Defendants. Conversely, CJ cannot seek to recover funds it paid to Defendants, but for which it was reimbursed by eBay. It is therefore logically impossible for there to be any overlap between the relief sought in the two actions, and the Defendants' claim that they "are at risk for what is in effect double liability . . . for liability and damages based on the same facts and circumstances" is entirely without basis. (T. Dunning Mot. at 18.) Moreover, discovery in CJ's action is already well underway and the case is set for trial in less than four months—on March 9, 2009. Under these circumstances, there is no justification whatsoever for this Court to require eBay to proceed in a forum not of its choosing.

## IV.   CONCLUSION

For the reasons set forth above, eBay has stated claims for relief against the KFC Defendants under the CFAA, RICO, California Penal Code § 502 and common law fraud, and eBay's action is properly venued in this District. Therefore, each of the KFC Defendants' Motions to Dismiss should be denied in its entirety.

DATED: November 21, 2008

DAVID R. EBERHART
SHARON M. BUNZEL
COLLEEN M. KENNEDY
O'MELVENY & MYERS LLP


By: /s/ David R. Eberhart
      DAVID R. EBERHART
Attorneys for Plaintiff eBAY INC.