```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
       EBAY, INC.,                  )  CV-08-4052-JF
 5                                  )
                       PLAINTIFF,   )  SAN JOSE, CALIFORNIA
 6                                  )
                 VS.                )
 7                                  )  DECEMBER 12, 2008
       DIGITAL POINT SOLUTIONS,     )
 8     INC. ET AL,                  )
                                    )  PAGES 1-38
 9                     DEFENDANT.   )
       _____

10

11              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMY FOGEL
12             UNITED STATES DISTRICT JUDGE

13

14     A P P E A R A N C E S:

15     FOR THE PLAINTIFF:  O'MELVENY & MYERS LLP
       EBAY                BY:  DAVID EBERHART
16                              SHARON BUNZEL
                           TWO EMBARCADERO CTR, 28TH FL
17                         SAN FRANCISCO, CA 94111

18

19     FOR THE DEFENDANT:  COAST LAW GROUP, LLP
       DIGITAL POINT       BY:  ROSS CAMPBELL
20     SOLUTIONS, HOGAN    169 SAXONY RD, STE204
                           ENCINITAS, CA 92024
21

22     ALSO PRESENT:       ADAM SAND

23
            (APPEARANCES CONTINUED ON THE NEXT PAGE)
24

25     OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR,
                                CERTIFICATE NUMBER 13185
```

1

```
 1    FOR THE DEFENDANT:  RUS, MILIBAND & SMITH, APC
      BRIAN DUNNING,      BY:   LEO PRESIADO
 2    BRIANDUNNING.COM,   2211 MICHELSON DR, 7TH FL
      THUNDERWOOD         IRVINE, CA 92612
 3

 4

 5    FOR THE DEFENDANT:  FREELAND COOPER & FOREMAN, LLP
      TODD DUNNING,       BY:   STEWART FOREMAN
 6    DUNNING ENTERPRISE  150 SPEAR ST.,STE 1800
                          SAN FRANCISCO, CA 94105
 7

 8

 9    FOR THE DEFENDANT:  LAW OFFICE OF PATRICK MCCLELLAN
      KESSLER'S FLYING    BY:   PATRICK MCCLELLAN
10    CIRCUS              2211 MICHELSON DR., #700
                          IRVINE, CA 92612
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA          DECEMBER 12, 2008
2                 P R O C E E D I N G S
3              (WHEREUPON, COURT CONVENED AND THE
4    FOLLOWING PROCEEDINGS WERE HELD:)
5              THE COURT:  OKAY.  WE HAVE ONE OTHER
6    MATTER FOR ARGUMENT, AND THAT'S EBAY VERSUS DIGITAL
7    POINT SOLUTION.
8              OKAY.  COULD I GET APPEARANCES, PLEASE.
9              MR. EBERHART:  GOOD MORNING, YOUR HONOR.
10   DAVID EBERHART ON BEHALF OF EBAY, ALONG WITH MY
11   PARTNER SHARON BUNZEL AND CLIENT REPRESENTATIVE
12   ADAM SAND.
13             THE COURT:  GOOD MORNING.
14             MR. PRESIADO:  GOOD MORNING, YOUR HONOR.
15   LEO PRESIADO ON BEHALF OF DEFENDANTS BRIAN DUNNING,
16   BRIANDUNNING.COM, AND THUNDERWOOD HOLDINGS, INC.
17             THE COURT:  OKAY.  I'M SORRY, GO AHEAD.
18             MR. FOREMAN:  GOOD MORNING, YOUR HONOR.
19   STEWART FOREMAN ON BEHALF OF DEFENDANTS
20   TODD DUNNING AND DUNNING ENTERPRISE, INC.
21             MR. MCCLELLAN:  GOOD MORNING, YOUR HONOR.
22   PATRICK MCCLELLAN ON BEHALF OF KESSLER'S FLYING
23   CIRCUS.
24             MR. CAMPBELL:  GOOD MORNING, YOUR HONOR.
25   ROSS CAMPBELL --
```

```
 1              THE COURT:  JUST A MOMENT.

 2              COUNSEL, IF YOU COULD DO THAT OUTSIDE,

 3    THANK YOU.

 4              MR. CAMPBELL:  GOOD MORNING, YOUR HONOR.

 5    ROSS CAMPBELL ON BEHALF OF DEFENDANTS SHAWN HOGAN

 6    AND DIGITAL POINT SOLUTIONS, INC.

 7              THE COURT:  GOOD MORNING, EVERYONE.

 8    PLEASE, YOU COULD HAVE A SEAT IF YOU LIKE.

 9              I WILL BASICALLY TO CUT TO THE CHASE.  I

10    DON'T THINK THAT THERE'S A PROBLEM WITH THIS

11    COMPLAINT.  I THINK EBAY COULD HAVE, PERHAPS,

12    PROVIDED A LITTLE MORE SPECIFICITY WITH REGARD TO

13    DAMAGES, BUT I DON'T THINK IT'S REQUIRED TO.

14              I THINK THE ISSUE IS WHETHER THE STATUTE,

15    THE CFAA, COVERS A THIRD-PARTY COMPUTER.  THERE'S

16    CASE LAW THAT SUPPORTS EBAY ON THAT.  I THINK

17    THERE'S A FACTUAL ISSUE AS TO WHETHER THE ACCESS

18    WAS AUTHORIZED OR NOT.  THE AOL CASE TALKS ABOUT

19    VIOLATIONS OF USER AGREEMENTS BEING UNAUTHORIZED

20    ACCESS; THAT'S ALLEGED.

21              THE -- WITH REGARD TO RICO, THE QUESTION

22    OF WHEN THERE WAS A CORPORATE ENTITY IN THE GRAND

23    SCHEME OF THINGS, THERE'S A FACTUAL ISSUE AS TO

24    THAT.  I THINK THE RICO CLAIM, ALTHOUGH I'M NOT A

25    GREAT FAN OF RICO CLAIMS, AND I DON'T THINK ANY
```

```
1     TRIAL JUDGES ARE, BUT I THINK IN THIS ONE, THE
2     ELEMENTS HAVE BEEN ADEQUATELY ASSERTED.
3               AND THEN WITH REGARD TO THE CASE
4     MANAGEMENT QUESTIONS, THE FORUM SELECTION CAUSE IN
5     THE PENDING CASE IN SOUTHERN CALIFORNIA, EBAY IS
6     NOT A PARTY IN THOSE CASES.  SO WHILE THERE MIGHT
7     BE SOME EFFICIENCY IN THE COORDINATION -- AND I
8     DON'T BELIEVE VENUE IN SOUTHERN CALIFORNIA IS
9     REQUIRED OR THAT THE COURT OUGHT TO STAY THIS CASE
10    JUST BECAUSE THERE'S SOMETHING GOING ON THERE.
11              SO THAT'S MY VIEW.  LET ME ASK THE MOVING
12    PARTIES IF THERE'S A PARTICULAR THING THEY WANT TO
13    HIGHLIGHT BEYOND WHAT'S IN THE PAPERS, AND I WILL
14    BE HAPPY TO TALK ABOUT YOU ABOUT IT IF YOU HAVE.
15              GO AHEAD.
16              MR. PRESIADO:  YOUR HONOR, IN
17    CONSIDERATION OF THE COURT'S TIME, AND BY WE I MEAN
18    MYSELF AND MR. FOREMAN, HAVE SPLIT UP THE ARGUMENT
19    MADE BY THE DUNNING DEFENDANTS AND ONLY DUNNING
20    DEFENDANTS, WE ARE NOT AFFILIATED WITH THE HOGAN
21    DEFENDANTS.
22              SO I WOULD LIKE TO DISCUSS THE VENUE IN
23    PARTICULAR WHICH I SEE AS A THRESHOLD ISSUE, THE
24    ISSUE OF THE FORUM SELECTION CLAUSE.  IF THAT'S
25    OKAY WITH THE COURT TO START.
```

THE COURT: YOU CAN DO WHATEVER YOU LIKE.

HOW DOES -- HOW IS EBAY BOUND BY THAT
SINCE THEY ARE NOT A PARTY TO THAT PARTICULAR
AGREEMENT?

