1  Stewart H. Foreman  (CSB #61149)
   Daniel T. Bernhard  (CSB #104229)
2  FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
3  San Francisco, California 94105
   Telephone:  (415) 541-0200
4  Facsimile:  (415) 495-4332
   Email: foreman@freelandlaw.com
5          bernhard@freelandlaw.com

6  Attorneys for Defendants Todd Dunning and
   Dunning Enterprise, Inc.

7

8                UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

| | |
|---|---|
| EBAY, INC., | CASE NO.: CV-08-4052 JF |
| Plaintiff, | **NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE** |
| v. | |
| DIGITAL POINT SOLUTIONS, INC., SHAWN HOGAN, KESSLER'S FLYING CIRCUS, THUNDERWOOD HOLDINGS, INC., TODD DUNNING, DUNNING ENTERPRISE, INC., BRIAN DUNNING, BRIANDUNNING.COM, and DOES 1-10 | Date:      June 26, 2009<br>Time:     9:00 a.m.<br>Place:    Courtroom 3, 5th Fl.<br>            280 South 1st Street<br>            San Jose, CA  95113 |
| Defendants. | Honorable Jeremy Fogel presiding |

*Sidebar (left margin):* FREELAND COOPER & FOREMAN LLP · 150 Spear Street, Suite 1800 · San Francisco, California 94105

NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE
{00125246-1}

Dockets.Justia.com

1 | **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2 **PLEASE TAKE NOTICE THAT** on June 26, 2009, at 9:00 a.m. before the Honorable

3 Jeremy Fogel in Courtroom Number 3, 5th Floor, Federal Court House located at 280 South First

4 Street, San Jose, California, 95113, defendants Todd Dunning and Dunning Enterprise, Inc.

5 (collectively "TD Defendants") will and hereby do move the Court for an order dismissing the Second

6 Amended Complaint filed by plaintiff eBay, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(3)

7 and (6) and/or for an order transferring venue pursuant to 28 U.S.C. § 1404(a).

8 This Motion is based on the following: (1) this district is not the proper place for filing this

9 action based on a contractual forum selection clause and therefore the Second Amended Complaint

10 should be dismissed under Rule 12(b)(3), (2) in the alternative, the action should be transferred to the

11 Central District of California under 28 U.S.C. § 1404(a), and (3) the Second Amended Complaint and

12 all claims therein fail to allege sufficient facts on which relief may be granted by this Court, and

13 therefore the complaint should be dismissed under Rule 12(b)(6).

14 This Motion is based upon this Notice and Motion, the attached Memorandum of Points and

15 Authorities, and the accompanying Declaration of Stewart H. Foreman In Support thereof. The TD

16 Defendants request that this Court grant their Motion to Dismiss and To Transfer the Second

17 Amended Complaint.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ..................................................................................1

II. THE PUBLISHER SERVICE AGREEMENT DETERMINES THE PROPER FORUM FOR THIS CASE ...............................................................1

    A.    Three Agreements Relate To Kessler's Access Under The AMP............1

    B.    The SAC Should Be Dismissed Under Fed. Rule Civ. Proc. 12(b)(3) Based On The Previous Order By This Court ..........................................2

    C.    The PSA Grants Access For Purposes Of The Affiliate Marketing Program..................................................................................................4

III. TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT IS REQUIRED UNDER 28 U.S.C. § 1404(a) ..............6

    A.    Plaintiff's Choice Of Forum Is Not Controlling .................................7

    B.    Convenience Of The Parties ...............................................................8

    C.    Convenience Of The Witnesses...........................................................8

    D.    Access To The Evidence......................................................................9

    E.    Familiarity Of Each Forum With Applicable Law ..............................9

    F.    Feasibility Of Consolidation With Other Claims ...............................10

    G.    The Local Interest In The Controversy...............................................10

    H.    Relative Court Congestion And Time To Trial In Each Forum ............10

IV. THE SAC SHOULD BE DISMISSED BASED ON THE LIMITATIONS PROVISION IN THE PSA..........................................................................10

V.  EACH INDIVIDUAL CLAIM IS BARRED BY ITS APPLICABLE STATUTE OF LIMITATIONS...........................................................................13

    A.    The CFAA Claim Is Barred By The Statute Of Limitations .................14

    B.    The Rico Claim Is Barred ...................................................................15

    C.    The California Unfair Competition Claim Is Time-Barred ..................18

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE   iii

{00125246-1}

D.     California Penal Code § 502 And Common Law Fraud Claims Are Barred.................................................................................................19

E.     The Restitution Claim is Governed by the Contractual Limitations Provision...........................................................................................20

VI.     CONCLUSION.....................................................................................20

**FREELAND COOPER & FOREMAN LLP**
150 Spear Street, Suite 1800
San Francisco, California 94105

NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE    iv

{00125246-1}

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*A.J. Industries v. U.S. District Court,*
503 F.2d 384 (9th Cir. 1974) .................................................................................6

*Agency Holding Corp. v. Malley-Duff and Associates, Inc.,*
483 U.S. 143 (1987)...........................................................................................15

*Ashcroft v. Randel,*
391 F. Supp. 2d 1214 (N.D. Ga. 2005) ..........................................................14, 15

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986) ...............................................................................7

*Display Research Laboratories, Inc. v. Telegen Corporation,*
133 F. Supp. 2d 1170 (N.D. Cal. 2001) ..............................................................10

*Downey v. Federal Express Corporation,*
1993 U.S. Dist. LEXIS 16114 (N.D. Cal. 1993) .................................................11

*eBay, Inc. v. Bidder's Edge, Inc.,*
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................5

*Egilman v. Keller & Heckman, LLP,*
401 F. Supp. 2d 105 (Dist. of Columbia 2005) ...................................................15

*El Pollo Loco, Inc. v. Hashim,*
316 F.3d 1032 (9th Cir. 2002) ............................................................................14

*Forcier v. Microsoft,*
123 F. Supp. 2d 520 (N.D. Cal. 2000) ................................................................15

*Grimmett v. Brown,*
75 F.3d 506 (9th Cir. 1996) ................................................................................17

*Hodas v. Sherbourne, Powers and Needham, P.C.,*
938 F. Supp. 60 (D. Mass. 1996) ........................................................................16

*In re Merrill Lynch Limited Partnership Litigation,*
154 F.3d 56 (2d Cir. 1998) .................................................................................18

*In Re Stacs Elecs. Sec., Litig.*
89 F.3d 1399 (9th Cir. 1996) ..............................................................................10

*In Re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ................................................................................6

*Janet Perez-Encinas v. Amerus Life Ins. Co.,*
   468 F. Supp. 2d 1127 (N.D. Cal. 2006) ...................................................................11

*L.E. Sanders v. American Casualty Company*
   (1969) 269 Cal. App. 2d 306 ...................................................................................11

*Love v. Fire Insurance Exchange*
   (1990) 221 Cal. App. 3d 1136 .................................................................................19

*Lupiani v. Wal Mart Stores,*
   2003 U.S. Dist. Lexis 20343 (N.D. Cal) ...................................................................9