MR. PRESIADO: WELL, YOUR HONOR, I DON'T
THINK IT CAN BE REASONABLY DISPUTED THAT THE
PARTIES ARE ONLY RELATED THROUGH THAT AGREEMENT.
THE ONLY REASON THAT EBAY WAS MAKING PAYMENTS TO
OUR CLIENTS, AND THOSE PAYMENTS THEY NOW
CHARACTERIZE AS THE DAMAGES THEY SUSTAINED, THE
ONLY REASON THEY WERE MAKING THOSE PAYMENTS WAS
BECAUSE OF OUR CLIENTS' PARTICIPATION IN THE EBAY
AFFILIATED PROGRAM THROUGH THAT PSA, THE PUBLISHED
SERVICE AGREEMENT.

SO --

THE COURT: SO YOU ARE SAYING EBAY
CONTRACTUALLY AGREED TO HAVE ANY DISPUTES OF THIS
KIND RESOLVED IN THE CENTRAL DISTRICT OF
CALIFORNIA; DID EBAY ACTUALLY AGREE TO THAT?

MR. PRESIADO: WELL, EBAY DOESN'T HAVE TO
BE A SIGNATORY TO THAT AGREEMENT.

THE COURT: THEY ARE A THIRD-PARTY
BENEFICIARY.

MR. PRESIADO: BUT BEYOND THAT, IF YOU
LOOK AT THE CASE LAW PROVIDED, IT'S ACTUALLY THE

STANDARD THAT IS CLOSELY RELATED TO THAT AGREEMENT.

THEY ARE A THIRD-PARTY BENEFICIARY, AND EVEN THAT

SAYS FOR THEM TO BE BOUND BY THAT FORUM SELECTION

CLAUSE, BUT THE STANDARD IS ACTUALLY LOWER THAN

THAT, IT'S CLOSELY RELATED.

AND NOT ONLY THAT, IF YOU LOOK AT THE T&C

SUPPLEMENT, THAT SUBSUMES -- AND THAT'S AN EBAY

DOCUMENT, THAT'S NOT CONTESTED -- THAT SUBSUMES THE

PSA.  AND IN FACT, THERE'S LANGUAGE IN THAT STATING

THAT SETTING UP AND ESTABLISHING THE AGENCY

RELATIONSHIP BETWEEN EBAY AND COMMISSION JUNCTION,

IT STATES THAT THE AFFILIATED PROGRAM IS MONITORED

BY EBAY THROUGH COMMISSION JUNCTION BASED ON THE

PSA.

THE COURT:  ALL RIGHT.

SO IN OTHER WORDS, IF I CAN SAY BACK TO

YOU WHAT I'M HEARING, TO THE EXTENT THAT EBAY IS

CLAIMING THAT THEY HAVE A CLAIM UNDER THE CFAA

BECAUSE THE TERMS AND CONDITIONS OF THE USER

AGREEMENT PRECLUDED THE ACTIVITY THAT OCCURRED

HERE.  THOSE TERMS AND CONDITIONS SUBSUME THE

AGREEMENT THAT CONTAINS THE FORUM SELECTION CLAUSE.

MR. PRESIADO:  IT'S EVEN BROADER THAN

THAT, YOUR HONOR, BECAUSE THE PSA HAS RELATED TO

LANGUAGE BECAUSE, BASICALLY, ANY DISPUTE RELATED TO

1    THE PSA FALLS INTO THIS VENUE --

2              THE COURT:  RIGHT.  WELL THAT'S

3    NECESSARILY A DISPUTE BETWEEN THE PARTIES TO THE

4    PSA.

5              SO EBAY IS NOT A PARTY, BUT YOU ARE

6    SAYING THEY ARE, NONETHELESS, BOUND BY IT BECAUSE

7    THEY HAVE, IN EFFECT, INCORPORATED IT INTO THE

8    TERMS AND CONDITIONS.

9              MR. PRESIADO:  RIGHT.

10             AND THEY ARE CLOSELY RELATED AND THEY ARE

11   THIRD-PARTY BENEFICIARY.  BUT ARGUMENT CAN ALSO BE

12   MADE THAT THEY ARE, IN FACT, PARTY TO THAT PSA

13   BECAUSE OF THE AGENCY RELATIONSHIP WITH CJI,

14   COMMISSION JUNCTION, AND THAT'S APPARENT FROM THE

15   PLEADINGS THEMSELVES.

16             IF YOU LOOK AT PARAGRAPH -- THE EBAY

17   COMPLAINT AT PARAGRAPH 19, TOP OF PAGE 5, THE LAST

18   SENTENCE, "EBAY AND/OR COMMISSION JUNCTION TRACKS

19   THE INFORMATION USING INFORMATION PLACED ON THE NEW

20   USER'S BROWSER."

21             THAT'S THE WHOLE CRUX OF THE ARGUMENT.

22   THE TRACKING IS DONE BY THE PLACING OF COOKIES.

23   ALSO, IF YOU GO TO PARAGRAPH 12, THEY ALLEGE -- I'M

24   SORRY, PARAGRAPH 20 OF THE FIRST AMENDED COMPLAINT.

25   "EBAY USED THE SERVICES OF COMMISSION JUNCTION IN

ADMINISTERING THE AFFILIATED MARKETING PROGRAM."
THEY GO ON TO ALLEGE, "CJ WAS RESPONSIBLE FOR,
AMONG OTHER THINGS, RECRUITING AFFILIATES
TRACKING -- I'M SORRY -- "TRACKING AFFILIATE
TRAFFIC, MONITORING COMPLIANCE WITH AFFILIATES,
PREVENTING AND DETECTING FRAUDULENT ACTIVITY, AND
PAYING AFFILIATES USING FUNDS PERMITTED BY EBAY."
SO THESE ALLEGATIONS INFER THAT THERE WAS A DIRECT
AGENCY RELATIONSHIP BETWEEN THE TWO.

NOW, THE STANDARD WITH RESPECT TO VENUE
IS THAT THE BURDEN IS ON THE PLAINTIFF TO ESTABLISH
PROPER VENUE; AND ALSO, THE BURDEN IS ON THE
PLAINTIFF TO ESTABLISH OR TO DEFUSE THE PRESUMED
VALIDITY OF A FORUM SELECTION CLAUSE.

THE COURT:  THE ARGUMENT HERE ISN'T THAT
THE FORUM SELECTION CLAUSE ISN'T VALID, THEY ARE
SAYING THEY ARE NOT A PART OF IT.  I DON'T THINK
THEY ARE ATTACKING ITS VALIDITY.

MR. PRESIADO:  NONETHELESS, IT IS THEIR
BURDEN TO ESTABLISH PROPER VENUE.

THE COURT:  IF THAT FORUM SELECTION
CLAUSE DIDN'T EXIST THIS WOULD NOT BE AN IMPROPER
VENUE.  SO IT'S A DEFENSE, IF YOU WILL, TO THEIR
ASSERTION OF VENUE.

AND I AGREE THAT -- ASSUMING THEY WERE A

PARTY TO THAT CLAUSE, THEN IT WOULD BE THEIR BURDEN

TO SHOW IT WASN'T VALID AND IT SHOULDN'T BE

ENFORCED.  BUT THE FIGHT IS ABOUT WHETHER THEY ARE

A PARTY, NOT WHETHER IT'S VALID.

MR. PRESIADO:  DEFENDANTS HAVE ASKED THE

COURT TO TAKE JUDICIAL NOTICE OF THE COMMISSION

JUNCTION COMPLAINT WHICH ATTACHES THE PSA.  AND IN

THAT -- AND I DON'T WANT TO REHASH ALL MY

ARGUMENTS, BUT THERE IS -- THE VENUE SELECTION

CLAUSE DOES APPLY TO EBAY, JUST TO SUMMARIZE,

EITHER AS THE DIRECT AGENT --

THE COURT:  I SEE WHAT YOU ARE GETTING

AT.  I'M GOING TO ASK THEM TO RESPOND.

THANK YOU.

MR. FOREMAN?

MR. FOREMAN:  WOULD YOU LIKE ME TO

ADDRESS THOSE OTHERS NOW?

THE COURT:  NO, NO.  ANYTHING ELSE YOU

WANT TO ADD?

MR. FOREMAN:  JUST AN ADDITIONAL BRIEF

COMMENT ON VENUE.