*McCool v. Strata Oil Co.,*
   972 F.2d 1452 (7th Cir. 1992) ................................................................................15

*Murphy v. Schneider National, Inc.,*
   362 F.3d 1133 (9th Cir. 2004) ...................................................................................2

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ..................................................................................10

*Piedmont Label, Co. v. Sun Garden Packing Co.,*
   598 F.2d 491 (9th Cir. 1979) ....................................................................................2

*Rodriquez v. Banco Central,*
   917 F.2d 664 (1st Cir. 1990) ...................................................................................15

*Rotella v. Wood,*
   528 U.S. 549 (2000)..................................................................................................15

*Sasser v. Amen,*
   2001 U.S. Dist. LEXIS 9469 ..............................................................................17, 18

*Skylawn and Skyview Memorial Lawn v. Superior Court*
   (1979) 88 Cal. App. 3d 316 .....................................................................................11

*Snapp and Associates Insurance Services Inc. v. Malcolm Bruce Burlingame Robertson*
   (2002) 96 Cal. App. 4th 884 ....................................................................................19

*Soliman v. Philip Morris Incorporated,*
   311 F.3d 966 (9th Cir. 2002) ...................................................................................16

*Spellis v. Lawn*
   (1988) 200 Cal. App. 3d 1075 .................................................................................19

*Stewart Org. Inc., v. Ricoh Corp.,*
   487 U.S. 22 (1988)......................................................................................................7

*Stutz Motorcar of America v. Reebok International,*
   909 F. Supp. 1353 (CD Cal 1995) ...........................................................................18

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,*
  915 F.2d 1351 (9th Cir. 1990) ...................................................................................3

*The Carolina Casualty Company v. Data Broadcasting Corp. et al,*
  158 F. Supp. 2d 1044 (N.D. Cal. 2001) .......................................................................7

*Williams v. Bowman,*
  157 F. Supp. 2d 1103 (N.D. Cal. 2001) .......................................................................7

**STATUTES**

18 U.S.C. § 1030(g) .............................................................................................6, 14

28 U.S.C. § 1404(a) .....................................................................................1,6, 9, 10

Cal. Bus. & Prof Code §17200 ...................................................................................18

Cal. Bus. & Prof. Code §17208 ..................................................................................18

Cal. Civ. Proc. Code § 338(d) ....................................................................................19

Cal. Civ. Proc. Code §§ 1638 and 1644......................................................................11

Cal. Civ. Proc. Code § 2332 ......................................................................................13

California  Penal Code § 502......................................................................................19

California Penal Code § 502(e)(5)...............................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12(b)(3) ...................................................................................1, 2, 6

Fed. R. Civ. Proc. Rule 12(b)(6)......................................................................1, 10, 12, 13

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE

vii

{00125246-1}

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The TD Defendants[1] jointly file this motion to dismiss under Fed. R. Civ. Proc. 12(b)(3) and (6) and their motion to change venue under 28 U.S.C. § 1404(a) regarding plaintiff eBay, Inc.'s ("eBay") Second Amended Complaint ("SAC"). The First Amended Complaint was dismissed by the Order of this Court dated February 24, 2009[2], with leave to amend. eBay's amended complaint was supposed to plead sufficient facts, if possible, to demonstrate that venue is proper in this District. Otherwise, the Court determined in the Order that venue for these claims is proper in the Central District of California or the Los Angeles Superior Court because eBay is bound by a contractual forum selection clause. The SAC fails to show that this case is properly filed in this District. In addition to filing the SAC in an improper venue, the new allegations in eBay's SAC reveal that its claims are time-barred by an applicable contractual limitations period, and by the statutory limitations periods for each alleged claim. For these reasons, eBay's SAC should be dismissed, but this time, without leave to amend to file in this Court.

## II.   THE PUBLISHER SERVICE AGREEMENT DETERMINES THE PROPER FORUM FOR THIS CASE

### A.    Three Agreements Relate To Kessler's Access Under The AMP.

The Court should again dismiss this complaint under Rule 12(b)(3). As a brief reminder, there are certain key agreements in this case that resolve the issues raised by this motion to dismiss the SAC under Rule 12(b)(3). First, there is the Publisher Service Agreement ("PSA") issued by Commission Junction, Inc. ("CJI") and accepted via the internet by Kessler's Flying Circus ("Kessler's"). The PSA allowed Kessler's to become part of CJI's network, and, after eBay's approval, to participate in eBay's Affiliate Marketing Program ("AMP"). Second, there is the eBay Affiliate Program – Supplemental

---

[1] The TD Defendants are Dunning Enterprise, Inc., and Todd Dunning. Individual defendant's names will be used in this brief only when accuracy or context requires.

[2] Order (1) Granting Motions to Dismiss for Improper Venue and (2) Granting In Part Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, dated February 24, 2009 (hereafter "Order"). A copy of the Order is attached to the compendium of exhibits filed with the accompanying motion to dismiss and transfer filed by defendants Brian Dunning, et al.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Terms and Conditions ("T&C Agreement") issued by eBay which is in "addition to the terms of the Commission Junction Publisher Service Agreement." The T&C Agreement also states that, in event of a conflict between it and the PSA, the T&C Agreement "will control." Finally, there is a Master Service Agreement as of January 1, 2006 ("MSA") between eBay and CJI that describes the relationship between them for CJI to manage eBay's AMP.[3] The MSA was not previously presented to the Court, but is now relevant to this motion under Rule 12(b)(3).

The TD Defendants' present motion to dismiss and/or change venue asserts that the SAC does not meet this Court's previous challenge to eBay because it does not "present sufficient allegations as to why it [eBay] is not bound by the forum selection clause contained in the PSA." Order, page 7, lines 21-22. This case should be filed, if at all, in the Central District of California and/or the Los Angeles Superior Court as required by the forum selection clause in the PSA.

### B. The SAC Should Be Dismissed Under Fed. Rule Civ. Proc. 12(b)(3) Based On The Previous Order By This Court.

In this motion under Fed. R. Civ. Proc. 12(b)(3) the Court need not accept as true the allegations of the SAC, and it may consider evidence outside of the pleadings themselves. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). As the Court's Order noted, "ultimately the plaintiff bears the burden of showing that venue is proper. *Piedmont Label, Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)." Order, at 5, lines 4-5.

The Court already ruled "that eBay is a third-party beneficiary of the PSA [Publisher Service Agreement]," and that the "T&C Agreement appears expressly to incorporate the terms of the PSA." Order, page 7, lines 7-10. The Court held that eBay is "bound by the forum selection clause contained in the PSA" because "[i]n the Ninth Circuit, a third-party beneficiary for agreement is bound by the terms of the agreement...." (citation omitted). Order, page 6, lines 19-20, page 7, line 22. The Order also states that the "Central District of California and/or the Los Angeles Superior Court would

---

[3] The PSA, T&C Agreement and MSA are attached as Exhibits 1-3, respectively to the Declaration of Stewart H. Foreman in Support of TD Defendants' Motions to Dismiss Second Amended Complaint and to Transfer Venue ("Foreman Decl.") filed herewith.