EVEN ASIDE FROM THE AGREEMENT ARGUMENT,

THE ONLY THING THAT OCCURS IN THIS DISTRICT IS

EBAY'S HEADQUARTERS.  COMMISSION JUNCTION IS IN THE

CENTRAL JUNCTION.  EBAY PAYS COMMISSION JUNCTION IN

THE CENTRAL DISTRICT WHICH THEN PAYS OUR CLIENTS
WHICH ARE IN THE CENTRAL DISTRICT --

THE COURT:  THAT'S A 1404 ARGUMENT.

MR. FOREMAN:  WHAT I PRIMARILY WANTED TO
ADDRESS, YOUR HONOR, IS THE SUBSTANTIVE POINT ABOUT
THE CFAA AND SECTION 502 CLAIMS.

AND WITH ALL DUE RESPECT TO THE COURT,
YOUR INITIAL COMMENT REFERENCED THE USER AGREEMENT
IN THE AOL CASE.  AND I'M NOT EXACTLY -- I'M JUST
INFERRING WHAT YOU MIGHT MEAN BY THAT REFERENCE,
BUT I THINK IT'S IMPORTANT TO UNDERSTAND THAT THIS
CASE IS NOT ABOUT THE USER AGREEMENT.  THE USER
AGREEMENT IS ONLY ALLEGED IN THIS FIRST AMENDED
COMPLAINT IN ORDER TO CREATE THE ALLEGED VENUE
HERE.

THE USER AGREEMENT, WHICH BY THE WAY THE
PLAINTIFFS DON'T ATTACH TO THEIR COMPLAINT BUT
AGAIN WE ASKED FOR JUDICIAL NOTICE, WE PRINTED OFF
A COPY, THAT'S THE AGREEMENT THAT EVERY ONE OF US
IN THIS COURTROOM WHO HAPPENS TO BE REGISTERED AS
EBAY POTENTIAL BUYERS SIGN AS BUYERS.

THE COURT:  THEY OFFERED THAT -- THEY ARE
NOT TRYING TO ENFORCE THE USER AGREEMENT AS A
CONTRACT.

YOU ARGUE THAT THEY HAVEN'T MET THE

ELEMENT OF UNAUTHORIZED ACCESS, AND THEY ARE SAYING

IT VIOLATES THE USER AGREEMENT TO STUFF COOKIES;

THAT'S THEIR ARGUMENT.

          MR. FOREMAN:  WELL, WITH ALL DUE RESPECT,

YOUR HONOR, THE SUBSTANTIVE ALLEGATIONS IN THE

FIRST AMENDED COMPLAINT, AT LEAST AS I READ THEM,

DON'T TALK ABOUT US VIOLATING THE USER AGREEMENT.

THEY TALK ABOUT US VIOLATING THE AFFILIATE

MARKETING PROGRAM WHICH IS NOT PART OF THE USER

AGREEMENT.

          AND THE ALLEGATIONS ABOUT THE COOKIE

STUFFING PROGRAM HAVE TO DO WITH A PROGRAM THAT IS

COMPLETELY SEPARATE FROM BEING A USER OF EBAY IN

THE SENSE OF GOING ON THEIR TO PURCHASE THINGS.

          IT'S THE BEHIND THE -- WHAT WE WERE

ENGAGED IN AS AFFILIATES TO THEIR MARKETING PROGRAM

THROUGH COMMISSION JUNCTION IS THE BEHIND THE

SCENES ACTIVITY TO TRY TO GET PEOPLE AS USERS OF

EBAY.

          SO WHAT I'M TRYING TO POINT OUT, YOUR

HONOR, IS THAT THE COOKIE STUFFING IS UNRELATED TO

THE USER AGREEMENT.  IF THE ACCESS ISSUE FOR THE

CFAA IN 502 HAS TO BE LOOKED AT IN THE CONTEXT OF

THE ACTIVITY THAT THE PARTY WAS ALLEGEDLY ENGAGED

IN, WHICH IS THE AFFILIATE MARKETING PROGRAM, AS

1    THEY CLAIM IN THE FIRST AMENDED COMPLAINT.

2              AND UNDER THAT PROGRAM, THEY ADMIT -- AND

3    FIRST OF ALL, THEY ADMIT IN THEIR FIRST AMENDED

4    COMPLAINT THAT OUR CLIENTS NEVER ACCESSED THEIR

5    COMPUTERS AS AFFILIATES.  THAT JUST DOESN'T HAPPEN;

6    SO THAT'S NOT EVEN A DISPUTE.

7              THE ONLY THING THEY SAY, AND THEY RAISE

8    THIS NOT IN THEIR PLEADINGS BUT AS AN ARGUMENT IN

9    THEIR OPPOSITION BRIEF, WHICH THAT IN AND OF ITSELF

10   REQUIRES AN AMENDMENT TO THE COMPLAINT, BUT WHAT

11   THEY SAY IS, OH, THE POTENTIAL USER, THE INTERNET

12   USER WAS AN UNWITTING AGENT FOR OUR CLIENTS UNDER

13   THE AFFILIATE MARKETING PROGRAM, NOT UNDER THE USER

14   AGREEMENT.

15             THE PROBLEM WITH THAT ARGUMENT, YOUR

16   HONOR, IS THAT EVERY CASE THAT TALKS ABOUT A

17   PRINCIPAL AGENCY RELATIONSHIP POTENTIALLY GIVING

18   RISE TO A VIOLATION UNDER THE CFAA, IT'S CLEAR THAT

19   THERE IS A CLEAR AGENCY PRINCIPAL RELATIONSHIP AND

20   THAT RELATIONSHIP WAS FORMED FOR THE PURPOSE OF

21   IMPROPER ACCESS.

22             THAT'S NOT WHAT OCCURS HERE AND THEY

23   CERTAINLY DON'T ALLEGE IT.  HERE, YOU'VE GOT, BY

24   THEIR OWN WORDS IN THEIR ARGUMENT, UNWITTING USERS

25   WHO HAVE A COOKIE THAT THEN VOLUNTARILY GO TO EBAY.

1          THEN THERE'S THE ISSUE OF THE

2     UNAUTHORIZED PART.  WELL, I THINK IT'S VERY CLEAR

3     FROM THE ARGUMENT, AND AGAIN IT'S NOT EVEN ALLEGED

4     IN THE COMPLAINT, BUT IN THE ARGUMENT THE

5     UNAUTHORIZED ASPECT IS ONLY DETERMINED AFTER THE

6     FACT.  AND IT'S CLEAR UNDER THE CASES,

7     SHAMROCK FOODS AND OTHERS, THAT YOU CAN ONLY HAVE

8     UNAUTHORIZED ACCESS AT THE TIME OF THE ACCESS.

9          THE SHAMROCK CASE AND OTHERS CLEARLY SAY

10    IF YOU'VE GOT AUTHORIZED ACCESS AND YOU LATER USE

11    THAT ACCESS FOR IMPROPER PURPOSE, THAT MAY BE A

12    VIOLATION OF SOME THINGS BUT NOT CFAA.

13         THE COURT:  THAT'S WHERE I THINK, AND I

14    WILL CERTAINLY LOOK AND MAKE SURE I'M NOT CONFUSING

15    APPLES AND ORANGES, BUT I THINK THAT'S WHERE THE

16    USER AGREEMENT IS RELEVANT BECAUSE IT'S NEVER

17    AUTHORIZED TO ACCESS THE COMPUTERS FOR AN IMPROPER

18    PURPOSE.  IT'S NOT AUTHORIZED TO THEM TO USE THEM

19    FOR A COOKIE STUFFING SCHEME, FOR EXAMPLE.

20         THAT'S WHAT I UNDERSTOOD THEM TO BE

21    ARGUING WAS THAT IT IS UNAUTHORIZED AT THE TIME

22    THAT IT OCCURS BECAUSE USERS AREN'T ALLOWED TO DO

23    THAT.

24         MR. FOREMAN:  WELL --

25         THE COURT:  OR USERS AREN'T ALLOWED TO BE

USING IT.

MR. FOREMAN:  BUT WE'RE NOT THE USER.