NOTICE OF MOTION AND MOTION BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. TO DISMISS SECOND AMENDED COMPLAINT AND TO TRANSFER VENUE    2

{00125246-1}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1 | provide an alternate and viable forum to bring claims against the Non-DPS Defendants [TD

2 | Defendants]." Order page 7, lines 22-24.

3 |   eBay was granted leave to amend its complaint presumably to file in a forum identified by the

4 | Order, but rather than filing there, eBay filed its SAC again in this Court. eBay now offers allegations

5 | to the effect that no agreement, other than the User Agreement (which it again fails to provide as part

6 | of the SAC),[4] granted Defendants access to eBay's computers. eBay's logic seems to be that, if access

7 | to eBay's computers by Kessler's under the AMP is governed by the User Agreement, then the User

8 | Agreement's forum selection clause designating this District should apply.

9 |   Significantly, eBay has never contested the authenticity of the PSA relied on by the Order or

10 | the validity of its forum selection clause. eBay's sole defense to the PSA's forum selection clause is

11 | that the PSA is an agreement between CJI and Kessler's only, and eBay is not bound by its terms. The

12 | Court has already rejected that argument, finding that eBay was a third-party beneficiary of the PSA,

13 | and thus "bound by terms of the agreement, including a valid forum selection clause. *TAAG Linhas*

14 | *Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990)." Order, at 6,

15 | lines 19-21.[5]

16 |   eBay now attempts to avoid the impact of the Order by alleging that only the User Agreement

17 | granted access to eBay's computers and the unauthorized access makes the User Agreement's forum

18 | selection clause controlling. However, eBay seriously mis-states the facts and the terms of the

19 | applicable documents. eBay has failed to allege in the SAC any facts to explain why the Court's

20 | previous ruling that the PSA determines the proper forum for this case is not dispositive. In short,

21 |

22 |

23 |

24 | [4] A copy of the eBay User Agreement effective as of August 13, 2008, is attached as Exhibit 4 to the Foreman Decl. filed herewith.

25 | [5] The forum selection clause in the PSA applies to all claims for breach of contract but also to all claims that are to

26 | be resolved through "interpretation of the contract [PSA]". *Manetti-Farrow, Inc. v. Gucci Parfums, S.p.A.*, 858 F. 2nd 509, 514 (9th Cir. 1988); *Nextrade, Inc. v. Hyosung (America), Inc.*, 2005 U.S. App. LEXIS 2432, * 5 (9th Cir.

27 | 2005). The PSA and its related documents granted the access to eBay computers for the Kessler's. Whether the TD Defendants violated the right of access granted to Kessler's is the pivotal issue for all claims in the SAC. eBay

28 | essentially concedes this point by taking the same position in arguing that the User Agreement selects the forum for all claims in the SAC.

1   there is nothing new in the SAC on the venue issue, and the Court's prior Order, and the reasoning

2   therein leading to dismissal of the Complaint under 12(b)(3) should remain unchanged.

3       **C.   The PSA Grants Access For Purposes Of The Affiliate Marketing Program.**

4       eBay makes patently inaccurate allegations in the SAC that "[t]he only authorization given to

5   the Defendants to access eBay's site in any manner was by way of eBay's User Agreement." This

6   allegation is plainly wrong when considered along with the terms of the PSA. SAC, page 7, ¶26, lines

7   18-19. Just as the Court stated that eBay is bound by the forum selection clause in the PSA, it is

8   bound by the terms in the PSA describing and authorizing access to its computers. Paragraph 4(a) of

9   the PSA states:

10           "the Advertiser [eBay] is granting You [Kessler's] the right to display

11           and Link to the Advertiser's Web site or Web site content in accordance

12           with the Advertiser's Program terms for the limited purposes of

13           Promoting the Advertiser's Program...."

14       The PSA defines "Link" in its unnumbered introductory paragraph as "an Internet connection

15   to a Web site or Web site content operated by another person or entity ("Advertiser") [eBay] from an

16   Advertiser authorized promotional method used by such Publisher [Kessler's]."

17       In addition, the Court now has before it the MSA between eBay and CJI. *See*, Foreman Decl.,

18   paragraph 6, Exhibit 3. The MSA specifically references the PSA and further defines a "Link" as "a

19   hyperlink or click from a Publisher Web site. . . as outlined in the Commission Junction Publishers

20   Service Agreement and the eBay US Program Special Terms and Conditions through an Internet

21   connection to an eBay Web site." (MSA, ¶1.15)

22       "Publisher" is a person, other than eBay or CJI, "that provides and operates Links."

23   (MSA, ¶1.21)

24       Finally, the MSA describes the relationship between eBay and its Publishers in Section 3.1.

25   stating: "Upon any Publisher's...approval by eBay, such Publisher ... may put Links to eBay's Web

26   site... in accordance with this Agreement." (MSA, ¶3.1)

27       In summary, when the PSA, the T&C Agreement and the MSA are taken together, there is no

28   doubt that access to eBay's Web site by Kessler's was granted by these agreements when Kessler's was

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

approved by eBay for its AMP. The interpretation and application of the PSA, along with these other documents which are incorporated into the PSA, will control whether there was any alleged unauthorized access by these defendants during their performance of promotional activities for eBay.

The User Agreement has absolutely nothing to do with these determinations, and accordingly its forum selection clause is not relevant.[6] In fact, this conclusion is supported by the case of *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) which relied on a finding that eBay users were required to "accept" the eBay User Agreement to participate in the "person to person trading" offered by eBay's site. Furthermore, the User Agreement's forum selection clause does not even apply in this lawsuit because it only applies in lawsuits filed against eBay for an alleged breach of the User Agreement. The User Agreement states: "You [User] agree that any claim or dispute **you may have against eBay** must be resolved by a court located in Santa Clara County." Foreman Decl. ¶8, Exhibit 4. By its own terms, this forum selection clause would only potentially apply if the TD Defendants initiated a lawsuit against eBay. This forum selection provision does not give eBay a contractual right to sue defendants in this District without complying with applicable federal law. Therefore, even if the Court does not conclude that access to eBay's computers is governed by the PSA and related agreements, eBay still does not have a contractual right to sue the TD Defendants in this District under the User Agreement's forum selection clause.

The Court must ignore eBay's allegations in the SAC that conflict with the PSA and related documents governing eBay's AMP. The PSA plainly contains provisions granting access to eBay's Web site for purposes of the AMP, and the MSA which incorporates the PSA contains similar language granting access to participants in the AMP. Therefore, eBay's allegations that the User Agreement is the only document to grant access is false. The User Agreement's forum selection clause

---

[6] The User Agreement specifically offers "access to our services when a person "become[s]" a member of eBay." Using eBay's services to buy and sell things over the Internet is a completely different activity than participating in eBay's AMP. The AMP is designed to "increase traffic to eBay's web site through the placement of advertisements for eBay on third-party web sites. eBay seeks to increase traffic to its site so that more people will be exposed to eBay's service and begin using eBay to buy and sell goods." SAC, page 4, ¶19, lines 23-26. In other words, the PSA and the AMP try to get new people to sign the eBay User Agreement, but the User Agreement does not define the relationship between eBay and its affiliate marketers such as Kessler's.