THE COURT:  BUT YOU ARE USING THE USERS,
IS WHAT THEY ARE SAYING.  AND THAT IS, IN ITSELF,
UNAUTHORIZED ACCESS.

MR. FOREMAN:  WELL, YOUR HONOR, IF I MAY
JUST BACK UP SO THAT WE ARE, AT LEAST I AM
SATISFIED ON BEHALF OF MY CLIENT THAT WE KIND OF
UNDERSTAND WHAT THEY'VE ALLEGED IN TERMS OF FACTUAL
SEQUENCE.

WE HAVE A PERSON OUT IN THE INTERNET, THE
USER, WHO HAS ON THEIR SCREEN AT SOME POINT THROUGH
SOME OTHER PLACE THEY'VE BEEN ON THE INTERNET,
WINDS UP WITH AN ADD FOR EBAY THAT'S BEEN PUT THERE
BY OUR CLIENTS.

AND IN THAT PROCESS OF VIEWING THAT AD,
THAT USER WINDS UP WITH A KESSLER COOKIE ON THEIR
COMPUTER.  NOBODY SAYS THERE'S ANYTHING WRONG WITH
THAT; THAT HAPPENS TO ALL OF US ALL THE TIME.

THEN THAT USER GOES TO EBAY, MAYBE IT'S
JOE THE AUTO MECHANIC IN BALTIMORE, AND HE WANTS TO
BUY NEW SHOCK ABSORBERS CHEAPER THAN HIS LOCAL
DISTRIBUTOR.  HE'S NEVER USED EBAY BEFORE; HE'S NOT
YET EVEN SIGNED THE USER AGREEMENT.  HE SURFS EBAY,
BUT IN THE PROCESS HE HAS PICKED UP AN EBAY COOKIE

FROM EBAY.

LET'S SAY HE FINDS HIS SHOCK ABSORBERS
THAT ARE CHEAPER AND HAS TO BUY THEM.  HE THEN HAS
TO REGISTER AND HE SIGNS A USER AGREEMENT AT THAT
TIME.  HE SIGNS IT; WE DON'T.  HE SIGNS IT; HE BUYS
SOMETHING.

THROUGH THE WONDERS OF THE INTERNET,
COMMISSION JUNCTION DOWN IN THE CENTRAL DISTRICT,
GETS A NOTICE SAYING THERE'S A MATCH; THAT'S A
KESSLER'S COOKIE AND AN EBAY COOKIE; WE HAVE A NEW
USER REGISTERED ON EBAY THAT'S BOUGHT SOMETHING,
KESSLER IS OWED COMMISSION.  THAT'S HOW THIS WORKS.

SO THE USER AGREEMENT THAT THEY'VE
ALLEGED TO TRY TO CREATE THE, YOU KNOW,
JURISDICTION HERE, IS THE USER AGREEMENT OF OUR
INDIVIDUAL CLIENTS WHICH HAS NOTHING TO DO WITH THE
TRANSACTION THAT I JUST DESCRIBED WITH OUR JOE, THE
AUTO SHOP.

SO THAT'S WHY IT HAS NOTHING TO DO WITH
CFAA.  AND WHAT I JUST DESCRIBED, AND I DON'T THINK
ANYBODY SERIOUSLY DISPUTES THESE FACTS, THE USER
AGREEMENT THAT JOE SIGNS CAN'T CREATE LIABILITY FOR
US UNDER THE CFAA.

WHAT THEY ALLEGE IS THAT JOE, WHEN HE
ORIGINALLY SAW OUR AD, HE DIDN'T CLICK ON SOMETHING

TO GET HIS COOKIE.  THAT'S THEIR PROBLEM.  THAT'S
WHAT THEY'RE FUNDAMENTALLY COMPLAINING ABOUT, THAT
HE GOT A COOKIE SOMEHOW.

THEY SAY HE WAS SUPPOSED TO CLICK ON
SOMETHING.  AND THEY SAY SOME PEOPLE DID, WHICH
PRESUMABLY IS OKAY, AND SOME PEOPLE DIDN'T, WHICH
THEY COMPLAIN ABOUT.  BUT THEY DON'T EVEN ALLEGE
HOW TO DISTINGUISH WHETHER JOE CLICKED OR DIDN'T
CLICK WHEN HE GOT HIS COOKIE.

WHAT THEY SAY IS IF HE'S AN UNCLICKED
PERSON, HE'S THEN AN INVOLUNTARY AGENT OF OUR
CLIENTS AND THAT AFTER HE BUYS SOMETHING AND AFTER
THEY PAY A COMMISSION TO COMMISSION JUNCTION THAT
EVENTUALLY COMES TO US, HE RETROACTIVELY BECOMES
UNAUTHORIZED TO HAVE ACCESSED EBAY'S COMPUTER.

THE COURT:  WELL, BUT HE'S CARRYING --
AND THIS IS GOING TO BE A BAD ANALOGY, BUT HE'S
CARRYING THE BUG OR VIRUS AT THE TIME HE REGISTERS;
THE COOKIE IS ALREADY THERE.

MR. FOREMAN:  AGREED.

THE COURT:  SO --

MR. FOREMAN:  I'M SORRY, YOUR HONOR, IF I
MAY INTERRUPT YOU.  AND I KNOW I DO THAT AT GREAT
RISK --

THE COURT:  COUNSEL, NOTHING IS GOING TO

HAPPEN TO YOU, I ASSURE YOU.

MR. FOREMAN:  THAT'S A KEY POINT.  THAT'S
EXACTLY RIGHT; HE GETS A COOKIE.  WE ALL AGREE HE
GETS A COOKIE.  THE KEY POINT IS THEY SAY SOME OF
THEM GET A COOKIE WITHOUT CLICKING ON SOMETHING.

NOW, WHERE IN THEIR FIRST AMENDED
COMPLAINT DO THEY SAY THAT THAT'S A REQUIREMENT OF
ANYTHING?  AND THAT'S THE HEART OF THE PROBLEM ALSO
WITH THEIR RICO CLAIM.  WHERE DID OUR CLIENTS EVER
ALLEGE TO HAVE PROMISED OR REPRESENTED THAT ONLY
CLICKED USERS WOULD GO TO EBAY TO EARN US A
COMMISSION?  IT'S NOWHERE.

AND THAT'S WHY THIS COMPLAINT FAILS UNDER
THE COMPUTER FRAUD AND ABUSE ACT, IN SECTION 502,
AND RICO, AND ULTIMATELY ON WHY YOU DON'T HAVE
JURISDICTION, YOUR HONOR.

THE COURT:  THERE'S MISSING LINKS.  OKAY
THANK YOU VERY MUCH.

MR. FOREMAN:  THANK YOU FOR YOUR
PATIENCE, YOUR HONOR.

THE COURT:  ANYTHING ELSE, COUNSEL,
BEFORE I HEAR FROM EBAY?

MR. CAMPBELL:  THANK YOU, YOUR HONOR.

WITH RESPECT TO MR. HOGAN AND DIGITAL
POINT SOLUTIONS, INC., AS A PRELIMINARY MATTER IT

WOULD HAVE BEEN REFERRED AS THE KFC DEFENDANTS WHO
BOTH MAKE EXCELLENT POINTS WITH RESPECT TO VENUE
AND SUBSTANTIVE DEFECTS IN FEDERAL CAUSES OF
ACTION.

WE'RE LOOKING AT A MORE FUNDAMENTAL FLAW
WITH RESPECT TO MY CLIENT; THAT IS, I DID HEAR THE
COURT ADDRESS, IN ITS TENTATIVE, ONE ISSUE WITH
RESPECT TO THERE'S A QUESTION OF FACT AS TO THE
EXISTENCE OF DIGITAL POINT SOLUTIONS, INC. WHAT
THAT COMES DOWN TO IS REALLY THE SCOPE OF OUR
REQUEST FOR JUDICIAL NOTICE AND THE EFFECT OF THE
LEGAL DATE DIGITAL POINT SOLUTIONS, INC. WAS
INCORPORATED.