1  is similarly not applicable to this case. The forum selection clause in the PSA is binding on the parties
2  to this lawsuit.

3  III.  **TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**
4        **DISTRICT IS REQUIRED UNDER 28 U.S.C. § 1404(a)**

5          If the SAC is not dismissed under Rule 12(b)(3), then based on the convenience of the
6  witnesses and the parties, and the location of controlling evidence, transfer of this lawsuit is required
7  pursuant to 28 U.S.C. § 1404(a). Section 1404(a) specifies that "[f]or the convenience of the parties
8  and witnesses, in the interest of justice, a district court may transfer any civil action to any other
9  district or division where it might have been brought." Section 1404(a) is properly used here to effect
10 a transfer to the Central District of California based on all of the applicable factors. *A.J. Industries v.*
11 *U.S. District Court,* 503 F.2d 384, 389 (9th Cir. 1974); *See,* also, *In Re Volkswagen AG,* 371 F.3d 201,
12 204 (5th Cir. 2004).

13         The predominant number of the witnesses known to the TD Defendants reside in the Central
14 District, or elsewhere in Southern California. eBay has identified only one percipient witness in its
15 amended Rule 26 Initial Disclosures that apparently resides in this district. The SAC identifies two
16 witnesses from CJI residing in Southern California. And, of course, the SAC also identifies
17 defendants Todd and Brian Dunning and their respective companies all of whom reside in the Central
18 District. Dunning Enterprise, Inc., Thunderwood Holdings, Inc., as owners of Kessler's, and
19 BrianDunning.com conducted their promotional activities under the AMP from the Central District.
20 Finally, CJI identified 24 CJI employees as trial witnesses in the now-settled State Court Action, all of
21 whom are located in Southern California, *See,* Foreman Decl., paragraph 10. Some or all of these
22 people would be likely witnesses in this case since the factual basis of CJI's case was the same as
23 eBay's.[7] In comparison, eBay has identified 7 other witnesses in its amended Rule 26 Initial
24 Disclosures as having knowledge of its "investigation." However, only eBay's lawyer's office address
25 is given as their "residence". Not only is a lawyer's office location irrelevant for venue purposes, no

26

27 ――――――――――――
   [7] Although eBay has failed to identify any CJI employees in its amended Rule 26 Initial Disclosures, those
28 disclosures do not provide the only source of information for the Court to consider for purposes of this motion.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    presumption can be made that these witnesses are located in this District from this information. In

2    fact, the SAC admits that its investigative team is associated with a firm located in Seattle,

3    Washington. If any presumption is to be made, the Court should presume based on the SAC that these

4    other witnesses reside in Seattle.

5    Courts in the Ninth Circuit customarily look at the factors discussed below to determine

6    whether transfer is appropriate. *See, e.g., Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d

7    834, 843 (9th Cir. 1986); *The Carolina Casualty Company v. Data Broadcasting Corp. et al,* 158 F.

8    Supp. 2d 1044, 1048 (N.D. Cal. 2001). An analysis of these factors shows that they weigh heavily in

9    favor of transferring this lawsuit to the Central District of California.

10       A.    **Plaintiff's Choice Of Forum Is Not Controlling.**

11       While a plaintiff's choice of forum is not definitive or absolute, it is presumptively

12    determinative, absent other factors, such as a controlling forum selection clause. *Stewart Org. Inc., v.*

13    *Ricoh Corp.,* 487 U.S. 22, 29-30 (1988). While there is some tendency to view the plaintiff's choice

14    of forum as at odds with a forum selection clause, in fact the two are largely identical conceptually.

15    Plaintiff already consented to the designated forum for disputes when it adopted the forum selection

16    clause in the PSA for the Central District rather than modify it through the T&C Agreement when it

17    had the opportunity.

18       Even if eBay disputes its acquiescence to the forum identified in the PSA, other factors must

19    be weighed heavily against continuing the litigation in this District and supporting a transfer of this

20    case to the Central District. *Williams v. Bowman,* 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). The

21    TD Defendants' contacts were virtually all with eBay's agent, CJI, in the Central District. It is

22    undisputed that all of TD Defendants, and the relevant employees of CJI are located in the Central

23    District, or elsewhere in Southern California.

24       As the Court already found, the existence of a forum selection clause in the PSA, which is

25    binding on eBay, effectively neutralizes eBay's current choice of forum with the filing in this District.

26    eBay's choice of filing in this District is secondary to the negotiated forum selection it previously

27    consented to in the PSA. Based on the forum selection clause already approved by the Court, this

28    factor must favor the TD Defendants and transfer.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

B.    **Convenience Of The Parties**

Defendants Brian Dunning and Todd Dunning are brothers and their respective small businesses own defendant Kessler's Flying Circus. Kessler's is no longer in business since the termination of the PSA on June 19, 2007. All these defendants are located in the Central District. There is obvious and substantial financial hardship for Brian and Todd Dunning as individual defendants residing in the Central District to litigate in this District. In contrast, eBay is a Fortune 500 company with offices worldwide. It has the ability to litigate equally in this or the Central District. The SAC references only two eBay employees as percipient witnesses with potentially relevant evidence, and only one of them is actually listed in eBay's amended Rule 26 Initial Disclosures. In effect, eBay is claiming venue in this District for the convenience of one of its employees as compared to the convenience of numerous third party CJI witnesses and the TD Defendants who are all located in the Central District. The burden on the TD Defendants to defend in this District is significant; whereas it appears that there could be virtually no inconvenience to eBay to proceed in the Central District.

C.    **Convenience Of The Witnesses**

The overwhelming number of witnesses -- party affiliated and third-parties – with knowledge of facts related to this dispute are located in Southern California, based on the SAC, the amended Rule 26 Initial Disclosures and CJI's trial witness list from its State Court Action. In the SAC, eBay identifies just two percipient witnesses (Christine Kim and Dan Burkhart), one of whom is a former CJI employee who was located in Southern California for a portion of the time relevant to this case. In its amended Rule 26 Initial Disclosures eBay has identified seven witnesses (in addition to Ms. Kim), all relating to eBay's investigation. It appears that these seven witnesses are experts, not regular eBay employees or percipient witnesses, and although their residence locations are not identified, they are nevertheless irrelevant.[8] Dan Burkhart is not identified in the amended Rule 26 Initial Disclosures

---

[8] According to the SAC, eBay's experts and investigators were employed by a company called GGO, LLC, which is based in Seattle, Washington. The amended Rule 26 Initial Disclosure lists the location of these witnesses as the address of eBay's lawyers in San Francisco, which is certainly not accurate or relevant. Therefore, the Court has no reliable information about them, but as outside consultants for a party, their residence and convenience is not to be considered.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   so presumably he is not an eBay witness even though he is mentioned in the SAC.