AND IF YOU STOP AND THINK ABOUT THAT FOR
A MOMENT, THE PLAINTIFF IS LOOKING TO RECOVER FOR A
THREE-YEAR PERIOD OF FRAUD BEFORE THAT LEGAL
INCORPORATION DATE. THAT'S A REMARKABLE COMPONENT
OF THEIR ATTEMPT TO RECOVER. AND CRITICAL TO THAT,
THEIR ALLEGATION IS THAT YOU JUST HAVE TO ACCEPT
THAT WE'VE CLAIMED THE CORPORATION EXISTED AT ALL
RELEVANT TIMES AND DID SOME WRONG DOING.

BUT AT A MINIMUM, I THINK TO ACCESS THAT
REMARKABLE AMOUNT OF RECOVERY FOR THAT THREE-YEAR
PERIOD, THEY WOULD HAVE TO ALLEGE SOME FACTUAL
BASIS FOR A THEORY OF PRE-INCORPORATION LIABILITY.

1     THE COURT:  THERE IS SOME TIME IN THE

2   RELEVANT PERIOD THAT'S AFTER INCORPORATION,

3   CORRECT?

4        MR. CAMPBELL:  THERE IS A BRIEF SIX-WEEK

5   PERIOD AT THE END OF THE THREE AND A HALF YEARS.

6        THE COURT:  AND ON A 12(B)(6) MOTION, THE

7   COURT DOESN'T PARSE WITH THAT CLOSELY.

8        MR. CAMPBELL:  WELL, THERE'S STILL NO

9   NEXUS BETWEEN DIGITAL SOLUTIONS, INC. AND THE

10   ALLEGED FRAUDULENT ACTIVITY.

11        THEY HAVE ALLEGED INVOLVEMENT WITH

12   MR. HOGAN AS TO USER AGREEMENTS AND SO FORTH.  THEY

13   ALLEGED THAT THE CORPORATION HAS -- THIS IS IN

14   THEIR BRIEFS -- THE CORPORATION HAS AFFIRMATIVELY

15   HELD ITSELF OUT AS A SEPARATE ENTITY.

16        THOSE ARE MATTERS THAT ARE NOT WITHIN

17   DEFENDANT'S EXCLUSIVE CONTROL, THOSE ARE BASED ON

18   REPRESENTATIONS THAT HAVE BEEN MADE, ALLEGEDLY, TO

19   THE PLAINTIFF.

20        THE COURT:  AGAIN, THIS IS A 12(B)(6)

21   MOTION, AND AT A MINIMUM THE CORPORATION HELD

22   ITSELF OUT AS A SEPARATE ENTITY, WHETHER THAT'S

23   TRUE OR NOT IS ANOTHER DAY.

24        AND EVEN ACCEPTING THAT THE INCORPORATION

25   IS TO BE ACCORDED FULL FAITH AND CREDIT, YOU STILL

1  HAVE SIX WEEKS OF ALLEGED FRAUDULENT ACTIVITY AFTER

2  THAT INCORPORATION OCCURS.  SO THAT AT LEAST STATES

3  THE CLAIM, MAYBE NOT AS VAGUE AS A CLAIM AS YOU

4  WANT, BUT IT STATES A CLAIM.

5          MR. CAMPBELL:  I THINK THE CONCERN IS THE

6  NOTION THEY ALLEGED THE CORPORATION HELD ITSELF OUT

7  AS A SEPARATE ENTITY, THAT'S NOT IN THE COMPLAINT,

8  IT'S IN THE BRIEFING.  AND SO THE FACT AS TO HOW IT

9  HELD ITSELF OUT NEED TO BE IN THE COMPLAINT SO WE

10 CAN HAVE AN ADEQUATE OPPORTUNITY TO RESPOND.

11         THE COURT:  SO YOU ARE ECHOING WHAT YOUR

12 COLLEAGUES HAVE SAID, AS TO THE SUBSTANCE OF THESE

13 CLAIMS THERE NEEDS TO BE MORE PARTICULARITY.

14         MR. CAMPBELL:  AND SPECIFICALLY WITH

15 RESPECT TO RICO, THE ENTERPRISE COMPONENT, THERE IS

16 A DISTINCTIVE PRINCIPAL WHERE THE RICO DEFENDANT

17 CANNOT BE IDENTICAL TO THE RICO --

18         THE COURT:  UNDERSTOOD.

19         MR. CAMPBELL:  AND I WON'T GO BACK OVER

20 THE BRIEFS, BUT THAT SEPARATENESS IS CREATED BY THE

21 AFFIRMATIVE ACT OF INCORPORATOR.  THAT IS WHAT

22 CONFERS THE SEPARATE BENEFITS, PROTECTIONS RIGHTS

23 TO SUE, RIGHTS TO BE SUED, THAT ALLOWS FOR THE

24 ENTERPRISE TO BE --

25         THE COURT:  WELL, THAT'S NOT THE ONLY

KIND OF ENTERPRISE THAT RICO RECOGNIZES. A

CORPORATION IS ONE ENTERPRISE, IT'S NOT THE ONLY

KIND.

MR. CAMPBELL: BUT THE CORPORATION IS THE

ONLY KIND THEY'VE ALLEGED HERE OTHER THAN THE

ASSOCIATION, IN FACT WHICH I THINK WE BRIEFED VERY

WELL, CANNOT BE PREDICATED ON JUST THE DEFENDANT

AND DOE'S 1 THROUGH 10. YOU CANNOT TACK ON

FABRICATED DEFENDANTS IN THAT WAY TO CIRCUMVENT.

THE COURT: YOU NEED A LITTLE MORE. IT'S

NOT JUST A LITTLE MORE, YOU NEED SPECIFICITY AS TO

THE NATURE AND STRUCTURE OF THE ENTERPRISE.

MR. CAMPBELL: CORRECT. AND WE WOULD

SUBMIT THAT.

THE COURT: THANK YOU.

A LOT FOR EBAY TO RESPOND TO. GO AHEAD,

COUNSEL.

MR. EBERHART: YES, YOUR HONOR.

FIRST, LET ME ADDRESS WHAT I THINK ARE SOME

MISTAKEN UNDERSTANDINGS ABOUT WHAT WE'VE ALLEGED

REGARDING THE COOKIE STUFFING SCHEME.

THE SCHEME INVOLVES, AS THE COURT HAS

APTLY PUT IT, UNWITTING USERS WHO ARE USED BY THE

DEFENDANTS IN THIS SCHEME. SO YOU COULD THINK OF

IT AS A PARKED CAR. THE DEFENDANTS ARE RUNNING

INTO THE PARKED CAR AND THAT CAR IS HITTING EBAY.

THAT PARKED CAR, THAT USER, ISN'T DOING
ANYTHING.  WHAT IS HAPPENING IS THAT THE DEFENDANTS
ARE CAUSING THESE THIRD-PARTY USERS' COMPUTERS TO
ACCESS EBAY'S SITE.  AND IT IS AT THAT MOMENT THAT
THE UNLAWFUL ACCESS OCCURS.  IT IS THAT FORCING OF
A CLICK OR THE SIMULATION OR FALSIFICATION OF A
CLICK THAT CAUSES THE WRONGFUL ACCESS.

AND WHAT WE'VE ALLEGED IS THAT THE USER
AGREEMENTS THAT GOVERN THE ACTIONS OF THESE
DEFENDANTS ARE THE ONLY BASIS ON WHICH THEY HAD THE
RIGHT TO ACCESS EBAY'S SITE.  AND BY DOING WHAT
THEY DID, THEY VIOLATED THOSE USER AGREEMENTS.

NOW, THAT VIOLATION TAKES PLACE BEFORE
ANY PART OF THIS AFFILIATE MARKETING PROGRAM COMES
INTO PLACE.  NOTHING HAPPENS UNDER THAT AGREEMENT
BETWEEN THE DEFENDANTS AND COMMISSION JUNCTION.
THE CFAA VIOLATION IS COMPLETE AT THE MOMENT THAT
THEY MAKE THEIR UNAUTHORIZED ACCESS AND IMPAIR THE
DATA WHICH BELONGS TO EBAY BY DOING THE COOKIE
STUFFING.