2   Most informative, however, is CJI's trial witness list identifying 24 CJI employees with

3   knowledge of facts relevant to the recent Orange County Superior Court trial of its lawsuit against

4   these defendants. Foreman Decl., ¶10. Most of the witnesses reside in Southern California, with two

5   located in Portland, Oregon. Again, not one of these witnesses is identified as residing in this judicial

6   district. Based on the documents produced in the State Court Action, it is apparent that these

7   numerous CJI witnesses will offer testimony about purported cookie stuffing and other issues that

8   were identical to the issues in the State Court Action.

9   Here the convenience of the witnesses clearly weighs in favor of transfer under Section

10  1404(a). Accordingly, plaintiff's choice of filing the SAC in this District, without more, does not

11  outweigh the convenience of the witnesses and parties who reside in the Central District. *Lupiani v.*

12  *Wal Mart Stores*, 2003 U.S. Dist. Lexis 20343 (N.D. Cal). This factor overwhelmingly weighs in

13  favor of transfer.

14  **D.    Access To The Evidence**

15  This is a lawsuit that is based on alleged actions in cyberspace. Although eBay has alleged

16  that the computers accessed improperly are located at its offices in San Jose, this is a minor factor in

17  weighing all the important factors for the choice of forum. Computers can be located anywhere, and

18  they can be accessed for evidence from anywhere. Arguing venue based on the location of computers

19  is as meaningless as an argument advocating venue based on where a party chose to store its

20  documents. The actual servers and other hardware are not expected to be evidence at any trial, and

21  thus the location of the computer equipment is irrelevant. This factor regarding access to evidence,

22  accordingly, favors the TD Defendants, or is simply neutral.

23  **E.    Familiarity Of Each Forum With Applicable Law**

24  Clearly, both the Central and Northern District Courts are equally familiar with the applicable

25  law, and equally able to apply that law to the facts and circumstances of this case. Consequently, this

26  factor is neutral.

27

28

F.    **Feasibility Of Consolidation With Other Claims**

At this time there are no claims to consolidate with this action. The lawsuit brought by CJI in Orange County Superior Court was settled for a nominal sum in early March 2009. eBay claims that it could not have participated in that lawsuit, but this is untrue. eBay not only knew of that lawsuit, but it produced documents in that case in response to a subpoena served several months after it was filed by CJI. Foreman Decl., ¶9 and Exhibit 5. eBay could have intervened in the lawsuit to assert its claims since they involve the same facts raised in CJI's complaint. For whatever reason, CJI and eBay decided to sue these defendants separately, but that does not form a basis for venue in this District. Accordingly, this factor is at best neutral.

G.    **The Local Interest In The Controversy**

There is no indication, and certainly none presented by eBay, that any particular local interest in this matter exists, or if it does, that such interest is more pronounced or compelling in this District than in the Central District. Again, this factor is neutral.

H.    **Relative Court Congestion And Time To Trial In Each Forum**

So far as the TD Defendants understand, the time to trial in this Court and in the Central District are equivalent. Since both districts are in the same state, there is no difference in the application of California law to the non-federal claims in the SAC.

Therefore, transfer of this lawsuit to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) is appropriate, and within the sound discretion of this Court. The Court should order the transfer to the Central District.

IV.    **THE SAC SHOULD BE DISMISSED BASED ON THE LIMITATIONS PROVISION IN THE PSA**

This motion under Rule 12(b)(6) looks to determine whether the SAC contains allegations sufficient to state claims for which the Court may grant relief even if the allegations and reasonable inferences from them are reviewed in plaintiff's favor. *Display Research Laboratories, Inc. v. Telegen Corporation*, 133 F. Supp. 2d 1170 (N.D. Cal. 2001). In addition to the allegations in the SAC, the Court may consider in a Rule 12(b)(6) motion matters for which authenticity is not questioned and on which the complaint necessarily relies. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *In Re*

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   *Stacs Elecs. Sec. Litig.* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). Therefore, the Rule 12(b)(6) motion is

2   based on the contents of the PSA which has previously been accepted and relied on by this Court

3   although it is not attached as an exhibit to the SAC.

4         Just as the PSA governs the questions of the proper venue and the authorization for access to

5   eBay's computers, it also provides the period of time in which actions may be brought among CJI,

6   eBay and these defendants based on claims relating to the AMP. The relevant provision in the PSA

7   creating the contractual limitation period to which eBay is bound provides at, paragraph 7 (e):

8         "NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST THE OTHER

9   PARTY TO THIS AGREEMENT MORE THAN ONE YEAR AFTER THE TERMINATION OF

10  THIS AGREEMENT." (formatted as in original text)[9]

11        It is settled law in the federal and state courts in California that a third-party beneficiary is

12  bound by all provisions of the contract, including the contractual limitations provision in the contract.

13  *Janet Perez-Encinas v. Amerus Life Ins. Co.,* 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (Judge

14  Breyer); *Skylawn and Skyview Memorial Lawn v. Superior Court,* (1979) 88 Cal. App. 3d 316, 319. A

15  third-party beneficiary must take the limitations provision in the contract when the beneficiary seeks

16  to enforce rights or obtain recovery based on an interpretation of the contract. *See, L.E. Sanders v.*

17  *American Casualty Company,* (1969) 269 Cal. App. 2d 306, 309. A third-party beneficiary cannot

18  have any greater rights under the contract than the other parties. *Skylawn, supra.* at 319. *Downey v.*

19  *Federal Express Corporation,* 1993 U.S. Dist. LEXIS 16114, at *7 (N.D. Cal. 1993) (Judge Patel).

20  The Court is bound to interpret this limitations provision in its "ordinary and popular sense and give it

21  the meaning a "layperson would ordinarily attach to it." *Perez-Encinas, supra.* at 1133. Cal. Code of

22  Civ. Proc. §§ 1638 and 1644.

23        eBay's claims in the SAC depend entirely on proving that Kessler's promotional activities

24  violated the right of access granted by the PSA, and by reference, the T&C Agreement. Allegedly, as

25

26

27

28

---

[9] The SAC attempts to sidestep the limitations issue by failing to allege directly the date of termination of Kessler's from the AMP and the PSA. However, this omission is to no avail. The SAC, paragraph 57, acknowledges the applicable termination date by pleading that alleged "cookie-stuffing" by the defendants occurred "from April 1, 2004 through June 18, 2007." There is no dispute in this case about the date of termination.

1    a result of the violation, Kessler's access to eBay's computers became unauthorized. eBay even

2    reserved its right through the T&C Agreement to include provisions that would "control" over any

3    conflicting provisions in the PSA. Yet, eBay's T&C Agreement does not provide for any different

4    limitations period than the PSA, thus conceding and consenting to the contractual limitation of "one-

5    year from termination" for all claims between the parties related to the contract.[10]

6    Since eBay terminated Kessler's from the AMP and the PSA on or about June 18, 2007, it was

7    required to commence this action on or about June 18, 2008, pursuant to this contractual limitation

8    provision. The meaning of this phrase is plain—"NO ACTION" means these parties cannot sue each

9    other after an agreed upon date for any claim requiring an application of the terms of this contract.