NOW, THEY'VE ARGUED THAT THE TERMS AND
CONDITIONS THAT THEY'VE ATTACHED TO THEIR BRIEFING
ARE SORT OF SUBSUMED USER AGREEMENTS, THE EBAY USER
AGREEMENT WE'VE ALLEGED GOVERNS THE ACTIONS OF

1    THESE DEFENDANTS.

2         THAT'S SIMPLY NOT TRUE.  THOSE ARE TERMS

3    AND CONDITIONS THAT ARE RELATED TO THE AFFILIATE

4    MARKETING PROGRAM THAT THEY HAVE WITH COMMISSION

5    JUNCTION.  THOSE ARE NOT TERMS AND CONDITIONS THAT

6    PURPORT TO MODIFYING EBAY'S USER AGREEMENT.  AND

7    STRIKINGLY, THERE IS NOTHING IN EITHER THAT

8    AGREEMENT THEY'VE ATTACHED WITH COMMISSION JUNCTION

9    OR IN THE SUPPLEMENTAL TERMS AND CONDITIONS THAT

10   GIVES THEM ANY RIGHT TO ACCESS EBAY'S SITE.

11        WHY IS THAT?  WELL THAT'S BECAUSE, AS

12   COUNSEL PUT IT, THEY'RE SUPPOSED TO BE IN THE

13   BACKGROUND.  THEY ARE NOT SUPPOSED TO BE ACCESSING

14   EBAY'S SITE.  THEY ARE SUPPOSED TO BE PLACING ADS

15   THAT USER'S AFFIRMATIVELY CLICK ON AND THE USERS GO

16   TO EBAY.

17        THE DEFENDANTS AREN'T SUPPOSED TO BE

18   ACCESSING EBAY'S SITE AS PART OF THE AFFILIATE

19   MARKETING PROGRAM, AND IT DOESN'T GIVE THEM ANY

20   RIGHT TO ACCESS EBAY'S SITE.  SO IT IS PRECISELY

21   THE USER AGREEMENT THAT ARE AT ISSUE WHEN THEY

22   IMPROPERLY ACCESS EBAY'S WEBSITE.

23        THEY'VE ALSO ARGUED IT'S EBAY'S BURDEN TO

24   PROVE THAT THE FORUM SELECTION CLAUSE DOES NOT

25   APPLY.  THAT'S SIMPLY NOT THE LAW.  THEY ARE

ATTEMPTING TO IMPOSE A FORUM SELECTION CLAUSE FROM
A CONTRACT TO WHICH EBAY IS NOT THE PARTY AND
THEY --

THE COURT:  LET'S ASSUME THAT'S RIGHT,
AND I THINK IT IS.  WHY IS EBAY NOT -- EBAY IS NOT
A PARTY TO THAT AGREEMENT, BUT WHY IS EBAY NOT
BOUND BY IT BECAUSE OF THE CLOSE RELATIONSHIP AND
THIRD-PARTY BENEFICIARY?

MR. EBERHART:  BECAUSE THERE IS A -- THE
INITIAL VIOLATION UNDER THE USER AGREEMENT WHICH
HAS ITS OWN FORUM SELECTION CLAUSE WHICH PROVIDES
THE FORUM IS TO BE HERE IN THE NORTHERN DISTRICT OF
CALIFORNIA --

THE COURT:  THE HARM IS WHEN THE PARKED
CAR CRASHES INTO EBAY.

MR. EBERHART:  NO.  UNDER CFAA -- THAT'S
RIGHT.  SO THE HARM OCCURS WHEN THE COOKIE STUFFING
OCCURS.  THE CFAA CLAIM IS COMPLETE AT THAT MOMENT
BECAUSE EBAY'S DATA HAS BEEN IMPAIRED AS OF THAT
TIME.

SO OUR ARGUMENT IS THAT THE USER
AGREEMENT, WHICH GOVERNS THAT ACCESS WHICH IS
ESSENTIAL TO OUR CLAIM, IS THE FIRST VIOLATED
CONTRACT, IF YOU WILL, EVEN ASSUMING THIS
THIRD-PARTY CONTRACT BINDS EBAY.  AND SO THAT FIRST