10   eBay did not file this lawsuit until August 25, 2008, which is well beyond one year from the date of

11   termination.

12   There is no surprise to eBay in applying this contractual limitations to the SAC since it had the

13   opportunity to modify that provision through its own T&C Agreement and the MSA.    eBay also

14   knew that CJI had commenced its own action well within the contractual limitations period based on

15   the same allegations of "cookie-stuffing". Furthermore, the SAC reveals that eBay knew as of the

16   date of termination all facts giving rise to its claims. eBay delayed asserting its rights until those

17   rights expired by virtue of the limitations period in the PSA. Therefore, the entire SAC should be

18   dismissed under Rule 12(b)(6) without leave to amend because all of its claims are untimely.[11]

19

20

21

22   [10] The one-year limitations period contained in an insurance contract barred a fraud claim not commenced with that

23   contractual litigations period because the "fraud claim is fundamentally a claim on the policy." *Nevezi and Nevezi v. Allstate Ins. Co.*, 1994 U.S. Dist., Lexis 8156, at *10 (CD Cal). Similarly, eBay's tort and statutory claims are

24   fundamentally claims under the PSA and related documents, so the contractual limitations period applies to all the
     claims in the SAC.

25   [11] The Motion to Dismiss filed by Brian Dunning and Thunderwood Holdings, Inc. also seeks dismissal of the SAC

26   under Rule 12(b)(6) based on the binding release contained in the Settlement Agreement between CJI, on the one
     hand, and Brian Dunning, Todd Dunning, Kessler's, Thunderwood Holdings, Inc. and Dunning Enterprise, Inc., on

27   the other hand. This argument is not repeated here, but Todd Dunning and Dunning Enterprise, Inc. as signatories to
     the settlement agreement join in that argument and motion to dismiss as if stated in full as part of these moving

28   papers.

## V. EACH INDIVIDUAL CLAIM IS BARRED BY ITS APPLICABLE STATUTE OF LIMITATIONS

Generally, applying the statute of limitations to each of the five claims in the SAC involves a determination of the issue: When did the claim accrue? Each of the claims in the SAC accrued when an injury occurred, or when eBay knew or should have known of the accrual of its claim. The allegations in the SAC reveal the facts that determine the accrual of each of eBay's claims. Based on the analysis below of the allegations in the SAC and the reasonable inferences from them, each claim is barred by its applicable statute of limitations even if the Court determines that the contractual limitation period in the PSA does not apply.

The SAC alleges that starting in April 2004, eBay had data and information that showed "cookie stuffing" by Kessler's. Paragraph 57, page 19, lines 6-8, of the SAC states "analysis of historical data ... uncovered further evidence of cookie stuffing... over the period April 1, 2004 through June 18, 2007." eBay further alleges that this data showed "substantial differences in the behavior of legitimately referred users and users referred by... KFC [Kessler's], which supported the conclusion that [the defendants] engaged in cookie-stuffing". SAC, ¶57, page 19, lines 13-15. This paragraph goes on to allege that the "[the defendants'] users did not take the high percentage of the Revenue Actions during the first hour following the cookie drop, and instead, took Revenue Action at a nearly uniformed rate over the life of the cookie." *Id.* at lines 24-26. Based on this and similar allegations in the SAC, it is clear that eBay had in its possession and knew, or should have known, all of the information since April 2004 to learn that alleged "cookie-stuffing" had started and that eBay was paying unearned commissions for new Revenue Actions. On or about April 1, 2004, is therefore the point of accrual of all of the claims based on the allegations in the SAC.

The SAC also alleges that by September 2005, Christine Kim, one of eBay's principal witnesses, and at that time an employee of CJI, was suspicious of "cookie-stuffing" by Kessler's. The SAC does not reveal after this date when Ms. Kim became an eBay employee, to place this suspicion as a matter of law within eBay. However, since CJI was responsible for monitoring and managing the AMP for eBay, CJI was eBay's agent for these purposes. Thus, CJI's knowledge and suspicions of "cookie-stuffing" are attributable to eBay while Ms. Kim was a CJI employee but not yet an eBay's

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   employee. *See,* Cal. Civ. Proc. Code § 2332. eBay apparently did not take any action, and apparently

2   Kessler's participation in the AMP for eBay through the CJI network was allowed to continue

3   uninterrupted despite concerns about "cookie stuffing" and unauthorized access to eBay's computers.

4       Amazingly, the SAC asserts that on February 15, 2006, defendant Todd Dunning allegedly

5   admitted the "cookie-stuffing" to an eBay employee. Although the SAC attempts to minimize the

6   legal effect of this alleged admission with allegations claiming that Mr. Dunning retracted his

7   admission, this statement indisputably put eBay on notice of a claim for unauthorized access to its

8   computers through "cookie-stuffing".

9       Finally, the SAC describes in great detail alleged tests performed in June 2007 to confirm the

10  alleged "cookie stuffing," prior to terminating Kessler's from the PSA. From the SAC's description of

11  these tests, it is clear that eBay could have performed them at an earlier time when suspicions and

12  information about alleged "cookie-stuffing" first surfaced. Everything required to perform these tests

13  in June 2007 was under eBay's possession and control at all times beginning in April 2004. The SAC

14  provides no explanation as to why alleged suspicions and admissions were not heeded when eBay first

15  was on notice of the accrual of its claim and why this lawsuit was not filed until August 25, 2008.

16      A.    **The CFAA Claim Is Barred By The Statute Of Limitations**.

17      The statute of limitations for a CFAA claim is two years from the date of the act complained

18  of, or the date of the discovery of the damage. 18 U.S.C. § 1030(g). eBay's claim accrued when it

19  knew or should have known that it suffered injury from the unauthorized access related to "cookie-

20  stuffing". Under the "federal discovery rule" related to accrual of claims, the plaintiff must use

21  reasonable diligence in investigating once it has suspicions, or knew or should have known, of injury.

22  *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1039 (9th Cir. 2002); *Ashcroft v. Randel,* 391 F. Supp.

23  2d 1214 (N.D. Ga. 2005). A plaintiff knew or should have known of its injury under this rule when

24  the facts to support a claim "should be apparent to a person with reasonably prudent regard of his

25  rights". *Aschcroft, supra* at 1224.

26      Under the allegations of the SAC, eBay had "suspicions to give rise to a duty to inquire" at or

27  soon after April 1, 2004 because of the anomalies in the data in its computers generated by Kessler's

28  alleged unauthorized access. In addition, its claim definitely accrued in February 2006 when

1 defendant Todd Dunning allegedly made admissions about "cookie stuffing". eBay cannot "wait to
2 investigate and sit on its rights; [it] must find the facts and file the lawsuit." *Forcier v. Microsoft*, 123
3 F. Supp. 2d 520, 531 (N.D. Cal. 2000) (Judge Armstrong). Once eBay has the duty to inquire based
4 on suspicions or other information in its possession, it "is charged with the knowledge" of what it
5 would have learned "through a reasonably diligent investigation." *Ashcroft, supra* at 1224.