1     VIOLATED CONTRACT, THE FORUM SELECTION CLAUSE OUGHT

2     TO GOVERN IN THIS CASE.

3            THE COURT:  SO YOU NEVER GET TO THE

4     QUESTION OF WHETHER A DISPUTE AS TO THE OTHER

5     AGREEMENT IS THE ONE THAT WOULD IMPROPERLY VENUE IN

6     SOUTHERN CALIFORNIA EVEN IF EBAY WERE NOT A

7     SIGNATORY; YOU NEVER GET THERE.

8            MR. EBERHART:  CORRECT.

9            THE COURT:  DO YOU WANT TO ADDRESS ON THE

10     RICO ISSUE, THE ISSUE ABOUT WHETHER THERE OUGHT TO

11     BE MORE SPECIFICITY ABOUT THE ENTERPRISE GIVEN THE

12     DATA INCORPORATION?

13            MR. EBERHART:  SURE, YOUR HONOR.

14     THERE'S AN ADDITIONAL STRIKING FACT ABOUT THE RICO

15     CLAIMS WHICH -- NEITHER IN THE OPENING BRIEFS NOR

16     IN THE REPLIES DO ANY OF THE DEFENDANTS CHALLENGE

17     THE COMMON LAW FRAUD CLAIM.

18            THEY MAKE A LOT OF ARGUMENTS ABOUT

19     FAILURE TO PLEAD OUR RICO CLAIMS WITH SPECIFICITY,

20     BUT IT'S THE EXACT SAME BEHAVIOR WE'VE COMPLAINED

21     OF IN OUR COMMON LAW FRAUD CAUSE OF ACTION.

22            AND BY CONCEDING THAT THAT'S PROPERLY

23     PLEAD, I THINK THEY HAVE CONCEDED THAT THE

24     PREDICATE ACTS UNDER RICO ARE PROPER.

25            THE COURT:  I DON'T THINK THEY ARE

1    ARGUING THAT, AT LEAST THAT'S WHAT I HEARD.

2            MR. EBERHART:  NOW, WITH RESPECT TO THE

3    DPS ALLEGATIONS, THEIR ARGUMENT IS THAT WE'VE ONLY

4    PLED AN ASSOCIATION IN FACT BY COMBINING MR. HOGAN

5    WITH THE DOE'S.

6            THAT'S NOT THE CASE.  WE'VE PLED OUR

7    ASSOCIATION IN FACT, INCLUDING MR. HOGAN AND THE

8    DOE'S AND DPS, INC.  NOW, THE FACT THAT THEY CLAIM

9    DPS, INC. DID NOT EXIST BEFORE MAY OF 2007, I THINK

10    WE'VE ADEQUATELY ADDRESSED THAT, AND I THINK THE

11    CASES SUPPORT THE NOTION, CANNOT BE JUDICIALLY

12    NOTICED.

13            THE FACT OF THE FILING DOES NOT PROVE

14    THAT DPS, INC. DID NOT EXIST BEFORE MAY OF 2007.

15    SO REQUIRING EBAY TO -- I'M NOT SURE HOW WITHOUT

16    DISCOVERY -- FIND OUT WHAT OTHER ENTITIES MR. HOGAN

17    POSSESSED PRIOR TO MAY 2007, EVEN ASSUMING THERE

18    WASN'T SOME DPS, INC. BEFORE MAY 2007, IS SIMPLY

19    NOT A MOTION TO DISMISS ISSUE.

20            IT'S A SUMMARY JUDGEMENT ISSUE AFTER

21    DISCOVERY BECAUSE IT MAY WELL BE MR. HOGAN HAD

22    ANOTHER DIGITAL POINT SOLUTIONS, INC. THAT HE

23    DISSOLVED.

24            THE COURT:  YOU ARE SAYING YOU CAN'T RULE

25    OUT THE POSSIBILITY.  AND THE MERE FACT THAT YOU

```
1    HAVE THE CORPORATE FILING DOES NOT RULE OUT ANY

2    OTHER POSSIBILITIES.

3              MR. EBERHART:  THAT'S CORRECT,

4    YOUR HONOR.

5              THE COURT:  OKAY.  THANK YOU.

6              I THINK I'VE GOT ENOUGH TO CHEW ON FOR A

7    WHILE.  I WILL GET A RULING OUT AS SOON AS

8    POSSIBLE.

9              YES?

10             MR. PRESIADO:  IF I COULD BE HEARD ON ONE

11   LAST POINT.

12             THE COURT:  BRIEFLY.

13             MR. PRESIADO:  YES, I WILL MAKE IT BRIEF.

14   I DON'T THINK THEY DENIED THAT REGARDLESS OF THE

15   TIMING ON THE COOKIE STUFFING SCHEME THAT IT ONLY

16   MATTERS IF WE ALLEGEDLY COOKIE STUFFED BECAUSE OF

17   THE PAYMENTS THEY MADE TO US, AND THAT DIRECTLY

18   RELATES TO THE PSA.

19             IF THEY DIDN'T MAKE ANY PAYMENTS TO US,

20   HAD NO OBLIGATIONS TO US AND THERE WAS THIS COOKIE

21   STUFFING THING GOING ON, IT WOULDN'T MATTER.

22             THE COURT:  THERE WOULDN'T BE ANY

23   DAMAGES.  IT WOULD STILL BE IMPROPER.

24             MR. PRESIADO:  WELL, I DON'T KNOW.  WE

25   ARGUE THAT IT WOULDN'T.
```

```
 1              THE COURT:  SO IT'S OKAY TO STUFF COOKIES
 2   AS LONG AS YOU DON'T GET PAID FOR IT?
 3              MR. PRESIADO:  NO, I'M TALKING ABOUT
 4   VENUE HERE, YOUR HONOR.
 5              THE COURT:  I KNOW YOU ARE.  MY QUESTION
 6   IS NOT MEANT TO BE A SILLY ONE.
 7              IF YOU'RE MESSING WITH PEOPLE'S DATA,
 8   EVEN IF IT'S NOT IN ORDER TO DERIVE BENEFIT FROM
 9   ANOTHER CONTRACT, ISN'T THAT IN AND OF ITSELF A
10   WRONGFUL ACT?
11              MR. PRESIADO:  WELL, THEY CONCEDE THEY
12   COOKIE STUFF USERS THAT GO ON THEIR SITE FOR THE
13   FIRST TIME WITHOUT SIGNING A USER AGREEMENT.
14              THE COURT:  SO THE DAMAGE ELEMENT FLOWING
15   FROM THE COOKIE STUFFING WOULDN'T EXIST BUT FOR THE
16   PSA.
17              MR. PRESIADO:  RIGHT.
18              THE COURT:  AND THAT GETS YOU BACK TO THE
19   FORUM SELECTION CLAUSE.
20              MR. PRESIADO:  RIGHT.
21              AND YOUR HONOR, I WOULD REQUEST -- AND I
22   THINK WE'VE MADE ENOUGH OF AN ARGUMENT WITH RESPECT
23   TO PSA AND THE VENUE ISSUE AND FORUM SELECTION
24   CLAUSE; THAT AT THE VERY LEAST, THERE SHOULD BE A
25   CONTINUANCE OR AN ADVANCE OF THE CASE FOR THE
```

LIMITED DISCOVERY OF THE AGENCY RELATIONSHIP, THEIR
CONNECTION TO THE PSA, ET CETERA, TO BE ABLE TO
COME BACK WITH FACTS ESTABLISHING, TO THE EXTENT
THE COURT ISN'T SATISFIED HERE, ESTABLISHING THE
AGENCY AND THEIR OBLIGATIONS --

THE COURT:  I DON'T THINK THAT'S MY
ISSUE.  I ACTUALLY THINK IF THIS CASE WERE ABOUT
THE PSA, THAT YOUR VENUE ARGUMENT WOULD BE PRETTY
STRONG.  BUT AT LEAST THE WAY I'VE BEEN LOOKING AT
IT UP UNTIL NOW, IT SEEMS TO ME WHAT IT'S ABOUT IS
THE COOKIE STUFFING.

YOU ARE SAYING THEY CAN'T MAKE AN
ESSENTIAL ELEMENT OF THE CFAA CLAIM WITHOUT
INVOKING RIGHTS UNDER THE PSA, SO IT GETS YOU BACK
TO THAT STARTING POINT.

MR. PRESIADO:  RIGHT, YOUR HONOR.

AND THAT'S WHY THEY DON'T BRING BREACH OF
CONTRACT CLAIM, WHICH WOULD BE THE SAME DAMAGES --

THE COURT:  I UNDERSTAND.

I'M GOING TO GIVE IT THOUGHT, AND I WILL
ASK COUNSEL TO SPEND 30 SECONDS RESPONDING TO THAT.

*MR. FOREMAN:  JUST BRIEFLY, YOUR HONOR.

QUICKLY, ON THIS FAILURE TO THE STATE THE
FRAUD CLAIM, WE'RE CHALLENGING THIS COURT'S
JURISDICTION.  WE DIDN'T CONCEDE ANYTHING ABOUT

```
1    FRAUD, SO THAT'S WHY WE DIDN'T ADDRESS THE COMMON

2    LAW FRAUD CLAIM.

3              ON THIS USER AGREEMENT, COUNSEL FOR

4    PLAINTIFF MADE A VERY CRITICAL ADMISSION ON BEHALF

5    OF HIS CLIENT THAT I JUST THINK WE NEED TO PAY

6    ATTENTION TO.  HE SAID IN HIS ARGUMENT THAT THE

7    MOMENT THE UNLAWFUL ACT OCCURS, AT THE CONNECTION

8    BETWEEN THE AD THAT OUR CLIENT PRODUCED AND THE

9    USER IN THE INTERNET LOOKING AT IT AND GETTING A

10   COOKIE.

11             SO THERE'S TWO IMPORTANT THINGS THERE,

12   YOUR HONOR.  THAT'S WHEN THE ALLEGED COOKIE

13   STUFFING OCCURS, NOT WHEN THEY GO TO EBAY.  AND

14   IT'S VERY IMPORTANT --

15             THE COURT:  THEY GET TO EBAY BY CLICKING

16   ON THE AD, RIGHT?

17             MR. FOREMAN:  OR THEY ALLEGE BY NOT

18   CLICKING.  CERTAINLY, IF THEY CLICK ON THE AD IT

19   TAKES THEM TO EBAY, THEN THEY ALREADY HAVE OUR

20   COOKIE AND HE EBAY GIVES THEM A COOKIE.

21             AND THAT'S WHERE, AGAIN, THIS ANALOGY OF

22   THE BUMP CARS REALLY BREAKS DOWN.  THE INTERNET

23   USER IS THE ONE THAT GOES TO EBAY.

24             THE COURT:  BUT HE OR SHE IS CARRYING --

25             MR. FOREMAN:  CARRYING COOKIES, THERE'S
```

NOTHING ILLEGAL OR IMPROPER. WE ALL GET THEM ALL
THE TIME. THERE ARE CASES THAT HAVE ORIGINALLY
CHALLENGED COOKIES AS BEING UNLAWFUL UNDER THE
CFAA, AND ALL OF THOSE CASES FOUND COOKIES DO NO
HARM, THEY ARE PERFECTLY OKAY IN THE INTERNET THESE
DAYS.

      THE COURT: UNLESS THEY ARE TIED TO --

      MR. FOREMAN: IF SOMETHING ELSE HAPPENS.

      THE COURT: WHICH IS WHERE YOU GET TO THE
PSA.

      MR. FOREMAN: THAT'S WHY BY PUTTING A
COOKIE ON AN INTERNET USER COMPUTER WHEN THEY SEE
YOUR ADD IS NOT A PROBLEM.

      THE COURT: WHAT MAKES IT WRONG IS
BECAUSE YOUR CLIENTS ARE ALLEGEDLY GETTING PAID FOR
SOMETHING THEY'RE NOT SUPPOSED TO.

      MR. FOREMAN: AND THAT'S WHY THIS CASE IS
JUST ABOUT A BREACH OF CONTRACT UNDER THE
AFFILIATED MARKETING.

      TO THE EXTENT THEY WANT TO GO BACK TO
THIS USER AGREEMENT, THEIR FIRST AMENDED COMPLAINT
PAGE 9, PARAGRAPH 3,5 LINES 4 AND 5 ALLEGES THE
USER AGREEMENTS ACCEPTED BY EACH OF THE DEFENDANTS
SHAWN HOGAN, BRIAN DUNNING AND TODD DUNNING ARE
ESSENTIALLY SIMILAR.