6     In summary, under the two-year statute of limitations applicable to the CFAA, the claim
7 accrued when eBay had information putting it on notice to conduct an investigation that would have
8 revealed to a reasonably prudent person that an injury from unauthorized access had occurred in
9 violation of the CFAA. Based on the allegations in the SAC, eBay is charged with this knowledge to
10 conduct an investigation that would have revealed the alleged "cookie-stuffing" scheme and the
11 related unauthorized access certainly between April 2004 and February 2006. Obviously, the filing of
12 the complaint in August 2008 is well-beyond the applicable two-year statute of limitations.

13     The doctrine of equitable tolling is not available to eBay because it failed to act in a timely
14 fashion. Equitable tolling is not available to a plaintiff who is not diligent. *Ashcroft, supra* at 1226;
15 *Egilman v. Keller & Heckman, LLP,* 401 F. Supp. 2d 105, 111 (Dist. of Columbia 2005). eBay knew
16 or should have known as a matter of law because of the allegations in the SAC that between April
17 2004 and February 2006 its claim under CFAA had accrued. It possessed all of the necessary facts in
18 its computer data base, as it has already admitted, and it knew it was paying apparently unusually high
19 commissions due to alleged "cookie-stuffing". It even received an alleged admission of the wrong-
20 doing in February 2006. Yet, eBay did nothing within the required two-year period to assert its rights,
21 while reaping the benefits of all of the Revenue Actions generated by Kessler's. The CFAA is
22 untimely as a matter of law based on the allegations in the SAC.

23     **B.**   **The Rico Claim Is Barred**.

24     RICO has a four-year statute of limitation from the date of the plaintiff's initial injury. The
25 statute of limitations applies even if the plaintiff has not discovered the underlying predicate acts at
26 the time of the injury. *Rotella v. Wood,* 528 U.S. 549, 555 (2000); *Agency Holding Corp. v. Malley-*
27 *Duff and Associates, Inc.,* 483 U.S. 143, 150-156 (1987); *McCool v. Strata Oil Co.,* 972 F.2d 1452,
28 1465 (7th Cir. 1992); *Rodriquez v. Banco Central,* 917 F.2d 664, 665 (1st Cir. 1990). The plaintiff's

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

knowledge of the injury which commences the statute of limitations is measured by the normal federal discovery rule that looks to when the plaintiff knew or should have known of the injury. *Rodriquez, supra*. In the Ninth Circuit, "a plaintiff has reason to discover the cause of action when he has reason to suspect a factual basis for its elements." *Soliman v. Philip Morris Incorporated*, 311 F.3d 966, 971 (9th Cir. 2002) (quoting, *Norgart v. Upjohn Co.*, (1999) 21 Cal. 4th 383, 398). For the same reasons discussed above, eBay knew or should have known in April 2004 of its injury from paying allegedly excessive commissions to Kessler's as a result of "cookie stuffing", therefore, the RICO claim accrued at that time.

The SAC alleges various acts that seem to claim fraudulent concealment by the TD Defendants. Even assuming, without conceding, that fraudulent concealment can toll the RICO statute of limitations, the mere assertion that "fraud underlies a claim is insufficient" to toll the RICO statute of limitations. Defendants' efforts to allegedly conceal the injury that would commence the statute must involve actions that would prevent the plaintiff from suspecting anything is wrong. *Hodas v. Sherbourne, Powers and Needham, P.C.*, 938 F. Supp. 60, 63 (D. Mass. 1996) (motion to dismiss RICO claim granted). The Courts have concluded that this rule regarding the RICO statute of limitations is necessary and appropriate because "otherwise, RICO suits containing fraud allegations would never be time-barred, and the statute of limitations period would be meaningless." *Id.* Therefore, for a fraudulent concealment argument to toll the RICO statute of limitations three elements must be specifically alleged: (1) wrongful concealment by defendants, (2) failure of the plaintiff to discover the operative facts that are the basis of the claim within the limitations period, and (3) plaintiffs' due diligence until discovery of the facts." *Id.*

eBay has not alleged these elements in the SAC. Moreover, it is unable to make such allegations because other statements in the SAC contradict them. Just as in the *Hodas* case where the plaintiff knew that his "loans were going bad and that he had to stop" making additional loans more than five years before filing (*Id.* at 63), eBay admits it had all of the relevant data in its possession to identify unauthorized access and "cookie-stuffing" more than four years before the commencement of its action. In fact, all eBay had to do was look in its database to see the allegedly obvious statistical anomalies that deviated from normal cookie placement to discover the alleged "cookie-stuffing" by

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Kessler's. eBay knew then of its claim for unauthorized access and for payment of unearned commissions based on Revenue Actions derived from "cookie stuffing." eBay knew or should have known based on its own allegations in the SAC that Kessler's commissions, which are the alleged injury, were unusually high and had been that way for more than four years.[12] eBay's allegations of verbal denials and excuses by the defendants are not acts of fraudulent concealment when considered with the statements attributed to the defendants and eBay's own knowledge as alleged in the SAC. As a matter of law, those alleged statements are not excuses for eBay to ignore the need for a diligent investigation of its own data to discover its alleged injuries. Therefore, eBay cannot rely on the concept of fraudulent concealment to toll the RICO statute of limitations.

The "separate accrual rule" as applied in the Ninth Circuit will not assist eBay to avoid the bar of the statute of limitations. This rule provides that "a cause of action accrues when new overt acts occur within the limitations period." *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) In the present case, the separate accrual rule would only apply if each payment of an unearned commission were considered a new overt act so that all payments within four years of August 25, 2008 are within the limitations period. But each payment is not a separate act as a matter of law, as the case law demonstrates.

To come within the separate accrual rule, each payment accruing within the limitations period "must be a new and independent act that is not merely a reaffirmation of a previous act...." (citation omitted) *Sasser v. Amen*, 2001 U.S. Dist. LEXIS 9469, *22 (Judge Illiston). In the *Sasser* case, defendants had implemented and pursued a policy over a number of years that resulted in regular and repeated charge backs of commissions to sales consultants. Plaintiffs claimed the charge backs were illegal and that each charge back constituted a RICO violation. The court granted summary judgment for the defendants by ruling that use of the same policy to repeatedly create the same injury does not make each charge back a "new and independent" act under RICO. Therefore, the separate accrual rule

---

[12] The PSA required that Kessler's widget which was used in the AMP be approved in advance by CJI and eBay. Again, eBay has artfully and conveniently omitted from the SAC any allegations regarding its review and approval process of Kessler's widget, and it has omitted any allegations about the reasons that analysis failed to identify the coding that allegedly constitutes "cookie stuffing".

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1 did not apply. Plaintiff's claim accrued when plaintiff knew or should have known that the charge

2 back policy was unlawful more than four years before the lawsuit was filed. The claim was barred by

3 the four year statute of limitations even though charge backs under the policy continued to occur

4 within four years of filing. The RICO claim was dismissed.