1          SO YOUR HONOR, ALL THESE OTHER CORPORATE

2    DEFENDANTS SHOULD BE DISMISSED.  IF THIS WHOLE CASE

3    IS BASED ON THE USER AGREEMENTS, AS THEY'RE ARGUING

4    NOW, NONE OF THE OTHER PARTIES SIGNED THEM.

5          THE COURT:  WHAT I HEARD HIM SAY WAS THAT

6    HE WAS TALKING ABOUT THE USER AGREEMENTS OF THE

7    PEOPLE WHO REGISTER ON EBAY, THE INNOCENT THIRD

8    PARTIES WHO CARRY THE COOKIES; I THINK THAT'S WHAT

9    I HEARD; BUT I UNDERSTAND.

10          MR. FOREMAN:  OKAY.  THANK YOU,

11   YOUR HONOR.

12          MR. CAMPBELL:  THANK YOU, YOUR HONOR.

13          JUST A COUPLE CORRECTIONS.  COUNSEL FOR

14   EBAY INDICATED THAT NO ONE HAD CHALLENGED THE

15   COMMON LAW FRAUD CLAIM FOR LACK OF SPECIFICITY OR

16   PARTICULARITY.  THAT'S NOT TRUE; WE DID CHALLENGE

17   THAT AS WELL.

18          THE COURT:  OKAY.

19          MR. CAMPBELL:  AND SECONDLY, THE POSITION

20   THAT THEY'RE TAKING IS:  WELL, WE CAN'T KNOW THE --

21   WHAT THE EXISTENCE OF THE ENTITY IS PRIOR TO THE

22   DATE OF INCORPORATION WITHOUT DISCOVERY.  BUT

23   AGAIN, THEIR BRIEFS REPRESENT THAT THE CORPORATION

24   HELD ITSELF OUT AS A SEPARATE ENTITY.  SO THOSE ARE

25   THE EXACT KINDS OF REPRESENTATIONS, FACTUAL

INFORMATION, THAT NEEDS TO BE IN AN AMENDED

PLEADING.

BRIEFLY, ALSO, WITH RESPECT TO RICO, NO

INSPECTOR IN THE FIRST AMENDED COMPLAINT DOES IT

ALLEGE THAT THE CORPORATION IS PART OF THE HOGAN

GROUP.  THAT IS NOT TRUE.  THAT IS CLEARLY ABSENT

FROM THE FIRST AMENDED COMPLAINT.

AND AS AN EXTENSION OF THAT, AT A

MINIMUM, THE RICO CLAIM AS TO DIGITAL POINT

SOLUTIONS, INC. WOULD HAVE TO BE DISMISSED BECAUSE

IT'S NOT ALLEGED AS A RICO DEFENDANT.  IT COULDN'T

BE BECAUSE THEY'RE EXPRESSLY ALLEGING IT'S THE RICO

ENTERPRISE.

SO THAT WAS ADDRESSED IN OUR RELY, NOTING

THEY HADN'T RAISED THAT ISSUE OR RESPONDED TO THAT

ISSUE IN THEIR OPPOSITION.

THE COURT:  OKAY.

MR. EBERHART:  QUICKLY, YOUR HONOR.

FIRST OF ALL, PARAGRAPH 43 OF THE FIRST

AMENDED COMPLAINT ALLEGES THAT DPS, INC. WAS PART

OF THE ASSOCIATION IN FACT.

DPS, INC. HAS ONLY CHALLENGED COMMON LAW

FRAUD CLAIM ON THE BASIS THAT THEY DID NOT EXIST

BEFORE MAY 2007.  THEY HAVE NOT OTHERWISE

CHALLENGED THAT COMMON LAW FRAUD CLAIM IN ANY OTHER

WAY.

THE COURT:  OKAY.

MR. EBERHART:  WITH RESPECT TO THE CFAA
CLAIM, THE DAMAGE ABSOLUTELY EXISTS WHETHER OR NOT
MONIES WERE PAID TO THE DEFENDANTS.  THE CFAA
RECOGNIZES, AS THE COURT I BELIEVE HAS POINTED OUT,
THAT IMPAIRMENT OF DATA IS DAMAGE UNDER THE CFAA.

AT THE MOMENT OF THE COOKIE STUFFING
EBAY'S DATA WAS IMPAIRED BECAUSE EBAY WAS NOW
SEEING DATA THAT SAID, GHEE, THESE USERS WERE
REFERRED BY THESE DEFENDANTS, BUT THAT WASN'T TRUE,
THAT WAS FALSE.  AND EBAY HAD TO LATER TAKE STEPS
TO RESPOND TO THIS PROBLEM WHICH IS LOSS UNDER THE
CFAA.

SO EVEN IF YOU DIDN'T HAVE PAYMENTS TO
THESE DEFENDANTS --

THE COURT:  I THOUGHT THAT'S WHAT YOUR
ARGUMENT WAS, BUT I JUST WANTED TO MAKE SURE.

MR. EBERHART:  AND I JUST WANTED TO
CORRECT ONE FINAL FACTUAL THING.

THE USERS DO NOT RECEIVE COOKIES FROM
THESE DEFENDANTS.  THE COOKIES CAN ONLY COME FROM
EBAY, SO THAT IS WHY THEY HAD TO FORCE THE USERS ON
TO EBAY'S SITE TO GET THE COOKIE.  AND THAT IS PLED
IN PARAGRAPHS 24 THROUGH 27 IN OUR FIRST AMENDED

COMPLAINT, YOUR HONOR.

THE COURT: YOU KNOW WHAT, THIS HAS TO STOP. YOU'VE BEEN GOING FOR HALF AN HOUR. I DON'T THINK ANYBODY IS GOING TO SAY ANYTHING NEW.

MR. PRESIADO: ONE SENTENCE.

THE COURT: IT BETTER BE NEW OR ELSE I DON'T WANT TO HEAR IT.

MR. PRESIADO: OKAY.

THE FACT IS THEY DO ALLEGE MONETARY DAMAGE. TO THE EXTENT THEY DO, THEN IT TIES INTO THE PSA --

THE COURT: BUT JURISDICTIONAL ELEMENT IS THAT THERE BE HARM, THAT THERE BE DAMAGE. I MEAN, THERE ARE DIFFERENT KINDS OF DAMAGE, AND I THOUGHT EBAY'S ARGUMENT WAS THAT THERE WAS DAMAGE IN ADDITION TO THE LOSS OF REVENUE.

MR. PRESIADO: RIGHT. BUT TO THE EXTENT THERE IS DAMAGE, THEY SAY, IN LOSS OF REVENUE, THEN THAT'S PART OF THEIR CLAIM, THAT TIES IN THE PSA. IF THEY'RE GOING TO SAY THEY ARE NOT SEEKING ANY DAMAGES, MONETARY DAMAGES --

THE COURT: I NEED TO THINK ABOUT THAT PIECE BECAUSE THERE IS A 1404 ARGUMENT THAT ISN'T BEFORE ME THAT I THINK POSSIBLY COULD BE MADE.

I'M NOT INVITING MORE MOTIONS, BUT

1     THERE'S AN ARGUMENT THAT THERE MIGHT BE SOME

2     JUDICIAL ECONOMY IN HAVING ALL OF THIS IN ONE

3     PLACE; BUT THAT'S ACTUALLY NOT WHAT I'M BEING ASKED

4     TO DEAL WITH TODAY.  ALL RIGHT.

5               MATTER SUBMITTED.

6               THANK YOU VERY MUCH.

7               (WHEREUPON, THE PROCEEDINGS IN THIS

8     MATTER WERE CONCLUDED.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    STATE OF CALIFORNIA    )

2                           ) SS:

3    COUNTY OF SANTA CLARA )

4

5             I, THE UNDERSIGNED OFFICIAL COURT

6    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

7    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

8    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

9    CERTIFY:

10            THAT THE FOREGOING TRANSCRIPT,

11   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

12   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

13   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

14   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

15   TRANSCRIPTION TO THE BEST OF MY ABILITY.

16

17   {_____}

18   SUMMER A. CLANTON

19   OFFICIAL REPORTER, CSR NO. 13185

20

21

22

23

24

25
```