5 The same reasoning applies here. Kessler's widget was approved and put into service with its

6 alleged cookie stuffing capability, according to the SAC, by April 1, 2004. There is no allegation that

7 the widget ever changed. According to the SAC, the widget operated to stuff cookies onto user's

8 computers and then to generate unearned commissions from eBay when the user engaged in a

9 Revenue Action. Just as with the repeated charge backs under one commission policy in *Sasser*, there

10 is one widget that repeated the alleged cookie stuffing against eBay.

11 This Court should follow Judge Illiston's sound reasoning and conclude similarly that each

12 commission paid to Kessler's as a result of alleged "cookie stuffing" is not a "new and independent"

13 act under RICO because it is just the same injury resulting from the same widget. As Judge Illiston

14 said: "the Court finds that the fact that plaintiffs have continued to suffer loss of income due to

15 defendants' policies within the limitations period does not impose new and accumulating injuries

16 sufficient to restart the statute of limitations" *Id.* at *26. (citing also, *In re Merrill Lynch Limited*

17 *Partnership Litigation*, 154 F.3d 56 (2d Cir. 1998).

18 For all of these reasons, the RICO statute of limitations commenced with the injury that the

19 SAC claims occurred in April 2004, and thus the RICO claim is barred by the failure of eBay to

20 commence this action within four years of that date.

21 **C.    The California Unfair Competition Claim Is Time-Barred**

22 Cal. Bus. & Prof. Code §17208 provides a four-year statute of limitations for unfair

23 competition claims under Business and Profession Code §17200. The statute of limitations

24 commences when the "cause of action accrued." Accrual occurs irrespective of whether the plaintiff

25 knew at the time that the statute of limitations was running, unless the plaintiff can plead sufficient

26 facts to establish entitlement to equitable tolling principles. Equitable tolling can occur through

27 alleged fraudulent concealment but it does not always apply in an unfair competition claim. *Stutz*

28 *Motorcar of America v. Reebok International*, 909 F. Supp. 1353, 1363 (CD Cal 1995). Fraudulent

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  concealment is not relevant to the statute of limitations when the plaintiff has notice of the potential
2  claim based upon suspicions of wrongdoing and knowledge of harm or injury. It is plaintiff's notice,
3  not any further efforts by defendant to conceal, that commences the statute of limitations under Bus. &
4  Prof. Code § 17208. *Snapp and Associates Insurance Services Inc. v. Malcolm Bruce Burlingame*
5  *Robertson*, (2002) 96 Cal. App. 4th 884, 891-892.

6     In the *Snapp* case, the "ongoing" nature of the unfair competition did not delay the
7  commencement of the statute of limitations because the plaintiff knew of the claim accruing more
8  than four years before filing. The same is true here; by its own admissions in the SAC eBay knew or
9  should have known since April 2004 of injuries as a result of alleged "cookie-stuffing". Therefore, the
10 statute of limitation regarding a California unfair competition claim accrued at that time, and the
11 claims under Section 17200 relating to Kessler's alleged conduct of "cookie-stuffing" expired in April
12 2008, regardless of allegations of intervening efforts of concealment by defendants.[13]

13     **D.    California Penal Code § 502 And Common Law Fraud Claims Are Barred**
14     eBay's claim under California Penal Code § 502 for alleged unlawful access to its computers is
15 governed by a three-year statute of limitations. California Penal Code § 502(e)(5). The statute
16 precludes any action initiated more than three years from "the date of the act complained of, or the
17 date of discovery of the damage, whichever is later." Similarly, Cal. Civ. Proc. § 338(d) provides a
18 three-year statute of limitations for common law fraud. The "discovery" provision under California
19 law to delay the statute of limitations; however, only applies while plaintiff's claim is "unsuspected."
20 *Spellis v. Lawn*, (1988) 200 Cal. App. 3d 1075, 1080. The common law fraud statute of limitations
21 begins to run on the occurrence of the last element needed for the cause of action. See also, *Love v.*
22 *Fire Insurance Exchange* (1990) 221 Cal. App. 3d 1136, 1143; *Spellis, supra* at 1079.

23     In eBay's SAC, it is clear from the allegations that a cause of action for fraud was ripe after the
24 initial unauthorized access through an act of "cookie stuffing" which resulted in payment of unearned

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

---

26 [13] Significantly, eBay knew before and certainly by March 2008, based upon the filing of the CJI complaint against
27 these defendants and its receipt of a subpoena for documents in that case (Foreman Decl., Exhibit 5), that CJI
   claimed that "cookie-stuffing" had occurred, and that the TD Defendants had received allegedly improper
   commissions. Nevertheless, eBay continued to delay taking any action to assert its rights in a timely manner
28 April 2008.

commissions. The "discovery of damage" principle does not apply to these claims to delay the accrual of the cause of action. There are no allegations in the SAC to raise the issue that these claims were genuinely "unsuspected," and therefore eBay cannot delay the accrual of the cause of action from the date of the initial "cookie stuffing". eBay knew it was paying large commissions to Kessler's because of a high volume of new users taking Revenue Actions, yet it ignored any signs, data or suspicions that these commissions were related to alleged "cookie stuffing". The statute of limitations started to run at the time the "cookie stuffing" started, and the fact that more substantial damages may have accrued as time progressed does not alter when the claim accrued. *Spellis, supra* at 1081. For these reasons, eBay's claims for the fraud, and damage from the alleged unauthorized access to its computers through "cookie-stuffing", accrued well before August 25, 2005. Therefore, the filing of its original complaint on August 25, 2008, is not timely as a matter of law for claims under Calif. Penal Code § 502 or for common law fraud.

E.     **The Restitution Claim is Governed by the Contractual Limitations Provision**

The remaining claim alleged in the SAC is for restitution and unjust enrichment to recover commissions paid, but allegedly unearned, by the defendants. As discussed above, the PSA contains a one year contractual limitations period from the date of termination. The restitution claim is essentially a claim for breach of the PSA, or at least the claim relates to an interpretation of the provision of the contract. Therefore, this claim is governed by the PSA's limitations period. Accordingly, eBay was required to file its claim for restitution on or before June 19, 2008, and its filing two months later is untimely. Its claim for restitution is barred by the provisions of the PSA to which it is a third-party beneficiary.

VI.    **CONCLUSION**

The SAC must be dismissed with prejudice because it is barred by the limitations provision in the PSA to which eBay is bound as a third party beneficiary. The SAC also must be dismissed with prejudice because the allegations in the SAC show that each claim is untimely under its applicable statute of limitations. In the alternative, this case must be dismissed because it is filed in the wrong

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

District, or it must be transferred to the Central District. eBay should not be granted leave to amend again to allege a basis for venue in this District.

Dated: April 27, 2009

Respectfully Submitted,

FREELAND COOPER & FOREMAN LLP


By: _____/s/_____

STEWART H. FOREMAN
Attorneys for Defendants Todd Dunning and
Dunning Enterprise, Inc.